UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NICHOLE ADAMS-FLORES<br>individually and on behalf of all others similarly<br>situated,<br><br>                                        Plaintiff,<br><br>                    -against-<br><br>THE CITY OF NEW YORK, NEW YORK CITY<br>DEPARTMENT OF CORRECTIONS, HEALTH<br>& HOSPITAL CORPORATION, CYNTHIA<br>BRANN, Commissioner of Dept. of Corrections,<br>PATSY YANG, Chief Operating Officer of<br>Correctional Health Services, ROSS MACDONALD,<br>Chief of Medicine, JEFF THAMKITTIKASEM,<br>Former Chief of Staff of Dept. of Corrections, and<br>MARTIN MURPHY, former Chief of Department of Dept.<br>of Corrections.<br><br>                                        Defendants. | **Case No.** 18- CV - 12150<br><br><br>**COMPLAINT**<br>**WITH JURY DEMAND** |

NICHOLE ADAMS-FLORES, individually and on behalf of all others similarly situated, for her

Complaint against Defendants the City of New York, New York City Department of Corrections, Cynthia

Brann, Commissioner, Patsy Yang, Chief Operating Officer of Correctional Health Services, Jeff

Thamkittikasem, Former Chief of Staff, and Martin Murphy, former Chief of Department (collectively,

"Defendants"), allege as follows:

## INTRODUCTION

1.        This action is hereby commenced for the purpose of seeking to secure protection of, and to

redress the deprivation of rights secured and protected by the United States Constitution, Title VII of the

Civil Rights Act of 1964, as amended, 42 U.S.C. § 1983, New York State Executive Law §§ 296, et seq. and

the New York City Human Rights Law, N.Y.C. Administrative Code §§ 8-107, et seq., providing for relief from the above-captioned Defendants' unlawful employment practices of engaging in discrimination based upon Plaintiff's race and national origin, pregnancy, gender, for retaliation against Plaintiff for engaging in the protected activity of formally complaining of said discrimination, and the creation of a hostile work environment which Plaintiff was forced to endure.  This action also seeks to vindicate the rights of Plaintiff, an African American Executive Staff of the New York City Department of Corrections ("DOC") who was subjected to adverse employment conditions based upon her race and color, gender, pregnancy as well as her staunch refusal to engage in the prevalent corruption, falsification and manipulation of data within Rikers Island, for which the Plaintiff suffered a disparate impact when compared with similarly situated non-African American employees.

2.      Additionally, this claim seeks money damages, both accrued and prospective, on behalf of Plaintiff and attorney's fees pursuant to 42 U.S.C. § 1988.

3.      As set forth more fully below, Plaintiff allege in this action that Defendants the City of New York ("City") and Health & Hospital Corporation, the individually-named Defendants, as current and former DOC Executive Staff, have engaged in a pattern and practice of race and pregnancy discrimination and retaliation based upon, *inter alia*: 1) failure to provide Plaintiff, an African American supervisors with the appropriate equipment resources that were provided to similarly-situated, non-African American employees; 2) the marginalization of Plaintiff by Defendants; and 3) the disparate impact upon the Plaintiff, an African American, who refused to take part in the systemic corruption and falsification tactics undertaken by Defendants.

4.      For years, Defendants have engaged in a pattern and practice of systemic, continuous, and intentional discrimination against African American administrative and management employees in job

2

placement, advancement opportunities, and compensation decisions. Defendants have denied African Americans the same advancement opportunities as have been afforded to non-African Americans. This broad pattern of racial discrimination has resulted in a far less percentage of African American Executive Staff members at the DOC as compared to other City government agencies.

5.      Despite repeated attempts by Plaintiff, and other similarly situated African American supervisory employees, 1) to curtail this severe and pervasive discrimination, and 2) refusal to undertake in the falsification and manipulation of facts regarding violence within Rikers Island by, *inter alia*, reporting the repeated instances of discrimination and corruption to her supervisors, the Office of Equal Employment Opportunity, and DOC Executive Staff, Defendants utterly failed to take appropriate corrective actions and permitted the hostile work environment to persist unabated during her employment.

6.      The African American Executive Staff members all suffered a similar fate when they voiced her concerns to Defendants: Her complaints were wholly ignored, her authority and decision-making responsibilities were minimized, her equipment, fiscal, and personnel resources were severely restricted, and/or her voices were completely stifled as they were forced to retire, resign or endure a retaliatory and hostile work environment.

7.      Plaintiff brings this action on behalf of herself and all other similarly situated supervisory employees. Plaintiff herein claims that the DOC's pattern and practice of discrimination based upon race, gender, and pregnancy, violates Title VII, 42 U.S.C. § 2000e *et seq.,* 42 U.S.C. § 1983, Section 296 of the New York Executive Law, and Section 8-107 of the New York City Administrative Code.

## PARTIES

8.      Plaintiff Nichole Adams-Flores is currently employed as a Deputy Commissioner for Health Affairs of DOC from February 15, 2016 to the present. Plaintiff was previously employed with the Health & Hospitals Corporation/Corizon from March 2015 to February 2016.  As Deputy Commissioner of Health

3

Affairs, Plaintiff is responsible for managing the planning, development and implementation of programs and health care services to the inmate population. Plaintiff is also responsible for the development, coordination and implementation of a wide range of health related planning initiatives for the DOC.

9.    Plaintiff is also required to work collaboratively with NYC Health & Hospital Corporation (H&H) which delivers and oversees the medical care of the inmates in the DOC's custody. As such, Plaintiff is the first point of contact and direct liaison between H&H and DOC.

### ***Defendants***

#### The City of New York

10.    The City of New York ("City") is a municipal corporation existing by the virtue of the laws of the State of New York. The City, through the Department of Corrections ("DOC"), maintains a policy and practice of discrimination against African American employees, including the creation of a disparate impact against the African Americans.

11.    The City is liable for the discrimination suffered by Plaintiff and similarly situated African American employees.

#### Defendant Cynthia Brann

12.    Cynthia Brann is a white female and was named Commissioner of the DOC in October 2017. Prior to her appointment, Defendant Brann served as the Deputy Commissioner of Quality Assurance and Integrity for the DOC. At all times relevant herein, Defendant Brann served under the executive direction of former DOC Commissioner Joseph Ponte.

13.    Specific to the allegations contained herein of discrimination, including disparate impact, Defendant Brann was responsible for reviewing and evaluating compliance issues within the DOC and ensuring that subordinate supervisory staff, management, and employees were in compliance with the rules and regulations of regulatory agencies, including but not limited to the Federal government oversight

implemented by the United States Attorney's Office for the Southern District of New York, and the DOC's policies and procedures. Defendant Brann was also responsible for responding to alleged violations of DOC rules, regulations, policies, procedures, and standards of conduct by evaluating and/or recommending the initiation of investigative procedures, developing and overseeing a system for handling compliance violations, and monitoring and coordinating compliance activities.

14.     It is alleged herein that Defendant Brann willfully, wantonly and/or negligently failed to carry out the aforementioned duties and responsibilities, thereby resulting in the existence and proliferation of a pattern and practice of race and color discrimination, retaliation, and a hostile work environment within DOC, including disparate impact.

Defendant Patsy Yang

15.     Patsy Yang is an Asian American female and at all relevant time is the Senior Vice President of Correctional Health Services for Health & Hospital Corporation.  As V.P. of Correctional Health Services, she is responsible for all medical and  mental health services and the health care operations that are implemented in the New York City Department of Correction.

16.     Specific to the allegations contained herein of discrimination, including disparate impact, Defendant Yang, and/ or her designee and/ or her title was responsible for reviewing and evaluating health care issues and communicating those concerns to the Deputy Commissioner for Health Affairs (Plaintiff) as was past practices with the previous Deputy Commissioner for Health Affairs, who was a white male. Defendant Yang was also responsible for addressing alleged violations of health care practices and communicating those concerns to the Department of Correction via the DOC designee, Deputy Commissioner for Health Affairs (Plaintiff).

17.     It is alleged herein that Defendant Yang willfully, wantonly and/or negligently failed to carry out the aforementioned duties and responsibilities, thereby resulting in the existence and proliferation of a

pattern and practice of race and color discrimination, retaliation, and a hostile work environment within DOC, including disparate impact.

Defendant Ross MacDonald

18.     Ross MacDonald is a white male who is the Chief Medical Officer of Correctional Health Services, a position he has held since June of 2017 until present.  Prior to this role, he served as Chief of Service for Correctional Health Services from August 2015 until June of 2017.

19.     As Chief Medical Officer, Defendant MacDonald has direct supervisory oversight for medical and mental health service delivery.  Defendant MacDonald communicates relevant information to support the care and treatment of detainees to appropriate DOC staff, namely, the Deputy Commissioner for Health Affairs, consistent with past practice.

20.     It is alleged herein that Defendant MacDonald willfully, wantonly and/or negligently failed to carry out the aforementioned duties and responsibilities, thereby resulting in the existence and proliferation of a pattern and practice of race and color discrimination, retaliation, and a hostile work environment within DOC, including disparate impact against Plaintiff.

Defendant Jeff Thamkittikasem

21.     Jeff Thamkittikasem is an Asian American male who was the Chief of Staff of the DOC, a position he has held since November 2014 to 2018 per assignment from Mayor Bill de Blasio, despite having no prior corrections experience.

22.     As Chief of Staff, Defendant Thamkittikasem acted as the Commissioner's representative to the uniformed Command Staff, the members of DOC's Executive Staff and to external personnel within the New York City Health & Hospital Corporation, specifically Defendant Patsy Yang. Defendant Thamkittikasem advised the Commissioner on program and policy matters, managed high priority projects, and oversaw the day to-day operations of the Office of the Commissioner which includes the Health Affairs

Division of DOC.

23.     It is alleged herein that Defendant Thamkittikasem willfully, wantonly and/or negligently failed to carry out the aforementioned duties and responsibilities, thereby resulting in the existence and proliferation of a pattern and practice of race and color discrimination, retaliation, and a hostile work environment within DOC, including disparate impact against Plaintiff.

Defendant Martin Murphy

24.     Martin Murphy is a white male and was the Chief of the Department of the DOC from February 2015 until June 2017 when he retired.

25.     As Chief of the Department, Defendant Murphy supervised the uniformed members of service in the DOC, including Assistant Chiefs, Wardens, Deputy Wardens-In-Command, Deputy Wardens, Assistant Deputy Wardens, Captains, and Correction Officers. Defendant Murphy also was responsible for approving promotions and job assignments of the uniformed staff throughout the DOC.

26.     Specific to the allegations contained herein of discrimination, including disparate impact, Defendant Murphy was responsible for reviewing and evaluating compliance issues within the DOC and ensuring that subordinate supervisory staff, management, and employees were in compliance with the rules and regulations of regulatory agencies, including but not limited to the Federal Government oversight implemented by the United States Attorney's Office for the Southern District of New York, and the DOC's policies and procedures. Defendant Murphy was also responsible for responding to alleged violations of DOC rules, regulations, policies, procedures, and standards of conduct by evaluating and/or recommending the initiation of investigative procedures, developing and overseeing a system for handling compliance violations, and monitoring and coordinating compliance activities.

27.     It is alleged herein that Defendant Murphy willfully, wantonly and/or negligently failed to carry out the aforementioned duties and responsibilities, thereby resulting in the existence and proliferation of a pattern and practice of race and color discrimination, retaliation, and a hostile work environment within DOCS, including disparate impact against Plaintiff.

## JURISDICTION AND VENUE

28.     This Court has jurisdiction over Plaintiff's Federal claims pursuant to 28 U.S.C. § 1331 and 42 U.S.C. §§ 2000e-5(f)(1), 5(f)(3) and supplemental jurisdiction over the state and city law claims pursuant to 28 U.S.C. § 1367.

29.     As the Southern District is the District wherein a substantial part of the events giving rise to the instant claims occurred, venue is proper pursuant to 28 U.S.C. § 1391(a)(2).

30.     Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") complaining of race and color discrimination, retaliation, and creation of a hostile work environment, *inter alia*, as further alleged in this Complaint.

31.     A Right to Sue letter was received by Plaintiff from EEOC on or about September 26, 2018.

## FACTUAL ALLEGATIONS - GENERAL

32.     At all relevant times, the DOC comprised approximately ten thousand four hundred (10,400) employees, eighty (80) of which were administrators and managers.

33.     The supervisory positions of administrators and managers are divided into uniformed titles and civilian titles.

34.     The uniformed titles include Chief of Department, Warden, Deputy Warden-In-Command, and Deputy Warden, *inter alia.*

35.     The civilian titles include Commissioner, First Deputy Commissioner, Deputy Commissioner, Associate Commissioner, and Assistant Commissioner.

36.     The Executive Staff is comprised of the Commissioner, First Deputy Commissioner, Senior Deputy Commissioner, Chief of Staff, Deputy Commissioner of Financial, Facility and Fleet Administration, Deputy Commissioner for Legal Matters/General Counsel, Deputy Commissioner of Public Information, First Deputy Commissioner of Human Resources, Deputy Commissioner of Youthful Offender and Young Adult Programming, Deputy Commissioner for the Office of Classification and Population Management, Deputy Commissioner of Adult Programming and Community Partnerships, Deputy Commissioner of Quality Insurance and Integrity, Chief Information Officer/Deputy Commissioner of Information Technology, Deputy Commissioner of Health Affairs, and Deputy Commissioner for Investigation Division.

37.     At all relevant times, a disproportional percentage of African Americans were afforded the opportunity of obtaining Executive Staff positions.

38.     Unlike non-African American supervisors, the few African Americans who do hold supervisory positions have their authority circumvented, marginalized, and usurped, are denied promotions and the opportunity to move up in the ranks, and/or are threatened with demotion if they fail to resign.

39.     A New York City Government Workforce Profile Report shows that, at times relevant to this Amended Complaint, "Black" employees held only approximately thirty (30%) of the managerial positions within the DOC, despite over seventy-five percent (75%) overall "Black" employment.

40.     The culture, policies, and practices that have caused the DOC to under-promote and marginalize African Americans has resulted in systemic and continuing racial discrimination, including disparate impact, in hiring, advancement, and pay decisions against African Americans employed by the DOC.

9

## FACTUAL ALLEGATIONS

41.     Plaintiff, Nichole Adams-Flores as a Doctorate of Psychology in School/Community Psychology, Master of Science in General Psychology, Master of Arts in Administration and Supervision, Master of Arts in Counseling Psychology and Bachelor of Science in Psychology.  She received Board Certification from the American Board of Professional Psychology in 2013.  She is a Licensed and Registered Psychologist and teaches both graduate and undergraduate students in Psychology since 2008.

42.     In January 2016 while Plaintiff worked at Health & Hospital Corporation/Corizon (H&H), she made a request for a reasonable accommodation to work from home while on bedrest to Defendant Patsy Yang just prior to coming to work at the DOC due to her pregnancy.  Said request was denied by Defendant Yang and Plaintiff was not allowed to remain on full time status.

43.     Plaintiff was forced to accept a reduction of hours to half time and could not work from home.

44.     On January 25, 2016 Plaintiff objected to Defendant Yang's decision and stated in an email that the accommodation was short term and that she told Human Resources "I feel that the only thing that would allow me to work full time is not being pregnant."

45.     Plaintiff's work as a clinical supervisor was able to be conducted remotely and in an administrative trailer not located in one of the jails on Riker's Island.  Furthermore, Plaintiff had received medical clearance to work full time by her doctor.  This was known by Defendant Yang.

46.     Plaintiff's prior supervisor at H&H, Mark Fleming, had authorized Plaintiff to work full time without having to be present in the jails during her pregnancy.

47.     Other clinical supervisors who were white or non-black were allowed to perform her duties at H&H by Defendant Yang from alternate clinical locations and did not have to physically be on the unit, for example: Dr. Camerano, Dr. Georgolius and Dr. Ho.

10

48.     In February 2016, Plaintiff left H&H and began working at DOC as the Deputy Commissioner of Health Affairs. Plaintiff was required to work collaboratively with H&H which oversees the medical care of the inmates in the DOC's custody.  As such, Plaintiff is the first point of contact and direct liaison between H&H and DOC which, unbeknownst to Plaintiff at the time, required her to interact directly with Defendant Yang.

49.     As a result of Plaintiff's complaints against Defendant Yang while at H&H, Defendant Yang began to retaliate against Plaintiff by diminishing Plaintiff's role as the Deputy Commissioner of Health Affairs at DOC.  Both Defendant Yang and Defendant MacDonald would limit their interactions with Plaintiff and not communicate with Plaintiff directly regarding inmate health issues at Rikers Island.

50.     Defendant Yang continues to hold meetings with DOC white administrators, Warden Barnes and Jeff Thamkittikasem, and exclude Plaintiff.  Plaintiff only becomes aware of these meetings after the meetings have already taken place.  Such conduct adversely effects the terms and conditions of Plaintiff's employment at DOC.

51.     One example of meeting that was not told to Plaintiff concerned a directive by the Board of Correction to engage in a collaborative Health Care Access initiative with Plaintiff.  Defendant Yang contacted the white administrator at DOC, Timothy Farrell to execute a portion of the work. Plaintiff was never contacted or included in any communication by Defendant Yang until Yang reported to the Board of Correction that the initiative was a failure and falsely attributed the failure to the Plaintiff.

52.     On or about April 2016 Defendant Murphy informed Plaintiff that she was not able to have an officer drive for her, even though other white Deputy Commissioners had officers drive for them. Defendant Murphy elaborated to Plaintiff that he was informing her, 'as a friend', that when the officer would open the door for her to get into the vehicle that it was like 'Driving Ms. Daisy' and it 'looked bad'.

He also said that staff was 'talking about me [Plaintiff]' and he was 'worried I [Plaintiff] would have a problem'.

53.     Defendant Murphy contacted the subordinate of Plaintiff, Captain Nathaniel Bialek, and asked him to report on the activities of the officers in the Health Affairs Division, specifically the officers that were asked to drive for Plaintiff and that worked on the grant that Plaintiff acquired for DOC.  No other white Deputy Commissioners had subordinates contacted in their division and were asked to report on their activities.

54.     In January 2018 Defendant Yang excluded Plaintiff from a Joint Assessment Review meeting which directly reviews Health Care Case issues on Rikers Island.

55.     Since Plaintiff's filing of complaint of discrimination against Defendant Yang, Defendant Yang has refused to respond to Plaintiff's requests for resources or answers to certain questions regarding an inmate or status or in the alternative, Yang would send a response to another white administrator with the answer rather than communicating directly to Plaintiff causing Plaintiff's job to be more difficult and stressful.  No other white executive staff member was treated in this matter by Defendant Yang and condoned by Defendant Jeff Thamkittikasem despite Plaintiff's complaints to him about Defendant Yang.

56.     On June 4, 2018 Plaintiff was asked to attend a Joint Assessment Review (JAR), which is a request by H&H to discuss cases that reflect concerns about service delivery or systems issues, on behalf of the Chief of Staff.  These JAR meetings are aligned with the work of the Division of Health Affairs for which Plaintiff is the Deputy Commissioner of Health Affairs.

57.     The Board of Correction (BOC) provides oversight to the Department of Correction (DOC). When H&H is on the agenda to present at a BOC public hearing DOC would receive questions or comments about the content of H&H's presentation.  As Deputy Commission of Health Affairs, Plaintiff is responsible to answer those questions regarding H&H issues that they presented during the hearing.

58.     On June 8, 2018, after several ignored emails from Plaintiff for the agenda items to H&H and Defendant Yang, Plaintiff had to obtain the agenda from "Chelsea" who works in City Hall, but was never provided to her by Defendant Yang per the past practice.  This cause tremendous stress and anxiety to Plaintiff and her team.

59.     On June 14, 2018 Plaintiff received the JAR agenda and cases to discuss from the DOC legal Counsel.  The agenda stated that the JAR meeting was scheduled for June 20, 2018.  This was not sufficient time to prepare and was giving to Plaintiff late so that she would be unprepared.

60.     As Deputy Commissioner of Health Affairs, Plaintiff has always been invited to the JAR meetings prior to her filing an EEOC Charge of discrimination against Defendants.  Plaintiff no longer is invited nor provided the information to investigate the issues to be discussed at the meetings.

61.     Prior to Plaintiff filing her EEOC Complaint, H&H always shared her BOC agenda items with Plaintiff and she would discuss the concerns and responses with H&H personnel.

62.     Said refusal was intentional by Defendant Yang in order to cause Plaintiff to not be able to respond to the BOC staff and at the Public Hearing regarding her Division at Health Affairs.

63.     On July 5, 2018 Plaintiff was notified that an inmate had tested positive for Tuberculous and potentially exposed people from April 6 to May 6, 2018.

64.     On July 6, 2018 Plaintiff had several questions about the reasons that it took 3 months for H&H to identify this person as positive and make notification to DOC.  Plaintiff made these questions known to the H&H Chief of Medicine, Defendant MacDonald and Defendant Yang's unit.  The Chief and Defendant Yang refused to answer Plaintiff's questions. Plaintiff was forced to contact the NYC Department of Health and was able to receive the answers and a comprehensive history as to why the DOC was not notified earlier.

13

65.     On July 6, 2018 Defendant MacDonald sent an email to several peers and supervisor of the Plaintiff with the explicit intention of preventing her from executing her role and Deputy Commissioner for Health Affairs while demeaning and marginalizing her to peers and supervisors. This is another example of the severe and pervasive hostile treatment and micro aggressions that have cause anxiety and stress to the work of Health Affairs.  The previous white Deputy Commissioner for Health Affairs, Eric Berliner, was never treated in this fashion.

66.     Plaintiff, a Black female, and another female were supposed to attend an important conference in Orlando, Florida in January 2018 - National Organization of Black Law Enforcement (N.O.B.L.E.).  Plaintiff was the one who authored and designed the mental health segment presentation for her skill set and area of expertise.  However, due to the filing of the EEOC charges, Plaintiff was subsequently denied the benefit to travel to the conference and a less qualified white male (John Gallagher) was told to attend by Defendant Brann (Caucasian).  The white male (John Gallagher) never went to Florida despite Plaintiff's availability.  The white male that Defendant Brann asked to present Plaintiff's authored materials was not qualified as a doctor or mental health expert.  This was known by Defendant Brann.

67.     Plaintiff was the original Presenter/Speaker and was placed on the list of Presenters by the American Correctional Association (ACA).  In the same manner of the aforementioned conference, however, due to the filing of the EEOC charges, Plaintiff was subsequently denied the benefit to travel to the conference and a less qualified white male was told to attend by Defendant Brann (White).  Even after the conference organizers reached out to the Defendant Brann and specifically requested the Plaintiff's attendance, Defendant Brann still opted to send a less qualified white male.  The white male that Defendant Brann asked to present Plaintiff's authored materials was not qualified as a doctor or mental health expert. This was known by Defendant Brann. These blatant adverse employment actions by Defendant Brann and the NYC DOC have damaged Plaintiff's professional reputation with the ACA and N.O.B.L.E.

14

68.     On or about April 2017 Captain Carolyn Lewis, a member of N.O.B.L.E. and employee of

DOC, had approached the Defendant Brann to ask her to have the DOC submit to N.O.B.L.E. a presentation

in the form of a panel discussion that had experts from the agency.

69.     On April 27, 2018, Plaintiff was told by Captain Lewis at a DOC meeting that she had

received an email from Defendant Brann's executive assistant stating that the two African American

professionals (Plaintiff and Chief Maxoline Mingo), would not be able to attend the conference.  When

Captain Lewis explained to Defendant Brann's assistant that she had submitted their resumes and names

which was how the conference was approved, and that DOC needed to have some of the original panel

members participate, the executive assistant responded that Plaintiff would not be approved to attend, but

that Chief Stukes could attend per Defendant Brann's directive.

70.     This was a panel discussion to discuss the mental implications, trauma and impact of

working in jail. Subsequently, two less credentialed white males (John Gallagher, no mental health degrees;

Michael Tausek, an attorney by training, but no degree in mental health), were selected to attend the

conference.

71.     In early December of 2018, Captain Carolyn Lewis reported to Plaintiff that a few months

ago, she had approached the Defendant Brann to ask her to have the DOC submit to N.O.B.L.E. a

presentation in the form of a panel discussion that had experts from the agency.  At that time, according to

Captain Lewis, Defendant Brann had originally told her to ask Plaintiff to participate.

72.     This was retaliatory because originally, Defendant Brann had previously articulated to

Captain Lewis that Plaintiff should attend this conference, but that after receiving the EEOC claim, Captain

Lewis was not able to have Plaintiff participate on the panel despite being the most qualified.

73.     As a result of the adverse job action.  It limits Plaintiff's opportunity for professional growth

and development and damages her professional reputation.   N.O.B.L.E. expected Plaintiff to participate in

the conference.  It was Plaintiff's resume that assisted in getting the panel workshop included in the conference.  At the prior NOBLE meeting in (February 2018), it was announced that Plaintiff would be attending the conference for the DOC and the organization was very excited that this was the first time that the DOC was presenting at N.O.B.L.E. and would be represented by an African American female Doctor, along with other professionals of color.

74.      As a result, Plaintiff has been subjected to an act of retaliation by Defendant Brann, stemming from the same National Organization of Black Law Enforcement (N.O.B. L.E.) conference that Plaintiff was originally scheduled to attend, but was replaced by two less credentialed white counterparts in January 2018 by Brann.

75.      In further retaliation for having complained about being marginalized by Defendant Yang, Plaintiff began to be treated less favorably then her white counterparts by Defendants Brann and Thamkittikasem.  The DOC Commissioner and Chief of Staff refused to give Plaintiff a permanent civil service title as the Deputy Commissioner of Health Affairs despite receiving a 100 on the civil service exam and receiving a notice of hiring pool letter on or about July 12, 2017 telling Plaintiff how to proceed to get the permanent civil service title and having her list number called.

76.      On or about March 2016 Plaintiff took Exam # 6047 000 for Exam Title: "Health Services Manager".

77.      On June 8, 2017 Plaintiff was notified by NYC Citywide Administrative Services that she scored a perfect score of 100% on the exam and was given a list number of 187.

78.      On July 15, 2017 Plaintiff received a "Notice of Hiring Pool" from NYC Department of Health and Mental Hygiene (DOHMH) informing her that she was certified by Citywide Administrative Services to the Department of Health and Mental Hygiene that she was eligible for the permanent position of civil service title "Health Service Manager" and instructions to report to Citywide Administrative

Services office.

79.     On or about July 21, 2017 Plaintiff requested Defendant Brann to transfer the title of Health Service manager from DOHMH to the DOC on her behalf.  Defendant Brann said she needed to follow up with Defendant Thamkittikasem and that Plaintiff's job was an "at will position".

80.     On July 24, 2017 Plaintiff spoke with Deputy Commissioner Human Resource, Nadene Pinnock, about the permanent title of "Health Service Manager" at DOC and was told that there was a budget issue.

81.     Subsequently, Plaintiff was informed by the Deputy Commissioner of Finance, Frank Doka, that the transfer of a permanent title was not a budget issue and Dina Simon, who served as both the former First Deputy Commissioner and Deputy Commissioner of Human Resources for DOC, informed Plaintiff that the awarding of the permanent civil service titles was a standard practice that happens routinely and does not impact incoming administrations and is not within the purview of the Chief of Staff as she was told by DOC HR personnel.

82.     On or about July 26, 2017 Plaintiff went to the Citywide Administrative Services office in Long Island City for an interview.

83.     On August 1, 2017 Defendant Brann, after speaking with Defendant Thamkittikasem, refused to honor Plaintiff's request to 'pick up' the title of Health Service Manager and allow Plaintiff to serve in that title 'on leave'.

84.     White Deputy Commissioners and Assistant Deputy Commissioners (Example: Frank Doka, Patricia Lyons, Joseph Antonielli, James Walsh, and Eric Berliner) have received the permanent civil service titles in the past and continue to receive them throughout DOC with lesser scores on the exam.

85.     In February of 2018 and only after Plaintiff filed an EEO complaint, and the EEO office contacted DOC was Plaintiff finally given her permanent civil service title which protects her position

within DOC.  However, the title was placed on leave with a 20% decrease in her current salary.  Although

this is permissible under DCAS rules, no other white Deputy Commissioner had their title decreased when

their civil service title was transferred to them.

86.     In September 2018 Plaintiff filed a complaint with the Inspector General to investigate if

H&H was conducting unauthorized research on inmates without the inmate informed consent and the

consent of the Commissioner.  This is illegal.

87.     Plaintiff has learned that white males and females that work at DOC with the same position

as Deputy Commissioner have received a higher salary then she does with fewer qualifications.  (Maureen

Danko, Timothy Farrell, Mike Tausek, Dail Lawrence- No person has 3 Master's Degrees, No person has a

combined Doctorate in their area of expertise.  No person authored and was awarded a $250,000 grant to

support the work of the Department.).

88.      In November 2018, Chief of Staff, Brenda Cooke, directed the Plaintiff's data team to

change the data that her division, Health Affairs, accumulates and records to match that of H&H so that the

Mayor's Office will not ask any questions.  Plaintiff has refused to do so.

89.     This caused Plaintiff tremendous stress and anxiety resulting in Plaintiff having to be under

the care of a cardiologist.

90.     Since Plaintiff filed her EEOC Complaint, Plaintiff has been marginalized as the Deputy

Commissioner of Health Affairs for DOC affecting the ability to perform her job and responsibilities at

DOC.

91.     Defendants continue to engage in retaliatory acts towards plaintiff that prevent her from

completing her current job functions as Deputy Commissioner of Health Affairs.

92.     Defendants have adversely affected Plaintiff's ability to advance and grow professionally

within DOC.  DOC has taken opportunities afforded to Plaintiff and earned by her and given them to less

qualified white males, which contributed to their professional growth and development.

18

93.    Despite Plaintiff's extensive experience and multiple distinctions, Nichole Adams-Flores had her duties and responsibilities reduced by Defendants Brann, MacDonald, Yang, Thamkittikasem, and Murphy, was forced to endure a constant barrage of unwarranted, disparaging comments, critiques, and criticisms from less qualified, non-African American subordinates including Defendants Thamkittikasem, Brann, MacDonald and Murphy, had her authority circumvented and usurped by less qualified, non-African American subordinates at the direction of Defendants Thamkittikasem, Brann, MacDonald, Yang and Murphy, was denied the personnel and fiscal resources enjoyed by less qualified, non-African American subordinates, such as Defendants Thamkittikasem, Brann, and Murphy, and was unfairly denied the official designation as Health Service Manager by Defendants Brann and Thamkittikasem.

94.    Plaintiff worked the same extensive hours as her less qualified, non-African American counterparts, namely Defendants Brann, Thamkittikisem, Murphy and Deputy Commissioners Farrell, Tausek, and was forced to perform substantially more tasks, responding 24 hours a day, than male Deputy Commissioners (Farrell, Tausek, Lawrence) who are non-African American yet she was paid less despite Plaintiff being responsible for the investigations of deaths in DOC (Riker's Island) which requires her to be on Call 24 hours a day, 7 days a week.

95.    Not only was Plaintiff forced to endure the circumvention of her authority as Deputy Commissioner, but she was also forced to endure other employment conditions that her non-African American Deputy Commissioners were not subject to.  Subordinates in her division told to report on her activities to the Chief of Department, asked to prepare and submit conference proposals that were given to others to receive credit, not provided with enough staff and resources to execute the required tasks)

96.    Similarly situated non-African Americans were not subjected to such discriminatory conduct and hostile working conditions.

97.     Every time Plaintiff was passed up for desirable assignments, denied participation to attend conferences assignments, had her authority marginalized by Defendants Yang and Thamkittikasem, and denied the rank and prestige that comes with promotions (civil service title), Plaintiff paid a price and continues to be subjected to a hostile work environment. The Plaintiff endured humiliation, embarrassment and degradation to otherwise stellar career in Corrections and Mental Health Field.

98.     The conduct by Defendants Yang, MacDonald, Brann and Thamkittikasem is severe and pervasive that it has created a hostile work environment. Said marginalization of the Plaintiff by Defendant Yang and condoned by the DOC and Defendant Thamkittikasem, despite Plaintiff's continuous complaints to her supervisors, has effected the terms and conditions of her employment.

99.     Defendants DOC, Yang and Thamkittikasem have marginalized Plaintiff by excluding Plaintiff from job conversations.  Defendant Yang does not respond to her email requests for information, and create a hostile environment while belittling Plaintiff in front of her colleagues and supervisors at meetings.

100.    Plaintiff suffered a powerful emotional toll. Plaintiff has and continues to devoted significant time and energy into the DOC and takes tremendous pride in her work. However, she has been forced to acknowledge the humiliating and degrading reality that ultimately, her records of achievement, integrity, and lengthy years of service mattered less to the DOC than the color of her skin and retaliation for complaining to EEOC and Inspector General.

101.    The monetary loss that Plaintiff and other African American employees in the DOC suffered is great. She lost tens of thousands of dollars each year for being paid less than the male white Deputy Commissioners.

102.    There is a stark and unjustifiable under-representation of African Americans in the managerial ranks of the DOC. The pervasively discriminatory environment in which Plaintiff and other

African Americans are forced to work has caused her substantial harm and will continue to harm all other African American members of the DOC who are never given the opportunity to be treated in same as other similarly situated individuals.

**FIRST CAUSE OF ACTION**
(Unlawful Discrimination – Title VII, 42 U.S.C. § 2000e *et seq.*)

103.    Plaintiff repeat, reallege, and incorporate by reference the allegations set forth in all preceding paragraphs, as if fully set forth herein.

104.    Defendant City is an employer as defined in Title VII, and at all relevant times herein, employed Plaintiff.

105.    Defendant City discriminated against Plaintiff in violation of 42 U.S.C. § 2000-e2(a), based upon race and color by denying or delaying promotions, and/or forcing them to resign, therefore giving them less pay and rank as compared to less qualified, non-African American employees.

106.    This discrimination was the result of intentional actions by Defendants, deliberate indifference by Defendants, and/or the result of Defendants maintaining a policy or practice that has a disparate impact on African American employees, namely a standard-less process that allows non-African American supervisors to retain all power and control, to refuse to promote deserving African American employees, and to relegate African American employees to positions with little to no autonomy.

107.    As a result of Defendant City's discrimination, Plaintiff suffered and continue to suffer damages, including but not limited to lost income, and mental anguish, pain and suffering. They are also entitled to attorneys' fees and costs in the amount of not less than ONE MILLION DOLLARS ($1,000,000.00).

## SECOND CAUSE OF ACTION
(Unlawful Discrimination – New York Executive Law § 296)

108.   Plaintiff repeat, reallege, and incorporate by reference the allegations set forth in all preceding paragraphs, as if fully set forth herein.

109.   The acts described above constitute unlawful discriminatory employment practices that violate Section 296 of the New York Executive Law.

110.   Defendant City discriminated against Plaintiff by failing to give her the civil service title in a timely manner and marginalizing her duties and condoning the individual Defendants Yang and Thamkittikasem to retaliate against her due to her race and color, pregnancy and gender.

111.   This discrimination was the result of intentional actions by Defendants, deliberate indifference by Defendants, and/or the result of Defendants maintaining a policy or practice that has a disparate impact on African American employees, namely a standard-less process that allows non-African American supervisors to retain all power and control, to refuse to promote deserving African American employees, and to relegate African American employees to positions with little to no autonomy.

112.   As a result of Defendants' discrimination, Plaintiff has been damaged and is entitled to compensatory damages, and attorneys' fees and costs in the amount of not less than ONE MILLION DOLLARS ($1,000,000.00).

## THIRD CAUSE OF ACTION
(Unlawful Discrimination-N.Y.C. Admin. Code §§ 8-101 *et seq.*)

113.   Plaintiff repeat, reallege, and incorporate by reference the allegations set forth in all preceding paragraphs, as if fully set forth herein.

114.   The New York City Administrative Code is explicit that the City Human Rights Law "be construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof" and that

exceptions and exemptions "be construed narrowly in order to maximize the deterrence of discriminatory conduct." N.Y.C. Admin. Code § 8-130(a)-(b).

115.    The acts described above constitute unlawful discriminatory employment practices that violate Section 8-107 of the New York City Administrative Code.

116.    All Defendants unlawfully discriminated against Plaintiff by denying them promotions due to her race, removing her power and authority as supervisors due to her race and color, providing her less resources due to her race and color, and ultimately forcing her to be marginalized due to her race and color, therefore giving her less pay, authority, and/or rank as compared to less qualified non-African American supervisors.

117.    This discrimination was the result of intentional actions by Defendants, deliberate indifference by Defendants, and/or the result of Defendants maintaining a policy or practice that has a disparate impact on African American employees, namely a standard-less process that allows non-African American supervisors to retain all power and control, to refuse to promote deserving African American employees, and to relegate African American employees to positions with little to no autonomy.

118.    As a result of Defendants' discrimination, Plaintiff have been damaged and are entitled to compensatory damages, punitive damages, and attorneys' fees and costs in the amount of not less than ONE MILLION DOLLARS ($1,000,000.00).


**FOURTH CAUSE OF ACTION**
(42 U.S.C. §1983 Against All Individual Defendants)

119.    Plaintiff repeat, reallege, and incorporate by reference the allegations set forth in all preceding paragraphs, as if fully set forth herein.

120.   All of the acts and conduct of the Individual Defendants and Defendant CITY, by and though its agents, herein stated were done under color of state law, while in the performance of their duties as Supervisors for the DOC.

121.   The facts and circumstances cited above are in violation of Plaintiff's Fourteenth Amendment right under the Equal Protection Clause of the United States Constitution to be free from retaliation, discrimination and harassment in his employment with the CITY and DOC.

122.   That Individual Defendants actions, as alleged herein, were committed under color of State law.

123.   That Individual Defendants did conspire to violate Plaintiff' Constitutional rights by actually depriving her of entitlement to promotions, civil service title in a timely manner, overtime, staffing and to be free of harassment and retaliation within the work place, and other pension rights.

124.   That Individual Defendants did willfully and knowingly make false claims against the Plaintiff with the intent of causing Plaintiff to be marginalized.

125.   That Defendants maliciously and vindictively evaluated Plaintiff's performance in a negative matter solely because of her race and color so that she would be denied or negatively impact her ability to perform her duties as a Deputy Commissioner of Health Affairs within DOC.

126.   That despite Defendants' knowledge that Plaintiff was well qualified to perform her responsibilities within DOC they nevertheless forced her to endure the aforementioned employment conditions under duress knowing that she was capable of performing the duties of an executive officer within DOC, Plaintiff was the victims of a hostile work environment at DOC and denied the benefits of working for the DOC like other similarly situated executive staff members.

127.   Plaintiff was denied her Constitutional rights pursuant to the Fourteenth Amendment in violation of her equal protection and due process.

128.    That as a direct and proximate result of the aforementioned conduct of the Individual Defendants, Plaintiff was deprived of her property rights, all in violation of her rights under the Fourteenth Amendment rights to equal protection and due process under 42 U.S.C. §1983 to the United States Constitution.

129.    That as a direct and proximate result of the foregoing, Plaintiff sustained injury and damage consisting of loss of intellectual property, economic damages, legal expenses and emotional distress for which Defendants are liable.

130.    By reason of the foregoing, Individual Defendants have violated §1983, and Plaintiff are entitled to economic, emotional and compensatory damages in the amount of not less than ONE MILLION DOLLARS ($1,000,000.00); and punitive damages against the individual Defendants in the amount of not less than ONE MILLION DOLLARS ($1,000,000.00).

## JURY DEMAND

131.    Plaintiff hereby demands a trial by jury in this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff request that this Court enter a judgment against Defendants and in favor of Plaintiff and award the following relief:

(1)    A judgment declaring that Defendants have committed the violations of law alleged in this action;

(2)    An order granting appropriate injunctive relief and declaratory relief for a period of time to be determined by the Court;

(3)    Actual or compensatory damages against all Defendants in an amount not less than ONE MILLION DOLLARS ($1,000,000.00) for each cause of action;

(4)     Punitive damages against Individual Defendants in an amount ONE MILLION DOLLARS ($1,000,000.00);

(5)     Reasonable attorneys' fees and costs; and

(6)     Such other and further relief as the Court may deem just and proper.


Dated: Lake Success, New York
       December 23, 2018

Respectfully submitted,

Rocco G. Avallone
AVALLONE & BELLISTRI, LLP
*Attorneys for Plaintiff*
3000 Marcus Avenue
Suite 3E07
Lake Success, New York 11042
(516) 986-2501