UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NICHOLE ADAMS-FLORES, individually and on behalf of all others similarly situated,

Plaintiff,

-against-

THE CITY OF NEW YORK, NEW YORK CITY DEPARTMENT OF CORRECTIONS, HEALTH & HOSPITAL CORPORATION, CYNTHIA BRANN, Commissioner of Dept. of Corrections, PATSY YANG, Chief Operating Officer of Correctional Health Services, ROSS MACDONALD, Chief of Medicine, JEFF THAMKITTIKASEM, former Chief of Staff of Dept. of Corrections, and MARTIN MURPHY, former Chief of Department of Dept. of Corrections,

Defendants.

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE FIRST AMENDED COMPLAINT IN PART

# ZACHARY W. CARTER

*Corporation Counsel of the City of New York*
Attorney for Defendants
100 Church Street, Room 2-139
New York, New York 10007-2601

*Of Counsel:* Kerrin A. Bowers
*Tel:* (212) 356-2473

Matter No. 2018-095785

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...............................................................................1

STATEMENT OF FACTS ....................................................................................3

ARGUMENT .......................................................................................................6

    POINT I ......................................................................................................... 6

        PLAINTIFF'S TITLE VII CLAIMS ARE TIME-BARRED ........................6

    POINT II ....................................................................................................... 7

        NO INDIVIDUAL LIABILITY UNDER TITLE VII ...................................7

    POINT III....................................................................................................... 7

        PLAINTIFF'S CLAIMS UNDER § 1981 FAIL AS A MATTER OF LAW .................7

    POINT IV ..................................................................................................... 7

        THE FAC SHOULD BE DISMISSED, IN PART, FOR FAILURE TO STATE A CLAIM.......................................................................................................7

        A.   Legal Standard.......................................................................................7

        B.   All of Plaintiff's Claims Against H+H Fail .......................................8

        C.   Plaintiff's § 1983, SHRL, and CHRL Claims Against Individual Defendants Yang, MacDonald, and Murphy .........................................................19

        D.   Plaintiff's § 1983 Clam Against Defendants City, DOC and H+H ....................24

CONCLUSION....................................................................................................26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acosta v. City of New York*,
No. 11-8561 (KBF), 2012 U.S. Dist. LEXIS 60460 (S.D.N.Y. Apr. 26, 2012) ..................... 11

*Arculeo v. On-Site Sales & Mktg., L.L.C.*,
425 F.3d 193 (2d Cir. 2005) .......................................................................................... 12, 13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .............................................................................................................. 19

*Back v. Hastings on Hudson Union Free Sch. Dist.*,
365 F.3d 107 (2d Cir. 2004) ................................................................................................ 20

*Barbosa v. Continuum Health Partners, Inc.*,
716 F. Supp. 2d 210 (S.D.N.Y. 2010) ................................................................................ 12

*Brennan v. Metropolitan Opera Ass'n*,
192 F.3d 310 (2d Cir. 1999) ................................................................................................ 24

*Brown v. Daikin Am., Inc.*,
756 F.3d 219 (2d Cir. 2014) .......................................................................................... 10, 13

*Brown v. Henderson*,
257 F.3d 246 (2d Cir. 2001) ................................................................................................ 24

*Byrd v. Metro Transit Auth.*,
No. 15-CV-1364 (JG)(RLM), 2015 U.S. Dist. LEXIS 98622
(E.D.N.Y. July 28, 2015) ..................................................................................................... 25

*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002) .................................................................................................. 6

*City of Los Angeles v. Heller*,
475 U.S. 796 (1986) .............................................................................................................. 25

*Conklin v. County of Suffolk*,
859 F. Supp. 2d 415 (E.D.N.Y. 2012) ................................................................................ 22

*Cook v. Arrowsmith Shelburne, Inc.*,
69 F.3d 1235 (2d Cir. 1995) ................................................................................................ 13

*De La Peña v. Metro. Life Ins. Co.*,
953 F. Supp. 2d 393 (E.D.N.Y. 2013), *aff'd*, 552 F. App'x 98 (2d Cir. 2014) ...................... 10

*Duplan v. City of New York*,
888 F.3d 612 (2d Cir. 2018)................................................................................7

*Dwares v. City of New York*,
985 F.2d 94 (2d Cir. 1993)...............................................................................25

*Falcon v. City Univ. of N.Y.*,
No. 15-3421 (ADS)(ARL), 2016 U.S. Dist. LEXIS 92396
(E.D.N.Y. July 15, 2016) .............................................................................20, 21

*Figueroa v. N.Y. City Health & Hosps. Corp.*,
No. 03-9589 (NRB), 2007 U.S. Dist. LEXIS 58342 (S.D.N.Y. Aug. 7, 2007).....................15

*Galabya v. New York City Bd. of Educ.*,
202 F.3d 636 (2d Cir. 2000)..............................................................................14

*Guity v. Uniondale Free Sch. Dist.*,
No. 15 CV 5693 (SJF)(AKT), 2017 U.S. Dist. LEXIS 27542
(E.D.N.Y. Feb. 23, 2017) .................................................................................25

*Gulino v. N.Y. State Educ. Dep't*,
460 F.3d 361 (2d Cir. 2006)........................................................................12, 13

*Hall v. N.Y. City DOT*,
701 F. Supp. 2d 318 (E.D.N.Y. 2010) ..................................................................15

*Hicks v. Baines*,
593 F.3d 159 (2d Cir. 2010)..............................................................................19

*Irish v. City of New York*,
No. 09 Civ. 5568 (RMB), 2010 U.S. Dist. LEXIS 130466
(S.D.N.Y. Dec. 6, 2010)...................................................................................25

*Jemmott v. Coughlin*,
85 F.3d 61 (2d Cir. 1996)..................................................................................24

*Jett v. Dallas Indep. Sch. Dist.*,
491 U.S. 701 (1989)..........................................................................................7

*Johnson v. Andy Frain Servs.*,
638 F. App'x 68 (2d Cir. 2016) .............................................................8, 11, 18

*Johnson v. Dobry*,
660 F. App'x 69 (2d Cir. 2016) ...........................................................................1

*Joseph v. New York City Dep't of Corr.*,
No. 10-1265 (NGG)(LB), 2011 U.S. Dist. LEXIS 51690
(E.D.N.Y. May 12, 2011) ............................................................................12, 18

*Karim v. N.Y. City Health & Hosps. Corp.*,
    No. 17-6888 (AT)(OTW), 2019 U.S. Dist. LEXIS 37008
    (S.D.N.Y. Mar. 6, 2019) ...............................................................................22

*Kellman v. Metro. Transp. Auth.*,
    8 F. Supp. 3d 351 (S.D.N.Y. 2014) ......................................................22, 23

*Littlejohn v. City of New York*,
    795 F.3d 297 (2d Cir. 2015)...........................................................7, 19, 22

*Lore v. City of Syracuse*,
    670 F.3d 127 (2d Cir. 2012).......................................................................7

*Lugo v. City of New York*,
    518 Fed. Appx. 28 (2d Cir. 2013)..............................................................6

*Mandell v. County of Suffolk*,
    316 F.3d 368 (2d Cir. 2003).......................................................................9

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*,
    715 F.3d 102 (2d Cir. 2013).......................................................................8

*Mohan v. City of N.Y.*,
    No. 17-3820 (KPF), 2018 U.S. Dist. LEXIS 130933 (S.D.N.Y. Aug. 3, 2018)...............10, 18

*Monell v. Dep't of Sc. Servs.*,
    436 U.S. 658 (1978)..................................................................................24

*Morales v. Rooney*,
    509 F. App'x 9 (2d Cir. 2013) ...................................................................7

*Morrongiello v. Ashcroft*,
    No. 10-2524 (WHP), 2004 U.S. Dist. LEXIS 777 (S.D.N.Y. Jan. 22, 2004)..........................14

*Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*,
    815 F. Supp. 2d 679 (S.D.N.Y. 2011)....................................................9, 17

*Olivier v. Cty. of Rockland*,
    No. 15-8337 (KMK), 2018 U.S. Dist. LEXIS 5355 (S.D.N.Y. Jan. 11, 2018) ......................11

*Patane v. Clark*,
    508 F.3d 106 (2d Cir. 2007)......................................................................24

*Petyan v. New York City Law Dep't.*,
    No. 14 Civ. 1434 (GBD)(JLC), 2015 U.S. Dist. LEXIS 88188
    (S.D.N.Y. July 2, 2015*)* ...........................................................................18

*Provost v. City of Newburgh*,
262 F.3d 146 (2d Cir. 2001)................................................................21

*Quarless v. Bronx-Lebanon Hosp. Ctr.*,
228 F. Supp. 2d 377 (S.D.N.Y. 2002).................................................16

*Rodas v. Town of Farmington*,
567 Fed. Appx. 24 (2d Cir. 2014).......................................................19

*Ruiz v. County of Rockland*,
609 F.3d 486 (2d Cir. 2009).................................................................9

*Sanders v. Grenadier Realty, Inc.*,
367 F. App'x 173 (2d. Cir. 2010) .........................................................9

*Sanders v. N.Y. City Human Res. Admin.*,
361 F.3d 749 (2d Cir. 2004)...............................................................15

*Sanderson v. N.Y. State Elec. & Gas Corp.*,
560 F. App'x 88 (2d Cir. 2014) ............................................................6

*Shiflett v. Scores Holding Co.*,
601 F. App'x 28 (2d Cir. 2015) .....................................................13, 14

*Smalls v. Allstate Ins. Co.*,
396 F. Supp. 2d 364 (S.D.N.Y. 2005)..................................................15

*Tolbert v. Smith*,
790 F.3d 427 (2d Cir. 2015).................................................................8

*Turner v. Concourse Vill.*,
No. 12-8739 (RWS), 2016 U.S. Dist. LEXIS 9880 (S.D.N.Y. Jan. 27, 2016) .......................11

*Vega v. Hempstead Union Free Sch. Dist.*,
801 F.3d 72 (2d Cir. 2015)...................................................................8

*Weerahandi v. Am. Statistical Ass'n*,
No. 14-7688 (AT), 2015 U.S. Dist. LEXIS 136425 (S.D.N.Y. Sep. 30, 2015).....................16

*Wooding v. Winthrop Univ. Hosp.*,
No. 16-4477 (ADS)(ARL), 2017 U.S. Dist. LEXIS 90559
(E.D.N.Y. June 12, 2017) .............................................................17, 18

*Wray v. City of New York*,
490 F.3d 189 (2d Cir. 2007).................................................................24

*Yusuf v. Vassar College*,
35 F.3d 709 (2d Cir. 1994)...................................................................16

**Statutes**

42 U.S.C. § 1981 .............................................................................................................2, 7, 25

42 U.S.C. § 1983 ............................................................................................................. *passim*

42 U.S.C. § 2000e-5(e)(1) ..............................................................................................................6

42 U.S.C. §§ 2000e, *et seq.* .............................................................................................. *passim*

N.Y. Exec. L. § 296 ......................................................................................................... *passim*

New York City Admin. Code § 8-101, *et seq.* .................................................................. *passim*

**Other Authorities**

Fed. R. Civ. P. 12(b)(6).................................................................................................................2

U.S. Const. Amend. XIV ...............................................................................................2, 7, 25

## PRELIMINARY STATEMENT

Plaintiff Nichole Adams-Flores ("plaintiff"), is a former clinical supervisor employed by New York City Health & Hospitals Corporation ("H+H"), and a former Deputy Commissioner employed by the New York City Department of Correction ("DOC"). Plaintiff's claims are brought under 42 U.S.C. § 2000e, *et seq.* ("Title VII"), 42 U.S.C. § 1983 ("§ 1983"), 42 U.S.C. § 1981 ("§ 1981"), New York Executive Law § 296 ("SHRL"), and New York City Administrative Code § 8-101, *et seq.* ("CHRL"). Plaintiff names as defendants the City of New York ("City"), DOC[1], H+H, DOC Commissioner Cynthia Brann ("Brann"), Senior Vice President for H+H/Correctional Health Services Patsy Yang ("Yang"), Chief Medical Officer for H+H/Correctional Health Services Ross MacDonald ("MacDonald"), former DOC Chief of Staff Jeff Thamkittikasem ("Thamkittikasem"), and former Chief of Department Martin Murphy ("Murphy"). Plaintiff, an African-American female, asserts that defendants discriminated against her, and those similarly situated, based on her race and gender by denying her request for a reasonable accommodation, removing her supervisory authority, denying her work-related travel and public speaking opportunities, delaying her appointment to a civil service title, and depressing her salary. Plaintiff also alleges that defendants retaliated against her for alleged complaints of discrimination.

Plaintiff asserts the following claims in this action: (1) Title VII claims of discrimination based on race and gender and retaliation for alleged complaints of discrimination against all defendants; (2) SHRL claims of race and gender discrimination and retaliation for

---

[1] As an agency of the City, DOC is a non-suable entity and therefore, it must be dismissed from this action. *See, e.g., Johnson v. Dobry,* 660 F. App'x 69, 72 (2d Cir. 2016) (upholding dismissal of claims against the DOC because "as a city agency, it is not a suable").

alleged complaints of discrimination against all defendants; (3) a CHRL claim of race and gender discrimination against all defendants; (4) § 1983 Fourteenth Amendment equal protection claims[2] of discrimination based on race and gender, hostile work environment and for retaliation for alleged complaints of discrimination against defendants Brann, Yang, MacDonald, Thamkittikasem, and Murphy; (5) a § 1983 Fourteenth Amendment equal protection claim against defendants City, DOC, and H+H; and (6) a § 1981 claim of race discrimination against all defendants. As set forth more fully below, the First Amended Complaint ("FAC") should be dismissed, in part, pursuant to Rule 12(b)(6) of the Federal Rules for failure to state a claim upon which relief can be granted with respect to: (1) all claims against H+H, Yang, MacDonald, and Murphy; and (2) plaintiff's § 1983 claims against the City, DOC and H+H.

To start, all of plaintiff's Title VII claims, including those arising during her employment with H+H, are time-barred. Even if plaintiff's Title VII claims were timely, as to the individual defendants, no individual liability exists for claims brought under Title VII and consequently, those claims must be dismissed against the individual defendants.

Fatal to all of plaintiff's claims against H+H, based on allegations while she was still employed by H+H, is the paucity of factual allegations supporting an inference that any timely adverse employment action occurred on the basis of race or gender. Further, the FAC is devoid of factual allegations establishing a connection between any negative treatment and plaintiff's membership in a protected class. Without establishing this essential nexus, the FAC reads as a generalized grievance, whereby plaintiff is African-American, defendants are not, and therefore any adverse employment actions must have resulted from plaintiff's race. Moreover,

---

[2] To the extent that plaintiff is arguing that her due process rights under the Fourteenth Amendment were violated, *see* FAC ¶ 170, the FAC sets forth no plausible allegations to support such a claim. *See* FAC, generally.

plaintiff's allegations against H+H, arising subsequent to her resignation, fail because plaintiff cannot establish a joint employer relationship between H+H and DOC, and they similarly fail to raise a discriminatory inference. To the extent plaintiff alleges a claim of retaliation on the part of H+H subsequent to her resignation, those allegations also fail. As well, all individual claims against Yang, MacDonald, and Murphy should be dismissed for failure to allege their personal involvement in any alleged constitutional deprivation.

## STATEMENT OF FACTS[3]

Plaintiff filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC") on October 16, 2017, and, on September 21, 2018, received two Right to Sue letters. *See* First Amended Complaint ¶¶ 12-13. Plaintiff filed her initial complaint ("Compl.") on December 24, 2018 in the United States District Court for the Southern District of New York. *See* Dkt. No. 1. Plaintiff filed her FAC on July 12, 2019. *See* Dkt. No. 45.

Plaintiff, who self-identifies as an African-American woman, was employed by DOC as Deputy Commissioner for Health Affairs from February 2016 to March 2019. FAC ¶ 14. Before commencing employment at DOC, H+H employed plaintiff as a clinical supervisor until February 2016. *Id.* ¶¶ 44, 47, 52.

In January 2016, while employed by H+H, plaintiff requested permission to work full-time from home as an accommodation for her pregnancy. *Id.* ¶¶ 44, 46. Plaintiff alleges that Yang, an Asian-American female and the Senior Vice President of Correctional Health Services for H+H, did not approve the request, but provided that plaintiff could work a reduced schedule. *Id.* ¶¶ 21, 45. Plaintiff alleges that, on or about January 25, 2016, she stated in an email, "I feel

---

[3] For purposes of this motion only, defendants take the FAC's well-pled factual allegations, though not its conclusions, as true.

3

that the only thing that would allow me to work full time is not being pregnant." *Id.* ¶ 46. Plaintiff claims that certain non-black clinical supervisors were allowed to work from alternate locations without H+H requiring their physical presence in the jails. *Id.* ¶ 49.

In February 2016, plaintiff resigned from H+H and commenced employment as the Deputy Commissioner of Health Affairs with DOC. *Id.* ¶ 52. Plaintiff's employment at DOC involved collaboration with H+H officials. *Id.* Plaintiff alleges that Yang and MacDonald, as H+H employees, "limit[ed] their interactions" with plaintiff and "[did] not communicate with [p]laintiff directly regarding inmate health issues at Rikers Island." *Id.* ¶ 55. For instance, plaintiff claims that Yang held meetings with white DOC administrators, Warden William Barnes and Thamkittikasem[4], to plaintiff's exclusion. *Id.* ¶ 56. Plaintiff alleges one example where the Board of Correction sought to engage in a collaborative Health Care Access initiative with plaintiff; however, Yang assigned only a portion of the work to a white DOC administrator, failing to include plaintiff. *Id.* ¶ 57. Yang then, allegedly, informed the Board of Correction that the initiative failed, blaming plaintiff. *Id.* Plaintiff asserts, conclusorily, these actions by Yang adversely affected the terms and conditions of her employment with DOC. *Id.* ¶ 56.

Plaintiff further alleges that, in or around April 2016, Murphy, a white male and DOC's Chief of the Department, informed her that she could no longer have a Correction Officer as a driver because "it was like 'Driving Ms. Daisy' and it 'looked bad.'" *Id.* ¶ 58. Plaintiff claims that white Deputy Commissioners were assigned drivers. *Id.* Plaintiff further claims that Murphy asked one of plaintiff's subordinates to report on the activities of the officers in the Health Affairs Division, while no other white Deputy Commissioners had subordinates report on their division's activities. *Id.* ¶ 59.

---

[4] Based on the FAC, Thamkittikasem is an Asian-American male, not a white male. *See* FAC ¶ 27.

On June 4, 2018, H+H invited plaintiff to attend a Joint Assessment Review ("JAR") to discuss cases that reflect concerns about service delivery or systems issues. *Id.* ¶ 88. As alleged by plaintiff, Yang did not provide a timely agenda for the JAR, which plaintiff claims caused "tremendous stress and anxiety." *Id.* ¶ 90. Plaintiff asserts this intentional deprivation by Yang prevented plaintiff from responding adequately during a public hearing. *Id.* ¶ 94.

On July 5, 2018, plaintiff was notified that an inmate had tested positive for tuberculosis and potentially exposed people from April 6 to May 6, 2018. *Id.* ¶ 95. On or about July 6, 2018, plaintiff questioned H+H officials as to why the notification was delayed. *Id.* ¶ 96. According to plaintiff, H+H officials did not answer her questions directly, but the Department of Health provided the answers and a comprehensive history as to why the DOC was not notified earlier. *Id.* Plaintiff claims that no other non-African American Deputy Commissioners were treated this way. *Id.*

Also on July 6, as alleged by plaintiff, MacDonald emailed "several peers and supervisor of the Plaintiff with the explicit intention of preventing her from executing her role and [sic] Deputy Commissioner for Health Affairs while demeaning and marginalizing her to peers and supervisors . . . [while] [t]he previous white Deputy Commissioner for Health Affairs, Eric Berliner, was never treated in this fashion." *Id.* ¶ 97.

Plaintiff alleges that her complaints about Yang led to less favorable treatment from DOC officials, *id.* ¶ 61, and that Yang's lack of timely responses to emails contributed to a hostile work environment. *Id.* ¶ 124. Plaintiff claims, generally, that she endured a "constant barrage of unwarranted, disparaging comments, critiques, and criticisms" from Thamkittikasem, Brann, MacDonald, and Murphy. *Id.* ¶ 109. Plaintiff also claims, vaguely, that Thamkittikasem, Brann, MacDonald, Yang, and Murphy directed the circumvention of her authority. *Id.*

<u>**ARGUMENT**</u>

**I.      PLAINTIFF'S TITLE VII CLAIMS ARE TIME-BARRED**

In order to bring claims under Title VII, plaintiff must commence an action within 90 days of receipt of the EEOC right to sue letter. *Lugo v. City of New York*, 518 Fed. Appx. 28, 29 (2d Cir. 2013). As alleged in the FAC, plaintiff received a right-to-sue letter on September 21, 2018 (FAC ¶ 13), and did not file her complaint until December 24, 2018, 94 days after receipt of the EEOC right-to-sue letter. *See* Dkt. No. 1. As a result, the Court should dismiss all of plaintiff's Title VII discrimination and retaliation claims against all defendants as untimely.

Even if the Court finds that plaintiff's Title VII claims are not time-barred in their entirety, any Title VII claims based on discrete acts accruing prior to December 20, 2016 are time-barred. Acts of discrimination are time-barred under Title VII if a plaintiff does not file a charge of discrimination with the EEOC, or a qualified state or local fair employment practice agency, within 300 days after the alleged unlawful employment practice. *See* 42 U.S.C. § 2000e-5(e)(1); *Sanderson v. N.Y. State Elec. & Gas Corp.,* 560 F. App'x 88, 90 (2d Cir. 2014)(citing *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 712 (2d Cir. 1996)). The FAC does not allege when plaintiff filed her EEOC charge[5], however the Court may rely upon documents attached to the Complaint, relied on in the Complaint, or reflecting matters of which judicial notice may be taken. *See Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir. 2002). Plaintiff filed a charge of discrimination based on race, sex and retaliation with the EEOC on October 16, 2017. *See* EEOC charge, filed October 16, 2017, Ex. "A."[6] Therefore, as a result, any Title VII claims based on discrete acts accruing prior to December 20, 2016, are time-barred.

---

[5] The FAC alleges that on October 1, 2017, plaintiff filed a complaint with the EEOC. FAC ¶ 76.

[6] Unless otherwise indicated, all referenced exhibits ("Ex.") are annexed to the Declaration of Kerrin A. Bowers ("Bowers Decl."), dated August 1, 2019.

Accordingly, plaintiff's Title VII claims premised on allegations occurring during the entirety of her employment with H+H, which ended in February 2016, are time-barred. *See* FAC ¶¶ 43-52. Additionally, to the extent plaintiff claims the April 2016 allegations concerning Murphy's assignment of a driver, and direction of a subordinate to report on plaintiff's division's activities, are discrete acts of discrimination, they too are time-barred. *Id.* ¶¶ 58-59.

## II.    NO INDIVIDUAL LIABILITY UNDER TITLE VII

Title VII does not provide for individual liability. *See Lore v. City of Syracuse*, 670 F.3d 127, 169 (2d Cir. 2012). Accordingly, as to the individual defendants in this action, Brann, Yang, MacDonald, Thamkittikasem, and Murphy, no Title VII claim can be maintained.

## III.   PLAINTIFF'S CLAIMS UNDER § 1981 FAIL AS A MATTER OF LAW

Plaintiff's § 1981 claims against the City, H+H, DOC, Brann, Yang, MacDonald, Thamkittikasem, and Murphy should be dismissed because § 1981 does not provide a private right of action against state actors, and all of the defendants in this case are state actors. The exclusive remedy against state actors is §1983. *Duplan v. City of New York*, 888 F.3d 612, 619-621 (2d Cir. 2018); *See Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733 (1989).

## IV.    THE FAC SHOULD BE DISMISSED, IN PART, FOR FAILURE TO STATE A CLAIM

### A.    Legal Standard

A plaintiff asserting a race discrimination claim under Title VII or the Fourteenth Amendment must plausibly plead: (1) she is a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) she can sustain a minimal burden of showing facts suggesting an inference of discriminatory intent. *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015); *Morales v. Rooney*, 509 F. App'x 9, 10 (2d Cir. 2013)(§§ 1981 and 1983 discrimination claims analyzed same as Title VII). A plaintiff may

do so by pleading facts that either directly or indirectly show discrimination by giving rise to a plausible inference of discriminatory motivation. *See Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015). Plaintiff's SHRL discrimination claims are governed by the same analysis. *See Tolbert v. Smith*, 790 F.3d 427, 434-35 (2d Cir. 2015).

The CHRL has been construed more broadly than federal discrimination claims. *See Mihalik v. Credit Agricole Cheuvreux N. Am., Inc*., 715 F.3d 102, 109 (2d Cir. 2013). The Second Circuit requires a separate analysis between claims brought pursuant to the CHRL and its state and federal counterparts. *See id.* CHRL discrimination claims are construed "broadly in favor of discrimination plaintiffs to the extent that such a construction is reasonably possible." *Id.* (citation omitted). Thus, the proper inquiry rests on whether plaintiff was treated "less well at least in part *because of* [her protected characteristic]." *Id.* at 110 (citation omitted)(emphasis in *Mihalik*). Consequently, plaintiff must still plausibly allege a causal connection between her protected characteristic and any alleged negative treatment. *See Johnson v. Andy Frain Servs.*, 638 F. App'x 68, 71 (2d Cir. 2016).

## B. All of Plaintiff's Claims Against H+H Fail

### 1. *Claims Arising During Plaintiff's H+H Employment*

Notwithstanding the untimeliness of plaintiff's Title VII claims, the FAC fails, on the merits, to allege sufficient facts to state a claim for race or gender discrimination against H+H during plaintiff's employment there. *See* FAC ¶¶ 43-52. Plaintiff has satisfactorily alleged that she was a member of a protected class and qualified for her position. The only adverse action relevant to her employment with H+H was the alleged denial of her request to work from home during her pregnancy, requiring the reduction to a part-time schedule. *Id.* ¶¶ 44-45. Nevertheless, plaintiff fails to raise a minimal inference of discriminatory animus in the denial of her request.

An employer's preferential treatment towards a similarly-situated employee outside of the plaintiff's protected class can raise an inference of discriminatory motivation. *See Mandell v. County of Suffolk,* 316 F.3d 368, 379 (2d Cir. 2003). To show that another employee was similarly-situated, a plaintiff must plead that she was: (1) subjected to the same performance evaluation and discipline standards; and (2) engaged in comparable conduct. *See Ruiz v. County of Rockland*, 609 F.3d 486, 493-94 (2d Cir. 2009). However, legal conclusions do not satisfy the pleading standard and more than bare-boned assertions of discriminatory intent, such as one class receiving preference over another class, are required. *See Sanders v. Grenadier Realty, Inc.,* 367 F. App'x 173, 175 (2d. Cir. 2010)("While paragraph 17 does allege facts consistent with a discrimination claim . . . it nevertheless 'stops short of the line between possibility and plausibility of entitlement to relief,' because plaintiffs do not allege any facts supporting an inference of racial animus.")(citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

As a preliminary matter, it is unclear from the FAC whether plaintiff claims the denial was an act of race or gender discrimination. Nevertheless, the FAC fails to raise an inference of discrimination under either theory. Plaintiff offers no direct evidence of animus, such as discriminatory statements made by Yang or any other superior. The only allegation offered by plaintiff to raise an inference of discriminatory motivation is that "[o]ther clinical supervisors who were white or non-black were allowed to perform her [sic] duties at H+H by Defendant Yang from alternate clinical locations and did not have to physically be on the unit, for example: Dr. Camerano, Dr. Georgolius, and Dr. Ho." *Id.* ¶ 49. These generalized statements fail to provide any basis to plausibly find that these individuals were similarly-situated. *See Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 815 F. Supp. 2d 679, 698 (S.D.N.Y. 2011)(on motion to dismiss a court must determine whether plaintiff's comparators

are plausibly similarly-situated).

While plaintiff labels these purported comparators "clinical supervisors," she does not provide their titles, job responsibilities, work locations, or supervisors. Aside from these few allegations, plaintiff does not provide any additional alleged facts by which to sufficiently compare these individuals to draw an inference of discrimination. *See Mohan v. City of N.Y.,* No. 17-3820 (KPF), 2018 U.S. Dist. LEXIS 130933, at *31-32 (S.D.N.Y. Aug. 3, 2018)(plaintiff failed to satisfactorily allege that comparator was similarly-situated where, although plaintiff and comparator had identical work titles, plaintiff "fail[ed] to detail the specific work duties, seniority level, or performance" of comparator). Neither does plaintiff allege the gender of her comparators, or whether any of her comparators were pregnant when they were permitted to work off-site. *See De La Peña v. Metro. Life Ins. Co.,* 953 F. Supp. 2d 393, 413-14 (E.D.N.Y. 2013)(motion to dismiss granted where plaintiff alleged insufficient facts regarding comparator's injury that could lead to inference plaintiff was treated differently on account of protected characteristic; instead, allegations merely showed that plaintiff was treated differently), *aff'd,* 552 F. App'x 98 (2d Cir. 2014).

Moreover, plaintiff fails to allege that any of her comparators engaged in comparable conduct. Plaintiff's request to Yang was the ability to work full-time from home. Plaintiff does not allege that her comparators similarly requested to work full-time from home, but merely that they were permitted to perform some duties from outside the jails. Without showing that these comparators made a similar request or alleging their job responsibilities, and in the absence of any details regarding the comparators' off-site work, the FAC stops short of offering factual allegations from which the Court can determine whether or not they were plausibly similarly-situated to plaintiff in all material respects. *See Brown v. Daikin Am., Inc.,*

756 F.3d 219, 230 (2d Cir. 2014); *see also Olivier v. Cty. of Rockland*, No. 15-8337 (KMK), 2018 U.S. Dist. LEXIS 5355, at *21-22 (S.D.N.Y. Jan. 11, 2018)(plaintiff's allegation that white officers were treated more favorably for incidents not at issue, failed to show that they were similarly-situated even for pleading purposes); *Acosta v. City of New York,* No. 11-8561 (KBF), 2012 U.S. Dist. LEXIS 60460, at *14-16 (S.D.N.Y. Apr. 26, 2012) (dismissing claim where plaintiff failed to connect the fact that he was Hispanic to any adverse action taken against him).

Even under the CHRL's more liberal standard, plaintiff's claim fails because she has not satisfactorily alleged that discriminatory animus played any role in the alleged denial of her request to work from home. Plaintiff claims she was treated less well than other clinical supervisors by not being allowed to work from home resulting in a reduction to part-time status because of her race and gender. However, and similar to plaintiff's defective federal and state law claims, without satisfactorily alleging that these clinical supervisors were similarly-situated to plaintiff, *see supra,* at 9-11, plaintiff merely complains that H+H denied her request, not that H+H denied her request because she is an African-American female.

CHRL claims have been dismissed even where employer comments or statements could arguably raise the specter of discriminatory motivation. *See Turner v. Concourse Vill.,* No. 12-8739 (RWS), 2016 U.S. Dist. LEXIS 9880, at *4-8 (S.D.N.Y. Jan. 27, 2016)(dismissing CHRL discrimination claim where plaintiff failed to sufficiently plead a nexus between comments of "older African Americans take longer to heal" and "make excuses to not work," and termination).

Not only does plaintiff here fail to allege any such discriminatory remarks, her failure to satisfactorily plead a comparator similarly-situated in all material respects is likewise fatal to her CHRL claim. *See Andy Frain Servs.,* 638 F. App'x at 70-71 (CHRL claim properly

dismissed since no plausible inference of discrimination where plaintiff merely alleged that she was treated less well than a colleague outside of her protected class without satisfactorily alleging she and colleague were similarly-situated in all material respects); *see also Joseph v. New York City Dep't of Corr.,* No. 10-1265 (NGG)(LB), 2011 U.S. Dist. LEXIS 51690, at *24 (E.D.N.Y. May 12, 2011)("[Plaintiff] has not presented a single statement made by any of the Defendants or described a single act in the course of his employment that even the most racially sensitive person could possibly construe as discriminatory."). Accordingly, because plaintiff fails to demonstrate any inference of discrimination, all of her claims arising during her employment with H+H should be dismissed.

### 2. *Claims Arising During Plaintiff's DOC Employment*

The FAC also fails to allege sufficient facts to state a claim for race or gender discrimination against H+H during plaintiff's employment at DOC. As a threshold matter, upon plaintiff's resignation from H+H, H+H was no longer her employer as defined by the relevant anti-discrimination statutes. "[T]he existence of an employer-employee relationship is a primary element of Title VII claims." *Gulino v. N.Y. State Educ. Dep't,* 460 F.3d 361, 370 (2d Cir. 2006). There are two "recognized doctrines that enable an employee in certain circumstances to assert employer liability against an entity that is not formally his or her employer," the single employer and joint employer doctrines. *Arculeo v. On-Site Sales & Mktg., L.L.C.,* 425 F.3d 193, 197 (2d Cir. 2005); *see also Barbosa v. Continuum Health Partners, Inc.,* 716 F. Supp. 2d 210, 216-17 (S.D.N.Y. 2010)(applying joint employer doctrine to §1981, SHRL, and CHRL claims).

The single employer doctrine permits two nominally distinct entities to be deemed to constitute a single enterprise. *See Arculeo,* 425 F.3d at 198. To establish a single employer relationship, an employee must show: (1) interrelation of operations; (2) centralized control of

labor relations; (3) common management; and (4) common ownership or financial control. *Cook v. Arrowsmith Shelburne, Inc.,* 69 F.3d 1235, 1240 (2d Cir. 1995). Courts should focus their inquiry on the control of labor relations. *See id.* at 1241.

The joint employer doctrine assumes that the employers are separate legal entities, "but that they . . . handle certain aspects of their employer-employee relationship jointly." *Arculeo*, 425 F.3d at 198 (citation omitted). While the Second Circuit has yet to articulate a test for joint employer liability, factors to consider in determining whether a plaintiff is constructively employed by a defendant are "commonality of hiring, firing, discipline, pay, insurance, records, and supervision." *Shiflett v. Scores Holding Co*., 601 F. App'x 28, 30 (2d Cir. 2015)(citation omitted).

Plaintiff cannot establish H+H's liability under either a single or joint employer theory because she fails to satisfactorily allege that DOC and H+H are a single enterprise, or that H+H had sufficient control over her work and employment status at DOC. In this Circuit, the single employer four-factor test has been confined to the contexts of a wholly-owned corporate subsidiary and the subcontracting of the plaintiff's employment to another distinct employer. *See Gulino*, 460 F.3d at 378. The Second Circuit also declined to extend this doctrine to "cases involving the complex relations between levels of government." *Id.* Accordingly, and given the FAC's failure to allege sufficient facts to satisfy the four-part single employer test, particularly in the context of control over labor relations, plaintiff cannot show that H+H was her employer under this doctrine. *See Daikin Am., Inc.,* 756 F.3d at 227 (2d Cir. 2014)("In determining whether a plaintiff adequately alleges centralized control over labor relations – the most important prong in the four-part test – the central question is '[w]hat entity made the final decisions regarding employment matters related to the person claiming

discrimination.'")(citation omitted).

Similarly, plaintiff fails to allege sufficient facts to demonstrate that she was constructively employed by H+H under the joint employer doctrine. The FAC does not satisfactorily allege a "commonality of hiring, firing, discipline, pay, insurance, records, and supervision" between DOC and H+H. *See Shiflett*, 601 F. App'x at 30. Indeed, plaintiff's own allegations that: she had to resign from H+H in order to commence employment with DOC, *see* FAC ¶ 52, DOC delayed her appointment to a civil service title, *see* FAC ¶¶ 65-68, 72, 73, 80, and DOC paid her less than other Deputy Commissioners, *see* FAC ¶¶ 80, 83, belies any claim of a joint employer relationship. Plaintiff's allegations here show a collaborative, not a controlling, relationship with H+H. *See Morrongiello v. Ashcroft*, No. 10-2524 (WHP), 2004 U.S. Dist. LEXIS 777, at *12-14 (S.D.N.Y. Jan. 22, 2004)(lack of remuneration, provision of benefits, and ability to hire and fire defeated claim of constructive employment).

Notwithstanding plaintiff's inability to assert claims against H+H as her former employer, these claims also fail on the merits because the FAC fails to allege sufficient facts to state a claim for race or gender discrimination against H+H during plaintiff's employment with DOC. While plaintiff has satisfactorily alleged that she was a member of a protected class and qualified for her position, she fails to establish an adverse employment action, attributable to H+H while employed by DOC, and cannot demonstrate even a minimal inference of discriminatory animus against H+H.

"A plaintiff sustains an adverse employment action if he or she endures a 'materially adverse change' in the terms and conditions of employment. To be 'materially adverse' a change in working conditions must be 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'" *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640

(2d Cir. 2000)(internal citations omitted). Actions such as termination, demotion, loss of benefits, or diminished responsibilities are materially adverse changes in the terms and conditions of employment. *See Sanders v. N.Y. City Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004). H+H did not terminate, demote, or deprive plaintiff of benefits while she was employed by DOC.

At most, it is alleged that: Yang held meetings with non-black administrators to plaintiff's exclusion; Yang did not provide sufficient information for plaintiff to prepare for a meeting; Yang and MacDonald refused to answer plaintiff's questions regarding an inmate with tuberculosis; and MacDonald sent a solitary email "with the explicit intention of preventing [plaintiff] from executing her role and [sic] Deputy Commissioner." FAC ¶¶ 56-57, 79, 87-97.

The foregoing annoyances and inconveniences allegedly sustained by plaintiff, without allegations of materially adverse employment consequences, are insufficient to satisfy the standard of a materially adverse change in the terms and conditions of employment. *See, e.g., Hall v. N.Y. City DOT*, 701 F. Supp. 2d 318, 335-36 (E.D.N.Y. 2010)(excessive scrutiny, without resultant materially adverse employment consequences, does not establish an adverse employment action); *Smalls v. Allstate Ins. Co.*, 396 F. Supp. 2d 364, 371 (S.D.N.Y. 2005)(verbal abuse and insults, receiving an unfavorable work schedule, and a lateral transfer to an office in a different town do not amount to adverse employment actions); *Figueroa v. N.Y. City Health & Hosps. Corp.*, No. 03-9589 (NRB), 2007 U.S. Dist. LEXIS 58342, at *22-26 (S.D.N.Y. Aug. 7, 2007)(conduct undermining subordinate's authority was insufficient to constitute an adverse employment action). Here, where the FAC alleges, during plaintiff's employment with DOC, a few minor attempts by Yang and MacDonald to undermine plaintiff's authority, and one instance of an attempt to exclude plaintiff from a meeting, it fails to

satisfactorily demonstrate an adverse employment action. *See Quarless v. Bronx-Lebanon Hosp. Ctr.,* 228 F. Supp. 2d 377, 385-86 (S.D.N.Y. 2002)(efforts to undermine plaintiff's authority and exclude him from meetings were not materially adverse).

However, even if the Court were to find that plaintiff suffered an adverse employment action, attributable to H+H while employed by DOC, her claims are still insufficient for failure to plead even a minimal inference of animus. Plaintiff offers no direct evidence of animus, such as discriminatory statements made by Yang or MacDonald during her employment with DOC, or any other time. Therefore, plaintiff must establish the required inference by alleging circumstantial evidence, such as disparate treatment of similarly-situated comparators.

It is axiomatic that differences in race between the employer and employee, without more, are wholly insufficient to raise an inference of discriminatory intent. *See Yusuf v. Vassar College*, 35 F.3d 709, 714 (2d Cir. 1994). Moreover, minimal allegations of preferential treatment for one class over another are similarly unavailing in establishing intent. *See Weerahandi v. Am. Statistical Ass'n*, No. 14-7688 (AT), 2015 U.S. Dist. LEXIS 136425, at *14-16 (S.D.N.Y. Sep. 30, 2015)(allegations of preferential treatment towards Chinese statisticians alone does not raise inference of discriminatory intent towards non-Chinese statisticians).

Plaintiff alleges that Yang "[held] meetings with DOC white administrators" Barnes and Thamkittikasem[7] and excluded plaintiff. FAC ¶ 56. Plaintiff offers one concrete example where Yang contacted a white DOC administrator, Timothy Farrell ("Farrell"), to complete a portion of the work for the meeting, excluding plaintiff, and then falsely attributing the failed initiative to plaintiff. FAC ¶ 57. Even if these alleged incidents can be considered adverse employment actions – which they cannot – they fail to raise an inference of

---

[7] Again, Thamkittikasem is not white. *See supra*, at 4 n.4.

discrimination because the FAC does not allege facts to plausibly support the finding that plaintiff's comparators are similarly-situated. Plaintiff identifies Barnes, Thamkittikasem, and Farrell as alleged comparators. Plaintiff's bare provision of their names and vague titles ("DOC administrators") is insufficient to provide a basis to determine how she and these individuals are similarly-situated. *See Wooding v. Winthrop Univ. Hosp.*, No. 16-4477 (ADS)(ARL), 2017 U.S. Dist. LEXIS 90559, at *28-30 (E.D.N.Y. June 12, 2017)(no inference of discrimination where the complaint failed to allege comparators' positions, responsibilities, qualifications, or work quality). Indeed, where the FAC does actually allege a specific title for these purported comparators – *Warden* Barnes (FAC ¶ 56) and *Chief of Staff* Thamkittikasem (*id.* ¶ 27) – it is different from plaintiff's title of Deputy Commissioner.

Plaintiff's complaints about Yang's managerial style notwithstanding, she fails to allege any facts to show that her race or gender played a role in her invitation to, or receipt of the agenda for, the JAR on June 20, 2018. *See id.* ¶¶ 79, 87-94. The <u>only</u> allegation asserted by plaintiff concerning the JAR that even references race is that Yang ignored her requests for resources, or did not answer questions, and that "[n]o other white executive staff member was treated in this matter [sic] by Defendant Yang." *Id.* ¶ 87. This generalized and conclusory allegation fails to plausibly support the finding that all other "white executive staff members" are similarly-situated to plaintiff, thus belying any purported inference of discrimination. *See Mosdos Chofetz Chaim, Inc.,* 815 F. Supp. 2d at 698.

Likewise, plaintiff's grievances that Yang and MacDonald did not answer questions regarding an ill inmate, and MacDonald sent an email intending to demean and marginalize plaintiff, do not support the inference that Yang's and MacDonald's alleged actions were motivated by plaintiff's race. *See* FAC ¶¶ 95-97. Plaintiff's sole allegations concerning

race, that no other unidentified non-African-American Deputy Commissioners were treated similarly and that the previous white Deputy Commissioner for Health Affairs, Eric Berliner ("Berliner"), was never subject to an email meant to demean and marginalize him, fails to meet plaintiff's burden. *See id.* ¶¶ 96-97. The FAC's failure to satisfactorily allege the unidentified Deputy Commissioners' or Berliner's responsibilities, qualifications, or work quality, negates the effort to establish any of them as similarly-situated comparators. *See Wooding*, 2017 U.S. Dist. LEXIS 90559, at *28-30; *see also Mohan*, 2018 U.S. Dist. LEXIS 130933, at *31-32 (plaintiff failed to satisfactorily allege that comparator was similarly-situated where, although plaintiff and comparator had identical work titles, plaintiff "fail[ed] to detail the specific work duties, seniority level, or performance" of comparator).

Even under the CHRL's more liberal standard, plaintiff's claim fails because she has not satisfactorily alleged that discriminatory animus played any role in H+H's conduct during her employment with DOC. For the same reasons that plaintiff does not plausibly allege that H+H subjected her to discrimination during her DOC employment on her federal and state law claims, *see supra,* at 16-18, she likewise fails on her CHRL claim. With no direct evidence of discrimination, and paltry circumstantial evidence, the FAC falls well short of demonstrating plaintiff was treated less well because of her race or gender. *See Andy Frain Servs.,* 638 F. App'x at 70-71; *Joseph,* 2011 U.S. Dist. LEXIS 51690, at *24.

It is unclear as to whether plaintiff is asserting a retaliation claim against H+H for her alleged complaints of discrimination while employed by DOC, but to the extent the FAC can be read as advancing this claim, the claim fails for the same reasons set forth above - plaintiff's inability to assert claims against H+H as her former employer and failure to establish an adverse employment action attributable to H+H, Yang or MacDonald while employed by DOC. *Petyan*

*v. New York City Law Dep't.,* No. 14 Civ. 1434 (GBD)(JLC), 2015 U.S. Dist. LEXIS 88188, *11 (S.D.N.Y. July 2, 2015)*(prima facie case of retaliation requires that adverse action must be "materially adverse")[8]; *see Rodas v. Town of Farmington*, 567 Fed. Appx. 24, 27 (2d Cir. 2014) (holding that in the retaliation context, "[a]ctions are materially adverse when they 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination'" but "[s]uch actions must be more than 'trivial harms' and must go beyond the 'petty slights or minor annoyances that often take place at work and that all employees experience.'" (citation omitted)).

Accordingly, because plaintiff fails to demonstrate an adverse employment action taken by H+H, or any inference of discrimination all of her claims against H+H arising during her employment with DOC must be dismissed.

## C.  Plaintiff's § 1983, SHRL, and CHRL Claims Against Individual Defendants Yang, MacDonald, and Murphy

Notwithstanding the fact that plaintiff has not set forth any facts showing a plausible inference of discriminatory intent or retaliation, as set forth above, all claims against Yang, MacDonald, and Murphy brought pursuant to § 1983, the SHRL, and the CHRL should be dismissed as plaintiff has failed to sufficiently allege their personal involvement in the alleged deprivations.  *See Littlejohn,* 795 F.3d at 313-14; *see also Iqbal*, 556 U.S. at 676 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").  Personal involvement for the purposes of § 1983 can be shown by evidence that:

(1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the

---

[8] § 1981, § 1983, SHRL retaliation claims are analyzed under the same principles as Title VII.  *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010).

> defendant created a policy or custom under which unconstitutional
> practices occurred, or allowed the continuance of such a policy or
> custom, (4) the defendant was grossly negligent in supervising
> subordinates who committed the wrongful acts, or (5) the
> defendant exhibited deliberate indifference . . . by failing to act on
> information indicating that unconstitutional acts were occurring.

*Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 127 (2d Cir. 2004)(citation omitted). When an allegedly discriminatory action is taken by an entity, here H+H and DOC, "a participant in the decision making process may be held liable for that action if the plaintiff can demonstrate that the individual defendant acted with a[n] improper motive and played a 'meaningful role' in the decision making process." *Falcon v. City Univ. of N.Y.*, No. 15-3421 (ADS)(ARL), 2016 U.S. Dist. LEXIS 92396, at *31 (E.D.N.Y. July 15, 2016)(citation omitted).

The FAC's 188 paragraphs make minimal reference to, particularly, MacDonald and Murphy. It alleges that Yang is an Asian-American female employed by H+H as the Senior Vice President of Correctional Health Services. FAC ¶ 21. While Yang was allegedly involved in denying plaintiff's request to work from home, as previously discussed, this was not a violation of any constitutional or statutory right. *See supra*, at 8-12. Plaintiff alleges that, upon her employment with DOC, Yang and MacDonald, as H+H employees, "limit[ed] their interactions" with plaintiff and "[did] not communicate with [p]laintiff directly regarding inmate health issues at Rikers Island." *Id.* ¶ 55. It is also alleged that Yang held meetings with non-black administrators to plaintiff's exclusion, did not provide sufficient information for plaintiff to prepare for a meeting, and refused to answer plaintiff's questions regarding an inmate with tuberculosis. *Id.* ¶¶ 56-57, 88-96.

The FAC alleges that MacDonald is a white male, and employed by H+H as the Chief Medical Officer of Correctional Health Services since June 2017. *Id.* ¶ 24. Plaintiff further alleges that, on July 6, 2018, MacDonald emailed "several peers and supervisor of the

Plaintiff with the explicit intention of preventing her from executing her role and [sic] Deputy Commissioner for Health Affairs while demeaning and marginalizing her to peers and supervisors . . . [while] [t]he previous white Deputy Commissioner for Health Affairs, Eric Berliner, was never treated in this fashion." *Id.* ¶ 97. Likewise, this, or any other allegation levied against MacDonald, does not plausibly allege that he discriminated against plaintiff based on her race or gender. *See supra,* at 15-19.

Concerning Murphy, the FAC alleges that, in or around April 2016, Murphy, a white male and DOC's Chief of the Department, informed plaintiff that she could no longer have an officer as a driver because "it was like 'Driving Ms. Daisy' and it 'looked bad.'" *Id.* ¶ 58. Plaintiff claims that other white Deputy Commissioners were assigned drivers. *Id.* Plaintiff further claims that Murphy asked one of plaintiff's subordinates to report on the activities of the officers in the Health Affairs Division, while no other white Deputy Commissioners had subordinates report on their division's activities. *Id.* ¶ 53.

Plaintiff alleges, generally, that she endured a "constant barrage of unwarranted, disparaging comments, critiques, and criticisms" from MacDonald and Murphy. *Id.* ¶ 109. Plaintiff further claims, vaguely, that MacDonald, Yang, and Murphy directed the circumvention of her authority. *Id.* These are the sole allegations against Yang, MacDonald, and Murphy[9].

As such, a review of the allegations levied against Yang, MacDonald, and Murphy demonstrates that plaintiff has failed entirely to allege sufficient facts to establish their individual liability. *See Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001)("[D]irect participation as a basis of liability in this context requires intentional participation in the conduct constituting a violation of the victim's rights by one who knew of the facts rendering it illegal.").

---

[9] The FAC is devoid of any factual allegations that Murphy retaliated against plaintiff, so, to the extent alleged, any claims of retaliation against Murphy should be dismissed. *See* FAC, generally.

Even if plaintiff satisfactorily alleged that these defendants were personally involved in the complained-of conduct, the failure to plausibly plead any similarly-situated comparators negates any strained inference of discriminatory motive. *See Karim v. N.Y. City Health & Hosps. Corp.,* No. 17-6888 (AT)(OTW), 2019 U.S. Dist. LEXIS 37008, at *16-18 (S.D.N.Y. Mar. 6, 2019). Here, plaintiff makes no allegations relative to these individual defendants as decisionmakers in any constitutional or statutory deprivation, or as people with knowledge of the alleged discriminatory treatment.

As well, the sparse allegations that are actually levied against Yang, MacDonald, and Murphy utterly fail to establish their direct participation. Plaintiff's claims against them are, essentially, that: MacDonald limited his contact with plaintiff and sent an email attempting to marginalize her; Murphy denied her a driver; and MacDonald and Murphy made disparaging comments towards plaintiff and circumvented her authority. Even taken as true, these allegations fall far short of establishing MacDonald's or Murphy's personal involvement in any alleged violation of plaintiff's rights. *See Littlejohn,* 795 F.3d at 320 (dismissing claims against individuals where they did not participate in decision to demote plaintiff); *Conklin v. County of Suffolk,* 859 F. Supp. 2d 415, 440-41 (E.D.N.Y. 2012)(threatening consequences for filing of sexual harassment complaint, denying request to move to different worksite, and participating in discussions precipitating termination insufficient for personal involvement under § 1983). Likewise, and for the reasons previously stated, because plaintiff has not satisfactorily alleged that Yang violated her rights, the FAC fails to establish Yang's individual liability.

The decision in *Kellman v. Metro. Transp. Auth.,* 8 F. Supp. 3d 351 (S.D.N.Y. 2014), is informative. In *Kellman*, the plaintiff, an African-American female employed by the defendant as a police officer, asserted claims under § 1983, and other statutes, that her employer

subjected her to unlawful discrimination based on her race and sex. Kellman alleged that Kevin McConville, her superior and Chief of the Police Department, accused her of "washing dishes instead of supervising [an] investigation," a comment Kellman understood as racist and sexist. *Id.* at 392 (brackets in original). Kellman further alleged that McConville "was aware of the denials of Plaintiff's training requests, signed off on promotion orders [denying Kellman promotions] and discipline, and took no steps to investigate Plaintiff's [Office of Civil Rights] Complaint . . . ." *Id.* at 393. The Court, noting that the dishwashing comment was not an adverse employment action, determined it could not subject McConville to individual liability under § 1983. *Id.* Moreover, the remaining generalized allegations levied against McConville were insufficient to demonstrate his knowledge of any alleged constitutional violations and, thus, could not establish the requisite personal involvement for individual liability under § 1983, the SHRL, or CHRL. *See id.* at 393-94.

While defendants acknowledge that *Kellman* decided a motion for summary judgment, in contrast to the instant motion to dismiss, the facts alleged against Yang, MacDonald, and Murphy in the FAC will remain altogether marginal, without material amplification in discovery. Here, like in *Kellman*, plaintiff, vaguely, alleges MacDonald and Murphy made unwarranted and disparaging comments, and Yang, MacDonald, and Murphy circumvented and usurped her authority. Moreover, and unlike in *Kellman*, plaintiff here has not claimed these individual defendants denied her promotions or trainings, instituted disciplinary proceedings against her, or failed to investigate her discrimination complaints. Even the existence of such allegations in *Kellman* did not warrant individual liability; their absence must altogether foreclose it here. Accordingly, any and all claims against Yang, MacDonald, and Murphy, individually, should be dismissed.

Furthermore, although plaintiff assets a § 1983 claim for hostile work environment based upon her race and gender against the individual defendants, there are no factual allegations in the FAC which establish that the individual defendants' alleged conduct was objectively severe or pervasive to create an objectively hostile or abusive work environment. *See Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007); *see also Jemmott v. Coughlin*, 85 F.3d 61, 67 (2d Cir. 1996)(stating that "Title VII law … is utilized by courts considering § 1983 … claims."). Plaintiff's hostile work environment claims fail for the additional reason that, as set forth above, she has failed to allege facts to make it plausible that any complained of conduct occurred *because of* her race or gender. *Brennan v. Metropolitan Opera Ass'n*, 192 F.3d 310, 318 (2d Cir. 1999). Therefore, her claim must be dismissed. *See Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001) ("axiomatic that . . . a hostile environment . . . is actionable [] only when it occurs because of a . . . protected characteristic").

**D.      Plaintiff's § 1983 Claim Against Defendants City, DOC and H+H**

Notwithstanding the foregoing dispositive grounds for dismissal, all of the §1983 claims should be dismissed against the City, DOC, and H+H for failure to plead that the alleged constitutional deprivation was caused by a policy or practice of the City or H+H. *See Monell v. Dep't of Sc. Servs.*, 436 U.S. 658, 694 (1978). "To hold a city liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007)(citation omitted). Other than vaguely contending in the FAC that "Defendants City, DOC and H&H, Cynthia Brann, Patsy Yang, Ross MacDonald, Jeff Thamkittikasem, and Martin Murphy …"engaged in a policy, custom, and/or condoned a longstanding practice, which deprived Plaintiff and other female employees of rights, privileges and immunities secured by

the Fourteenth Amendment, Title VII, and the 42 U.S.C. § 1981", plaintiff does not allege facts to support the existence that such a custom or policy existed.  S*ee* FAC ¶ 174; *see also generally* FAC.  Accordingly, "Plaintiff's speculative and conclusory allegations of an unlawful custom and practice are insufficient to support a claim of municipality liability based upon *Monell*…" *Irish v. City of New York*, No. 09 Civ. 5568 (RMB), 2010 U.S. Dist. LEXIS 130466 at *15 (S.D.N.Y. Dec. 6, 2010); *see also Byrd v. Metro Transit Auth.*, No. 15-CV-1364 (JG)(RLM), 2015 U.S. Dist. LEXIS 98622 at *7 (E.D.N.Y. July 28, 2015) (a "conclusory allegation that the conduct constituted a custom, usage, practice, procedure or rule that deprived [Plaintiff] of his constitutional rights [is not] sufficient to state a claim for municipal liability") *see Guity v. Uniondale Free Sch. Dist.*, No. 15 CV 5693 (SJF)(AKT), 2017 U.S. Dist. LEXIS 27542 at *97-8 (E.D.N.Y. Feb. 23, 2017).  In addition, the "simple recitation that there was a failure to train municipal employees does not suffice to allege that a municipal custom or policy caused the plaintiff's injury." *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993).  Accordingly, all § 1983 claims against the City, DOC, and H+H should be dismissed as plaintiff has failed to plausibly allege an official policy or custom that denied her a constitutional right.[10]

Should the aforementioned claims be dismissed, the following claims would remain in this case: plaintiff's SHRL and CHRL claims against the City, Brann and Thamkittikasem and plaintiff's § 1983 claims against Brann and Thamkittikasem.

---

[10] Even if the Court were to find that there was such policy or practice, as set forth above the FAC fails to state a § 1983 equal protection claim against H+H and thus there is no basis for plaintiff's § 1983 claims against H+H.  *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (holding that a municipality may not be held liable under § 1983 where no constitutional violation has occurred).

## CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court issue

an order granting defendants' motion to partially dismiss the FAC, with prejudice, and awarding

defendants such other and further relief as the Court deems just and proper.

Dated:      New York, New York
           August 1, 2019

**ZACHARY W. CARTER**
Corporation Counsel of the
  City of New York
Attorney for Defendants
100 Church Street, Room 2-139
New York, New York 10007-2601
(212) 356-2473
kbowers@law.nyc.gov

By:   _____/s/_____
           Kerrin A. Bowers
           Assistant Corporation Counsel