UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
NICHOLE ADAMS-FLORES, individually and on behalf
of all others similarly situated,

       Case No.: 18-CV-12150
       (JMF)

       **Plaintiff,**

   *-against-*

THE CITY OF NEW YORK, NEW YORK CITY
DEPARTMENT OF CORRECTIONS, HEALTH &
HOSPITAL CORPORATION, CYNTHIA BRANN,
Commissioner of Dept. of Corrections, PATSY YANG,
Chief Operating Officer of Correctional Health
Services, ROSS MACDONALD, Chief of Medicine,
JEFF THAMKITTIKASEM, Former Chief of Staff of
Dept. of Corrections, and MARTIN MURPHY, former
Chief of Department of Dept of Corrections,

       **Defendants.**
-------------------------------------------------------------------------X

# PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
# TO DEFENDANTS' MOTION TO DISMISS THE FIRST
# AMENDED COMPLAINT IN PART

THE LAW OFFICES OF
FREDERICK K. BREWINGTON
*Attorneys for Plaintiff*
556 Peninsula Boulevard
Hempstead, New York 11550
(516) 489-6959

*OF COUNSEL: FREDERICK K. BREWINGTON*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................. iii

PRELIMINARY STATEMENT ................................................ 1

STATEMENT OF FACTS ................................................... 2

STANDARD OF REVIEW .................................................. 7

ARGUMENT ........................................................... 8

POINT I:   PLAINTIFF'S TITLE VII CLAIMS ARE NOT TIME BARRED .......... 8

    A.   Plaintiff Timely Commenced the Instant Action Within 90 Days
       of Receipt of the EEOC Right to Sue Letter .......................... 8

    B.   The Incidents Alleged By Plaintiff that Fall Outside of the
       Statute of Limitations Can, Nevertheless, Be Used As Background
       Information to Support Plaintiff's Timely Claims ...................... 9

POINT II:   PLAINTIFF DOES NOT CONTEND TO MAINTAIN A TITLE VII ACTION
       AGAINST THE INDIVIDUALLY NAMED DEFENDANTS ............. 11

POINT III:   PLAINTIFF'S § 1981 CLAIMS DO NOT FAIL AS A MATTER
       OF LAW ......................................................... 11

POINT IV:   PLAINTIFF'S AMENDED COMPLAINT DOES NOT
       FAIL TO STATE A CLAIM ........................................ 12

    A.   Defendants Mis-represent Pleading Standard for Discrimination
       Claims ......................................................... 13

    B.   Plaintiff has Established the Prima Facie Case for Claims
       Against H&H .................................................... 14

         1.   *Claims Arising During Plaintiff's Employment with H&H* ........... 15

         2.   *Claims Arising During Plaintiff's Employment with DOC* ........... 16

    C.   Plaintiff Successfully Alleges §1983, SHRL, and CHRL
       Claims Against Defendants Yang, MacDonald and Murph ............. 20

       D.       **Plaintiff Successfully Alleges a §1983 Monell Claim Against
CITY, DOC, and H&H** ........................................... 24

**CONCLUSION** ......................................................... 27

# TABLE OF AUTHORITIES

**CASES:** Page(s)

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ................................................... **12, 13, 14, 21**

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 (2007) ..................................................... **12, 13, 14**

*Bowen-Hooks v. City of New York,*
  13 F. Supp 3d 179 (E.D.N.Y 2014) ............................................. **10**

*Boykin v. KeyCorp,*
  521 F.3d 202 (2d Cir. 2008) ................................................. **13, 14**

*Conley v. Gibson,*
  355 U.S. 41 (1957) .......................................................... **8**

*Fahs Const. Group, Inc v. Gray,*
  725 F.3d 289 (2d Cir. 2013) .................................................. **10**

*Graham v. Long Island R.R.,*
  230 F.3d 34 (2d Cir. 2000) ................................................. **14, 15**

*Hafer v. Melo,*
  502 US. 21 (1991) .......................................................... **11**

*Hamilton Chapter of Alpha Delta Phi. Inc. v. Hamilton College,*
  128 F.3d 59 (2d Cir.1997) .................................................... **8**

*Harris v Forklift Sys., Inc.,*
  510 US. 17 (1993) .......................................................... **23**

*Hurdle v. Bd. of Educ. of City of New York,*
  113 Fed. Appx. 423 (2d Cir. 2004) ............................................ **27**

*International Bhd. of Teamsters v. United States,*
  431 U.S. 324 (1977) ......................................................... **14**

*Jeffes v. Barnes,*
  208 F.3d 49 (2d Cir. 2000) ................................................... **27**

*Jones v. W. Suffolk Boces,*
    2008 WL 495498 (E.D.N.Y. 2008) ................................................ 10

*Levine v. McCabe,*
    357 F. Supp 2d 608, 616 (E.D.N.Y. 2005) ......................................... 10

*Lore v. City of Syracuse,*
    670 F.3d 127 (2d Cir. 2012) ..................................................... 14

*Marbi Corp. of New York v. Puhekker,*
    9 F.Supp.2d 425 (S.D.N.Y., 1998) ............................................... 28

*Martin v. State Univ. of New York,*
    704 F. Supp 2d 202 (E.D.N.Y 2010) ............................................. 14

*McDonnell Douglas Corp. v. Green,*
    411 U.S. 792 (1973) ........................................................... 14

*McMillian v. Monroe County, Ala.,*
    520 U.S. 781 (1997) ........................................................... 27

*Monell v. Dep't of Soc. Servs.,*
    436 U.S. 658 (1978) ................................................... 11, 24, 27

*Montana v. First Federal Sav. & Loan Asso.,*
    869 F.2d 100 (2d Cir. N.Y. 1989) ............................................... 15

*Norville v. Staten Island Univ. Hosp.,*
    196 F.3d 89 (2d Cir. 1999) ..................................................... 14

*Oncale v. Sundowner Offshore Servs., Inc.,*
    523 U.S. 75 (1998) ............................................................ 23

*Patterson v. County of Oneida,*
    375 F.3d 206 (2d. Cir. 2004) .......................................... 11, 12, 14

*Pearl v. City of Long Beach,*
    296 F.3d 76 (2d Cir. 2002) ...................................................... 9

*Pucino v. Verizon Communications, Inc.,*
    618 F.3d 112 (2d Cir. 2010) .................................................... 23

*Schreuer v. Rhodes,*
   416 U.S. 232 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Shumway v. United Parcel Serv., Inc.,*
   118 F.3d 60 (2d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Sorlucco v. New York City Police Dept.,*
   971 F.2d 864 (2d Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 24, 25

*Spiegler v. Israel Disc. Bank,*
   2003 U.S. Dist. LEXIS 14414 (S.D.N.Y. Aug. 19, 2003) . . . . . . . . . . . . . . . . . . . . . . . . 15

*Terry v. Ashcroft,*
   336 F.3d 128 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Villager Pond, Inc. v. Town of Darien,*
   56 F.3d 375 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Whidbee v. Garzarelli Food Specialties,*
   223 F.3d 62 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 21

*Williams v. City of New York,*
   690 F. Supp 2d 388 (S.D.N.Y. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## STATUTES, RULES & REGULATIONS

42 U.S.C. § 1981 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *Passim*

42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *Passim*

Fed. R. Civ. P. 12 (b) (6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 7, 8

## PRELIMINARY STATEMENT

Plaintiff **NICHOLE ADAMS-FLORES** (herein "Plaintiff") through her attorneys, the LAW OFFICES OF FREDERICK K. BREWINGTON, respectfully submits the within Memorandum of Law, in Opposition of the Defendants **THE CITY OF NEW YORK** (herein, "CITY"), **NEW YORK CITY DEPARTMENT OF CORRECTIONS** (herein, "DOC"), **HEALTH & HOSPITAL CORPORATION** (herein "H&H"), **CYNTHIA BRANN**, Commissioner of Dept. of Corrections (herein, "Defendant Brann"), **PATSY YANG**, Chief Operating Officer of Correctional Health Services (herein, "Defendant Yang"), **ROSS MACDONALD**, Chief of Medicine (herein, "Defendant MacDonald"), **JEFF THAMKITTIKASEM**, Former Chief of Staff of Dept. of Corrections (herein, "Defendant Thamkittikasem"), and **MARTIN MURPHY**, former Chief of Department of Dept of Corrections (herein, "Defendant Murphy'), herein collectively as "Defendants" Motion to Dismiss Plaintiff's Complaint, pursuant to Federal Rules of Civil Procedure 12(b)(6).

Plaintiff instituted this civil action against Defendants for violation of Plaintiff's rights, brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 1983, 42 U.S.C. § 1981, New York State Executive Law §§ 296, et seq. and the New York City Human Rights Law, N.Y.C. Administrative Code §§ 8-107, et seq. This action was properly commenced by a filing of the Summons and Complaint on December 24, 2018. The Complaint was then Amended by permission of the Court and filed on July 12, 2019. Defendants' Motion to Dismiss followed and was Electronically Court Filed on August 1, 2019. Currently no discovery has taken place in this action.

Defendants now move this Court seeking to dismiss Plaintiff's First Amended Complaint in part with respect to (1) all claims against H&H, Defendant Yang, Defendant MacDonald, and Defendant Murphy; and (2) Plaintiff's 42 U.S.C. § 1983 claims against the CITY, DOC, and H&H.

To state from the outset, Defendants contend throughout their Motion that the Title VII claims against individual Defendants must be dismissed. However, Plaintiff does not make any Title VII claims against any individual Defendants. The Title VII claim in Plaintiff's Complaint is against the CITY, DOC, and H&H. To be clear, Plaintiff does allege that the individual Defendants unlawfully discriminated against her as a supporting fact in Plaintiff's Title VII claim against her employers CITY, DOC, and H&H.

Plaintiff further contends that, as illustrated by relevant case law and as shown by the factual allegations of the Complaint, Defendants' Motion to Dismiss Plaintiff's Complaint is without merit, and must therefore be denied in all respects. Furthermore, though Plaintiff has alleged the necessary factual elements to satisfy the prima facie case for all of her Federal and State claims, as no discovery has taken place, the evidence to support said claims remains in Defendants' exclusive possession. Once the discovery process is complete, Plaintiff is confident that she will defeat any motion for Summary Judgment and be equipped to prove her claims at trial before a jury. As such, Defendant's motion to dismiss Plaintiff's claims is premature.

## STATEMENT OF FACTS

### A.     Racial Composition of Defendant DOC

At all relevant times, the DOC comprised approximately ten thousand, four hundred (10,400) employees, eighty (80) of which were administrators and managers. The supervisory positions of administrators and managers are divided into uniformed titles and civilian titles. (**Exh. A, Amended Complaint ¶ ¶** 34-35).

At all relevant times, a disproportional percentage of African Americans were denied the opportunity of obtaining Executive Staff positions. Unlike non-African American supervisors, the

few African Americans who do hold supervisory positions have their authority circumvented, marginalized, and usurped, are denied promotions, and the opportunity to move up in the ranks, and/or are threatened with demotion if they fail to resign. **(Exh. A, Complaint ¶ ¶ 39-40).**

A New York City Government Workforce Profile Report shows that, at times relevant to this Amended Complaint, "Black" employees held only approximately thirty (30%) of the managerial positions within the DOC, despite over seventy-five percent (75%) overall "Black" employment. **(Exh. A, Complaint ¶ 41).**

## B.   Discrimination at H&H

In January 2016 while Plaintiff worked at H&H, she made a request for a reasonable accommodation to work from home while on bed rest to Defendant Yang just prior to coming to work at the DOC due to her pregnancy. Said request was denied by Defendant Yang and Plaintiff was not allowed to remain on full time status. **(Exh. A, Complaint ¶ 44).**

Plaintiff was forced to accept a reduction of hours to half time and could not work from home. On January 25, 2016 Plaintiff objected to Defendant Yang's decision and stated in an email that the accommodation was short term and that she told Human Resources "I feel that the only thing that would allow me to work full time is not being pregnant." **(Exh. A, Complaint ¶ ¶ 45-46).**

Plaintiff's work as a clinical supervisor was able to be conducted remotely and in an administrative trailer not located in one of the jails on Riker's Island. Furthermore, Plaintiff had received medical clearance to work full time by her doctor. This was known by Defendant Yang. **(Exh. A, Complaint ¶ 47).**

Plaintiff's prior supervisor at H&H, Mark Fleming, had authorized Plaintiff to work full time without having to be present in the jails during her pregnancy. **(Exh. A, Complaint ¶ 48).**

-3-

Other clinical supervisors who were white or non-black were allowed to perform their duties at H&H by Defendant Yang from alternate clinical locations and did not have to physically be on the unit, for example: Dr. Camerano, Dr. Georgolius and Dr. Ho. (**Exh. A, Complaint** ¶ 49).

## C.    **Plaintiff's Transfer to DOC**

On or about January 29, 2016, Plaintiff was offered the position of Deputy Commissioner for Health Affairs at the Department of Corrections. Plaintiff came to learn that this job placed her in the position of being the direct liaison for Defendant Patsy Yang and all Health Services on Riker's Island. (**Exh. A, Complaint** ¶ 50). The transfer from H&H to DOC was handled by Defendant City and was a transfer from one New York City Agency to another. (**Exh. A, Complaint** ¶ 51).

Defendant Yang continued to hold meetings with DOC white administrators, Warden Barnes and Jeff Thamkittikasem, and exclude Plaintiff. Plaintiff only became aware of these meetings after the meetings have already taken place. Such conduct adversely effected the terms and conditions of Plaintiff's employment at DOC. (**Exh. A, Complaint** ¶ 56).

One example of meeting that was not told to Plaintiff concerned a directive by the Board of Correction to engage in a collaborative Health Care Access initiative with Plaintiff. Defendant Yang contacted the white administrator at DOC, Timothy Farrell to execute a portion of the work. Plaintiff was never contacted or included in any communication by Defendant Yang until Yang reported to the Board of Correction that the initiative was a failure and falsely attributed the failure to the Plaintiff. (**Exh. A, Complaint** ¶ 57).

On or about April 2016 Defendant Murphy informed Plaintiff that she was not able to have an officer drive for her, even though other white Deputy Commissioners had officers drive for them.

Defendant Murphy elaborated to Plaintiff that he was informing her, 'as a friend', that when the officer would open the door for her to get into the vehicle that it was like 'Driving Ms. Daisy' and it 'looked bad'. He also said that staff was 'talking about [Plaintiff]' and he was 'worried I [Plaintiff] would have a problem'. (**Exh. A, Complaint** ¶ 58).

## D.   Plaintiff's EEO Complaint and Further Retaliation

On or about May 15, 2017 Plaintiff filed an EEO Complaint with DOC. In further retaliation for having complained about being marginalized by Defendant Yang, Plaintiff began to be treated less favorably then her white counterparts by Defendants Brann and Thamkittikasem. The DOC Commissioner and Chief of Staff refused to give Plaintiff a permanent civil service title as the Deputy Commissioner of Health Affairs despite receiving a 100 on the civil service exam and receiving a notice of hiring pool letter on or about July 12, 2017 telling Plaintiff how to proceed to get the permanent civil service title and having her list number called. (**Exh. A, Complaint** ¶ ¶ 60-61).

On or about March 2016 Plaintiff took Exam # 6047 000 for Exam Title: "Health Services Manager".On June 8, 2017 Plaintiff was notified by NYC Citywide Administrative Services that she scored a perfect score of 100% on the exam and was given a list number of 187. (**Exh. A, Complaint** ¶ ¶ 62-63).

On July 15, 2017 Plaintiff received a "Notice of Hiring Pool" from NYC Department of Health and Mental Hygiene (DOHMH) informing her that she was certified by Citywide Administrative Services to the Department of Health and Mental Hygiene that she was eligible for the permanent position of civil service title "Health Service Manager" and instructions to report to Citywide Administrative Services office. (**Exh. A, Complaint** ¶ 64).

In an act of clear retaliation, on August 1, 2017 Defendant Brann, after speaking with Defendant Thamkittikasem, sent Plaintiff a letter which stated that she refused to honor Plaintiff's request to 'pick up' the title of Health Service Manager and allow Plaintiff to serve in that title 'on leave'. (**Exh. A, Complaint** ¶ 72).

White Deputy Commissioners and Assistant Deputy Commissioners ( Frank Doka, Patricia Lyons, Joseph Antonielli, James Walsh, and Eric Berliner) have received the permanent civil service titles in the past and continue to receive them throughout DOC with lesser scores on the exam. (**Exh. A, Complaint** ¶ 73).

### E.     Plaintiff's EEOC Complaint and Further Retaliation and Discrimination

On October 1, 2017, Plaintiff filed a complaint with the Equal Employment Opportunity Commission (EEOC).

In February of 2018 and only after Plaintiff filed an EEO complaint, and the EEO office contacted DOC, was Plaintiff finally given her permanent civil service title which protects her position within DOC. However, the title was placed on leave with a 20% decrease in her current salary. Although this was permissible under DCAS rules, no other white Deputy Commissioner had their title decreased when their civil service title was transferred to them. (**Exh. A, Complaint** ¶ 80).

Plaintiff learned that white males and females that work at DOC with the same position as Deputy Commissioner have received a higher salary then she does with fewer qualifications. *Such as*, Maureen Danko, Timothy Farrell, Mike Tausek, Dail Lawrence. *None* of the aforementioned persons has 3 Master's Degrees, a combined Doctorate in their area of expertise, nor have they authored and were awarded a $250,000 grant to support the work of the Department like Plaintiff. (**Exh. A, Complaint** ¶ 83).

On July 6, 2018 Defendant MacDonald sent an email to several peers and supervisors of the Plaintiff with the explicit intention of preventing her from executing her role as Deputy Commissioner for Health Affairs while demeaning and marginalizing her to peers and supervisors. This is another example of the severe and pervasive hostile treatment and aggressions that have cause anxiety and stress to the work of Health Affairs. The previous white Deputy Commissioner for Health Affairs, Eric Berliner, was never treated in this fashion. (**Exh. A, Complaint ¶ 97**).

Plaintiff was the original Presenter/Speaker and was placed on the list of Presenters by the American Correctional Association (ACA). In the same manner of the aforementioned conference, however, due to the filing of the EEOC charges, Plaintiff was subsequently denied the benefit to travel to the conference and a less qualified white male was told to attend by Defendant Brann (White). Even after the conference organizers reached out to the Defendant Brann and specifically requested the Plaintiff's attendance, Defendant Brann still opted to send a less qualified white male. The white male that Defendant Brann asked to present Plaintiff's authored materials was not qualified as a doctor or mental health expert. This was known by Defendant Brann. These blatant adverse employment actions by Defendant Brann and the NYC DOC have damaged Plaintiff s professional reputation with the ACA and N.O.B.L.E. (**Exh. A, Complaint ¶ 99**).

## STANDARD OF REVIEW

From the outset, the Court need only refer to the Statement of Facts section above to determine that the Complaint contains ample (if not over-achieving) allegations that are sufficient to sustain the Complaint. (*See* above Statement Of Facts). The Court is well aware of the Standard of Review in a motion to dismiss under Rule 12(b)(6) is "not whether the plaintiff will ultimately prevail but whether the plaintiff is entitled to offer evidence to support the claims." *Villager Pond, Inc. v. Town*

*of Darien*, 56 F.3d 375, 378 (2d Cir. 1995). "A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) looks to the sufficiency of the complaint only, and when considering a Rule 12(b)(6) motion, a court's task in determining the sufficiency of a complaint is 'necessarily a limited one.'" *Marbi Corp. of New York v. Puhekker*, 9 F.Supp.2d 425,427 (S.D.N.Y., 1998) (*quoting Hamilton Chapter of Alpha Delta Phi. Inc. v. Hamilton College*, 128 F.3d 59, 62 (2d Cir.1997)). Given the well established standard to be applied here, Plaintiff will not reiterate the scores of cases which mandate that when considering a motion to dismiss under Fed. R. Civ. P. 12 (b) (6), the Supreme Court has established that the "allegations of the complaint should be construed favorably to the pleader." *Schreuer v. Rhodes*, 416 U.S. 232, 236 (1974); *See also Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Furthermore, a court must deny a motion to dismiss unless "it appears beyond a reasonable doubt that Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v Gibson*, 355 U.S. 41, 46 (1957).

## ARGUMENT

### POINT I.

### PLAINTIFF'S TITLE VII CLAIMS ARE NOT TIME BARRED

#### A. Plaintiff Timely Commenced the Instant Action Within 90 Days of Receipt of the EEOC Right to Sue Letter

Plaintiff understands that Title VII claims must be commenced within 90 days of receipt of an EEOC right to sue letter. However, Plaintiff's claims under Title VII are not time barred as Plaintiff's complaint was filed within the 90 days of receiving the right to sue letter. While Plaintiff acknowledges that the Complaint states that the letters were received on September 21, 2018, this is in fact an unintentional clerical error. Notwithstanding the Complaint, Plaintiff's statement that

-8-

"two Notices of Right to Sue Within 90 Days" were received on September 21, 2018 was an unintentional inaccurate statement. (**Exh. A, Complaint ¶ 13**). In fact, Plaintiff physically received the notices on September 26, 2018. (**Exh. B, EEOC Dismissal and Notice of Rights**).

As evidenced by the letter itself the Dismissal and Notice of Rights form were both written on Friday, September 21, 2018. *Id.* Moreover, Plaintiff has annexed and attached with Exhibit B the original envelope in which the documents were mailed which bears a United States Postage Stamp that indicates that it was stamped and mailed on Monday, September 24, 2018. *Id.* Hence, Plaintiff's Counsel received the physical copy of the Notice and letter two (2) business days later, on September 26, 2018. *Id.* Therefore, Plaintiff timely commenced the instant action by filing the original complaint on December 24, 2018, as the date of filing occurred within 89 days of receipt of the EEOC right-to-sue letter. Request is hereby made to correct this clerical error in a Second Amended Complaint.

## B. The Incidents Alleged By Plaintiff that Fall Outside of the Statute of Limitations For Title VII Can, Nevertheless, Be Used As Background Information to Support Plaintiff's Timely Claims

In Point I of their Motion, Defendants assert that all of Plaintiff's allegations, which occurred prior to December 20, 2016 should be time barred from the Complaint under Title VII. (*See* Def's Memo, Point I. pgs.6-7). Plaintiff does not dispute that only the incidents that occurred subsequent to December 20, 2016 are actionable under Plaintiff's Title VII claim. Nevertheless, the incidents occurring prior to December 20, 2016 should remain, and must not be dismissed for two reasons as discussed in detail below.

*First*, Plaintiff asserts additional equal protection causes of action under 42 U.S.C. §§1981 and 1983. As the Court is aware, "the statute of limitations on an Equal Protection claim brought in

New York under 42 U.S.C. § 1983 is three years." *Fahs Const. Group, Inc v. Gray*, 725 F.3d 289, 292 (2d Cir 2013), *citing*; *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002). Furthermore, "the statute of limitations governing § 1981 claims is four years." *Williams v. City of New York*, 690 F. Supp 2d 388, 342 (S.D.N.Y. 2010), *citing*; *Jones v. W. Suffolk Boces*, 2008 WL 495498, at \*9 (E.D.N.Y. 2008). Accordingly, incidents occurring as far back as December 20, 2016 are still actionable and should not be dismissed or barred from the Complaint - as a matter of law.

     *Second*, specifically with respect to Plaintiff's claims under Title VII, those incidents alleged to have occurred prior to December 20, 2016 can still be used and/or relied upon by the Court as background information in support of Plaintiff's timely claims. (*Infra*.) "Prior acts may ... be considered 'as background evidence in support of a timely claim'." *Bowen-Hooks v. City of New York*, 13 F. Supp 3d 179, 205-06 (E.D.N.Y 2014). "A statute of limitations does not operate to bar the introduction of evidence that predates the commencement of the limitations period but that is relevant to events during the period." *Martin v. State Univ. of New York*, 704 F. Supp 2d 202, 223 (E.D.N.Y 2010). "Thus, in the employment discrimination realm, where untimely discrete acts of discrimination are alleged in conjunction with timely discrete acts of discrimination, the plaintiff may generally introduce the otherwise time-barred acts as evidence in support of his timely claims." *Levine v. McCabe* 357 F. Supp 2d 608, 616 (E.D.N.Y. 2005). Accordingly, this Court should not bar or dismiss the incidents of discrete acts which accrued prior to December 20, 2016, and onward, from Plaintiff's First Amended Complaint as the described events are illustrative of crucial background information.

## POINT II.

### PLAINTIFF DOES NOT CONTEND TO MAINTAIN A TITLE VII
### ACTION AGAINST THE INDIVIDUALLY NAMED DEFENDANTS

Plaintiff does not contend that she has any Title VII claims against individual Defendants. Plaintiff is aware and acknowledges that Title VII only provides for liability against employers and not against individual employees. To the contrary, Plaintiff's claims are solely against Defendant CITY, DOC, and H&H as the employer of Plaintiff. However, Plaintiff merely states that the Title VII violations committed by Defendant CITY were carried out by and through their employees and agents Defendants CYNTHIA BRAN, PATSY YANG, ROSS MACDONALD, JEFF THAMKITTIKASEM, and MARTIN MURPHY. Accordingly, Plaintiff maintains meritorious Title VII claims against Defendant CITY, DOC and H&H.

### POINT III.

### PLAINTIFF'S § 1981 CLAIMS DO NOT FAIL AS A MATTER OF LAW

Defendants overlook the fact that the individual Defendants are not only being sued in their official capacity for §1981 violations, but the Defendants are also being sued in their individual capacities for their personal involvement (**Exh. A, Complaint ¶ ¶** 17-33), as such the individual Defendants can be held personally liable. "[W]hen the defendant sued for discrimination under § 1981 ... is ... an individual sued in his official capacity ... the plaintiff is required to show that the challenged acts were performed pursuant to a municipal policy or custom." *Patterson*, 375 F.3d at 226 *quoting Hafer v. Melo,* 502 US. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301(1991)(*other citations omitted*). Plaintiff both successfully alleges a §§1981 and 1983 claims as well as a § 1983 Monell claim.

"To show a policy, custom or practice, the plaintiff need not identify an express rule or regulation ... [i]t is sufficient to show, for example, that a discriminatory practice of municipal officials was so 'persistent or widespread' as to constitute a custom or usage with the force of law or that a discriminatory practice of subordinate empolyees was 'so manifest to imply the constructive acquiescence of senior policy-making officials.'" *Patterson,* 375 F.3d at 226 *quoting Sorlucco v. New York City Police Dept.,* 971 F.2d 864, 870-71 (2d Cir. 1992). The standard required to be met identical to § 1983 municipal liability. *Id.*. The sole difference is since the Supreme Court's decision in *Iqbal,* is that claims of invidious discrimination require a plaintiff "must plead that each Government-official Defendant, through the official's own individual actions, has violated the Constitution." *Iqbal,* 129 S.Ct. at 1948. This has clearly been accomplished by the Pleading.

Plaintiff's § 1981 claim against the individual Defendants have "demonstrate[d] some affirmative link to causally connect the actor with the discriminatory action ... [P]ersonal liability under § 1981 must be predicated on the actor's personal involvement. *Whidbee v. Garzarelli Food Specialties,* 223 F.3d 62, 75 (2d Cir. 2000) (*internal quotation marks omitted*). This claim must survive the instant motion.

## POINT IV.

## PLAINTIFF'S AMENDED COMPLAINT DOES NOT FAIL TO STATE A CLAIM

The Plaintiff's Complaint alleges sufficient facts to state claims of unlawful discrimination based on her protected classes. Contrary to the Defendant's assertions, the Complaint does in fact satisfy the pleading standards established in *Bell Atlantic Corp. V. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal,* 129 S. Ct. 1937 (2009). The Complaint has merit and should stand.

-12-

## A. Defendants Mis-represent Pleading Standard for Discrimination Claims

Defendants' erroneously contend in their motion to dismiss that Plaintiff's Complaint lacks

pleadings of sufficient facts to support a "nexus" between the discriminatory acts of Defendants and

actions that Plaintiff pled regarding the wrongful employment action of depriving Plaintiff the

appropriate employment position, title, pay, and denial to work from home. All such actions have

sufficiently been plead that they were taken against Plaintiff because of her race, color, and national

origin, sex, pregnancy, and for retaliation against Plaintiff for opposing discrimination. Defendants'

motion is based on insufficient pleading pursuant to Fed. R. Civ. P. 8(a). As a result, Defendants'

motion to dismiss must meet the standard for dismissal for failure to comply with Rule 8(a). As the

Court in *Boykin v. KeyCorp* determined:

> "There is no heightened pleading *requirement* for civil rights complaints alleging
> racial animus, *see Phillip v. Univ. of Rochester*, 316 F.3d 291, 298-99 (2d Cir. 2003),
> and this Court has found such claims sufficiently pleaded when the complaint stated
> simply that plaintiffs "are African-Americans, describe[d] defendants' actions in
> detail, and allege[d] that defendants selected [plaintiffs] for maltreatment 'solely
> because of their color.'" Id. at 298. We have upheld the vitality of this principle since
> *Twombly. See Iqbal*, 490 F.3d at 174-75. Here, it is sufficient that Boykin's complaint
> states that she "is an African American female," describes KeyBank's actions with
> respect to her loan application and alleges that she "was treated differently from
> similarly situated loan applicants . . . because of her race, sex, and the location of the
> property in a predominantly African-American neighborhood."

521 F.3d 202, 215 (2d Cir. 2008).

Plaintiff contends that the facts pled are clearly sufficient to establish a cause of action

pursuant to her federal and State discrimination claims as said facts are similar, if not more clear than

to those in *Boykin*. Defendants erroneously attempt to suggest that the Court should apply a

heightened pleading standard to Plaintiff's discrimination claims, an issue which has already been

addressed and resolved as the Second Circuit has stated a heightened pleading standard in light of

-13-

*Twombly* is not required and thus a complaint need only satisfy Fed. R. Civ. P. 8 (a). *Boykin*, 521 F.3d at 213. The flexible plausibility standard only "obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible," and is not applicable to discrimination cases such as Plaintiff's . *Boykin*, 521 F. 3d at 213 (*quoting Iqbal v. Hasty*, 490 F.3d 143, 157-58).

As such, the Court must resist any request that it apply a heightened pleading standard when making a determination regarding Defendants' motion to dismiss.

### B.    Plaintiff has Established the Prima Facie Case for Claims Against H&H

Discrimination claims under Title VII, § 1981, § 1983 and NYSHRL are evaluated using the same analytical framework and therefore are considered within the framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). *Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d. Cir. 2004);  To show a prima facie case within that framework Plaintiff must proffer evidence (1) that she is a member of a protected class, (2) that she is qualified for the position at issue, (3) that she was subject to a materially adverse employment action, and (4) that the circumstances give rise to an inference of invidious discrimination. *Lore v. City of Syracuse*, 670 F.3d 127, 169 (2d Cir. 2012). "A plaintiff may raise such an inference by showing that the employer subjected him to disparate treatment, that is, treated him less favorably than a similarly situated employee outside his protected group". *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000); *See also  International Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n.15, 52 L. Ed. 2d 396, 97 S. Ct. 1843 (1977); *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 95 (2d Cir. 1999) (inference of discrimination arises when individual of one race treated less favorably than those of another race who are similarly situated); *Shumway v.*

*United Parcel Serv., Inc.*, 118 F.3d 60, 63 (2d Cir. 1997) (woman may prove inference of discrimination by showing similarly situated man treated differently); *Montana v. First Federal Sav. & Loan Asso.*, 869 F.2d 100, 106 (2d Cir. N.Y. 1989)(inference of discrimination arises when female employees are treated less favorably than comparable male employees).

### *1. Claims Arising During Plaintiff's Employment with H&H*

Defendants do not dispute that Plaintiff is a member of a protected class as an African-American, qualified for her position, and that Plaintiff was denied her request to work from home because of her pregnancy, which required the reduction of her work schedule to a part-time schedule. Defendants incorrectly contend that Plaintiff fails to raise an inference of discriminatory animus.

"[T]he Second Circuit explained that: what constitutes 'all material respects' therefore varies somewhat from case to case and ... must be judged based on (1) whether the plaintiff and those he maintains were similarly situated were subject to the same workplace standards and (2) whether the conduct for which the employer imposed discipline was of comparable seriousness. In other words, there should be an 'objectively identifiable basis for comparability. Hence, the standard for comparing conduct requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases, rather than a showing that both cases are identical." *Spiegler v. Israel Disc. Bank*, 2003 U.S. Dist. LEXIS 14414, 3-4 (S.D.N.Y. Aug. 19, 2003)(*citing Graham*, 230 F.3d at 40). That an employee's conduct need not be identical to that of another for the two to be similarly situated is also reflected in the language of *McDonnell Douglas*, where the Supreme Court used the phrase "comparable seriousness" to identify conduct that might help to support an inference of discrimination. 411 U.S. 792 at 804. *See also Graham v. Long Island R.R.*, 230 F.3d 34 at 40; *Conward v. Cambridge Sch. Comm.*, 171 F.3d 12, 20 (1st Cir. 1999)(explaining that "reasonableness

-15-

is the touchstone" and recognizing that "the plaintiff's case and the comparison cases . . . need not be perfect replicas").

Defendants disingenuously contend that Plaintiff failed to provide "similarly situated" comparators in her pleadings. This is patently false. Plaintiff presented the names of at least three individuals who were Clinical Supervisors, who were white and non-black, that were allowed to work from alternate clinical locations and did not have to physically be on the unit.

Defendants contend that Plaintiff did not provide enough to determine whether this fact raises an inference of discrimination, however, the comparators do not have to be identical to Plaintiff's circumstances for an inference to arise. It does not matter for what reason the three white and non-black individuals had to work from alternate locations, they were allowed while Plaintiff a seriously pregnant black women was not. Pregnancy is more than a justifiable reason to work from home when the work to be done can be done from a person's home. Furthermore, Plaintiff was forced to accept a reduction of hours to half time. This was done in spite of Plaintiff having a note from a doctor, which stated that Plaintiff was able to work full-time. Defendants instead refused to reasonably accommodate Plaintiff because of her pregnancy and because of the color of her skin, as reasonably inferred by how three white or non black people, employed as Clinical Supervisors like Plaintiff, were allowed to work in alternate locations for any reason they had. Defendants claim that Plaintiff fails to raise even a minimal inference is absurd and ignores the detailed instances of discrimination against Plaintiff.

## 2. *Claims Arising During Plaintiff's Employment with DOC*

Defendants H&H and DOC manipulated and abused the employee-employer relationship with Plaintiff knowingly, causing her irreparable harm when they, including but not limited to, began

-16-

to retaliate against Plaintiff for standing against Discrimination and by diminishing her authority and role as Deputy Commissioner of Health Affairs at DOC. Defendants ignore how H&H discriminated against Plaintiff by and through their agent and employee Defendant Yang.

When Plaintiff did transfer to DOC, her ties with H&H and H&H's ability to harm Plaintiff from a remote distance was not severed. As Plaintiff describes in the Complaint, Plaintiff came to learn that the job at DOC placed her in the position of being the direct liaison for Defendant Patsy Yang and all Health Services on Riker's Island. (**Exh. A, Complaint** ¶ 50). The transfer from H&H to DOC was handled by Defendant City and was a transfer from one New York City Agency to another. (**Exh. A, Complaint** ¶ 51). In February 2016, Plaintiff left H&H and began working at DOC as the Deputy Commissioner of Health Affairs. Plaintiff was required to work collaboratively with H&H which oversees the medical care of the inmates in the DOC's custody. As such, Plaintiff was the first point of contact and direct liaison between H&H and DOC which, unbeknownst to Plaintiff at the time, required her to interact directly with Defendant Yang. (**Exh. A, Complaint** ¶ 52).

Given Defendants Yang's and H&H's involvement in Plaintiff's new job duties and responsibilities at DOC it would be illogical to not attribute the discriminatory and retaliatory acts by Defendant Yang to Defendant H&H. As said in the Complaint, as a result of Plaintiff's complaints against Defendant Yang while at H&H, Defendant Yang began to retaliate against Plaintiff by diminishing Plaintiff's role as the Deputy Commissioner of Health Affairs at DOC. Both Defendant Yang and Defendant MacDonald would limit their interactions with Plaintiff and not communicate with Plaintiff directly regarding inmate health issues at Rikers Island. (**Exh. A, Complaint** ¶ 55). This was only possible to have happened because of the interconnected nature of operations of both agencies, DOC and H&H. This interrelation of operation allowed H&H to have certain control over

-17-

Plaintiff while she was at DOC. As described in her Amended Complaint, Plaintiff's job required communication to and from H&H regarding inmates. However, H&H and Defendant Yang refused to communicate with Plaintiff when needed in retaliation for Plaintiff complaining about discrimination. Such conduct adversely effects the terms and conditions of Plaintiff's employment at DOC.

Since Plaintiff's filing of complaint of discrimination against Defendant Yang and H&H, Defendant Yang took steps to alter the conditions of her employment. Defendant Yang isolated Plaintiff, refused to respond to Plaintiff's requests for resources or answers to certain questions regarding inmates or status or in the alternative, Yang would send a response to another white administrator with the answer rather than communicating directly to Plaintiff causing Plaintiff serious lack of inform and making her job to be more difficult and stressful. No other white executive staff member was treated in this matter by Defendant Yang and condoned by Defendant Jeff Thamkittikasem despite Plaintiff's complaints to him about Defendant Yang. (**Exh. A, Complaint ¶ 87**).

The power H&H had over how to affect Plaintiff's terms of employment with DOC because of the agencies connected nature was tremendous. On June 4, 2018 Plaintiff was asked to attend a Joint Assessment Review (JAR), which is a request by H&H to discuss cases that reflect concerns about service delivery or systems issues, on behalf of the Chief of Staff. These JAR meetings are aligned with the work of the Division of Health Affairs for which Plaintiff was the Deputy Commissioner of Health Affairs. (**Exh. A, Complaint ¶ 88**).

The Board of Correction (BOC) provides oversight to the Department of Correction (DOC). When H&H is on the agenda to present at a BOC public hearing, DOC would receive questions or

comments about the content of H&H's presentation. As Deputy Commission of Health Affairs, Plaintiff is responsible to answer those questions regarding H&H issues that they presented during the hearing. (**Exh. A, Complaint** ¶ 89).

Defendant continued to ignore and isolate Plaintiff. On June 8, 2018, after several ignored emails from Plaintiff for the agenda items to H&H and Defendant Yang, Plaintiff had to obtain the agenda from "Chelsea" who works in City Hall, but was never provided to her by Defendant Yang per the past practice. This caused tremendous stress and anxiety to Plaintiff and her team. (**Exh. A, Complaint** ¶ 90).

On June 14, 2018 Plaintiff received the JAR agenda and cases to discuss from the DOC legal Counsel. The agenda stated that the JAR meeting was scheduled for June 20, 2018. This was not sufficient time to prepare and was giving to Plaintiff late so that she would be unprepared. (**Exh. A, Complaint** ¶ 91).

As Deputy Commissioner of Health Affairs, Plaintiff has always been invited to the JAR meetings prior to her filing an EEOC Charge of discrimination against Defendants. Plaintiff no longer is invited nor provided the information to investigate the issues to be discussed at the meetings. (**Exh. A, Complaint** ¶ 92).

Prior to Plaintiff filing her EEOC Complaint, H&H always shared her BOC agenda items with Plaintiff and she would discuss the concerns and responses with H&H personnel. (**Exh. A, Complaint** ¶ 93).

Said refusal was intentional by Defendant Yang in order to cause Plaintiff to not be able to respond to the BOC staff and at the Public Hearing regarding her Division at Health Affairs. On July 5, 2018 Plaintiff was notified that an inmate had tested positive for Tuberculous and potentially

exposed people from April 6 to May 6, 2018. (**Exh. A, Complaint ¶¶** 94-95).

On July 6, 2018 Plaintiff had several questions about the reasons that it took 3 months for H&H to identify this person as positive and make notification to DOC. Plaintiff made these questions known to the H&H Chief of Medicine, Defendant MacDonald and Defendant Yang's unit. In another adverse employment action, and for no good reason, the Chief and Defendant Yang refused to answer Plaintiff s questions. Plaintiff was forced to contact the NYC Department of Health and was able to receive the answers and a comprehensive history as to why the DOC was not notified earlier. No other white or non-African-American Deputy Commissioners were treated in this fashion. (**Exh. A, Complaint ¶** 96).

As such, several of the acts of discrimination which occurred at DOC and while Plaintiff was employed by DOC were done by Defendant Yang who was the Chief Operating Officer of Correctional Health Services and condoned by and attributed as well to H&H. Plaintiff alleges that Defendant Yang continued the systematic discrimination against Plaintiff which began at H&H through Plaintiff's transfer to DOC and during her time at DOC. Defendant Yang used her power, authority, and duties given to her by H&H to discriminate and retaliate against Plaintiff to harm her. Given the extensive nature of the acts of discrimination and the circumstances surrounding, it would be wholly unfair to dismiss Plaintiff's meritorious claims when she has indeed met the minimal pleading standard.

### C.    Plaintiff Successfully Alleges §1983, SHRL, and CHRL Claims Against Defendants Yang, MacDonald and Murphy

Plaintiff has met the pleading requirements for personal involvement of each individual Defendant as discussed in the **Statement of Facts**, *Supra*, and **POINT IV(D)**, *Infra*. The standard

required to be met here is almost identical to §1983 municipal liability. The sole difference is since the Supreme Court's decision in *Iqbal*, is that claims of invidious discrimination require a plaintiff "must plead that each Government-official Defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. 662.

Plaintiff must also "demonstrate some affirmative link to causally connect the actor with the discriminatory action ... [P]ersonal liability under § 1981 must be predicated on the actor's personal involvement. *Whidbee v. Garzarelli Food Specialties*, 223 F.3d 62, 75 (2d Cir. 2000)(*internal quotation marks omitted*).

Defendants understate the gravity and severity of the circumstances which have led to Plaintiff filing her Complaint with this Court. The facts an circumstances of the discrimination and retaliation Plaintiff faced at DOC and H&H are not as inconsequential as Defendants want it to seem. The totality of the circumstances and the time-line of the discrimination of each Defendants' actions, Yang, MacDonald, and Murphy, must be examined in light of Plaintiff's discussion of discrimination with the EEO on February 4, 2016 and Plaintiff's filing of her EEOC complaint on May 15, 2017.

It was after those events that Defendants Yang, MacDonald, and Murphy began to attempt to diminish Plaintiff's authority, role, function in her position at DOC. Immediately, Defendants Yang and MacDonald took personal actions to exclude Plaintiff from meetings while only meeting with white counterparts discussing important job related matters important to Plaintiff. This form of exclusion is discriminatory on its face and was harmful to Plaintiff. One example of meeting that was not told to Plaintiff concerned a directive by the Board of Correction to engage in a collaborative Health Care Access initiative with Plaintiff. Defendant Yang contacted the white administrator at DOC, Timothy Farrell to execute a portion of the work. Plaintiff was never contacted or included

-21-

in any communication by Defendant Yang until Yang reported to the Board of Correction that the initiative was a failure and falsely attributed the failure to the Plaintiff. (**Exh. A, Complaint** ¶ 57)

On or about April 2016 Defendant Murphy informed Plaintiff that she was not able to have an officer drive for her, even though other white Deputy Commissioners had officers drive for them. Defendant Murphy elaborated to Plaintiff that he was informing her, 'as a friend', that when the officer would open the door for her to get into the vehicle that it was like 'Driving Ms. Daisy' and it 'looked bad'. He also said that staff was 'talking about me [Plaintiff]' and he was 'worried I [Plaintiff] would have a problem'. (**Exh. A, Complaint** ¶ 58). Now Defendants attempt to make it seem that the driving comments are nothing to be bothered about, such comments are demeaning, discriminatory on there face and should be acknowledged as violative of Plaintiff's right to be free from discrimination. Defendant Murphy took personal action to withhold the benefits that Plaintiff's position entitles her to on the basis of her being Black, and that her being driven would not be a good look. All other white people in Plaintiff's similar position had drivers.

From June 4, 2018 through June 14, 2018, Defendant Yang attempted to sabotage Plaintiff's job duties when Plaintiff had to attend the Joint Assessment Review by withholding information from her and refusing to communicate with Plaintiff regarding the information Plaintiff needed. As stated, no other white or non-black person at DOC or H&H was treated this way. Following that, Defendants MacDonald sent disparaging emails to diminish Plaintiff's role at DOC. The emails by Defendant MacDonald had the explicit intention of preventing Plaintiff from performing her role as Deputy Commissioner of Health Affairs while also marginalizing Plaintiff from her peers and supervisors, In effect harming Plaintiff's reputation in a position where reputation of important to performing job duties and tasks.

-22-

For the sake of brevity, Plaintiff directs the Courts attention to specific sections of the Statement of Facts, *Supra*, see section **B, C, D,** and **E** which details and reiterates the instances of Defendants personal involvement in the discriminatory actions leveled against Plaintiff.

Furthermore, Defendants also assert that Plaintiff fails to make a claim for hostile work environment. Defendants again mis-represent the standard and factors fro the Court ot consider when evaluating a claim for hostile work environment. "[W]hether an environment is 'hostile' or 'abusive' can be determined only by **looking at all the circumstances.**" *Harris v. Forklift*, 510 U.S. 17 at 23(*emphasis added*). "These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. The effect on the employee's psychological well-being is, of course, relevant to determining whether the plaintiff actually found the environment abusive. But while psychological harm, like any other relevant factor, may be taken into account, **no single factor is required.**" *Id.* (*emphasis added*). To "establish[] this element, a plaintiff **need not show** that her hostile working environment **was both severe and pervasive; only** that it was **sufficiently severe or sufficiently pervasive**, or a sufficient combination of these elements, to have altered her working conditions." *Pucino v. Verizon Communications, Inc.*, 618 F.3d 112, 119 (2d Cir. 2010)(*emphasis added*)(*see, e.g., Terry v. Ashcroft*, 336 F.3d 128, 148-50 (2d Cir. 2003). The objective hostility of a work environment depends on the totality of the circumstances. "the perspective . . . of a 'reasonable person in the plaintiffs position, considering all the circumstances [including] the social context in which particular behavior occurs and is experienced by its target." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81(1998).

Plaintiff has sufficiently alleged facts to support a hostile work environment toward her

during her time at DOC. As described above, from the outset of **POINT IV(C)**, the acts of repeated violative discriminatory acts and retaliatory actions by Defendants is more than enough to establish that Plaintiff's working conditions were altered, and that it was sufficiently severe or sufficiently pervasive.

### D. Plaintiff Successfully Alleges a §1983 Monell Claim Against CITY, DOC, and H&H

In Point IV, Subsection D, of their Memorandum of Law, Defendants assert that Plaintiff's Section 1983 claims must be dismissed because the Complaint "does not allege facts to support the existence that such a [discriminatory] custom or policy existed." (*See* Def's Memo, Point IV. pgs. 24-25). It appears as though Defendants would like the Court to adopt a standard wherein a Plaintiff can only sufficiently allege policy making authority by meeting a higher burden - which is contrary to the minimal pleading standard under *FRCP* Rule 8.

However, "to prevail in a Section 1983 claim against a municipality, a plaintiff must 'show that the challenged acts were performed pursuant to a municipal policy or custom.'" *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 692-94 (1978). "To show a policy, custom, or practice, the plaintiff need not identify an express rule or regulation." *See, Sorlucco v. New York City Police Department,* 971 F.2d 864, 870 (2d Cir. 1992). "Constitutional deprivations actionable under X 1983 may be 'visited pursuant to governmental 'custom' even though such custom has not received formal approval through the body's official decision-making channels." *Monell,* 436 U.S. at 691. "So long as the practices are persistent and widespread, they "could be so permanent and well settled as to constitute a 'custom or usage' with the force of law," and thereby generate municipal liability. *Sorlucco, supra.*

Furthermore, "even a single action by a decision maker who 'possesses final authority to establish municipal policy with respect to the action ordered,'" is sufficient to implicate the municipality in the constitutional deprivation for the purposes of §1983. *Infra*. With respect to discrimination claims under the equal protection clause, it is sufficient to show, for example, that a discriminatory practice of municipal officials was so "persistent or widespread" as to constitute "a custom or usage with force of law" (*Id.*, at 870-71), or that a discriminatory practice of subordinate employees was "so manifest to imply the constructive acquiescence of senior policy-making officials." (*Id.*).

If, as alleged in Plaintiff's First Amended Complaint herein, a policymaker engages in the discriminatory act(s) complained of, the municipality may be held liable under Section 1983.

Notwithstanding Defendants' attempt to selectively gloss over crucial factual allegations, Plaintiff thoroughly set forth a pattern and practice of discriminatory treatment by the Defendants and through the Defendants' employees. Plaintiff has sufficiently asserted that Defendants DOC, H&H, BRANN, YANG, MACDONALD, THAMKITTIKASEM, and MURPHY are policy makers for the purposes of a Section 1983 claim against Defendant CITY. Moreover, the Complaint at ¶ 175 specifically sets forth, *inter alia*, that:

> Defendants, intentionally and knowingly, as an act of discrimination based on race, color, and/or pregnancy, refused to grant positions and unfairly deny the official designation as Health Service Manager and similar situations to African-American and women employees, such as the Plaintiff, within the DOC and H&H because of their race, color and/or sex/gender. Defendants also retaliated against Plaintiff for her protestations to race, color and/or sex/gender based discrimination.

As per the above statement of facts, and a plain reading of the Complaint, Plaintiff alleges direct personal involvement by each of the aforementioned "policymaking" Defendants with respect

to the discriminatory actions alleged. (*See* above Statement of Facts and the First Amended Complaint). Moreover, examples of such behavior, *inter alia*, by the named Defendants are provided below:

### Policymaker Defendant Yang

Defendant YANG denied Plaintiff the ability to work remotely during her pregnancy, although Defendant YANG permitted other white or non-black employees to perform their duties remotely.

### Policymakers Defendant Yang and Macdonald

Defendants YANG and MACDONALD would limit their interactions with Plaintiff in an effort to not communicate with Plaintiff directly regarding inmate health issues at Riker's Island, which was required by her job duties.

### Policymaker Defendant Murphy

Defendant MURPHY contacted the subordinate of Plaintiff, Captain Nathaniel Bialek, and asked him to report on the activities of the officers in the Health Affairs Divison, specifically the officers that were asked to drive for Plaintiff and that worked on the grant that Plaintiff acquired for DOC. No other white Deputy Commissioners had subordinates contacted in their division and were asked to report on their activities.

### Policymakers Defendants Brann and Thamkittikasem

Defendants BRANN and THAMKITTIKASEM began to treat Plaintiff less favorably than her white counterparts after Plaintiff complained about being marginalized by Defendant YANG. Plaintiff was thereafter refused the title of Deputy Commissioner of Health Affairs despite receiving a 100 on the civil service exam and receiving a notice of hiring, and having her list number called.

### Policymaker Defendant Brann

After Plaintiff filed a complaint with the EEOC, Defendant Brann prevented Plaintiff from participating in the National Organization of Black Law Enforcement Conference in Orlando, Florida wherein she was slated to host a presentation on behalf of the DOC. Instead, Defendant Brann asked a less qualified, white male employee to attend the conference notwithstanding the fact that he was not a doctor. Moreover, the employee elected to not attend the N.O.B.L.E. Conference.

Furthermore, "[i]t is well established in this Circuit that when examining an individual's status as a policymaker under Monell, 'the official in question need not be a municipal policymaker for all purposes'." *Hurdle v. Bd. of Educ. of City of New York*, 113 Fed. Appx. 423, 425 (2d Cir. 2004). "Rather, with respect to the conduct challenged, he must be 'responsible under state law for making policy in that area of the [municipality's business' or must 'have the power to make official policy on a particular issue'." *Id., citing; Jeffes v. Barnes*, 208 F.3d 49, 57 (2d Cir. 2000). "Thus, the court must 'ask whether the government official is a final policy maker for the local government in a particular area, or on the particular issue' involved in the action." *Id., quoting McMillian v. Monroe County, Ala.,*520 U.S. 781, 785 (1997).

Accordingly, the Complaint states sufficient facts to allow the Court to sustain Plaintiff's Section 1983 *Monell* claims against Defendant City.

### CONCLUSION

Based upon the foregoing, the Defendant's Motion to Dismiss the Complaint, should be denied. Moreover, in the event that the Plaintiff's federal and State discrimination claims are deemed to require more specificity, pursuant to Fed. R. Civ. P. 15, Plaintiff respectfully requests the right to amend her pleading, as Plaintiff has shown good faith in her pleading, and can support any allegation

necessary to sustain Plaintiff's claim. Should the Court grant leave to amend the pleadings, we

respectfully request leave be granted to conform to any newly discovered facts and circumstances

obtained from discovery proceedings. However, Plaintiff contends that she has met the pleading

standard and the Court must dismiss Defendants Motion to Dismiss in its entirety.

Dated: Hempstead, New York
      August 15, 2019

Respectfully submitted,

LAW OFFICES OF
FREDERICK K. BREWINGTON

By:

FREDERICK K. BREWINGTON
*Attorneys for Plaintiff*
556 Peninsula Boulevard
Hempstead, New York  11550
(516) 489-6959