UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------X

NICHOLE ADAMS-FLORES, individually and on behalf
of all others similarly situated,

Case No.: 18-CV-12150
(JMF)

Plaintiff,

*-against-*

THE CITY OF NEW YORK, NEW YORK CITY
DEPARTMENT OF CORRECTIONS, HEALTH &
HOSPITAL CORPORATION, CYNTHIA BRANN,
Commissioner of Dept. of Corrections, PATSY YANG,
Chief Operating Officer of Correctional Health Services,
ROSS MACDONALD, Chief of Medicine, JEFF
THAMKITTIKASEM, Former Chief of Staff of Dept. of
Corrections, and MARTIN MURPHY, former Chief of
Department of Dept of Corrections,

Defendants.

-------------------------------------------------------------------------X

## DECLARATION OF FREDERICK K. BREWINGTON
## IN SUPPORT OF PLAINTIFF'S MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE FIRST
## AMENDED COMPLAINT IN PART

I, **FREDERICK K. BREWINGTON**, declare under the pains and penalties of perjury

pursuant to 28 U.S.C. §1746, that the following statememnts are true and correct, to the best of my

knowledge:

1.      I am one of the attorneys representing **PLAINTIFF, NICOLE ADAMS-FLORES**,

I submit this Declaration in support of Plaintiff's Memorandum of Law in Opposition to Defendants'

Motion to Dismiss the First Amended Complaint in Part.

2.      Attached as **Exhibit A** is a true and accurate copy of Plaintiff's First Amended

Complaint.

3.    Attached as **Exhibit B** is a true and accurate copy of Plaintiff's EEOC Dismissal and

Notice of Rights.

Dated: Hempstead, New York
        August 15, 2019

                              Respectfully submitted,

                              LAW OFFICES OF
                              FREDERICK K. BREWINGTON

        By:

                              FREDERICK K. BREWINGTON
                              *Attorneys for Plaintiff*
                              556 Peninsula Boulevard
                              Hempstead, New York 11550
                              (516) 489-6959

# Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------X

NICHOLE ADAMS-FLORES
individually and on behalf of all others similarly situated,

Plaintiff,

Case No. 18-CV-12150(JMF)

-against-

PLAINTIFF'S FIRST
AMENDED COMPLAINT
WITH JURY DEMAND

THE CITY OF NEW YORK, NEW YORK CITY
DEPARTMENT OF CORRECTIONS, HEALTH
& HOSPITAL CORPORATION, CYNTHIA
BRANN, Commissioner of Dept. of Corrections,
PATSY YANG, Chief Operating Officer of Correctional
Health Services, ROSS MACDONALD, Chief of Medicine,
JEFF THAMKITTIKASEM, Former Chief of Staff of Dept.
of Corrections, and MARTIN MURPHY, former
Chief of Department of Dept of Corrections.

Defendants.

-----------------------------------------------------------------------X

NICHOLE ADAMS-FLORES, by and through her attorneys, the LAW OFFICES OF

FREDERICK K. BREWINGTON, as and for her First Amended Complaint, against the Defendants,

the City of New York, New York City Department of Corrections, Cynthia Brann, Commissioner,

Patsy Yang, Chief Operating Officer of Correctional Health Services, Jeff Thamkittikasem, Former

Chief of Staff, and Martin Murphy, former Chief of Department (collectively, "Defendants") states

and alleges as follows:

## PRELIMINARY STATEMENT

1.     This action is hereby commenced for the purpose of seeking to secure protection of,

and to redress the deprivation of rights secured and protected by the United States Constitution, Title

VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 1983, 42 U.S.C. § 1981, New York

State Executive Law §§ 296, et seq. and the New York City Human Rights Law, N.Y.C. Administrative Code §§ 8-107, et seq., providing for relief from the above-captioned Defendants' unlawful employment practices of engaging in discrimination based upon Plaintiff's race, color and national origin, pregnancy, gender, for retaliation against Plaintiff for engaging in the protected activity of formally complaining of said discrimination, and the creation of a hostile work environment which Plaintiff was forced to endure. This action also seeks to vindicate the rights of Plaintiff, an African American Executive Staff of the New York City Department of Corrections ("DOC") who was subjected to adverse employment conditions based upon her race and color, gender, pregnancy as well as her staunch refusal to engage in the prevalent corruption, falsification and manipulation of data within Rikers Island, for which the Plaintiff suffered a disparate impact when compared with similarly situated non-African American employees.

      2.      Specifically, the Plaintiff alleges that the collective Defendants engaged in discrimination and retaliation and negligently, wantonly, recklessly, intentionally and knowingly sought to and did wrongfully deprive Plaintiff of the appropriate employment position and title and pay through acts that were taken against Plaintiff because of her race, color, and national origin, sex, pregnancy, and for retaliation against Plaintiff for opposing discrimination. These acts resulted in misrepresentation, misinformation, harassment, character assassination, negative impact regarding Plaintiff's, humiliation, embarrassment, depravation of job opportunities, permanent injury and harm and other results which continue to mount.

      3.      As set forth more fully below, Plaintiff alleges in this action that Defendants the City of New York ("City") and Health & Hospital Corporation, the individually-named Defendants, as current and former DOC Executive Staff, have engaged in a pattern and practice of race and

2

pregnancy discrimination and retaliation based upon, inter alia: 1) failure to provide Plaintiff, an African American supervisor with the appropriate equipment resources that were provided to similarly-situated, non-African American employees; 2) the marginalization of Plaintiff by Defendants; and 3) the disparate impact upon the Plaintiff, an African American, who refused to take part in the systemic corruption and falsification tactics undertaken by Defendants.

4.     For years, Defendants have engaged in a pattern and practice of systemic, continuous, and intentional discrimination against African American administrative and management employees in job placement, advancement opportunities, and compensation decisions. Defendants have denied African Americans the same advancement opportunities as have been afforded to non-African Americans. This broad pattern of racial discrimination has resulted in a far less percentage of African American Executive Staff members at the DOC as compared to other City government agencies.

5.     Despite repeated attempts by Plaintiff, and other similarly situated African American supervisory employees, 1) to curtail this severe and pervasive discrimination, and 2) refusal to undertake in the falsification and manipulation of facts regarding violence within Rikers Island by, inter alia, reporting the repeated instances of discrimination and corruption to her supervisors, the Office of Equal Employment Opportunity, and DOC Executive Staff, Defendants utterly failed to take appropriate corrective actions and permitted the hostile work environment to persist unabated during her employment.

6.     The African American Executive Staff members all suffered a similar fate when they voiced her concerns to Defendants: Her complaints were wholly ignored, her authority and decision-making responsibilities were minimized, her equipment, fiscal, and personnel resources

3

were severely restricted, and/or her voices were completely stifled as they were forced to retire, resign or endure a retaliatory and hostile work environment.

7. Plaintiff alleges that the collective Defendants, directly acted and/or allowed its agents, employees, representatives and/or officers to act maliciously and unconstitutionally, enacting discriminatory policies, which caused Plaintiff to suffer the following injuries:

- Violations of her various statutory rights, including those protected by the American with Disabilities Act, 42 U.S.C. §12101, Title VII of the Civil Rights Act of 1964, Article 15 of the Executive Law of the State of New York (Human Rights Law) §§ 290 and 296, N.Y.C. Administrative Code §§ 8-107, et seq.;

- Violations of her Constitutional rights under the Fourteenth Amendment to the United States Constitution (Fourteenth Amendment) in violation of 42 U.S.C. § 1983, and violations of 42 U.S.C. § 1981;

- Complete, temporary, or partial loss of reputation;

- Loss of benefits and pay;

- Prolonged alteration of employment and/or temporary/partial alteration of employment opportunities; and

- Diminished capacity, incurring special, monetary, and compensatory damages.

8. Said acts were done knowingly with the consent and condonation of THE CITY OF NEW YORK, NEW YORK CITY DEPARTMENT OF CORRECTIONS, HEALTH & HOSPITAL CORPORATION, CYNTHIA BRANN, Commissioner of Dept. of Corrections, PATSY YANG, Chief Operating Officer of Correctional Health Services, ROSS MACDONALD, Chief of Medicine, JEFF THAMKITTIKASEM, Former Chief of Staff of Dept. of Corrections, and MARTIN MURPHY, former Chief of Department of Dept of Corrections with the express purpose of targeting, injuring and silencing the Plaintiff, and generally violating her rights as protected by the United States and New York State Constitutions, and federal and state statutes, rules and regulations.

4

9. Plaintiff brings this action on behalf of herself and all other similarly situated supervisory employees. Plaintiff herein claims that the DOC's pattern and practice of discrimination based upon race, gender, and pregnancy, violates Title VII, 42 U.S.C. § 2000e et seq., 42 U.S.C. § 1983, Section 296 of the New York Executive Law, and Section 8-107 of the New York City Administrative Code.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over Plaintiff s Federal claims pursuant to 28 U.S.C. § 1331 and 42 U.S.C. §§ 2000e-5(f)(1 ), 5(f)(3) and supplemental jurisdiction over the state and city law claims pursuant to 28 U.S.C. § 1367.

11. As the Southern District is the District wherein a substantial part of the events giving rise to the instant claims occurred, venue is proper pursuant to 28 U.S.C. § 1391(a)(2).

12. Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") complaining of race and color discrimination, retaliation, and creation of a hostile work environment, inter alia, as further alleged in this Complaint.

13. On September 21, 2018, Plaintiff received two Notices of Right to Sue Within 90 Days, issued by the U.S. Department of Justice with regard to EEOC Charge Nos. 520-2017-02495 and 520-2018-02104. As of the filing of the original complaint, ninety days from the date of receipt of the Notice of Right to Sue had not yet passed.

## PARTIES

14. Plaintiff Nichole Adams-Flores is and African-American woman, and served as the Deputy Commissioner for Health Affairs of New York City Department of Corrections DOC from February 2016 to March 2019. As Deputy Commissioner of Health Affairs, Plaintiff

5

among other duties, was responsible for oversight, directing and managing the planning, development implementation of programs and health care services to the inmate population. Develop and implement a wide range of planning initiatives for the department's operations. responsible for managing the planning, development and implementation of programs and health care services to the inmate population..

15.    Plaintiff was also required to work collaboratively with NYC Health & Hospital Corporation (H&H) which delivers and oversees the medical care of the inmates in the DOC's custody. As such, Plaintiff was the first point of contact and direct liaison between H&H and DOC.

16.    The City of New York ("City") was and is a municipality of the State of New York. Upon information and belief, the CITY oversees, maintains, manages/supervises, and controls several departments, agencies and employees- including but not limited to the Department of Corrections ("DOC"),   HEALTH & HOSPITAL CORPORATION ("H&H"), CYNTHIA BRANN, PATSY YANG, ROSS MACDONALD, JEFF THAMKITTIKASEM, and MARTIN MURPHY, and was and is the employer of members of the DOC and H&H. CITY is an employer within the definition of the New York State Executive Law, Title VII and the New York City Human Rights Law and employs well over 15 employees. is a municipal corporation existing by the virtue of the laws of the State of New York. The City, through the Department of Corrections ("DOC") and Health and Hospitals ("H&H") maintains a policy and practice of discrimination against African American employees, including the creation of a disparate impact against the African Americans.

17.    The City is liable for the discrimination suffered by Plaintiff and similarly situated

6

African American employees.

18.     Cynthia Brann is a white female and was named Commissioner of the DOC in October 2017 and sued here in her individual and in her official capacity. Prior to her appointment, Defendant Brann served as the Deputy Commissioner of Quality Assurance and Integrity for the DOC. At all times relevant herein, Defendant Brann served under the executive direction of former DOC Commissioner Joseph Ponte.

19.     Specific to the allegations contained herein of discrimination, including disparate impact, Defendant Brann was responsible for reviewing and evaluating compliance issues within the DOC and ensuring that subordinate supervisory staff, management, and employees were in compliance with the rules and regulations of regulatory agencies, including but not limited to the Federal government oversight implemented by the United States Attorney's Office for the Southern District of New York, and the DOC's policies and procedures. Defendant Brann was also responsible for responding to alleged violations of DOC rules, regulations, policies, procedures, and standards of conduct by evaluating and/or recommending the initiation of investigative procedures, developing and overseeing a system for handling compliance violations, and monitoring and coordinating compliance activities.

20.     It is alleged herein that Defendant Brann was acting in furtherance of the scope of her employment, acting under color of law, to wit under color of statutes, ordinances, regulations, policies, customs and usages of the State of New York and/or the CITY OF NEW YORK, and willfully, wantonly and/or negligently failed to carry out the aforementioned duties and responsibilities, thereby resulting in the existence and proliferation of a pattern and practice of race and color discrimination, retaliation, and hostile work environment within DOC, including

7

disparate impact.

21.    Patsy Yang is an Asian American female and at all relevant times is the Senior Vice President of Correctional Health Services for Health & Hospital Corporation and sued here in her individual and in her official capacity. As V.P. of Correctional Health Services, she is responsible for all medical and mental health services and the health care operations that are implemented in the New York City Department of Correction.

22.    Specific to the allegations contained herein of discrimination, including disparate impact, Defendant Yang, and/ or her designee and/ or her title was responsible for reviewing and evaluating health care issues and communicating those concerns to the Deputy Commissioner for Health Affairs (Plaintiff) as was past practices with the previous Deputy Commissioner for Health Affairs, who was a white male. Defendant Yang was also responsible for addressing alleged violations of health care practices and communicating those concerns to the Department of Correction via the DOC designee, Deputy Commissioner for Health Affairs (Plaintiff).

23.    It is alleged herein that Defendant Yang was acting in furtherance of the scope of her employment, acting under color of law, to wit under color of statutes, ordinances, regulations, policies, customs and usages of the State of New York and/or the CITY OF NEW YORK, and willfully, wantonly and/or negligently failed to carry out the aforementioned duties and responsibilities, thereby resulting in the existence and proliferation of a pattern and practice of race and color discrimination, retaliation, and a hostile work environment within DOC, including disparate impact.

24.    Ross MacDonald is a white male who is the Chief Medical Officer of Correctional

8

Health Services, a position he has held since June of 2017 until present, and sued here in his individual and in his official capacity. Prior to this role, he served as Chief of Service for Correctional Health Services from August 2015 until June of 2017.

25. As Chief Medical Officer, Defendant MacDonald has direct supervisory oversight for medical and mental health service delivery. Defendant MacDonald communicates relevant information to support the care and treatment of detainees to appropriate DOC staff, namely, the Deputy Commissioner for Health Affairs, consistent with past practice.

26. It is alleged herein that Defendant MacDonald was acting in furtherance of the scope of her employment, acting under color of law, to wit under color of statutes, ordinances, regulations, policies, customs and usages of the State of New York and/or the CITY OF NEW YORK, and willfully, wantonly and/or negligently failed to carry out the aforementioned duties and responsibilities, thereby resulting in the existence and proliferation of a pattern and practice of race and color discrimination, retaliation, and a hostile work environment within DOC, including disparate impact against Plaintiff.

27. Jeff Thamkittikasem is an Asian American male who was the Chief of Staff of the DOC, a position he has held since November 2014 to 2018 per assignment from Mayor Bill de Blasio, despite having no prior corrections experience and is sued here in his individual and in his official capacity.

28. As Chief of Staff, Defendant Thamkittikasem acted as the Commissioner's representative to the uniformed Command Staff, the members of DOC's Executive Staff and to external personnel within the New York City Health & Hospital Corporation, specifically Defendant Patsy Yang. Defendant Thamkittikasem advised the Commissioner on program and

9

policy matters, managed high priority projects, and oversaw the day to-day operations of the
Office of the Commissioner which includes the Health Affairs Division of DOC.

29.     It is alleged herein that Defendant Thamkittikasem was acting in furtherance of
the scope of his employment, acting under color of law, to wit under color of statutes,
ordinances, regulations, policies, customs and usages of the State of New York and/or the CITY
OF NEW YORK, and willfully, wantonly and/or negligently failed to carry out the
aforementioned duties and responsibilities, thereby resulting in the existence and proliferation of
a pattern and practice of race and color discrimination, retaliation, and a hostile work
environment within DOC, including disparate impact against Plaintiff.

30.     Martin Murphy is a white male and was the Chief of the Department of the DOC
from February 2015 until June 2017 when he retired and is sued here in his individual and in his
official capacity.

31.     As Chief of the Department, Defendant Murphy supervised the uniformed
members of service in the DOC, including Assistant Chiefs, Wardens, Deputy
Wardens-In-Command, Deputy Wardens, Assistant Deputy Wardens, Captains, and Correction
Officers. Defendant Murphy also was responsible for approving promotions and job assignments
of the uniformed staff throughout the DOC.

32.     Specific to the allegations contained herein of discrimination, including disparate
impact, Defendant Murphy was responsible for reviewing and evaluating compliance issues
within the DOC and ensuring that subordinate supervisory staff, management, and employees
were in compliance with the rules and regulations of regulatory agencies, including but not
limited to the Federal Government oversight implemented by the United States Attorney's Office

10

for the Southern District of New York, and the DOC's policies and procedures. Defendant

Murphy was also responsible for responding to alleged violations of DOC rules, regulations,

policies, procedures, and standards of conduct by evaluating and/or recommending the initiation

of investigative procedures, developing and overseeing a system for handling compliance

violations, and monitoring and coordinating compliance activities.

33.    It is alleged herein that Defendant Murphy was acting in furtherance of the scope

of his employment, acting under color of law, to wit under color of statutes, ordinances,

regulations, policies, customs and usages of the State of New York and/or the CITY OF NEW

YORK, and willfully, wantonly and/or negligently failed to carry out the aforementioned duties

and responsibilities, thereby resulting in the existence and proliferation of a pattern and practice

of race and color discrimination, retaliation, and a hostile work environment within DOCS,

including disparate impact against Plaintiff.

## INTRODUCTORY ALLEGATIONS

34.    At all relevant times, the DOC comprised approximately ten thousand four hundred

(10,400) employees, eighty (80) of which were administrators and managers.

35.    The supervisory positions of administrators and managers are divided into uniformed

titles and civilian titles.

36.    The uniformed titles include Chief of Department, Warden, Deputy

Warden-In-Command, and Deputy Warden, inter alia.

37.    The civilian titles include Commissioner, First Deputy Commissioner, Deputy

Commissioner, Associate Commissioner, and Assistant Commissioner.

38.    The Executive Staff is comprised of the Commissioner, First Deputy Commissioner,

11

Senior Deputy Commissioner, Chief of Staff, Deputy Commissioner of Financial, Facility and Fleet Administration, Deputy Commissioner for Legal Matters/General Counsel, Deputy Commissioner of Public Information, First Deputy Commissioner of Human Resources, Deputy Commissioner of Youthful Offender and Young Adult Programming, Deputy Commissioner for the Office of Classification and Population Management, Deputy Commissioner of Adult Programming and Community Partnerships, Deputy Commissioner of Quality Insurance and Integrity, Chief Information Officer/Deputy Commissioner of Information Technology, Deputy Commissioner of Health Affairs, and Deputy Commissioner for Investigation Division.

39. At all relevant times, a disproportional percentage of African Americans were afforded the opportunity of obtaining Executive Staff positions.

40. Unlike non-African American supervisors, the few African Americans who do hold supervisory positions have their authority circumvented, marginalized, and usurped, are denied promotions and the opportunity to move up in the ranks, and/or are threatened with demotion if they fail to resign.

41. A New York City Government Workforce Profile Report shows that, at times relevant to this Amended Complaint, "Black" employees held only approximately thirty (30%) of the managerial positions within the DOC, despite over seventy-five percent (75%) overall "Black" employment.

42. The culture, policies, and practices that have caused the DOC to under-promote and marginalize African Americans has resulted in systemic and continuing racial discrimination, including disparate impact, in hiring, advancement, and pay decisions against African Americans employed by the DOC.

12

## FACTUAL ALLEGATIONS

43.     Plaintiff, Nichole Adams-Flores has earned multiple degrees, including a Doctorate of Psychology in School/Community Psychology- Hofstra University May 2004; Master of Science in General Psychology- Hofstra University December 1999; Master of Arts in Administration and Supervision- Touro College December 2005; Master of Arts in Counseling Psychology- Howard University May 1998; and a Bachelor of Science in Psychology- Howard University May 1996. She received Board Certification from the American Board of Professional Psychology in 2013. She is a Licensed and Registered Psychologist and teaches both graduate and undergraduate students in Psychology since 2008.

44.     In January 2016 while Plaintiff worked at Health & Hospital Corporation/Corizon (H&H), she made a request for a reasonable accommodation to work from home while on bed rest to Defendant Patsy Yang just prior to coming to work at the DOC due to her pregnancy. Said request was denied by Defendant Yang and Plaintiff was not allowed to remain on full time status.

45.     Plaintiff was forced to accept a reduction of hours to half time and could not work from home.

46.     On January 25, 2016 Plaintiff objected to Defendant Yang's decision and stated in an email that the accommodation was short term and that she told Human Resources "I feel that the only thing that would allow me to work full time is not being pregnant."

47.     Plaintiff's work as a clinical supervisor was able to be conducted remotely and in an administrative trailer not located in one of the jails on Riker's Island. Furthermore, Plaintiff had received medical clearance to work full time by her doctor. This was known by Defendant Yang.

13

48.     Plaintiff's prior supervisor at H&H, Mark Fleming, had authorized Plaintiff to work full time without having to be present in the jails during her pregnancy.

49.     Other clinical supervisors who were white or non-black were allowed to perform their duties at H&H by Defendant Yang from alternate clinical locations and did not have to physically be on the unit, for example: Dr. Camerano, Dr. Georgolius and Dr. Ho.

50.     On or about January 29, 2016, Plaintiff was offered the position of Deputy Commissioner for Health Affairs at the Department of Corrections. Plaintiff came to learn that this job placed her in the position of being the direct liaison for Defendant Patsy Yang and all Health Services on Riker's Island.

51.     The transfer from H&H to DOC was handled by Defendant City and was a transfer from one New York City Agency to another.

52.     In February 2016, Plaintiff left H&H and began working at DOC as the Deputy Commissioner of Health Affairs. Plaintiff was required to work collaboratively with H&H which oversees the medical care of the inmates in the DOC's custody. As such, Plaintiff was the first point of contact and direct liaison between H&H and DOC which, unbeknownst to Plaintiff at the time, required her to interact directly with Defendant Yang.

53.     In or about February 4, 2016 the processing of the transfer of Plaintiff from H&H to DOC, Plaintiff communicated with EEO during which she complained and raised concerns as to why her salary was reduced and how her treatment by Defendant Yang at H&H would impact her work and position with DOC.

54.     In or about February 23, 2016 Human Resources at the Department of Corrections processed Plaintiff's transfer paperwork and at that time encouraged Plaintiff to take a Civil Service

14

Examination as soon as possible. They explained to Plaintiff that her current job was an appointed position and that she needed a civil service title to have some form of job security.

55.      As a result of Plaintiff s complaints against Defendant Yang while at H&H, Defendant Yang began to retaliate against Plaintiff by diminishing Plaintiff s role as the Deputy Commissioner of Health Affairs at DOC. Both Defendant Yang and Defendant MacDonald would limit their interactions with Plaintiff and not communicate with Plaintiff directly regarding inmate health issues at Rikers Island.

56.      Defendant Yang continued to hold meetings with DOC white administrators, Warden Barnes and Jeff Thamkittikasem, and exclude Plaintiff. Plaintiff only becomes aware of these meetings after the meetings have already taken place. Such conduct adversely effects the terms and conditions of Plaintiff s employment at DOC.

57.      One example of meeting that was not told to Plaintiff concerned a directive by the Board of Correction to engage in a collaborative Health Care Access initiative with Plaintiff. Defendant Yang contacted the white administrator at DOC, Timothy Farrell to execute a portion of the work. Plaintiff was never contacted or included in any communication by Defendant Yang until Yang reported to the Board of Correction that the initiative was a failure and falsely attributed the failure to the Plaintiff.

58.      On or about April 2016 Defendant Murphy informed Plaintiff that she was not able to have an officer drive for her, even though other white Deputy Commissioners had officers drive for them. Defendant Murphy elaborated to Plaintiff that he was informing her, 'as a friend', that when the officer would open the door for her to get into the vehicle that it was like 'Driving Ms. Daisy' and it 'looked bad'. He also said that staff was 'talking about me [Plaintiff]' and he was 'worried I

15

[Plaintiff] would have a problem'.

59.     Defendant Murphy contacted the subordinate of Plaintiff, Captain Nathaniel Bialek, and asked him to report on the activities of the officers in the Health Affairs Division, specifically the officers that were asked to drive for Plaintiff and that worked on the grant that Plaintiff acquired for DOC. No other white Deputy Commissioners had subordinates contacted in their division and were asked to report on their activities.

60.     On or about May 15, 2017 Plaintiff filed an EEO Complaint with DOC.

61.     In further retaliation for having complained about being marginalized by Defendant Yang, Plaintiff began to be treated less favorably then her white counterparts by Defendants Brann and Thamkittikasem. The DOC Commissioner and Chief of Staff refused to give Plaintiff a permanent civil service title as the Deputy Commissioner of Health Affairs despite receiving a 100 on the civil service exam and receiving a notice of hiring pool letter on or about July 12, 2017 telling Plaintiff how to proceed to get the permanent civil service title and having her list number called.

62.     On or about March 2016 Plaintiff took Exam # 6047 000 for Exam Title: "Health Services Manager".

63.     On June 8, 2017 Plaintiff was notified by NYC Citywide Administrative Services that she scored a perfect score of 100% on the exam and was given a list number of 187.

64.     On July 15, 2017 Plaintiff received a "Notice of Hiring Pool" from NYC Department of Health and Mental Hygiene (DOHMH) informing her that she was certified by Citywide Administrative Services to the Department of Health and Mental Hygiene that she was eligible for the permanent position of civil service title "Health Service Manager" and instructions to report to Citywide Administrative Services office.

16

65.     On or about July 21, 2017 Plaintiff requested Defendant Brann to transfer the title of Health Service manager from DOHMH to the DOC on her behalf. Defendant Brann said she needed to follow up with Defendant Thamkittikasem and that Plaintiffs job was an "at will position".

66.     On July 24, 2017 Plaintiff spoke with Deputy Commissioner Human Resource, Nadene Pinnock, about the permanent title of "Health Service Manager" at DOC and was told that there was a budget issue.

67.     Subsequently, Plaintiff was informed by the Deputy Commissioner of Finance, Frank Doka, that the transfer of a permanent title was not a budget issue and Dina Simon, who served as both the former First Deputy Commissioner and Deputy Commissioner of Human Resources for DOC, informed Plaintiff that the awarding of the permanent civil service titles was a standard practice that happens routinely and does not impact incoming administrations and is not within the purview of the Chief of Staff as she was told by DOC HR personnel.

68.     On or about July 26, 2017 Plaintiff went to the Citywide Administrative Services office in Long Island City for an interview.

69.     On July 26, 2017 Plaintiff asked Defendant Brann to complete the form DP-72 to allow her Health Service Manager Title to DOC.

70.     On July 27, 2017 Plaintiff complained and informed EEO that she believed that DOC was retaliating against her by not transferring the Health Service Manager Title, as they had done for other white supervisors.

71.     On July 31, 2017, Defendant Brann informed Plaintiff that she would provide a written response to the request that she execute the DP-72 form.

17

72. In an act of clear retaliation, on August 1, 2017 Defendant Brann, after speaking with Defendant Thamkittikasem, sent me a letter which stated that she refused to honor Plaintiff's request to 'pick up' the title of Health Service Manager and allow Plaintiff to serve in that title 'on leave'.

73. White Deputy Commissioners and Assistant Deputy Commissioners (Example: Frank Doka, Patricia Lyons, Joseph Antonielli, James Walsh, and Eric Berliner) have received the permanent civil service titles in the past and continue to receive them throughout DOC with lesser scores on the exam.

74. On August 1, 2017, a press release was scheduled to be released to outline my accomplishments as Deputy Commissioner. However, in another act of discrimination and retaliation, Defendant Brann prevented the release and provided and order to the public information personnel that the release not be issued.

75. On or about September 15, 2017 EEO sent to Plaintiff a copy of a Word document and inquired of Plaintiff if she had ever seen it before or signed it. Plaintiff informed EEO that she had never seen the document before and that she had certainly never signed it. The EEO personnel explained that Defendant Thamkittikasem informed them the document was a performance improvement plan that Plaintiff had been place on. This was false and a total fabrication.

76. On October 1, 2017, Plaintiff filed a complaint with the Equal Employment Opportunity Commission (EEOC).

77. On or about December 11, 2017, after nearly four months of refusal to do so, the DP 72 to transfer the Health Service Manager title to DOC was signed. No reason or rationale was provided for the sudden change by Defendants.

18

78. On or about December 22, 2017, EEO summarily closed Plaintiff's complaint of discrimination and retaliation for not transferring the title to DOC without making a finding if the action to deny Plaintiff's request was improper in the first place. This practice of avoiding making findings on complaints of discrimination and retaliation is, upon information and belief, an ongoing pattern and practice by EEO.

79. In January 2018 Defendant Yang excluded Plaintiff from a Joint Assessment Review meeting which directly reviews Health Care Case issues on Rikers Island.

80. In February of 2018 and only after Plaintiff filed an EEO complaint, and the EEO office contacted DOC was Plaintiff finally given her permanent civil service title which protects her position within DOC. However, the title was placed on leave with a 20% decrease in her current salary. Although this was permissible under DCAS rules, no other white Deputy Commissioner had their title decreased when their civil service title was transferred to them.

81. On or about February 12, 2018, Human Resources sent Plaintiff a Civil Services appointment letter stating that her appointment began on September 11, 2017 which was back dating the appointment by a month before the filing of Plaintiff's complaint with the EEOC.

82. In September 2018 Plaintiff filed a complaint with the Inspector General to investigate if H&H was conducting unauthorized researches on inmates without the inmates' informed consent and the consent of the Commissioner. Plaintiff believed that if this was being done that any such actions were illegal.

83. Plaintiff learned that white males and females that work at DOC with the same position as Deputy Commissioner have received a higher salary then she does with fewer qualifications. (Maureen Danko, Timothy Farrell, Mike Tausek, Dail Lawrence- No person has 3

19

Master's Degrees, No person has a combined Doctorate in their area of expertise. No person authored and was awarded a $250,000 grant to support the work of the Department.

84.    In November 2018, Chief of Staff, Brenda Cooke, directed the Plaintiff s data team to change the data that her division, Health Affairs, accumulates and records to match that of H&H so that the Mayor's Office will not ask any questions. Plaintiff has refused to do so.

85.    This caused Plaintiff tremendous stress and anxiety resulting in Plaintiff having to be under the care of a cardiologist.

86.    After Plaintiff filed her EEOC Complaint, Plaintiff has been marginalized as the Deputy Commissioner of Health Affairs for DOC affecting the ability to perform her job and responsibilities at DOC.

87.    Since Plaintiff's filing of complaint of discrimination against Defendant Yang, Defendant Yang too steps to alter the conditions of her employment. Defendant Yang isolated Plaintiff, refused to respond to Plaintiff s requests for resources or answers to certain questions regarding inmates or status or in the alternative, Yang would send a response to another white administrator with the answer rather than communicating directly to Plaintiff causing Plaintiff serious lack of inform and making her  job to be more difficult and stressful. No other white executive staff member was treated in this matter by Defendant Yang and condoned by Defendant Jeff Thamkittikasem despite Plaintiff's complaints to him about Defendant Yang.

88.    On June 4, 2018 Plaintiff was asked to attend a Joint Assessment Review (JAR), which is a request by H&H to discuss cases that reflect concerns about service delivery or systems issues, on behalf of the Chief of Staff. These JAR meetings are aligned with the work of the Division of Health Affairs for which Plaintiff is the Deputy Commissioner of Health Affairs.

20

89.     The Board of Correction (BOC) provides oversight to the Department of Correction (DOC). When H&H is on the agenda to present at a BOC public hearing DOC would receive questions or comments about the content of H&H's presentation. As Deputy Commission of Health Affairs, Plaintiff is responsible to answer those questions regarding H&H issues that they presented during the hearing.

90.     Defendant continued to ignore and isolate Plaintiff. On June 8, 2018, after several ignored emails from Plaintiff for the agenda items to H&H and Defendant Yang, Plaintiff had to obtain the agenda from "Chelsea" who works in City Hall, but was never provided to her by Defendant Yang per the past practice. This cause tremendous stress and anxiety to Plaintiff and her team.

91.     On June 14, 2018 Plaintiff received the JAR agenda and cases to discuss from the DOC legal Counsel. The agenda stated that the JAR meeting was scheduled for June 20, 2018. This was not sufficient time to prepare and was giving to Plaintiff late so that she would be unprepared.

92.     As Deputy Commissioner of Health Affairs, Plaintiff has always been invited to the JAR meetings prior to her filing an EEOC Charge of discrimination against Defendants. Plaintiff no longer is invited nor provided the information to investigate the issues to be discussed at the meetings.

93.     Prior to Plaintiff filing her EEOC Complaint, H&H always shared her BOC agenda items with Plaintiff and she would discuss the concerns and responses with H&H personnel.

94.     Said refusal was intentional by Defendant Yang in order to cause Plaintiff to not be able to respond to the BOC staff and at the Public Hearing regarding her Division at Health Affairs.

21

95.     On July 5, 2018 Plaintiff was notified that an inmate had tested positive for Tuberculous and potentially exposed people from April 6 to May 6, 2018.

96.     On July 6, 2018 Plaintiff had several questions about the reasons that it took 3 months for H&H to identify this person as positive and make notification to DOC. Plaintiff made these questions known to the H&H Chief of Medicine, Defendant MacDonald and Defendant Yang's unit. In another adverse employment action, and for no good reason, the Chief and Defendant Yang refused to answer Plaintiff s questions. Plaintiff was forced to contact the NYC Department of Health and was able to receive the answers and a comprehensive history as to why the DOC was not notified earlier. No other white or non-African-American Deputy Commissioners were treated in this fashion.

97.     On July 6, 2018 Defendant MacDonald sent an email to several peers and supervisor of the Plaintiff with the explicit intention of preventing her from executing her role and Deputy Commissioner for Health Affairs while demeaning and marginalizing her to peers and supervisors. This is another example of the severe and pervasive hostile treatment and micro aggressions that have cause anxiety and stress to the work of Health Affairs. The previous white Deputy Commissioner for Health Affairs, Eric Berliner, was never treated in this fashion.

98.     Plaintiff, a Black female, and another female were supposed to attend an important conference in Orlando, Florida in January 2018 - National Organization of Black Law Enforcement (N.O.B.L.E.). Plaintiff was the one who authored and designed the mental health segment presentation for her skill set and area of expertise. However, in an act of retaliation and due to the filing of the EEOC charges, Plaintiff was subsequently denied the benefit to travel to the conference and a less qualified white male (John Gallagher) was told to attend by Defendant Brann (Caucasian).

22

The white male (John Gallagher) never went to Florida despite Plaintiff's availability. The white male that Defendant Brann asked to present Plaintiff's authored materials was not qualified as a doctor or mental health expert. This was known and condoned by Defendant Brann.

99.     Plaintiff was the original Presenter/Speaker and was placed on the list of Presenters by the American Correctional Association (ACA). In the same manner of the aforementioned conference, however, due to the filing of the EEOC charges, Plaintiff was subsequently denied the benefit to travel to the conference and a less qualified white male was told to attend by Defendant Brann (White). Even after the conference organizers reached out to the Defendant Brann and specifically requested the Plaintiff's attendance, Defendant Brann still opted to send a less qualified white male. The white male that Defendant Brann asked to present Plaintiff's authored materials was not qualified as a doctor or mental health expert. This was known by Defendant Brann. These blatant adverse employment actions by Defendant Brann and the NYC DOC have damaged Plaintiff's professional reputation with the ACA and N.O.B.L.E.

100.    On or about April 2017 Captain Carolyn Lewis, a member of N.O.B.L.E. and employee of DOC, had approached the Defendant Brann to ask her to have the DOC submit to N.O.B.L.E. a presentation in the form of a panel discussion that had experts from the agency.

101.    On April 27, 2018, Plaintiff was told by Captain Lewis at a DOC meeting that she had received an email from Defendant Brann's executive assistant stating that the two African American professionals (Plaintiff and Chief Maxoline Mingo), would not be able to attend the conference. When Captain Lewis explained to Defendant Brann's assistant that she had submitted their resumes and names which was how the conference was approved, and that DOC needed to have some of the original panel members participate, the executive assistant responded that Plaintiff

23

would not be approved to attend, but that Chief Stukes could attend per Defendant Brann's directive.

102.    This was a panel discussion to discuss the mental implications, trauma and impact of working in jail. Subsequently, two less credentialed white males (John Gallagher, no mental health degrees; Michael Tausek, an attorney by training, but no degree in mental health), were selected to attend the conference.

103.    In early December of 2018, Captain Carolyn Lewis reported to Plaintiff that a few months ago, she had approached the Defendant Brann to ask her to have the DOC submit to N.O.B.L.E. a presentation in the form of a panel discussion that had experts from the agency. At that time, according to Captain Lewis, Defendant Brann had originally told her to ask Plaintiff to participate.

104.    This was retaliatory because originally, Defendant Brann had previously articulated to Captain Lewis that Plaintiff should attend this conference, but that after receiving the EEOC claim, Captain Lewis was not able to have Plaintiff participate on the panel despite being the most qualified.

105.    As a result of the adverse job action. It limits Plaintiff's opportunity for professional growth and development and damages her professional reputation. N.O.B.L.E. expected Plaintiff to participate in the conference. It was Plaintiff's resume that assisted in getting the panel workshop included in the conference. At the prior NOBLE meeting in (February 2018), it was announced that Plaintiff would be attending the conference for the DOC and the organization was very excited that this was the first time that the DOC was presenting at N.O.B.L.E. and would be represented by an African American female Doctor, along with other professionals of color.

24

106.     As a result, Plaintiff has been subjected to an act of retaliation by Defendant Brann, stemming from the same National Organization of Black Law Enforcement (N.O.B. L.E.) conference that Plaintiff was originally scheduled to attend, but was replaced by two less credentialed white counterparts in January 2018 by Brann.

107.     Defendants continued to engage in retaliatory acts towards plaintiff that prevent her from completing her current job functions as Deputy Commissioner of Health Affairs.

108.     Defendants have adversely affected Plaintiff s ability to advance and grow professionally within DOC. DOC has taken opportunities afforded to Plaintiff and earned by her and given them to less qualified white males, which contributed to their professional growth and development.

109.     Despite Plaintiff s extensive experience and multiple distinctions, Nichole Adams-Flores had her duties and responsibilities reduced by Defendants Brann, MacDonald, Yang, Thamkittikasem, and Murphy, was forced to endure a constant barrage of unwarranted, disparaging comments, critiques, and criticisms from less qualified, non-African American subordinates including Defendants Thamkittikasem, Brann, MacDonald and Murphy, had her authority circumvented and usurped by less qualified, non-African American subordinates at the direction of Defendants Thamkittikasem, Brann, MacDonald, Yang and Murphy, was denied the personnel and fiscal resources enjoyed by less qualified, non-African American subordinates, such as Defendants Thamkittikasem, Brann, and Murphy, and was unfairly denied the official designation as Health Service Manager by Defendants Brann and Thamkittikasem.

110.     Plaintiff worked the same extensive hours as her less qualified, non-African American counterparts, namely Defendants Brann, Thamkittikisem, Murphy and Deputy

25

Commissioners Farrell, Tausek, and was forced to perform substantially more tasks, responding 24 hours a day, than male Deputy Commissioners (Farrell, Tausek, Lawrence) who are non-African American yet she was paid less despite Plaintiff being responsible for the investigations of deaths in DOC (Riker's Island) which required her to be on Call 24 hours a day, 7 days a week.

111.    Not only was Plaintiff forced to endure the circumvention of her authority as Deputy Commissioner, but she was also forced to endure other employment conditions that her non-African American Deputy Commissioners were not subject to. Subordinates in her division were told to report on her activities to the Chief of Department. Plaintiff was directed to prepare and submit conference proposals that were given to others to receive credit, and Plaintiff was not provided with enough staff and resources to execute the required tasks for which she was responsible. Each of these acts and others were done intentionally by Defendants, Yang, MacDonald, Murphy, Brann and Thamkittikisem.

112.    Similarly situated non-African Americans were not subjected to such discriminatory conduct and hostile working conditions.

113.    On or about October 30, 2018 DCAS-Director of Civil Service Transactions sent to Plaintiff an email confirming that she was permanently appointed as a Health Service Manager as of September 11, 2017. This email was in direct response to an inquiry submitted by Plaintiff asking for confirmation that her probation had been served.

114.    On December 24, 2018, Plaintiff filed her Complaint in the Federal District Court, Southern District of New York which is the instant matter.

115.    On an after December 26, 2018, information about the filing of Plaintiff's lawsuit was published in the media and the public.

26

116.    On January 9, 2019, Human Resources sent Plaintiff a letter informing her that her probationary time was "unsatisfactory" due to circumstances around a Department of Investigation investigation.

117.    On January 11, 2019 DCAS Deputy General Counsel responded to Plaintiff's email that she had sent asking for clarification on the policy and procedure relating to the "unsatisfactory" conclusion on Plaintiff probationary time.  He stated that as Commissioner and Provisional Psychologist, that she was an "at will" employee and could not serve a probation as a Health Service Manager.

118.    On January 28, 2019, Plaintiff appealed the decision to the Civil Service Commission, who denied her appeal and directed Plaintiff to contact DCAS.

119.    On March 15, 2019, Human Resources sent Plaintiff a letter stating in relevant part that her services as a Provisional Administrative Psychologist were "no longer needed."

120.    Plaintiff's attempts to contact and speak with someone from the Civil Service Commission were met with a direction to contact DCAS directly.  Plaintiff emailed the DCAS Commissioner and no response was ever provided.

121.    Plaintiff's employment with Defendant City ended with an pure act of retaliation when she was denied the benefits and equal treatment of other white and non-African-American persons.

122.    Every time Plaintiff was passed up for desirable assignments, denied participation to attend conferences assignments, had her authority marginalized by Defendants Yang and Thamkittikasem, and denied the rank and prestige that comes with promotions (civil service title), Plaintiff paid a price and continued to be subjected to a hostile work environment. The Plaintiff

27

endured humiliation, embarrassment and degradation to otherwise stellar career in Corrections and Mental Health Field.

123. The conduct by Defendants Yang, MacDonald, Brann and Thamkittikasem was severe and pervasive that it has created a hostile work environment. Said marginalization of the Plaintiff by Defendant Yang and condoned by the DOC and Defendant Thamkittikasem, despite Plaintiff s continuous complaints to her supervisors, has effected the terms and conditions of her employment.

124. Defendants DOC, Yang and Thamkittikasem marginalized Plaintiff by excluding Plaintiff from job conversations, assignments and minimized her. Defendant Yang failed to respond to Plaintiff's email requests for information, and created and untenable and hostile environment while belittling Plaintiff in front of her colleagues and supervisors at meetings.

125. Plaintiff suffered a powerful emotional toll. Plaintiff devoted significant time and energy into the DOC and took tremendous pride in her work. However, she has been forced to acknowledge the humiliating and degrading reality that ultimately, her records of achievement, integrity, and lengthy years of service mattered less to the DOC than the color of her skin and retaliation for complaining to EEO, EEOC and Inspector General.

126. The monetary loss that Plaintiff and other African American employees in the DOC suffered is great. She lost tens of thousands of dollars each year for being paid less than the male white Deputy Commissioners and then was terminated.

127. There is a stark and unjustifiable under-representation of African Americans in the managerial ranks of the DOC. The pervasively discriminatory environment in which Plaintiff and other African Americans are forced to work has caused her substantial harm and will continue to

28

harm all other African American members of the DOC who are never given the opportunity to be treated in same as other similarly situated individuals.

128. Plaintiff's efforts to remedy this situation have been met with refraction, abuse, resistance, false charges, untruths, retaliation and indifference, which are in violation of the applicable laws, industry standards and undermine Defendant CITY's and DOC's own Equal Employment Opportunity Policy.

129. As a result of these unfair and unlawful practices, involving sex/gender discrimination, unequal pay, unfair promotions and retaliation have caused a significant loss of wages, title, benefits, value of retirement, standard of living, esteem and reputation.

## AS AND FOR COUNT I
### (Unlawful Discrimination - Title VII, 42 U.S.C. § 2000e et seq.)

130. Plaintiff repeats and reiterates the allegations set forth in paragraphs 1 through 129 inclusive of this Complaint, with the same force and effect as though herein fully set forth.

131. Defendant City is an employer as defined in Title VII, and at all relevant times herein, employed Plaintiff.

132. Defendant City discriminated against Plaintiff in violation of 42 U.S.C. § 2000-e2(a), based upon race and color by denying or delaying promotions, and/or forcing them to resign, therefore giving them less pay and rank as compared to less qualified, non-African American employees.

133. This discrimination was the result of intentional actions by Defendants, deliberate indifference by Defendants, and/or the result of Defendants maintaining a policy or practice that has a disparate impact on African American employees, namely a standard-less process that allows

29

non-African American supervisors to retain all power and control, to refuse to promote deserving African American employees, and to relegate African American employees to positions with little to no autonomy.

134. Defendant CITY as well as its agents, DOC and H&H, through and by CYNTHIA BRANN, PATSY YANG, ROSS MACDONALD, JEFF THAMKITTIKASEM, and MARTIN MURPHY, discriminated against the Plaintiff in her employment based on Plaintiff's race, color, national origin and sex/gender in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, as amended.

135. As a direct result of said acts, Plaintiff has suffered and continues to suffer loss of income. Plaintiff suffered loss of other employment benefits and continues to suffer distress, humiliation, embarrassment as a result of the differential and discriminatory treatment and hostile work environment.

136. As a direct result of aforementioned acts, Plaintiff has been deprived of her rights, deprived of her freedoms, physically and mentally harmed. Plaintiff has been forced to seek redress in the courts rather than capitulating to the previously mentioned abuse, ridicule, and discrimination.

137. Plaintiff has been subjected to humiliation, ignominy, loss of title/status, untimely removal from her position, and removal from her assignment. As a result, Plaintiff has experienced a diminution in her quality of life.

138. Plaintiff was refused status, transfer, benefits, resources and trust awarded to other employees who were similarly situated, excepting the fact that they are not African American women. Were Plaintiff a white person, rather than a African-American man, he would not have been subjected to the adverse employment actions, denial of transfer, charges and specification, being

30

placed on trial to have to save her career and subjected to the intense abuse and humiliation that continues.

139.    Plaintiff has incurred incidental fees/damages, loss of pay, loss of benefits, and other damages/ injuries due to CITY as well as its agents, DOC and H&H, CYNTHIA BRANN, PATSY YANG, ROSS MACDONALD, JEFF THAMKITTIKASEM, and MARTIN MURPHY's unlawful discrimination.

140.    Further, once Plaintiff protested such unequal and unlawful treatment, Defendant CITY as well as its agents, DOC and H&H, CYNTHIA BRANN, PATSY YANG, ROSS MACDONALD, JEFF THAMKITTIKASEM, and MARTIN MURPHY retaliated against her by creating and continuing her harmful placement, depriving Plaintiff of equal and fair pay, isolating Plaintiff, refusing to communicate with Plaintiff, denying resources to Plaintiff, excluding Plaintiff from information and meetings, subjecting Plaintiff to more and greater charges, and other wrongful actions.

141.    As a direct result of said acts, Plaintiff has suffered, and continues to suffer, loss of income, loss of wages, loss of benefits, loss of retirement benefits, loss of longevity, loss of status, loss of opportunities, distress, humiliation, embarrassment, psychological trauma, and damage to her reputation as alleged in the preceding paragraphs of the within Complaint.

142.    As a result of Defendant City's discrimination, and by reason of the foregoing, Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages has been subjected to economic losses and psychological injury, distress, pain, suffering, loss of self-esteem, self-doubt, disgrace, public humiliation, embarrassment, inconvenience, anxiety and frustration, and, thus, has been damaged in excess of five million ($5,000,000.00) dollars, as well

31

as punitive damages, costs and attorney's fees.

## AS AND FOR COUNT II
### (Unlawful Discrimination -New York Executive Law § 296)

143.     Plaintiff repeats and reiterates the allegations set forth in paragraphs 1 through 142 inclusive of this Complaint, with the same force and effect as though herein fully set forth.

144.     The acts described above constitute unlawful discriminatory employment practices that violate Section 296 of the New York Executive Law.

145.     Defendant CITY as well as its agents, DOC and H&H, CYNTHIA BRANN, PATSY YANG, ROSS MACDONALD, JEFF THAMKITTIKASEM, and MARTIN MURPHY discriminated against Plaintiff by failing to give her the civil service title in a timely manner and marginalizing her duties and condoning the individual Defendants Yang and Thamkittikasem to retaliate against her due to her race and color, pregnancy and gender.

146.     This discrimination was the result of intentional actions by Defendants, deliberate indifference by Defendants, and/or the result of Defendants maintaining a policy or practice that has a disparate impact on African American employees, namely a standard-less process that allows non-African American supervisors to retain all power and control, to refuse to promote deserving African American employees, and to relegate African American employees to positions with little to no autonomy.

147.     As a direct result of said acts, Plaintiff has suffered, and continues to suffer, loss of income, loss of wages, loss of benefits, loss of retirement benefits, loss of status, loss of opportunities, loss of title, distress, humiliation, embarrassment, psychological trauma, and damage to her reputation as alleged in the preceding paragraphs of the within Complaint.

148. That by reason of the foregoing, Plaintiff has been subjected to economic losses and psychic injury, distress, pain, suffering, loss of self-esteem, self-doubt, disgrace, public humiliation, embarrassment, inconvenience, anxiety and frustration, and, thus, has been damaged in excess five million ($5,000,000.00) dollars, as well as punitive damages, costs and attorney's fee States Constitution.

## AS AND FOR COUNT III
### (Unlawful Discrimination-N.Y.C. Admin. Code §§ 8-101 et seq.)

149. Plaintiff repeats and reiterates the allegations set forth in paragraphs 1 through 148 inclusive of this Complaint, with the same force and effect as though herein fully set forth.

150. The New York City Administrative Code is explicit that the City Human Rights Law "be construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof ' and that exceptions and exemptions "be construed narrowly in order to maximize the deterrence of discriminatory conduct." N.Y.C. Admin. Code § 8-130(a)-(b).

151. The acts described above constitute unlawful discriminatory employment practices that violate Section 8-107 of the New York City Administrative Code.

152. All Defendants unlawfully discriminated against Plaintiff by denying them promotions due to her race, removing her power and authority as supervisors due to her race and color, providing her less resources due to her race and color, and ultimately forcing her to be marginalized due to her race and color, therefore giving her less pay, authority, and/or rank as compared to less qualified non-African American supervisors.

153. This discrimination was the result of intentional actions by Defendants, deliberate indifference by Defendants, and/or the result of Defendants maintaining a policy or practice that has

33

a disparate impact on African American employees, namely a standard-less process that allows non-African American supervisors to retain all power and control, to refuse to promote deserving African American employees, and to relegate African American employees to positions with little to no autonomy.

154.     As a direct result of said acts, Plaintiff has suffered, and continues to suffer, loss of income, loss of wages, loss of benefits, loss of retirement benefits, loss of status, loss of opportunities, loss of title, distress, humiliation, embarrassment, psychological trauma, and damage to her reputation as alleged in the preceding paragraphs of the within Complaint.

155.     That by reason of the foregoing, Plaintiff has been subjected to economic losses and psychic injury, distress, pain, suffering, loss of self-esteem, self-doubt, disgrace, public humiliation, embarrassment, inconvenience, anxiety and frustration, and, thus, has been damaged in excess five million ($5,000,000.00) dollars, as well as punitive damages, costs and attorney's fee States Constitution.

## AS AND FOR COUNT IV
### (42 U.S.C. §1983 Against All Individual Defendants)

156.     The Plaintiff repeats, reiterates, and re-alleges each allegation contained in paragraphs 1 through 155 of this Complaint with the same force and effect as though fully set forth herein.

157.     All of the acts and conduct of the Individual Defendants and Defendant CITY, by and though its agents, herein stated were done under color of state law, while in the performance of their duties as Supervisors for the DOC.

34

158.    The facts and circumstances cited above are in violation of Plaintiff s Fourteenth Amendment right under the Equal Protection Clause of the United States Constitution to be free from retaliation, discrimination and harassment in her employment with the CITY and DOC.

159.    That Individual Defendants actions, as alleged herein, were committed under color of State law.

160.    That Individual Defendants did conspire to violate Plaintiff Constitutional rights by actually depriving her of entitlement to promotions, civil service title in a timely manner, overtime, staffing and to be free of harassment and retaliation within the work place, and other pension rights.

161.    That Individual Defendants did willfully and knowingly make false claims against the Plaintiff with the intent of causing Plaintiff to be marginalized.

162.    That Defendants maliciously and vindictively evaluated Plaintiff s performance in a negative matter solely because of her race and color so that she would be denied or negatively impact her ability to perform her duties as a Deputy Commissioner of Health Affairs within DOC.

163.    That despite Defendants' knowledge that Plaintiff was well qualified to perform her responsibilities within DOC they nevertheless forced her to endure the aforementioned employment conditions under duress knowing that she was capable of performing the duties of an executive officer within DOC, Plaintiff was the victims of a hostile work environment at DOC and denied the benefits of working for the DOC like other similarly situated executive staff members.

164.    Plaintiff was denied her Constitutional rights pursuant to the Fourteenth Amendment in violation of her equal protection and due process.

165.    That as a direct and proximate result of the aforementioned conduct of the Individual Defendants, Plaintiff was deprived of her property rights, all in violation of her rights under the

35

Fourteenth Amendment rights to equal protection and due process under 42 U.S.C. §1983 to the United States Constitution.

166. Defendant CITY as well as its agents, DOC and H&H, CYNTHIA BRANN, PATSY YANG, ROSS MACDONALD, JEFF THAMKITTIKASEM, and MARTIN MURPHY, discriminated against the Plaintiff in her employment based on Plaintiff's race, color, pregnancy and sex/gender in violation of the Fourteenth Amendment to the United States Constitution.

167. The Defendants CYNTHIA BRANN, PATSY YANG, ROSS MACDONALD, JEFF THAMKITTIKASEM, and MARTIN MURPHY made decisions to discriminate against and violate the rights of Plaintiff individually and in collusion with each other.

168. Defendants CITY as well as its agents, DOC and H&H, CYNTHIA BRANN, PATSY YANG, ROSS MACDONALD, JEFF THAMKITTIKASEM, and MARTIN MURPHY, as state actors, acting under color of law, proximately caused the deprivation of Plaintiff's federally protected rights, secured by the Fourteenth Amendment, as well as federal legislation, such as Title VII and §1981.

169. Specifically, Defendants CITY as well as its agents, DOC and H&H, CYNTHIA BRANN, PATSY YANG, ROSS MACDONALD, JEFF THAMKITTIKASEM, and MARTIN MURPHY, deprived Plaintiff of the equal protection of the law, refused to grant job status and allow her the same benefits and provide protections against harm, forced her to perform under adverse and different conditions and manipulated the employment relationship and system to deny Plaintiff rights and options provided to other non-African-American persons knowing that doing so was causing Plaintiff irreparable harm, commenced false charges against Plaintiff in violation of the Fourteenth Amendment, §1981 and, Title VII.

36

170. Plaintiff was also denied reassignment without due process because of her race, color and pregnancy, sex/gender, in violation of the Fourteenth Amendment.

171. As a direct result of said acts, Plaintiff has suffered, and continues to suffer, loss of income, loss of wages, loss of benefits, loss of retirement benefits, loss of status, loss of opportunities, loss of title, distress, humiliation, embarrassment, psychological trauma, and damage to her reputation as alleged in the preceding paragraphs of the within Complaint.

172. That by reason of the foregoing, Plaintiff has been subjected to economic losses and psychological injury, distress, pain, suffering, loss of self-esteem, self-doubt, disgrace, public humiliation, embarrassment, inconvenience, anxiety and frustration, and, thus, has been damaged in excess of five million ($5,000,000.00) dollars, as well as punitive damages, costs and attorney's fees.

## AS AND FOR COUNT IV
## 42 U.S.C. § 1983 – MUNICIPAL VIOLATIONS

173. The Plaintiff repeats, reiterates, and re-alleges each allegation contained in paragraphs 1 through 172 of this Complaint with the same force and effect as though fully set forth herein.

174. Defendants City, DOC and H&H, CYNTHIA BRANN, PATSY YANG, ROSS MACDONALD, JEFF THAMKITTIKASEM, and MARTIN MURPHY, , acting under color of law, and through their employees, servants, agents and designees, have engaged in a policy, custom, and/or condoned a longstanding practice, which has deprived Plaintiff and other female employees of rights, privileges and immunities secured by the Fourteenth Amendment, Title VII, and the 42 U.S.C. §1981. These actions were, and continue to be, condoned by CITY policy makers, including but not limited to, Defendant Department of Corrections ("DOC"), HEALTH & HOSPITAL

37

CORPORATION ("H&H"), CYNTHIA BRANN, PATSY YANG, ROSS MACDONALD, JEFF THAMKITTIKASEM, and MARTIN MURPHY,

175. Defendants, intentionally and knowingly, as an act of discrimination based on race, color and/or pregnancy, refused to grant positions and unfairly deny the official designation as Health Service Manager and similar situations to African-American and woman employees, such as the Plaintiff, within the DOC and H&H because of their race, color and/or sex/gender. Defendants also retaliated against Plaintiff for her protestations to race, color and/or sex/gender based discrimination.

176. Defendants Department of Corrections ("DOC"), HEALTH & HOSPITAL CORPORATION ("H&H"), CYNTHIA BRANN, PATSY YANG, ROSS MACDONALD, JEFF THAMKITTIKASEM, and MARTIN MURPHY were further aware of the systematic practice of unlawful race, color and/or sex/gender-based discrimination within the DOC and H&H, yet failed to address, remedy, or change said systematic practices, which work to the detriment of Plaintiff and other persons situated similarly.

177. Defendants, intentionally and knowingly materially altered the terms and conditions of Plaintiff's employment in retaliation for protesting discriminatory practices within the DOC and H&H. Defendants Defendant Department of Corrections ("DOC"), HEALTH & HOSPITAL CORPORATION ("H&H"), CYNTHIA BRANN, PATSY YANG, ROSS MACDONALD, JEFF THAMKITTIKASEM, and MARTIN MURPHY were further aware of the systematic practices of unlawful race, color and/or sex/gender-based discrimination within the DOC and H&H, yet failed to address, remedy, or change said discriminatory practices.

38

178.    Defendants CITY, DOC and H&H failed to adequately train or supervise their upper-level supervisors; specifically, Defendants CITY, DOC and H&H failed to adequately train supervisors on discrimination laws, and failed to exercise adequate supervision over supervisors in order to ensure that discrimination laws were respected.

179.    These discriminatory acts committed by Defendants Department of Corrections ("DOC"), HEALTH & HOSPITAL CORPORATION ("H&H"), CYNTHIA BRANN, PATSY YANG, ROSS MACDONALD, JEFF THAMKITTIKASEM, and MARTIN MURPHY,, who were responsible for policy decisions and the enforcement thereof, Plaintiff suffered, and continues to suffer, diminished employment, loss of income, loss of other employment benefits, and has suffered and continues to suffer distress, humiliation, and embarrassment.

180.    Defendants' acts of ongoing race, color and/or sex/gender-based discrimination were intended to subjugate Plaintiff. By so acting, Defendants have willfully violated the constitutional rights guaranteed to Plaintiff and similarly situated persons by the Fourteenth Amendment.

181.    As a direct result of said acts, Plaintiff has suffered, and continues to suffer, loss of income, loss of wages, loss of benefits, loss of retirement benefits, loss of status, loss of opportunities, loss of title, distress, humiliation, embarrassment, psychological trauma, and damage to her reputation as alleged in the preceding paragraphs of the within Complaint.

182.    That by reason of the foregoing, Plaintiff has been subjected to economic losses and psychological injury, distress, pain, suffering, loss of self-esteem, self-doubt, disgrace, public humiliation, embarrassment, inconvenience, anxiety and frustration, and, thus, has been damaged in excess of five million ($5,000,000.00) dollars, as well as punitive damages, costs and attorney's fees.

39

## AS AND FOR COUNT VI
## 42 U.S.C. § 1981

183.    Plaintiff repeats and reiterates the allegations set forth in paragraphs 1 through 182 inclusive of this complaint, with the same force and effect as though herein fully set forth.

184.    The above discriminatory pattern and practice based on race and color by Defendant CITY as well as its agents, DOC and H&H, CYNTHIA BRANN, PATSY YANG, ROSS MACDONALD, JEFF THAMKITTIKASEM, and MARTIN MURPHY through their agents and employees violates 42 U.S.C. §1981 as amended by the Civil Rights Restoration Act of 1991 (Publ. Law No, 102-406).

185.    As a direct and proximate result of said acts by CITY as well as its agents, DOC and H&H, CYNTHIA BRANN, PATSY YANG, ROSS MACDONALD, JEFF THAMKITTIKASEM, and MARTIN MURPHY, Plaintiff has suffered loss of employment and continues to suffer loss of income, and has suffered and continues to suffer emotional distress, humiliation, great expense, embarrassment, and damage to her reputation.

186.    Because of Plaintiff's color and race he has been subjected to different, disparate, and abusive mistreatment as detailed above and has been treated differently than white individuals.

187.    As a direct result of said acts, Plaintiff has suffered, and continues to suffer, loss of income, loss of wages, loss of benefits, loss of retirement benefits, loss of status, loss of opportunities, loss of title, distress, humiliation, embarrassment, psychological trauma, and damage to her reputation as alleged in the preceding paragraphs of the within Complaint.

188.    That by reason of the foregoing, Plaintiff has been subjected to economic losses and psychological injury, distress, pain, suffering, loss of self-esteem, self-doubt, disgrace, public

40

humiliation, embarrassment, inconvenience, anxiety and frustration, and, thus, has been damaged

in excess of five million ($5,000,000.00) dollars, as well as punitive damages, costs and attorney's

fees.


## PRAYER FOR RELIEF

Plaintiff requests judgment as follows:

a.  First Cause of Action: in excess of five million ($5,000,000.00) dollars as well as punitive damages, costs and attorney's fees.

b.  Second Cause of Action: in excess of five million ($5,000,000.00) dollars as well as punitive damages, costs and attorney's fees.

c.  Third Cause of Action: in excess of five million ($5,000,000.00) dollars as well as punitive damages, costs and attorney's fees.

d.  Fourth Cause of Action: in excess of five million ($5,000,000.00) dollars as well as punitive damages, costs and attorney's fees.

e.  Fifth Cause of Action: in excess of five million ($5,000,000.00) dollars as well as punitive damages, costs and attorney's fees.

f.  Sixth Cause of Action: in excess of five million ($5,000,000.00) dollars as well as punitive damages, costs and attorney's fees.

g.  Attorney's fees and costs, pursuant to 42 U.S.C. § 1988 and 42 U.S.C. § 2000e-5(k) and other fee and costs statutes;

h.  A declaratory judgment stating that Defendants wilfully violated Plaintiff's rights secured by federal and state laws as alleged herein;

I.  Injunctive relief: an injunction requiring Defendants to correct all present and past violations of federal and state law as alleged herein; to enjoin the Defendants from continuing to act in violation of federal and state law as alleged herein; and to order such other injunctive relief as may be appropriate to prevent any future violations of said federal and state laws; and

j.  An Order granting such other legal and equitable relief as the court deems just and

proper.

## **PLAINTIFF DEMANDS A TRIAL BY JURY**

Dated: Hempstead, New York
     July 12, 2019

                LAW OFFICES OF
                FREDERICK K. BREWINGTON

By:                           
                FREDERICK K. BREWINGTON
                *Attorneys for Plaintiff*
                556 Peninsula Boulevard
                Hempstead, New York 11550
                (516) 489-6959

# Exhibit B



## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
### New York District Office

33 Whitehall Street, 5th Floor
New York, NY 10004-2112
For General Information: (800) 669-4000
TTY: (800)-669-6820
District Office: (212) 336-3620
General FAX: (212) 336-3625

Rocco G. Avallone, Esq.
Avallone & Bellistri
3000 Marcus Avenue, Suite 3E07
Lake Success, NY 11042

Re:     EEOC Charge No. 520-2018-02104
        Flores v. NYC Department of Corrections

Dear Mr. Avallone,

The Equal Employment Opportunity Commission (hereinafter referred to as the "Commission") has reviewed the above-referenced charge according to our charge prioritization procedures. These procedures, which are based on a reallocation of the Commission's staff resources, apply to all open charges in our inventory and call for us to focus our limited resources on those cases that are most likely to result in findings of violations of the laws we enforce.

In accordance with these procedures, we have examined the information and evidence you submitted supporting your allegations of discrimination based on race and retaliation.

Respondent's position statement has been previously shared with you. Your rebuttal to this position statement has been received and analyzed. Based upon this analysis the Commission is unable to conclude that the information establishes a violation of Federal law on the part of Respondent. This does not certify that Respondent is in compliance with the statutes. No finding is made as to any other issue that might be construed as having been raised by this charge.

The Commission's processing of this charge has been concluded. Included with this letter is your Notice of Dismissal and Right to Sue. Following this dismissal, you may only pursue this matter by filing suit against the Respondent named in the charge within 90 days of receipt of said notice. Otherwise, your right to sue will be lost.

Please contact Investigator Paul Young at (212) 336-3783 or paul.young@eeoc.gov if you have any questions.

Sincerely,

_____ for

Kevin J. Berry
District Director

SEP 21 2018
_____
Date

Enclosure with EEOC
Form 161 (11/16)

## INFORMATION RELATED TO FILING SUIT
### UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS** -- **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge within **90 days** of the date you *receive* this Notice. Therefore, you should keep a record of this date. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Courts often require that a copy of your charge must be attached to the complaint you file in court. If so, you should remove your birth date from the charge. Some courts will not accept your complaint where the charge includes a date of birth. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

### PRIVATE SUIT RIGHTS -- Equal Pay Act (EPA):

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice and within the 2- or 3-year EPA back pay recovery period.

### ATTORNEY REPRESENTATION -- Title VII, the ADA or GINA:

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

### ATTORNEY REFERRAL AND EEOC ASSISTANCE -- All Statutes:

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice.** (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.
If you also plan to sue claiming violations of State law, please be aware that time limits and other
provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS** -- **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge <u>within 90 days</u> of the date you *receive* this Notice. Therefore, you should keep a record of this date. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed within 90 days of the date this Notice was *mailed* to you (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Courts often require that a copy of your charge must be attached to the complaint you file in court. If so, you should remove your birth date from the charge. Some courts will not accept your complaint where the charge includes a date of birth. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS** -- **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than <u>2 years (3 years)</u>** before you file suit may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice <u>and</u> within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION** -- **Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do <u>not</u> relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE** -- **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request <u>within 6 months</u> of this Notice.** (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
New York District Office
33 Whitehall Street, 5th Fl
New York, N.Y. 10004

OFFICIAL BUSINESS
PENALTY FOR PRIVATE USE, $300

NEW YORK
NY 100
24 SEP '18
PM1 2 L



UNITED STATES POSTAGE
PITNEY BOWES
02 1P $ 000.47⁰
0000806097    SEP 24 2018
MAILED FROM ZIP CODE 10004

Recld
9/26/18

i1042-100657

Case No.: 18-CV-12150

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
NICHOLE ADAMS-FLORES, individually and on behalf
of all others similarly situated,

Plaintiff,

-against-

**THE CITY OF NEW YORK, NEW YORK**
**CITY DEPARTMENT OF CORRECTIONS,**
**HEALTH & HOSPITAL CORPORATION,**
**CYNTHIA BRANN, Commissioner of Dept. of**
**Corrections, PATSY YANG, Chief Operating**
**Officer of Correctional Health Services, ROSS**
**MACDONALD, Chief of Medicine, JEFF T**
**HAMKITTIKASEM, Former Chief of Staff of Dept.**
**of Corrections, and MARTIN MURPHY, former**
**Chief of Department of Dept of Corrections,**

Defendants.
-------------------------------------------------------------X
<u>DECLARATION IN SUPPORT</u>
-------------------------------------------------------------X
**LAW OFFICES OF**
**FREDERICK K. BREWINGTON**
*Attorneys for Petitioner*
**556 Peninsula Boulevard**
**Hempstead, New York 11550**
**(516) 489-6959**