UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
:
NICHOLE ADAMS-FLORES,                                             :
:
                     Plaintiff,                  :
:         18-CV-12150 (JMF)
       -v-                                                       :
:         OPINION AND ORDER
CITY OF NEW YORK et al.,                                          :
:
                     Defendants.                 :
:
------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

       Plaintiff Nichole Adams-Flores is a former clinical supervisor employed by the New York City Health and Hospital Corporation ("HHC") and a former Deputy Commissioner employed by the New York City Department of Correction ("DOC"). She brings this suit against the HHC, the DOC, the City of New York, the DOC Commissioner, and several other DOC and HHC employees, alleging a slew of discrimination and retaliation claims, under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*; 42 U.S.C. § 1981; 42 U.S.C. § 1983; the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296 *et seq.*; and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107 *et seq.* Defendants now move, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss many of Adams-Flores's claims. *See* ECF Nos. 47 ("Mot.") & 49 ("Defs.' Mem."). For the reasons that follow, their motion is granted in all but one respect.

## BACKGROUND

       The following relevant facts, drawn from the First Amended Complaint, *see* ECF No. 45 ("FAC"), are taken as true for purposes of this motion. *See, e.g., Kleinman v. Elan Corp.*, 706 F.3d 145, 147, 152 (2d Cir. 2013).

Adams-Flores, an African-American woman, is a licensed and registered psychologist who, until February 2016, worked at the HHC as a clinical supervisor. FAC ¶¶ 43, 47, 52. As part of her job, she was required to work onsite and be present in the New York City jails as needed. In January 2016, while pregnant, Adams-Flores made a request to Patsy Yang, Senior Vice President of Correctional Health Services for the HHC, for an accommodation to allow her to work from home while on bed rest. *Id*. ¶¶ 21, 44. Yang denied Adams-Flores's request, which left Adams-Flores to accept a reduction of hours to half-time and required her to come into the office. *Id*. ¶¶ 44-45. Aware that Yang had previously allowed non-black clinical supervisors to work remotely at alternate clinical locations, Adams-Flores complained to Human Resources on January 25, 2016, about Yang's denial of her request, noting in an email: "I feel like the only thing that would allow me to work full time is not being pregnant." *Id*. ¶¶ 46, 49.

Soon thereafter, in February 2016, Adams-Flores left the HHC and accepted a position at the DOC as its Deputy Commissioner for Health Affairs. *Id*. ¶ 52. In her new role, Adams-Flores was required to work with the HHC, which oversees medical care for those in DOC custody. *Id.* ¶ 52. Indeed, Adams-Flores was the first point of contact and direct liaison between the HHC and the DOC and was, thus, required to work directly with Yang. *Id*. Their working relationship was toxic from the beginning. On February 4, 2016, Adams-Flores expressed concern with the DOC's Office of Equal Employment Opportunity ("EEO") that her past experience with Yang at the HHC would impact her work. *Id*. ¶ 53. As a result of this complaint, Yang and HHC Chief Medical Officer Ross MacDonald limited their interactions with Adams-Flores, cut her out of meetings with the warden, and refused to communicate directly with her about inmate health issues at Riker's Island. *Id*. ¶¶ 55-56. Adams-Flores became aware of the meetings only after they had already taken place, and her work suffered as a

result. *Id.* ¶ 56. In at least one instance, Yang falsely blamed Adams-Flores for failing to enact an initiative that was discussed at one of these meetings, even though Yang had not informed her of the plan and instead coordinated with a white male administrator at the DOC to execute a portion of the work. *Id*. ¶ 57.

In addition to Yang and MacDonald, Adams-Flores butted heads with then-Chief of Department of the DOC Martin Murphy. Murphy supervised the uniformed DOC service members and, in that role, instructed Adams-Flores's subordinate to report to him on Adams-Flores's activities. *Id*. ¶¶ 31, 59. Murphy did not instruct the subordinates of the white deputy commissioners to do the same. *Id.* ¶ 59. On another occasion, when Adams-Flores asked Murphy for an officer to drive her around, as had been provided to the white deputy commissioners, Murphy denied the request, stating that it would be like "driving Miss Daisy" and would look bad. *Id*. ¶ 58. In addition, throughout Adams-Flores's tenure, Murphy, along with Yang, MacDonald, Commissioner Cynthia Brann, and then-Chief of Staff Jeff Thamkittikasem subjected Adams-Flores to a constant barrage of unwarranted, disparaging comments, critiques, and criticisms; circumvented her authority and instructed their subordinates to do the same; excluded her from meetings; denied her staff and resources needed to carry out her work; and deprived her of materials needed to conduct meetings and conferences required by her job. *Id*. ¶ 109. Adams-Flores also alleges that her attempts to receive her civil service title to make her a permanent employee were delayed, and her concerns about the HHC's practice of altering inmate health data went unheeded. *Id*. ¶¶ 61, 84. To Adams-Flores's knowledge, none of her similarly qualified, or even less-qualified, non-black peers were subjected to the same treatment. After filing a complaint with the EEO on May 15, 2017, *see id.* ¶ 60, and filing a charge with the Equal Employment Opportunity Commission ("EEOC") on October 16, 2017,

*see* ECF No. 51-1, Adams-Flores was terminated from her position at the DOC. FAC ¶¶ 76, 81, 86, 126.

Thereafter, Adams filed this lawsuit, naming as Defendants the City of New York, the DOC, the HHC, DOC Commissioner Brann, HHC Senior Vice President Yang, HHC Chief Medical Officer MacDonald, former DOC Chief of Staff Thamkittikasem, and former Chief of the Department of the DOC Murphy. She brings claims of race and gender discrimination and retaliation, pursuant to Title VII, Section 1981, Section 1983, NYSHRL, and NYCHRL, and a municipal liability claim against the City of New York. Defendants DOC, HHC, Yang, MacDonald, and Murphy now move to dismiss all of the claims against them, Brann and Thamkittikasem move to dismiss the Title VII and Section 1981 claims against them, and the City moves to dismiss the municipal liability claim.

## LEGAL STANDARDS

In evaluating Defendants' motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all facts set forth in the First Amended Complaint as true and draw all reasonable inferences in Adams-Flores's favor. *See, e.g., Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (per curiam). A claim will survive a Rule 12(b)(6) motion, however, only if the plaintiff alleges facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). A plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully," *id.*, and cannot rely on mere "labels and conclusions" to support a claim, *Twombly*, 550 U.S. at 555. If the plaintiff's pleadings "have not nudged [his or

her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* at 570. Where, as here, a plaintiff brings claims of employment discrimination, however, "[t]he facts required by *Iqbal* to be alleged in the complaint need not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination. They need only give plausible support to a minimal inference of discriminatory motivation." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015); *see Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86-87 (2d Cir. 2015).

## DISCUSSION

In their motion, Defendants seek dismissal of Adams-Flores's (1) Title VII claims; (2) claims against the DOC; (3) Section 1981 claims; (4) claims against the HHC; (5) claims against Yang, MacDonald, and Murphy; and (6) municipal liability claims against the City. Several of Defendants' arguments require little discussion, either because they are undisputed or they are not subject to reasonable dispute. Specifically, upon review of the First Amended Complaint and the parties' memoranda of law, the Court rules as follows:

(1) Adams-Flores's Title VII claims are dismissed as untimely, albeit with leave to amend. Title VII claims must be filed within ninety days of receiving a right-to-sue letter from the EEOC. *See, e.g.*, *Lugo v. City of New York*, 518 F. App'x 28, 29 (2d Cir. 2013) (summary order). Here, the First Amended Complaint alleges that Adams-Flores received a right-to-sue letter on September 21, 2018, but she did not file this lawsuit until December 24, 2018 — ninety-four days later. FAC ¶ 13. Adams-Flores does not argue otherwise, but asserts instead that the date in the First Amended Complaint is inaccurate and that she actually received her right-to-sue letter on September 26, 2018. ECF No. 46 ("Pl.'s Opp'n"), at 9. That may be so, but the law is clear that Adams-Flores may not amend her complaint through her opposition. *See Baez v. New York*, 56 F. Supp. 3d 456, 470 (S.D.N.Y. 2014). Accordingly, Defendants' motion to dismiss Adams-Flores's Title VII claims as untimely is GRANTED, albeit with leave to amend to correct the erroneous date. *See, e.g.*, *Nielsen v. Rabin*, 746 F.3d 58, 61 (2d Cir. 2014).

(2) On top of that, Adams-Flores's Title VII claims are dismissed as untimely, *without* leave to amend, to the extent that they accrued prior to December 20, 2016. Under Title VII, a claimant must "file a charge of discrimination with the EEOC within 180 days of the alleged unlawful employment action or, if the claimant has already filed

the charge with a state or local equal employment agency, within 300 days of the alleged discriminatory action." *Sanderson v. New York State Elec. & Gas Corp.*, 560 F. App'x 88, 90 (2d Cir. 2014) (summary order); *see also* 42 U.S.C. § 2000e-5(e)(1). Here, it is undisputed that Adams-Flores filed her charge with the EEOC on October 16, 2017, *see* Defs.' Mem. 6; *see also* ECF No. 51-1, and that she filed a complaint with the local-level EEO on May 15, 2017, *see* FAC ¶ 60. Thus, as the parties agree, the 300-day period applies in this case. Defs.' Mem. 6; Pl.'s Opp'n 9-10; *cf. Sanderson*, 560 F. App'x at 91 n.3. Accordingly, any standalone claims based on conduct prior to December 20, 2016 — including all conduct during Adams-Flores's employment at the HHC and Murphy's assignment of a driver — are time-barred and must be dismissed with prejudice. *See* Opp'n 9-10.[1]

(3) Adams-Flores's claims against the DOC are dismissed because the DOC, as an agency of the City of New York, is not an entity that can be sued. *See* N.Y.C. Charter ch. 17, § 396 ("[A]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law."); *see, e.g.*, *Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007).

(4) Adams-Flores's discrimination, hostile work environment, and retaliation claims under Section 1981 fail because her claims are properly brought under Section 1983, and Section 1981 "does not provide a separate private right of action against state actors." *Duplan v. City of New York*, 888 F.3d 612, 621 (2d Cir. 2018) (dismissing Section 1981 claims against the City of New York); *see also Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701 (1989) (holding that Section 1983 "provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor"). Municipal employees sued in their official capacity, such as the individual defendants in this case, are representatives of the state and may not be sued under Section 1981. *See, e.g.*, *Pierre v. City of New York*, No. 17-CV-5782 (JGK), 2020 WL 353538, at *4 (S.D.N.Y. Jan. 21, 2020). To the extent that Adams-Flores is suing the individual defendants in their individual capacities under Section 1981, her claims also fail. *Id.*; *Roddini v. City Univ. of New York*, No. 02-CV-4640 (LAP), 2003 WL 435981, at *5 (S.D.N.Y. Feb. 21, 2003) (collecting cases where *Jett* has been interpreted to encompass state actors sued in their individual capacities). Accordingly, Adams-Flores's Section 1981 claims are dismissed as to all Defendants.

(5) Adams-Flores's Section 1983 claims brought against the individual Defendants in their official capacities are dismissed as duplicative of the claims against the City. *See, e.g.*, *Anemone v. Metro. Transp. Auth.*, 410 F. Supp. 2d 255, 264 n.2 (S.D.N.Y.

---

[1] Defendants also move to dismiss any Title VII claim against the individual Defendants on the ground that there is no individual liability under Title VII. *See* Defs.' Mem. 7 (citing *Lore v. City of Syracuse*, 670 F.3d 127, 169 (2d Cir. 2012)). Adams-Flores concedes the point and clarifies that she does not bring Title VII claims against the individual Defendants. *See* Pl.'s Opp'n 11.

2006) ("An official-capacity suit is . . . to be treated as a suit against the entity . . . . Where, as here, the entity also is named as a defendant, the official capacity claims are redundant and are properly dismissed." (internal quotation marks and citation omitted)).

(6) Adams-Flores's NYCHRL claims against the HHC and any Fourteenth Amendment due process claim are dismissed as abandoned, as she failed to respond to Defendants' arguments with respect to these claims. *See* ECF No. 57 ("Reply"), at 9; *see, e.g.*, *AJ Energy LLC v. Woori Bank*, No. 18-CV-3735 (JMF), 2019 WL 4688629, at *7 (S.D.N.Y. Sept. 26, 2019) ("[A] district court may, and generally will, deem a claim abandoned when a [counseled] plaintiff fails to respond to a defendant's arguments that the claim should be dismissed." (internal quotation marks omitted) (citing cases)).

That leaves Defendants' arguments for dismissal of (1) Adams-Flores's remaining Section 1983 and NYSHRL claims against the HHC; (2) her remaining Section 1983, NYSHRL, and NYCHRL claims against Yang, McDonald, and Murray; and (3) her Section 1983 municipal liability claim against the City. The Court will address each argument in turn.

**A. Remaining Claims Against the HHC**

The Court begins with Adams-Flores's remaining claims against the HHC. First, Adams-Flores's claims against the HHC must be dismissed to the extent that they are based on conduct that occurred after February 2016, when she was employed by the DOC. To state any of her employment discrimination claims against the HHC, Adams-Flores must allege the existence of an employer-employee relationship. *See Gulino v. N.Y. State Educ. Dep't*, 460 F.3d 361, 370 (2d Cir. 2006) (Title VII); *White v. Pacifica Found.*, 973 F. Supp. 2d 363, 375-77 (S.D.N.Y. 2013) (NYCHRL and NYSHRL); *cf. Barbosa v. Continuum Health Partners, Inc.*, 716 F. Supp. 2d 210, 216-17 (§ 1981). It is undisputed that the HHC was not Adams-Flores's formal employer as of February 2016. And while there are two "recognized doctrines that enable an employee in certain circumstances to assert employer liability against an entity that is not formally his or her employer" — namely, the single employer and joint employer doctrines — Adams-Flores cannot plausibly invoke either. *Arculeo v. On-Site Sales & Mktg., LLC*, 425 F.3d 193, 197-98 (2d Cir.

2005) (citing *Clinton's Ditch Coop. Co. v. NLRB*, 778 F.2d 132 (2d Cir. 1985)). Among other things, there are no allegations in the First Amended Complaint demonstrating centralized control of the DOC's and the HHC's labor relations, such as through the shared handling of job applications, approving of personnel status reports, or exercising veto power over major employment decisions. *See, e.g.*, *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 341 (2d Cir. 2000); *Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1240-41 (2d Cir. 1995) (identifying centralized control as a critical factor under the single employer doctrine). Nor does Adams-Flores allege a "commonality of hiring, firing, discipline, pay, insurance, records, and supervision" between the agencies. *Shiflett v. Scores Holding Co.*, 601 F. App'x 28, 30-31 (2d Cir. 2015) (summary order) (applying joint employer factors). Although Adams-Flores alleges that she served as a liaison between the DOC and the HHC and that Defendants Yang and MacDonald (both HHC officials) played a large role in cutting her out of inter-agency meetings, those facts do not establish that Adams-Flores was constructively employed by the HHC. *Cf. Arculeo*, 425 F.3d at 198. Instead, Adams-Flores's own allegations — that she left the HHC for the DOC and that the DOC Commissioner and Chief of Staff (not the HHC) withheld her civil service title and paid her less than her peers — belie any claim of a single or joint employer relationship. *See, e.g.*, *Morrongiello v. Ashcroft*, No. 01-CV-2524 (WHP), 2004 WL 112944, at *5 (S.D.N.Y. Jan. 22, 2004) (holding that the lack of remuneration, provision of benefits, and ability to hire and fire defeated a federal employee's claim of constructive employment against a New York state agency). Accordingly, the claims against the HHC for the period after Adams-Flores moved to the DOC must be and are dismissed.

Adams-Flores's discrimination and retaliation claims against the HHC for the period before she moved to the DOC, on the other hand, fall short for a different reason: She fails to

allege facts that provide even "minimal support for the proposition that the employer was motivated by discriminatory [or retaliatory] intent." *Littlejohn*, 795 F.3d at 311. To state a claim under both Section 1983 and NYSHRL, "a plaintiff must plausibly allege that (1) the employer took adverse action against [her] and (2) [her protected characteristic] was a motivating factor in the employment decision." *Vega*, 801 F.3d at 87, 91. "An inference of discrimination can arise from circumstances including . . . more favorable treatment of employees not in the protected group." *Littlejohn*, 795 F.3d at 312. The burden on the plaintiff to allege such differential treatment is minimal at the pleading stage. *Pellegrino v. Cty. of Orange*, 313 F. Supp. 2d 303, 315 (S.D.N.Y. 2004). That is, a plaintiff "does not have to prove that the comparators were similarly situated in all material aspects." *Daniels v. City of New York*, No. 17-CV-9960 (LGS), 2019 WL 251511, at *4 (S.D.N.Y. Jan. 17, 2019). Nevertheless, she must "allege facts that plausibly support a finding that they were similarly situated" and that her protected characteristic was at least a motivating factor in her adverse employment action. *Id.* (internal quotation marks omitted); *see, e.g.*, *EEOC v. Bloomberg L.P.*, 967 F. Supp. 2d 816, 832 (S.D.N.Y. 2013) ("To make out a pregnancy discrimination claim, the plaintiff must show that she was treated differently from others who took leave or were otherwise unable or unwilling to perform their duties for reasons unrelated to pregnancy or that she simply was treated differently because of her pregnancy.").

In the present case, Adams-Flores's claims rest on the HHC's allegedly differential treatment of similarly situated employees outside of her protected group. Specifically, Adams-Flores alleges that, during the month when she worked at the HHC, (1) she was a member of several protected classes as a pregnant black woman; (2) she satisfactorily performed the duties required of a clinical supervisor even while pregnant (and was even approved by her doctor to

9

work full time); and (3) she was "forced to accept a reduction of hours to half time" because (4) Defendant Yang denied her request for a "reasonable" accommodation to work from home due to her pregnancy even though her prior supervisor cleared her to work full time without having to be in the jails while pregnant. FAC ¶¶ 44, 48. Adams-Flores further alleges that her work as "a clinical supervisor was able to be conducted remotely" and her non-black, peer clinical supervisors were allowed to work "from alternate clinical locations" with Defendant Yang's approval. *Id*. ¶¶ 47, 49. She provides as examples "Dr. Camerano, Dr. Georgolius, and Dr. Ho," *id.*, and avers that they were at her same professional level, were not pregnant, and yet were allowed to work remotely at no detriment to their salary or employment while she, a "seriously pregnant black woman was not," Pl.'s Opp'n 16. That all may be so, but Adams-Flores's failure to describe "the circumstances that gave rise" to Defendant Yang's denial of her request, let alone provide any specificity as to her "alleged comparators' qualifications, responsibilities, employment history," and the particulars of their requests to work remotely, is fatal to her claims. *See, e.g.*, *Daniels*, 2019 WL 251511 at *4 (dismissing a DOC supervisor's claim of racial discrimination for failing to describe the circumstances surrounding his and his comparators' work histories or the events leading up to their differing punishments). Adams-Flores, for instance, does not establish whether her alleged comparators requested to work from home, as Adams-Flores did, or from other locations and what their grounds for their requests were. In short, Adams-Flores fails to allege facts from which a jury could plausibly find that the "[o]ther clinical supervisors" were similarly situated to her such that any disparate treatment was due, at least in part, to her protected characteristics. *See, e.g.*, *Mohan v. City of New York*, No. 17-CV-3820 (KPF), 2018 WL 3711821, at *11-12 (S.D.N.Y. Aug. 3, 2018) (finding that plaintiff was not similarly situated to white male counterpart where she only alleged similarity in title and

nothing else to "detail the specific work duties, seniority level, or performance" of her counterpart). Accordingly, her claims against the HHC for the period prior to February 2016, even if timely, fail as a matter of law and are, thus, dismissed.

### B. Remaining Claims Against Yang, MacDonald, and Murphy

Next, Defendants move to dismiss the remaining claims, under Section 1983, NYSHRL, and NYCHRL, against Defendants Yang, MacDonald, and Murphy. Yang and MacDonald were, at all relevant times, employees of the HHC. Thus, and because they were not Adams-Flores's supervisors (*de facto* or otherwise), Adams-Flores's employment discrimination claims against them fall short just as her claims against the HHC do. By contrast, Adams-Flores's claims against Murphy survive because she plausibly alleges that, in his managerial role as Chief of the Department of the DOC, Murphy was directly involved in alleged discrimination.

To establish individual liability under Section 1983, NYSHRL, and NYCHRL, a plaintiff must plead and prove that a defendant was personally involved in the violation. *See Warren v. Pataki*, 823 F.3d 125, 136 (2d Cir. 2016) (Section 1983); *Feingold v. New York*, 366 F.3d 138, 158 (2d Cir. 2004) (NYSHRL and NYCHRL); *accord Lewis v. Roosevelt Island Operating Corp.*, 246 F. Supp. 3d 979, 992 (S.D.N.Y. 2017). The First Amended Complaint plausibly alleges that Murphy participated in alleged discrimination towards Adams-Flores. In particular, Adams-Flores alleges that Murphy and the other Defendants reduced her duties and responsibilities; forced her to "endure a constant barrage of unwarranted, disparaging comments, critiques, and criticisms"; undermined her authority and had their subordinates do the same; and deprived her of personnel and resources that they afforded themselves. FAC ¶ 109. Adams-Flores further avers that, under Murphy's direction, she "prepar[ed] and submit[ed] conference proposals that were given to others to receive credit" and that the deprivation of staff and

11

resources prevented her from "executing the required tasks for which she was responsible." *Id*. ¶ 111. For example, Adams-Flores alleges that Murphy told her that she could not have an officer as her driver, even though all other white Deputy Commissioners who were otherwise similarly situated to Adams-Flores had been assigned officers as their drivers, because "it was like 'Driving [Miss] Daisy' and 'it looked bad.'" *Id*. ¶ 58. Adams-Flores also alleges that Murphy asked her subordinate to report on the activities of officers in her division — a request that was not made of subordinates to any white Deputy Commissioners. *Id*. ¶ 59.

Although Murphy's comment about "Driving Miss Daisy," taken by itself, may not rise to the level of a statutory violation, when considered together with the allegation that he "denigrated [Adams-Flores], withheld [resources] from Plaintiff[], and instructed others to ignore Plaintiff['s] directions," it is sufficient to survive a motion to dismiss the Section 1983 and NYSHRL claims against Murphy. *Daniels*, 2019 WL 251511 at *6 (denying a motion to dismiss claims against the DOC Commissioner Brann under similar circumstances). It follows that Adams-Flores's claims against Murphy under the NYCHRL also survive, as the relevant standards under the city law are even easier to satisfy. *See, e.g.*, *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013); *cf. Gorman v. Covidien, LLC*, 146 F. Supp. 3d 509, 530-31 (S.D.N.Y. 2015) (holding that the imposition of a performance improvement plan and additional strictures on the plaintiff constituted adverse employment action that was "more than trivial, insubstantial, or petty" and thus actionable under NYCHRL).

In sum, the motion to dismiss is granted as to the remaining claims against Yang and MacDonald, but it is denied as to the remaining claims against Murphy.

## C. Municipal Liability Claim Against the City

Finally, Defendants move to dismiss Adams-Flores's Section 1983 claim against the City, which is brought pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978). To survive a motion to dismiss, a Section 1983 claim against the City must plead that the individuals who engaged in illegal conduct did so "pursuant to official municipal policy." *Outlaw v. City of Hartford*, 884 F.3d 351, 372 (2d Cir. 2018) (internal quotation marks omitted). "Official municipal policy includes not only the decisions of a government's lawmakers, but also the acts of its policymaking officials, and *practices* so persistent and widespread as to practically have the force of law." *Id*. (internal quotation marks omitted) (emphasis in original). "The critical characteristic" in determining who has final policymaking authority in the employment context is whether a particular "municipal official has authority to formulate the rules governing [the challenged] personnel decisions rather than authority to make decisions pursuant to those rules." *Moore v. City of New York*, No. 15-CV-6600 (GBD) (GLC), 2018 WL 3491286, at *14 (S.D.N.Y. July 20, 2018) (internal quotation marks omitted); *accord Jeffes v. Barnes*, 208 F.3d 49, 57 (2d Cir. 2000) (holding that, for the municipality to be liable, the official must be responsible for making policy with respect to the challenged conduct). "It does not suffice for these purposes that the official has been granted discretion in the performance of his duties." *Id*. Plaintiffs bear the burden of establishing that an official is the final policymaker in a given area, *id.*, which is ultimately an issue of law to be determined by reference to state and local law, *see City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988); *Soto v. Schembri*, 960 F. Supp. 751, 757 (S.D.N.Y. 1997) ("The individuals who have policymaking authority can be identified by their receipt of such authority through express legislative grant, or through their delegation of policymaking authority from those to whom the power has been expressly granted.").

In this case, Adams-Flores does not point to the existence of a New York City policy or custom to discriminate against African American DOC employees. Instead, she alleges only that Defendants "engaged in a policy, custom, and/or condoned a longstanding practice, which has deprived Plaintiff and other female employees of rights, privileges and immunities secured by the Fourteenth Amendment, Title VII, and 42 U.S.C. § 1981," FAC ¶ 174, and that the City "failed to adequately train or supervise [its] upper-level supervisors," *id*. ¶ 178. However, "the simple recitation that there was a failure to train municipal employees does not suffice to allege that a municipal custom or policy caused plaintiff's injury." *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993). Moreover, Adams-Flores's attempts to cast the individual Defendants as policymakers fails because the First Amended Complaint does not allege facts to show that the defendants who engaged in allegedly discriminatory conduct had authority to formulate the rules governing DOC or HHC personnel decisions. Nor are they alleged to have mistreated Adams-Flores pursuant to any directive from the Mayor, City Council, or the City's Personnel Director. *See Littlejohn*, 795 F.3d 297 at 315 (citing *Soto*, 960 F. Supp. at 759 to note that the New York City Charter vests final policymaking authority in the Mayor and the City Council and that the Charter vests policymaking authority with respect to personnel decisions with the City's Personnel Director, not the DOC Commissioner). At best, the First Amended Complaint alleges that Defendants Brann, Yang, MacDonald, Thamkittikasem, and Murphy abused the discretion that was afforded to them as officials within the DOC and the HHC. Although troubling if true, these allegations do not establish that the individuals were acting pursuant to a formal City policy, or that their behavior is so pervasive that it constitutes an unofficial practice condoned by the City. Thus, the Section 1983 municipal liability claim against the City of New York must be and is dismissed.

# CONCLUSION

To summarize:

(1) All of Adams-Flores's Title VII claims are dismissed as untimely because, according to the First Amended Complaint, she received her right-to-sue letter ninety-four days before she filed this lawsuit;

(2) Adams-Flores's Title VII claims are dismissed as time barred to the extent they accrued prior to December 20, 2016, because she did not file a charge with the EEOC until October 16, 2017;

(3) Adams-Flores's claims against the DOC are dismissed because the DOC is not a suable entity;

(4) Adams-Flores's Section 1981 claims are dismissed because Section 1983 is the exclusive federal remedy for violation of the rights guaranteed in Section 1981 by state governmental units and officials;

(5) Adams-Flores's Section 1983 claims brought against the individual Defendants in their official capacities are dismissed as duplicative of the claims against the City;

(6) Adams-Flores's NYCHRL claims against the HHC and any Fourteenth Amendment due process claim are dismissed as abandoned;

(7) To the extent they are timely, Adams-Flores's claims against the HHC for the period before February 2016 are dismissed for failure to allege facts raising even a minimal inference of discrimination or retaliation;

(8) To the extent they are timely, Adams-Flores's claims against the HHC for the period after February 2016 are dismissed because the HHC was not her employer at that time;

(9) Adams-Flores's other claims against Defendants Yang and MacDonald (pursuant to NYSHRL, NYCHRL, and Section 1983) are dismissed for failure to state a claim;

(10) Defendants' motion is denied as to Adams-Flores's claims against Murphy; and

(11) Adams-Flores's *Monell* claim is dismissed for failure to state a claim.

Further, although leave to amend a complaint should be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), it is "within the sound discretion of the district court to grant or deny leave to amend," *Ahmed v. GEO USA LLC*, No. 15-CV-7486 (JMF), 2015 WL 1408895, at *5 (S.D.N.Y. Mar. 27, 2015). The Court exercises its discretion and grants Adams-Flores

leave to amend to address (1), (7), and (9) because it is plausible that she could allege sufficient facts to address these defects. The Court, however, declines to *sua sponte* grant Adams-Flores leave to amend to address the other defects because those defects are largely substantive in nature, she was previously given leave to amend and was warned that she would not be given another opportunity, *see* ECF No. 34, and she does not allege that she is in possession of facts that would cure the defects. *See, e.g.*, *Maragh v. Roosevelt Island Operating Corp.*, No. 16-CV-7530 (JMF), 2018 WL 6573452, at *6 (S.D.N.Y. Dec. 13, 2018); *Croft v. AXA Equitable Life Ins. Co.*, No. 17-CV-9355 (JMF), 2018 WL 4007646, at *5 (S.D.N.Y. Aug. 22, 2018).

Adams-Flores shall file any amended complaint addressing only defects (1), (7), and (9) within **thirty days** of the date of this Opinion and Order. In the absence of an amended complaint, the Defendants shall file an Answer to the remaining claims within **forty-five days** of the date of this Opinion and Order. Subject to any amendment, the remaining claims are Adams-Flores's claims against Murphy, discussed above, as well as the claims that Defendants did not move to dismiss, namely her NYSHRL and NYCHRL claims against the City, Brann, and Thamkittikasem and her Section 1983 claims against Brann and Thamkittikasem.

The Clerk of Court is directed to terminate ECF No. 47 and to terminate the DOC, Yang, and MacDonald as parties.

SO ORDERED.

Dated: March 2, 2020
      New York, New York

                                                 JESSE M. FURMAN
                                           United States District Judge