```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                                     :
NICHOLE ADAMS-FLORES,                                :
                                                     :
                            Plaintiff,               :
                                                     :    18-CV-12150 (JMF)
                -v-                                  :
                                                     :    OPINION AND ORDER
CITY OF NEW YORK et. al,                             :
                                                     :
                            Defendants.              :
                                                     :
-----------------------------------------------------------------------X
```

JESSE M. FURMAN, United States District Judge:

Plaintiff Nichole Adams-Flores brings a host of discrimination and retaliation claims against the City of New York (the "City"); one of her former employers, the New York City Health and Hospital Corporation ("HHC"); and several former colleagues. In a prior Opinion and Order, the Court dismissed most of Adams-Flores's claims but permitted her to amend her complaint in several discrete respects. *See Adams-Flores v. City of New York*, No. 18-CV-12150 (JMF), 2020 WL 996421, at *7-8 (S.D.N.Y. Mar. 2, 2020) (ECF No. 58). Plaintiff timely filed an amended complaint, ECF No. 74 ("TAC"), and Defendants HHC, Patsy Yang, and Ross MacDonald (the "Moving Defendants") now move again, pursuant to pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss all of Adams-Flores's claims against them, *see* ECF No. 77. For the reasons that follow, the motion is GRANTED in full.

## BACKGROUND

The Court described the background of this case in its prior Opinion and Order, *see Adams-Flores*, 2020 WL 996421, at *1-2, familiarity with which is presumed, and thus includes here only the facts relevant to the instant motion. It draws those facts from the operative Third

Amended Complaint (the "Amended Complaint"), and it assumes them to be true for purposes of this motion. *See, e.g.*, *Kleinman v. Elan Corp.*, 706 F.3d 145, 147, 152 (2d Cir. 2013).

Adams-Flores, an African-American woman, is a licensed and registered psychologist who, until February 2016, worked at HHC as a clinical supervisor. TAC ¶¶ 14, 43, 53, 87. In late 2015, while pregnant, Adams-Flores made a request to her direct supervisor, Jude Leung, for an accommodation to allow her to work from home while on bed rest. *Id.* ¶¶ 56, 62. Leung informed Adams-Flores that Yang, who served as Senior Vice President of Correctional Health Services for HHC, had denied the request and recommended that Adams-Flores be shifted to part-time work instead, claiming that Adams-Flores's position required her to work on site. *Id.* ¶¶ 21, 64-65. Adams-Flores complained to Leung, reminding her that HHC had an obligation to provide reasonable accommodations for pregnant women. *Id.* ¶¶ 68-69. Additionally, she alleges that HHC "allowed many others in similar roles" — that is, with the same title and the same supervisor — "to work from alternative clinical locations." *Id.* ¶ 91; *see id.* ¶¶ 92-93. "However, these similarly situated individuals, [sic] were not African American and did not require accommodation of a disability." *Id.* ¶ 91.

Nevertheless, HHC did not reverse the decision to deny Adams-Flores her requested accommodations. *See id.* ¶ 70. Shortly thereafter, Adams-Flores reported to an Equal Employment Opportunity ("EEO") Officer at HHC that HHC was discriminating against her on the basis of her pregnancy. *See id.* ¶¶ 75, 78-80, 82-83, 85. On January 25, 2016, she also proposed several alternative accommodations, such as working in person in a wheelchair while wearing a mask to prevent exposure to toxins. *Id.* ¶ 78-79. HHC did not respond to these proposals. *See id.* ¶¶ 81-83. Because of this lack of response, on February 1, 2016, Adams-Flores announced her decision to resign from HHC and transfer to a new position at the

Department of Corrections (the "DOC"). *See id.* ¶¶ 83-84, 99-101. Then, on February 8, 2016, HHC granted her work-from-home request through her last day with HHC, February 12, 2016. *Id.* ¶¶ 87-88.

In her new role at the DOC, Adams-Flores was required to work with HHC, which oversees medical care for those in DOC custody. That meant continuing to work closely with many HHC employees, including Yang and MacDonald, HHC's Chief of Medicine. *See id.* ¶¶ 99-100, 152. Their working relationship was toxic from the beginning. Adams-Flores alleges that Yang and MacDonald often treated her rudely and made her job difficult by excluding her from meetings or withholding relevant information. *See id.* ¶¶ 104, 107-10, 135, 143, 146, 157-60. Adams-Flores became aware of the meetings only after they had already taken place, and her work suffered as a result. *Id.* ¶ 111. In at least one instance, Yang falsely blamed Adams-Flores for failing to enact an initiative that was discussed at one of these meetings, even though Yang had not informed her of the plan and instead coordinated with a white male administrator at the DOC to execute a portion of the work. *Id.* ¶ 112.

On December 27, 2018, Adams-Flores filed her initial complaint against HHC, the DOC, the City, and several of her former colleagues, including Yang and MacDonald, alleging that Defendants had discriminated against her on the basis of her race, sex, and pregnancy and engaged in unlawful retaliation. *See* ECF No. 4. Defendants moved to dismiss most — but not all — of Adams-Flores's claims and, on March 2, 2020, the Court issued its Opinion and Order granting that motion in large part. To the extent relevant here, the Court "dismissed as untimely, *without* leave to amend," all of Adams-Flores's Title VII claims "to the extent that they accrued prior to December 20, 2016." *Adams-Flores*, 2020 WL 996421, at *3. It also dismissed, albeit *with* leave to amend, all claims against HHC, "[t]o the extent they are timely, . . . for the period

3

before February 2016" and all claims against Yang and MacDonald.  *Id.* at *4-6, 8.  On July 24, 2020, Adams-Flores filed the Amended Complaint renewing these claims.  *See* TAC ¶¶ 210-58.

## LEGAL STANDARDS

In evaluating Defendants' motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all facts set forth in the Amended Complaint as true and draw all reasonable inferences in Adams-Flores's favor.  *See, e.g., Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (per curiam).  A claim will survive a Rule 12(b)(6) motion, however, only if the plaintiff alleges facts sufficient "to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  A plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully," *id*., and cannot rely on mere "labels and conclusions" to support a claim, *Twombly*, 550 U.S. at 555.  If the plaintiff's pleadings "have not nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed."  *Id.* at 570.  Where, as here, a plaintiff brings claims of employment discrimination, however, the facts "alleged in the complaint need not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination.  They need only give plausible support to a minimal inference of discriminatory motivation."  *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015); *see also Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86-87 (2d Cir. 2015).

## DISCUSSION

The Moving Defendants move to dismiss three sets of claims renewed by Adams-Flores in the Amended Complaint: Title VII claims against HHC; claims against HHC for discrimination and retaliation in violation of the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.*; and all claims against Yang and MacDonald.  The Court will address each set of claims in turn.

### A. Title VII Claims Against HHC

Adams-Flores's renewed Title VII claims against HHC need not detain the Court long. In its earlier Opinion and Order, the Court dismissed "any standalone [Title VII] claims based on conduct prior to December 20, 2016 — *including all conduct during Adams-Flores's employment at HHC*" — *with prejudice* because they were time-barred.  *Adams-Flores*, 2020 WL 996421, at *3 (emphasis added).  The inclusion of these claims in the Amended Complaint is therefore patently improper.  And even if that were not the case, the claims remain untimely for the reasons the Court previously explained.  As the Court noted, Title VII requires a plaintiff such as Adams-Flores to file a charge of discrimination with the Equal Employment Opportunity Commission within 300 days of the alleged discriminatory action.  *See id.*; *see also* 42 U.S.C. § 2000e-5(e)(1).  Here, she did not do so until October 16, 2017, *see* ECF No. 51-1, which means that any conduct that occurred before December 20, 2016, is not actionable under the federal statute.  That includes *all* of HHC's alleged conduct, as she left HHC for the DOC in February 2016 and has not been employed by HHC since.  *See* TAC ¶ 101.

### B. NYSHRL Claims Against HHC

The Court turns, then, to Adams-Flores's NYSHRL claims against HHC.  In its earlier Opinion and Order, the Court dismissed these claims because she "fail[ed] to allege facts raising

5

even a minimal inference of discrimination or retaliation." *Adams-Flores*, 2020 WL 996421, at *8. Adams-Flores had attempted to make the necessary showing of discrimination by alleging that HHC had treated "employees not in the protected group" more favorably. *See id.* at *5 (internal quotation marks omitted). The Court concluded, however, that she had failed to allege facts to plausibly support a finding that any comparators were similarly situated to her or that her protected characteristic was at least a motivating factor in her adverse employment action. *See id.* More specifically, the Court concluded that "Adams-Flores's failure to describe the circumstances that gave rise to . . . [the] denial of her request [for accommodation], let alone provide any specificity as to her alleged comparators' qualifications, responsibilities, employment history, and the particulars of their requests to work remotely, [was] fatal to her claims." *Id.* (internal quotation marks omitted). "Adams-Flores, for instance, [did] not establish whether her alleged comparators [had] requested to work from home, as Adams-Flores did, or from other locations and what their grounds for their requests were." *Id.*

Although Adams-Flores's Amended Complaint contains more allegations, it does not actually cure this fatal deficiency. As before, Adams-Flores's discrimination claim against HHC turns on her assertion that HHC treated similarly situated employees better than it treated her. *See* TAC ¶¶ 91-93; ECF No. 85 ("Pl.'s Opp'n"), at 13-16. But the Amended Complaint alleges merely that these purported comparators were permitted "to work from an office in an administrative wing at the work location for an entire workday, only visiting inmate units on an as needed basis, if at all." TAC ¶ 92. It also alleges that the comparators and Adams-Flores had the same supervisor and that — "[o]n information and belief" — the comparators did not make their request "as an accommodation for any disability." *Id.* But it still does not describe the comparators' qualifications, responsibilities, or employment history. Nor does it provide any

6

hint about the reasons for the comparators' requests. And tellingly, it does not claim that any comparator was pregnant or allowed (or, for that matter, even requested) to work from home. Taken together, this is not enough to nudge Adams-Flores's claim across the plausibility line. *See, e.g.*, *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000) (requiring "a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases"); *accord Dooley v. JetBlue Airways Corp.*, No. 14-CV-4432 (JMF), 2015 WL 1514955, at *3 (S.D.N.Y. Apr. 1, 2015), *aff'd in relevant part*, 636 F. App'x 16, 20 (2d Cir. 2015).

Adams-Flores's renewed NYSHRL retaliation claim against HHC also falls short. To successfully plead such a claim, a plaintiff must plausibly allege that she suffered a relevant adverse employment action "because" of a protected activity. *See* N.Y. Exec. Law § 296(7); *see also Farmer v. Shake Shack Enters., LLC*, 473 F. Supp. 3d 309, 330 (S.D.N.Y. 2020). "Where timing is the only basis for a claim of retaliation," however, "and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise." *Slattery v. Swiss Reins. Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001); *accord Jacob v. NYSARC, Inc.*, No. 13-CV-1677 (KPF), 2014 WL 6750654, at *12 (S.D.N.Y. Dec. 1, 2014); *Hartley v. Rubio*, 785 F. Supp. 2d 165, 182 (S.D.N.Y. 2011). That is the case here. Adams-Flores contends that the denial of her request for an accommodation was retaliatory. *See* TAC ¶¶ 64, 214; *see* Pl.'s Opp'n 17. But the initial denial occurred *before* Adams-Flores engaged in her alleged protected activities — namely, by complaining to Leung and the EEO. *See* TAC ¶¶ 64-86. Adams-Flores alleges no adverse employment action after her protected activity. In fact, HHC eventually granted Adams-Flores's initial request for an accommodation only a few weeks later. *See* TAC ¶ 87. Thus, Adams-Flores's renewed NYSHRL retaliation claim against HHC must be and is dismissed. *See Slattery*, 248 F.3d at 95.

## C. Claims Against Yang and MacDonald

Finally, Adams-Flores brings renewed claims of discrimination and retaliation, and aiding and abetting the same, against Yang and MacDonald pursuant to 42 U.S.C. § 1983 ("Section 1983"), the NYSHRL, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq.* *See* TAC ¶¶ 231-32, 240, 247, 252-55; Pl.'s Opp'n 19-21. For starters, any such claims relating to the period when Adams-Flores was an HHC employee fail for the reasons discussed above — namely, Adams-Flores's failure to allege sufficient facts showing minimal support for an inference of discrimination or retaliation. *See Reynolds v. Barrett*, 685 F.3d 193, 204 (2d Cir. 2012) (requiring discriminatory purpose to support individual liability for Section 1983 equal protection claims); *White v. Pacifica Found.*, 973 F. Supp. 2d 363, 377-78 (S.D.N.Y. 2013) (requiring a primary violation of the NYSHRL and the NYCHRL to support aiding-and-abetting liability). The discrimination claims alleged against Yang and MacDonald for the period after Adams-Flores moved from HHC to the DOC are even weaker and, *a fortiori*, fail as well. The only allegations in the Amended Complaint that speak to Yang's and MacDonald's intent during that period relate to their treatment of other non-African-American employees. *See, e.g.*, TAC ¶¶ 107, 110-11, 143. But the Amended Complaint is even more sparse with respect to these alleged comparators than it is with respect to the alleged comparators at HHC. *See, e.g.*, *id.* ¶ 110 (describing the comparators relevant to the DOC period as merely "at Plaintiff's level"). That is not enough to plausibly allege an individual discrimination claim against Yang or MacDonald under any of the statutes at issue. *See Reynolds*, 685 F.3d at 204 (Section 1983); *McHenry v. Fox News Network, LLC*, — F. Supp. 3d —, 2020 WL 7480622, at *8-9 (S.D.N.Y. 2020) (NYSHRL and NYCHRL).

8

Similarly, Adams-Flores fails to state an individual retaliation claim against Yang or MacDonald for the period after she started working at DOC. As noted, to establish a *prima facie* case of retaliation, a plaintiff must show a "causal connection between the protected activity and the adverse employment action." *Moore v. Verizon*, No. 13-CV-6467 (RJS), 2016 WL 825001, at *15 (S.D.N.Y. Feb. 5, 2016) (Sullivan, J.) (internal quotation marks omitted) (NYSHRL and NYCHRL); *see also Vega*, 801 F.3d at 90-91 (Section 1983). Where, as here, a plaintiff is unable to show direct evidence of retaliatory purpose, she may rely on a close temporal proximity between the protected activity and the adverse action. *See Moore*, 2016 WL 825001, at *15 (NYSHRL and NYCHRL); *see also Sosa v. N.Y.C. Dep't of Educ.*, 368 F. Supp. 3d 489, 518-19 (E.D.N.Y. 2019) (Section 1983). When "mere temporal proximity" is used to demonstrate causation, however, "the protected activity and the adverse action must occur 'very close' together." *Moore*, 2016 WL 825001, at *15 (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001)); *see also Sosa*, 368 F. Supp. 3d at 519. Here, the only specific allegations involving Yang or MacDonald occurred in January and July 2018 — at least *two years* after Adams-Flores made her complaints about HHC's treatment of her accommodation request. *See* TAC ¶¶ 135, 146, 157. Without direct evidence of retaliatory motive, this is way too long to support an inference of causation. *See, e.g.*, *Torre v. Charter Commc'ns, Inc.*, — F. Supp. 3d —, 2020 WL 5982684, at *7 (S.D.N.Y. 2020) (dismissing a retaliation claim where "the alleged retaliatory conduct took place more than five months after engaging in protected activity" and the plaintiff failed to "allege any other evidence of a causal connection"); *Moore*, 2016 WL 825001, at *15 (holding that, even under the more lenient approach of the NYCHRL, causation was insufficiently pled where there was a four-month gap between the protected activity and adverse action and no other evidence of causation); *see also Sosa*, 368 F. Supp. 3d at

9

519 ("Motions to dismiss [Section 1983 retaliation claims] have been granted when the temporal proximity exceeds one year.").[1]

## CONCLUSION

For the foregoing reasons, the Moving Defendants' motion is granted in full and the renewed claims at issue are dismissed. Furthermore, the Court declines to *sua sponte* grant Adams-Flores leave yet again to amend her complaint to cure any defects. *See, e.g.*, *Denny v. Barber*, 576 F.2d 465, 471 (2d Cir. 1978) (denying leave to amend a second time when the district court had previously granted leave to amend and "had put plaintiff's counsel on the plainest notice of what was required"); *Avillan v. Brennan*, No. 16-CV-5611 (AJN) (RLE), 2018 WL 4680027, at *6 (S.D.N.Y. Sept. 28, 2018) (denying leave to amend because the plaintiff "[had] already had the opportunity to amend his complaint to address the pleading deficiencies identified by the Court in [its] prior opinion, but [had] been unable to do so"). That leaves the following live claims: Adams-Flores's Title VII claims against the City (to the extent they accrued after December 20, 2016), her claims against Defendant Martin Murphy, discussed in the Court's earlier Opinion and Order, *Adams-Flores*, 2020 WL 996421, at *6, as well as the claims that Defendants did not move to dismiss earlier or here, namely her NYSHRL and NYCHRL claims against the City, Cynthia Brann, and Jeff Thamkittikasem, and her Section 1983 claims against Brann and Thamkittikasem. Within **twenty-one days of this Opinion and**

---

[1] To the extent that the Amended Complaint includes any hostile work environment claim against Yang and MacDonald, it would need to be dismissed for essentially the same reasons: Adams-Flores fails to allege sufficient facts showing that any actions taken against her were taken because of a protected characteristic. *See Naumovski v. Norris*, 934 F.3d 200, 214 (2d Cir. 2019) (requiring proof of "but-for" causation for Section 1983 hostile work environment claims); *Russo v. N.Y. Presbyterian Hosp.*, 972 F. Supp. 2d 429, 451, 454 (E.D.N.Y. 2013) (requiring a plaintiff to show that a hostile work environment occurred "because of" a protected characteristic to support a NYSHRL or NYCHRL claim).

**Order**, the remaining Defendants shall file their answers to these claims.  The parties shall then appear for an initial pretrial conference on **April 13, 2021**, at **4:15 p.m.**  The parties are reminded that no later than the Thursday before the conference, they must submit the materials described at ECF No. 7.

The Clerk of Court is directed to terminate ECF No. 77 and to terminate HHC, Yang, and MacDonald as Defendants.

SO ORDERED.

Dated: March 10, 2021
New York, New York

JESSE M. FURMAN
United States District Judge