UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                              :

NICHOLE ADAMS-FLORES,                   :

                           Plaintiff,         :

                                               :           18-CV-12150 (JMF)

         -v-                     :

                                               :        <u>OPINION AND ORDER</u>

CITY OF NEW YORK, et al.,           :

                           Defendants.   :

                                             :
------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

      Nichole Adams-Flores, the former deputy commissioner of the New York City

Department of Corrections ("DOC"), brings this action against the City of New York and three

former DOC colleagues, Cynthia Brann, Jeff Thamkittikasem, and Martin Murphy.  Adams-

Flores alleges that Defendants subjected her to discrimination on the basis of race, a hostile work

environment, and retaliation, all in violation of Title VII of the Civil Rights Act of 1964 ("Title

VII"), 42 U.S.C. § 2000e *et seq.*; the New York State Human Rights Law (the "NYSHRL"),

N.Y. Exec. Law § 290 *et seq.*; the New York City Human Rights Law (the "NYCHRL"), N.Y.C.

Admin. Code § 8-101 *et seq.*; and Section 1983 of the Civil Rights Act of 1871 ("Section 1983"),

42 U.S.C. § 1983.  Defendants now move, pursuant to Rule 56 of the Federal Rules of Civil

Procedure, for summary judgment on all of Adams-Flores's claims.  For the reasons that follow,

their motion is GRANTED with respect to the discrimination and hostile work environment

claims, and GRANTED in part and DENIED in part with respect to the retaliation claims.

**BACKGROUND**

The following facts, taken from the Complaint and admissible materials submitted in connection with the pending motion, are either undisputed or viewed in the light most favorable to Adams-Flores.[1]  *See Costello v. City of Burlington*, 632 F.3d 41, 45 (2d Cir. 2011).

Adams-Flores, an African-American woman, was employed as a deputy commissioner for the Health Affairs Unit ("HAU") at DOC from February 15, 2016, until March 15, 2019. ECF No. 178-11 ("Defs.' SOF"), ¶ 1.  Her starting salary was $165,000.  *Id.* ¶¶ 3, 76. Thamkittikasem, DOC's Chief of Staff, oversaw Adams-Flores's work until he left DOC in August 2018.  *Id.* ¶¶ 8-9.  Murphy was DOC's Chief of Department from November 2014 until June 2017 and, in that capacity, oversaw all of DOC's uniformed staff, some of whom worked with Adams-Flores in HAU.  *Id.* ¶¶ 15, 24.  Brann became the Acting Commissioner of DOC in June 2017 and Commissioner in October 2017.  *Id.* ¶ 11.

As deputy commissioner for HAU, Adams-Flores worked with New York City Health and Hospitals Corporation ("HHC") to oversee medical care for those in DOC custody.  *Id.* ¶¶ 20, 27-28.  But she struggled to communicate with HHC staff; they often left her off of relevant emails and brought concerns directly to Thamkittikasem rather than to her.  *Id.* ¶¶ 34-35, 39-40, 82-83, 86, 88; ECF No. 178-1 ("Adams-Flores Tr."), at 94-96.  On top of these

---

[1]  Adams-Flores submitted a declaration in connection with her opposition to Defendants' motion for summary judgment.  *See* ECF No. 178-10 ("Adams-Flores Decl.").  In reply, Defendants argue that the Court should strike the declaration because "it is rife with hearsay and speculation and also fails to demonstrate that [Adams-Flores] has personal knowledge regarding personal representations."  ECF No. 186 ("Defs.' Reply"), at 3.  Under Rule 56, a "declaration used to support or oppose a motion must be made on personal knowledge."  Fed. R. Civ. P. 56(c)(4).  Additionally, only admissible evidence may be considered on summary judgment. *See, e.g.*, *McKinney v. City of Middletown*, 49 F.4th 730, 745-46 (2d Cir. 2022); *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997).  Accordingly, the Court will not consider any portions of Adams-Flores's declaration that constitute hearsay or do not rely on her personal knowledge.

communication problems, Adams-Flores identified several other actions DOC executives took that she felt were discriminatory or retaliatory.  First, Murphy criticized her for using a corrections officer as a driver.  Defs.' SOF ¶ 46.  Murphy told her: "It's the reverse of Driving Miss Daisy.  This driver you have opening the door for you and doing everything for you is a bad look."  *Id.* ¶ 54.  In addition, in November 2016, Murphy emailed all DOC executive staff, including Adams-Flores, the DOC policy regarding drivers, pursuant to which only certain executive staff, *not* including deputy commissioners, were allowed drivers.  *Id.* ¶¶ 56-57; ECF No. 164-4, at 17-19.[2]  When Adams-Flores continued to use corrections officers as drivers, Murphy asked a supervisor in HAU to report to him about the activities of the HAU corrections officers.  Defs.' SOF ¶ 61; ECF No. 164-9 ("Murphy Tr."), at 179-80.  Adams-Flores believed this to be an attempt by Murphy to spy on her.  Adams-Flores Tr. 109-11.  Second, Adams-Flores requested extra staff, but at least some of her requests were denied.  Defs.' SOF ¶¶ 91, 94; ECF Nos. 164-49, 164-50.  Finally, Brann expressed concerns about how frequently Adams-Flores was leaving DOC to attend conferences and workshops.  Defs.' SOF ¶ 68.  Brann barred Adams-Flores from attending certain conferences in 2017 and 2018 and ultimately implemented a policy of no more than two conferences per year per employee for DOC executive staff.  *Id.* ¶¶ 67, 72-73.  Adams-Flores felt this reflected poorly on her professional reputation, as she had committed to attending these conferences and workshops.  *See, e.g.*, ECF No. 164-48; *see also* ECF No. 76 ("Pl.'s Opp'n"), at 2.

In 2017, Adams-Flores sought a permanent civil service title; she took and passed the civil service exam, interviewed for a civil service position with the Department of Health and

---

[2]     Citations to ECF No. 164-4 are to the page numbers automatically generated by the Court's Electronic Case Filing (ECF) system.

Mental Hygiene, and then asked DOC to "pick up" — i.e., transfer to DOC — the title.  Defs.'
SOF ¶¶ 96-98.  Brann initially denied her request.  *Id.* ¶ 114.  Eventually, DOC did agree to pick
up her civil service title, effective September 11, 2017.  *Id.* ¶ 120.  Civil service employees
typically serve a year of "probation" before a title becomes permanent.  *Id.* ¶¶ 128, 131; ECF No.
164-19.  Although DOC picked up Adams-Flores's civil service title, she was placed "on leave"
for that title while she continued to serve as deputy commissioner.  Defs.' SOF ¶¶ 128, 131.
Shortly thereafter, the New York City Department of Investigation ("DOI") began investigating
Adams-Flores after receiving complaints that she was misusing DOC property, relying on a
subordinate to provide childcare while on city time, and falsifying timesheets.  ECF No. 166-1.
DOI issued a final report and sent it to DOC on March 15, 2019, validating these complaints.
*Id.*; Defs.' SOF ¶ 149.  On March 16, 2021, the City's Conflict of Interest Board entered into a
disposition with Adams-Flores in which she admitted to the conduct described in the DOI report.
Defs.' SOF ¶¶ 152-53; ECF No. 164-29.  Although DOC had discretion to count Adams-Flores's
time on leave towards her probationary period, DOC informed Adams-Flores on January 11,
2019, that she had not satisfactorily completed her probation.  Defs.' SOF ¶¶ 132, 135.  The
stated reason was the DOI investigation.  *Id.* ¶ 135; ECF No. 164-34.  On March 15, 2019, DOC
terminated Adams-Flores.  Defs.' SOF ¶¶ 150-51.

## PROCEDURAL HISTORY

Adams-Flores filed a complaint with DOC's Equal Employment Office ("EEO") on May
15, 2017.  Defs.' SOF ¶¶ 64-65.  On October 16, 2017, she filed a complaint with the Equal
Employment Opportunity Commission ("EEOC").  ECF No. 164-51.  She filed this lawsuit on
December 24, 2018.  ECF No. 1.  In prior rulings on motions to dismiss, familiarity with which
is presumed, the Court dismissed various claims.  *See Adams-Flores v. City of New York*, No. 18-

CV-12150 (JMF), 2020 WL 996427 (S.D.N.Y. Mar. 2, 2020) (ECF No. 58) ("*1st MTD Op.*");

*Adams-Flores v. City of New York*, No. 18-CV-12150 (JMF), 2021 WL 918041 (S.D.N.Y. Mar.

10, 2021) (ECF No. 89) ("*2d MTD Op.*").   That leaves Adams-Flores's claims against the City,

Brann, Thamkittikasem, and/or Murphy for employment discrimination and retaliation under

Title VII, NYSHRL, NYCHRL, and § 1983; and hostile work environment under Title VII.

## LEGAL STANDARDS

Summary judgment is appropriate where the admissible evidence and pleadings

demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as

a matter of law."  Fed. R. Civ. P. 56(a); *see also Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir.

2012) (per curiam).  Such a dispute qualifies as genuine "if the evidence is such that a reasonable

jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248 (1986); *accord Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008).  The moving

party bears the initial burden of demonstrating the absence of a genuine issue of material fact.

*See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  "In moving for summary judgment

against a party who will bear the ultimate burden of proof at trial, the movant's burden will be

satisfied if he can point to an absence of evidence to support an essential element of the

nonmoving party's claim."  *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18

(2d Cir. 1995) (citing *Celotex*, 477 U.S. at 322-23); *accord PepsiCo, Inc. v. Coca-Cola Co.*, 315

F.3d 101, 105 (2d Cir. 2002) (per curiam).  Critically, however, all evidence must be viewed "in

the light most favorable to the non-moving party," *Overton v. N.Y. State Div. of Mil. & Naval

Affs.*, 373 F.3d 83, 89 (2d Cir. 2004), and the court must "resolve all ambiguities and draw all

permissible factual inferences in favor of the party against whom summary judgment is sought,"

*Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).

To defeat a motion for summary judgment, a non-moving party must advance more than a "scintilla of evidence," *Anderson*, 477 U.S. at 252, and demonstrate more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The non-moving party "cannot defeat the motion by relying on the allegations in his pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible."  *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (citation omitted).  Affidavits submitted in support of, or opposition to, summary judgment must be based on "personal knowledge," must "set out facts that would be admissible in evidence," and must "show that the affiant or declarant is competent to testify on the matters stated."  *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(c)(4)).  Notably, the Second Circuit has cautioned that courts should be "especially chary in handing out summary judgment in discrimination cases," as the intent of the employer is often disputed.  *Jamilik v. Yale Univ.*, 362 F. App'x 148, 149 (2d Cir. 2009) (summary order) (internal quotation marks omitted).  Nevertheless, it is "beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases."  *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001).  Indeed, just as in the non-discrimination context, "an employment discrimination plaintiff faced with a properly supported summary judgment motion must do more than simply show that there is some metaphysical doubt as to the material facts.  She must come forth with evidence sufficient to allow a reasonable jury to find in her favor."  *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001) (cleaned up).  That is, a "plaintiff must produce not simply some evidence, but sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the defendant were false, and that more

likely than not discrimination was the real reason for the employment action." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000) (cleaned up).

## DISCUSSION

As noted, Adams-Flores brings discrimination, hostile work environment, and retaliation claims pursuant to Title VII, the NYSHRL, the NYCHRL, and Section 1983. The Court will address each category of claim in turn.

### A. Discrimination

Adams-Flores brings discrimination claims under Title VII, the NYSHRL, and the NYCHRL. Claims under Title VII and the NYSHRL are subject to the three-step, burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). *See DeMuth v. U.S. Small Bus. Admin.*, 819 F. App'x 23, 25 (2d Cir. 2020) (summary order); *Tolbert v. Smith*, 790 F.3d 427, 434 (2d Cir. 2015). Under that framework, a plaintiff must first establish "a *prima facie* case of discrimination." *Id.* To do so, she must show that (1) she belonged to a protected class; (2) she was qualified for the position she held; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent. *See, e.g.*, *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012); *accord Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003). If the plaintiff does so, "the burden then shifts to the employer to articulate a legitimate, non-discriminatory . . . reason for the adverse action." *DeMuth*, 819 F. App'x at 25. "If the employer satisfies its burden, the plaintiff must then show that the reasons presented were a pretext for discrimination . . . ." *Id.* (internal quotation marks omitted). Notably, if the employer articulates a legitimate, non-discriminatory reason, the "plaintiff may no longer rely on the presumption raised by the prima facie case, but may still prevail by showing, without the benefit

of the presumption, that the employer's determination was in fact the result of [prohibited] discrimination." *Holcomb v. Iona College*, 521 F.3d 130, 138 (2d Cir. 2008).

The Second Circuit has advised that "courts must analyze NYCHRL claims separately and independently from any federal and state law claims, construing the NYCHRL's provisions broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013) (cleaned up). But even under the liberal standards of the NYCHRL, "a plaintiff still must show that the complained-of conduct is caused by a discriminatory motive." *Marseille v. Mount Sinai Health Sys.*, No. 18-CV-12136 (VEC), 2021 WL 3475620, at *5 (S.D.N.Y. Aug. 5, 2021) (cleaned up). Accordingly, "summary judgment is appropriate if the record establishes as a matter of law that discrimination . . . played no role in the defendant's actions." *Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 76 (2d Cir. 2015) (cleaned up).

The Court begins with Adams-Flores's claims under both Title VII and the NYSHRL, then turns to her claims that are actionable only under the NYSHRL (because the corresponding Title VII claims were dismissed as untimely, *see 1st MTD Op.*, 2020 WL 996427, at *3, 7, and then ends with a brief discussion of the claims under the NYCHRL.

### 1. Claims Under Title VII and the NYSHRL

First, under Title VII and the NYSHRL, Adams-Flores alleges that DOC improperly reduced her job responsibilities by excluding her from important conversations and meetings. TAC ¶¶ 144, 146-50, 172-78, 189. This claim fails for multiple reasons. For starters, she was excluded from conversations and meetings by staff at *HHC*, not by staff at *DOC*. *Id.* ¶¶ 106, 109-12, 135. The Court previously dismissed her claims again HHC, *see 2d MTD Op.*, 2021 WL 918041, at *3-4, so Adams-Flores cannot rely on conduct by HHC employees alone to support a

discrimination claim against DOC.  In opposition, Adams-Flores asserts that Thamkittikasem and Murphy facilitated or failed to solve her exclusion from meetings.  Pl.'s Opp'n 18.  But in support of that assertion, she cites only her own deposition testimony that she told Thamkittikasem and Murphy that she was being ignored, impairing her job performance.  *Id.*; Adams-Flores Tr. 94-95.  She provides no evidence that Thamkittikasem or Murphy, or anyone else from DOC, took steps to hinder her communication with HHC.  She claims, without support, that Thamkittikasem sent emails to HHC about her, *id.* at 18-19, but with no evidence as to when and to whom he sent these emails, or as to their contents, this unsupported allegation is insufficient to raise a triable issue of fact.

Moreover, even if Adams-Flores could show that DOC staff actively excluded her from communications with HHC, this discrimination claim would still fail because she points to no evidence raising an inference of discrimination.  She asserts that "other White Deputy Commissioners were not dealt with in the same fashion" as she was.  Pl.'s Opp'n 20.  But she provides no citation, let alone evidence, to back up the assertion.  She also argues that Thamkittikasem made racially biased comments.  Pl.'s Opp'n 20.  For instance, she testified that Thamkittikasem told her when she first started her job that he was "going to give [her] all the things [he doesn't] want to do" and, more significantly, that he later told her that "people like you don't know the audience well enough."  Adams-Flores Tr. 96-97.  But she provides no further context for these remarks.  Put simply, "without sufficient indication of when — or in what context — the comments were made, there can be no causal link with" Adams-Flores's exclusion from emails and meetings.  *Ellis v. N.Y.C. Dep't of Educ.*, No. 19-CV-1441 (LAP), 2020 WL 1166056, at *4 (S.D.N.Y. Mar. 11, 2020); *see also Henry v. Wyeth Pharms., Inc.*, 616 F.3d 134, 149 (2d Cir. 2010) ("The more remote and oblique the remarks are in relation to the

employer's adverse action, the less they prove that the action was motivated by discrimination." (cleaned up)).

Next, Adams-Flores contends that DOC and Brann engaged in discrimination by barring her from attending conferences and workshops, even after she had been invited to them.  TAC ¶¶ 51, 173-78.  Defendants do not address this as a disparate treatment claim in their motion for summary judgment, *see* Defs.' Mem. 14-16, but the Court construes it to be one, *see* TAC ¶ 174. In any event, the claim fails because Defendants have identified a legitimate, non-discriminatory reason for their decisions that Adams-Flores does not overcome.  Specifically, in September 2016 and January 2017, Defendant Brann and another DOC employee told Adams-Flores that she needed to cut down on her travel and conference attendance, as she had attended more conference than any other member of the executive team.  Defs.' SOF ¶¶ 42-43; ECF No. 164-11.  Moreover, once Brann became DOC Commissioner, she implemented a DOC-wide policy limiting staff to two conferences per year.  Defs.' SOF ¶ 72.  Adams-Flores cites no evidence suggesting that the denials were pretextual or otherwise a result of discrimination.  She points to the fact that Brann sent other, white staff members to conferences in her stead, *id.* ¶ 41; Adams-Flores Tr. 87-89, but that evidence — while perhaps sufficient to establish a *prima facie* case of discrimination, *see, e.g.*, *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 493 (2d Cir. 2010) — does not satisfy Adams-Flores's burden at the third *McDonnell Douglas* step.  *See Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 470 (2d Cir. 2001) (affirming summary judgment where the plaintiff adduced no evidence that the employer's non-discriminatory explanations were pretextual).

Finally, Adams-Flores contends that Thamkittikasem and Murphy, and thus DOC, engaged in discrimination by denying her requests for additional staffing.  Pl.'s Opp'n 21-22;

Defs.' SOF ¶ 94.  This claim also fails.  Adams-Flores does not establish a *prima facie* case of discrimination because she provides no evidence supporting an inference of discrimination. Although Adams-Flores testified that all her staffing requests were denied, Defs.' SOF ¶ 94; Adams-Flores Tr. 104, she does not point to any similarly situated comparators who had comparable staffing requests approved.  Moreover, Defendants' internal records show that HAU's staffing requests were approved at about the same rate as several other divisions.  ECF Nos. 164-49, 164-50.  Thus, she has provided no evidence of disparate treatment.  Nor does she provide other evidence, such as discriminatory comments, that would otherwise support an inference of discrimination.  *See* Adams-Flores Tr. 106-07 (describing how she perceived her interactions with Defendant Murphy, but not detailing any specific comments suggesting discriminatory animus).

Accordingly, summary judgment must be and is granted with respect to Adams-Flores's claims brought under both Title VII and the NYSHRL.

## 2.  Other Claims Under the NYSHRL

As noted, Adams-Flores raises several additional claims under the NYSHRL that were dismissed as untimely under Title VII.  First, she alleges that her starting salary, which was lower than the salaries of other deputy commissioners, *see* Defs.' SOF ¶¶ 4, 76; ECF No. 178-5, was the product of unlawful discrimination, *see* Pl.'s Opp'n 10.  Adams-Flores contends that the other deputy commissioners with greater salaries are appropriate comparators because they had the same titles and levels of responsibility as she and because her supervisory authority was equal to or greater than theirs.  Pl.'s Opp'n 13-14.  But she cites no admissible evidence to support these contentions.  *See* Defs.' SOF ¶ 5; ECF No. 178-5.  Indeed, she cites no evidence at all regarding the responsibilities, supervisory experience, or educational background of any other

11

deputy commissioner.  *See* Defs.' Reply 4.  Nor does she meaningfully dispute that the other

deputy commissioners had different titles and responsibilities.  Defs.' SOF ¶ 75.  Thus, it is

impossible for the Court to determine whether there is "a reasonably close resemblance of the

facts and circumstances of plaintiff's and comparator's cases."  *Graham v. Long Island R.R.*, 230

F.3d 34, 39 (2d Cir. 2000); *see also Humphries v. City Univ. of N.Y.*, No. 13-CV-2641 (PAE),

2013 WL 6196561, at *7 (S.D.N.Y. Nov. 26, 2013) (explaining that the plaintiff's "conclusory

statements about a co-worker's qualifications are insufficient to raise an inference of

discrimination").  In short, because Adams-Flores has failed to "offer sufficient evidence from

which a jury could reasonably conclude that there was indeed disparate treatment of similarly

situated employees," *Murray v. Visiting Nurse Servs. of N.Y.*, 528 F. Supp. 2d 257, 269

(S.D.N.Y. 2007), her salary claim fails at the first *McDonnell Douglas* step.

Next, Adams-Flores alleges that DOC discriminatorily refused to permit her to use a

driver.  *See* TAC ¶ 113; Pl.'s Opp'n 15.  It is not clear that denying Adams-Flores a driver

qualifies as an actionable "adverse employment action."  *See Galabya v. N.Y.C. Bd. of Educ.*,

202 F.3d 636, 640 (2d Cir. 2000).  But even if it does, the claim fails because Defendants proffer

a legitimate, non-discriminatory reason for denying her a driver — namely DOC's policy

permitting only certain categories of executive staff, not including Adams-Flores, to have

drivers, ECF No. 164-4, at 18-19; *see also* ECF No. 164-32 — and Adams-Flores points to no

admissible evidence rebutting that explanation.[3]  The closest Adams-Flores comes is to cite

---

[3]      Adams-Flores asserts that several deputy commissioners who lacked security details had
drivers, contrary to the stated vehicle policy.  Defs.' SOF ¶ 56; Adams-Flores Decl. ¶ 17.  But
the only support for this assertion is her own declaration, and she fails to establish that the
relevant portions are based on her personal knowledge.  Accordingly, the Court may not and
does not consider the assertion.  *See* Fed. R. Civ. P. 56(c)(4); *United States v. Priv. Sanitation
Indus. Ass'n of Nasau/Suffolk, Inc.*, 44 F.3d 1082, 1084 (2d Cir. 1995).

Murphy's comment about "Driving Miss Daisy."  Pl.'s Opp'n 34; *see* Defs.' SOF ¶ 54.

Admittedly, a jury could find that remark was discriminatory, but, without more, it is not enough

to rebut Defendants' legitimate, non-discriminatory reason for denying Adams-Flores a driver.

Murphy was not Adams-Flores supervisor.  Nor has she pointed to evidence suggesting that he

imposed or enforced DOC's policy.  Although Murphy was Chief of Department, in this context

and in relation to Adams-Flores, he was effectively a messenger, communicating an existing

policy to her (and other executive staff).  *See* ECF No. 164-32.  However distasteful Murphy's

comment was, it is therefore insufficient to support Adams-Flores's discrimination claim based

on the denial of a driver.  *See, e.g.*, *Luka v. Bard Coll.*, 263 F. Supp. 3d 478, 487 (S.D.N.Y.

2017) ("To determine whether a particular comment is probative of discriminatory animus or is a

mere 'stray remark,' a court considers: (1) who made the remark, *i.e.*, a decisionmaker, a

supervisor, or a low-level co-worker; (2) when the remark was made in relation to the

employment decision at issue; (3) the content of the remark; and (4) the context in which the

remark was made, *i.e.,* whether it was related to the decisionmaking process." (cleaned up);

*accord Wyeth Pharms., Inc.*, 616 F.3d at 149-50 (noting that these factors are not dispositive).

Adams-Flores's final discrimination claim under the NYSHRL is based on her allegation

that Murphy asked a supervisor in HAU to report on the activities of the corrections officers

assigned to HAU.  TAC ¶ 114; *see also* Defs.' SOF ¶ 59.  To constitute an adverse employment

action, Adams-Flores must establish that Murphy's request caused a "materially adverse change

in the terms and conditions of employment" such that it was "more disruptive than a mere

inconvenience or an alteration of job responsibilities."  *Galabya*, 202 F.3d at 640 (cleaned up);

*accord Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015).  Adams-Flores

fails to do so.  At most, Murphy's request amounted to a "mere inconvenience," which may have

"bruised [Adams-Flores's] ego," but is "insufficient to constitute a tangible or materially adverse employment action." *Jones v. N.Y.C. Bd. of Educ.*, No. 09-CV-4815 (RWS), 2012 WL 1116906, at *10 (S.D.N.Y. Apr. 2, 2012) (quoting *Burlington Indus. v. Ellerth*, 524 U.S. 742, 761 (1998)). Adams-Flores does not provide evidence, for example, that Murphy's request led to a reduction in her work responsibilities, a decrease in pay, or termination, *see* Pl.'s Opp'n 15-16, any one of which could constitute adverse employment actions.  Put simply, her feelings of discomfort, frustration, and marginalization are insufficient to establish that she suffered an adverse employment action.  *See Jones*, 2012 WL 1116906, at *10 ("A plaintiff's subjective feelings cannot be used to determine whether an employment action is adverse." (cleaned up)).

In short, summary judgment must be and is granted with respect to Adams-Flores's other claims under the NYSHRL.

### 3.  Claims Under the NYCHRL

Finally, Adams-Flores brings the same discrimination claims under the NYCHRL.  *See* TAC ¶¶ 236-243.  These claims also fail because Adams-Flores has not provided any evidence suggesting that discrimination played a role in Defendants' complained-of actions.  As discussed above, she has not established an inference of discrimination with respect to her lower starting salary, her exclusion from meetings, and the denial of her staffing requests.  Similarly, she does not point to any evidence suggesting that Defendants' legitimate, non-discriminatory reasons for denying her a driver and preventing her from attending conferences were pretextual, let alone that the decisions were otherwise motivated, even in part, by discrimination.  *See Melman v. Montefiore Med. Ctr.*, 98 A.D.3d 107, 122 (1st Dep't 2012) (affirming summary judgment under the NYCHRL where the plaintiff did not adduce evidence "tending to show that . . . discrimination was the real reason for" his employer's complained-of conduct).  Finally, Adams-

Flores fails to show that Murphy's request to the HAU supervisor for a report on the activities of corrections officers was motivated at all by discrimination.  Adams-Flores asserts that Murphy had not asked the staff of other deputy commissioners to report on the goings-on in the office, Adams-Flores Tr. 110-11, but she does not provide any information about these comparators.  As a result, the Court cannot assess whether they are similarly situated; she provides no other evidence suggesting disparate treatment or otherwise raising an inference of discrimination.  Accordingly, summary judgment must be and is granted with respect to Adams-Flores's discrimination claims under the NYCHRL as well.

**B.  Hostile Work Environment**

It is not clear that Adams-Flores's operative Complaint includes a hostile work environment claim.  *See* TAC ¶¶ 202-04, 217.  But if it does, the claim plainly fails.  She fails to establish any "linkage or correlation" between her employer's conduct and "the claimed ground for discrimination," as is required for a hostile work environment claim under Title VII, the NYSHRL, and the NYCHRL.  *Alfano v. Costello*, 294 F.3d 365, 373, 378 (2d Cir. 2002); *see also Alvarado v. Nordstrom, Inc.*, 685 F. App'x 4, 8 (2d. Cir. 2017) (summary order) ("In order to succeed on a NYCHRL hostile work environment claim, a plaintiff must show that he was treated less well than other employees on the basis of a protected characteristic." (cleaned up)).  Nor does she show that her "workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment," as she must to prevail under Title VII and the NYSHRL.  *Williams v. N.Y.C. Hous. Auth.*, 21-1527-cv, 2023 WL 2171483, at *7 (2d Cir. Feb. 23, 2023) (internal quotation marks omitted); *accord Redd v. N.Y. Div. of Parole*, 678 F.3d 166, 175 (2d Cir. 2012).  Even considering the totality of the conduct Adams-Flores alleges, as the Court must, *see Williams*,

2023 WL 2171483, at *11, she provides no evidence that her workplace was "permeated" with discriminatory actions.  Accordingly, her hostile work environment claims are dismissed.

## C.  Retaliation

Adams-Flores's retaliation claims under Title VII and NYSHRL are also subject to the *McDonnell Douglas* framework.  *See Summa v. Hofstra Univ.*, 708 F.3d 115, 125 (2d Cir. 2013).  To establish a *prima facie* case of retaliation, a plaintiff must establish that (1) she engaged in a protected activity of which the defendants were aware; (2) she was subjected to an adverse employment action; and (3) a causal connection existed between the adverse employment action and her protected activity.  *Rasmy v. Marriott Int'l, Inc.*, 952 F.3d 379, 391 (2d Cir. 2020).  If the plaintiff makes out a *prima facie* case of retaliation and the employer proffers a legitimate, non-retaliatory reason for the action, the burden then shifts back to the plaintiff to show that retaliation was a "but-for" cause of the employer's alleged adverse employment action.  *See Vega*, 801 F.3d at 90-91.  As with discrimination claims, the NYCHRL has a more lenient standard for retaliation; it proscribes retaliation "in any manner," which can "involve neither ultimate actions nor materially adverse changes in terms and conditions of employment." *Williams v. N.Y.C. Hous. Auth.*, 61 A.D.3d 62 (1st Dep't 2009); *accord Fattoruso v. Hilton Grand Vacations Co., LLC*, 525 F. App'x 26, 27 (2d Cir. 2013) (noting that one of the elements for a *prima facie* retaliation case under NYCHRL is that "the defendant took an employment action that disadvantaged the plaintiff *in any manner*" (emphasis in original)).  But summary judgment is still appropriate if "the record establishes as a matter of law that . . . retaliation played no role in the defendant's actions."  *Ya-Chen Chen*, 805 F.3d at 78 (cleaned up).

In light of these standards, several of Adams-Flores's retaliation claims fall short.  She alleges that Defendants retaliated against her for filing her EEO and EEOC complaints and this

lawsuit by (1) refusing to allow her to attend certain conferences; (2) refusing to publish a press release touting her personal accomplishments; and (3) fabricating a performance improvement plan. *See* Pl.'s Opp'n 25. But neither side cites any evidence regarding the existence of a performance improvement plan or its fabrication. And the other two allegations fail because Defendants have put forth legitimate, non-retaliatory justifications and Adams-Flores has not provided evidence that retaliation was a but-for cause for their actions. As discussed above, DOC implemented a policy limiting employees to two conferences per year, and Brann had previously informed Adams-Flores to cut back on her conference attendance. Defs.' SOF ¶¶ 72-73; Defs.' Mem. 22. Adams-Flores has provided no evidence suggesting that this policy was disparately enforced against her, nor evidence suggesting that Defendants' explanation was pretext for retaliation. Similarly, with respect to the press release, it was City Hall that advised DOC not to publish it. Defs.' SOF ¶ 80; ECF No. 164-15. Adams-Flores has not come forward with evidence suggesting that DOC's reliance on City Hall's advice was a pretext for retaliation or that retaliation played any role in this decision. Accordingly, these instances of alleged retaliation fall short under Title VII, the NYSHRL, and the NYCHRL.

By contrast, Adams-Flores's other three allegations of retaliation are sufficient — albeit just barely — to survive summary judgment. First, Adams-Flores alleges that DOC's initial refusal on August 1, 2017, to transfer her civil service title was retaliation for the filing of her EEO complaint. TAC ¶¶ 125-27; Defs.' Mem. 19-21; Pl.'s Opp'n 25, 28; Defs.' SOF ¶ 114; ECF No. 164-16. Defendants do not dispute that Adams-Flores has established a *prima facie* case of retaliation with respect to that allegation, but they do advance a compelling legitimate, non-retaliatory reason for Brann's decision: that she was concerned about binding future administrations to highly paid staff members it did not select. Defs.' Mem. 20; Defs.' SOF

¶¶ 109-10, 113; *see also* ECF No. 164-10 ("Pinnock Tr."), at 156-57.  Adams-Flores, however, adduces some evidence that this justification was pretextual.  First, the adverse employment action occurred little more than two months after the protected activity.  Second, the deputy commissioner of Financial, Facility, and Fleet Administration confirmed to Adams-Flores on July 26, 2017, prior to Brann's decision, that transferring her civil service title to DOC would not cause a budgetary issue.  ECF No. 178-9, at 6.[4]  Moreover, when Adams-Flores first passed the civil service exam and requested that DOC pick up her title, the human resources deputy commissioner informed her that she needed to interview for the position first.  Around the same time, Adams-Flores's subordinate passed the civil service exam, and DOC transferred her title over without an interview.  Adams-Flores Tr. 114-15; ECF No. 178-1, at 335.[5]  Although this is not sufficient to show disparate treatment, *see* Defs.' Reply 10, it does suggest that DOC required Adams-Flores to jump through additional hoops to obtain her civil service title.  That, combined with the temporal proximity to her EEO complaint, is enough to survive summary judgment.

Next, Adams-Flores contends that DOC's refusal to credit her probationary service and its failure to grant her a permanent civil service title were retaliatory actions for filing this lawsuit.  *See* Pls.' Opp'n 25; Defs.' Mem. 23.  After eventually picking up her civil service title, DOC placed her "on leave" from her title while she was serving as deputy commissioner.  Defs.' SOF ¶ 130.  It is undisputed that DOC had the authority to do so, but it is also undisputed that DOC had the discretion to count Adams-Flores's time on leave towards her probationary period.

---

[4]     Citations to ECF No. 178-9 are to the page numbers automatically generated by the Court's Electronic Case Filing (ECF) system.

[5]     Citations to ECF No. 178-1, other than those to Adams-Flores Tr., are to the page numbers automatically generated by the Court's Electronic Case Filing (ECF) system.

*Id.* ¶ 132; ECF No. 164-24.  On January 9, 2019, more than a year after Adams-Flores received her civil service title, but less than one month after she filed this lawsuit, DOC informed her and the Department of Citywide Administrative Services ("DCAS"), that Adams-Flores had not satisfactorily completed her probationary period because she was, at the time, being investigated by DOI.  Defs.' SOF ¶¶ 135; ECF No. 164-34.  That is certainly a legitimate reason for not granting Adams-Flores a permanent civil service title — and it may well be that a jury will accept it as the reason for DOC's actions.  But, as Adams-Flores argues, there is evidence suggesting that this reason was pretextual at least in part.  DCAS policy dictates that the City will consider service while on leave from the civil service title "as satisfactory probationary service . . . unless the agency sends written notice" before the one-year anniversary of the probationary appointment to DCAS and to the employee.  ECF No. 178-1, at 688.  DOC did not comply with that policy.  That failure, combined with the temporal proximity to her protected activity, is sufficient to create a triable issue of fact as to whether retaliation was the but-for cause of DOC's refusal to credit her probationary service.  *See, e.g.*, *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 118 (2d Cir. 2000) (observing that a plaintiff can prevail on a retaliation claim "merely by showing that retaliation was one of a number of motivating factors").

Finally, Adams-Flores argues that her termination from DOC on March 15, 2019, was also retaliation for filing this lawsuit.  TAC ¶¶ 193-201; Pls.' Opp'n 25.  Defendants argue that they had a legitimate reason for terminating her: DOI's report, delivered that day, indicating that Adams-Flores had violated several ethical obligations.  Defs.' Mem. 23-25, SOF. ¶¶ 149-50, ECF No. 166-1.  According to Defendants, Brann decided to terminate Adams-Flores only after reading the report.  Again, this is plainly a legitimate reason for termination, and a jury could — indeed, perhaps would — accept it as the explanation for Adams-Flores's termination.  But

Adams-Flores has, once again, pointed to evidence suggesting that DOC's justification is, at least in part, pretextual. For example, on January 8, 2019, more than two months before Brann received the DOI report and terminated Adams-Flores, Ayinde Williams, a director of human resources for DOC, informed another Human Resources staff member that he was going to see if Adams-Flores's civil service appointment date could be retroactively pushed back by three months to December 2017. ECF No. 178-1, at 677-78. From this, a jury could infer that DOC was looking for ways to ensure that Adams-Flores did not have a permanent civil service title, ensuring that she could be terminated more easily, even before DOI issued its investigation report. This is inconsistent with Brann's stated justification that the DOI report was *the* reason for Adams-Flores's termination. *See Zann Kwan v. Andalex Grp, LLC*, 737 F.3d 834, 836 (2d Cir. 2013) ("A plaintiff may prove that retaliation was a but-for cause of an adverse employment action by demonstrating . . . inconsistencies[] or contradictions in the employer's proffered legitimate, nonretaliatory reasons for its action. From such discrepancies, a reasonable juror could conclude that the explanations were a pretext for a prohibited reason.").

Accordingly, Adams-Flores's Title VII, NYSHRL, and NYCHRL retaliation claims against DOC related to its delay in picking up her civil service title, refusal to credit her probationary service and failure to grant her a permanent civil service title, and her ultimate termination survive. In addition, because Brann "actually participated in" the decisions related to Adams-Flores's civil service title and her termination, the NYCHRL claims against her individually also survive.[6] *See, e.g.*, *Milord-Francois v. N.Y.S. Office of Medicaid Inspector Gen.*, No. 19-CV-179 (LJL), 2022 WL 10653757, at *15 (S.D.N.Y. Oct. 18, 2022); *see also Day v. MTA N.Y.C. Transit Auth.*, No. 17-CV-7270 (VSB), 2021 WL 4481155, at *14 (S.D.N.Y.

---

[6]     Adams-Flores did not bring NYSHRL claims against Brann. TAC ¶¶ 229-35.

Sept. 30, 2021) ("An individual defendant may be held liable under the NYSHRL . . . for aiding and abetting a violation of the law[] if [s]he participates in the conduct giving rise to the discrimination claim." (internal quotation marks omitted)).  There is evidence that she made the decision to delay picking up Adams-Flores's civil service title, ECF No. 164-16, the decision to not count Adams-Flores's probationary period, ECF No. 178-1, at 542, 592 (testimony from Nadene Pinnock, the deputy commissioner of HR, that "the commissioner" made the decision to not credit her probationary period), and the decision to terminate Adams-Flores, ECF No. 164-28, at 11.  By contrast, Adams-Flores does not allege that Murphy or Thamkittikasem were involved in these decisions at all.  Nor could she.  Murphy retired in June 2017, before all of the decisions at issue were made.  Defs.' Mem. 30; Defs.' SOF ¶ 15.  Thamkittikasem left DOC in August 2018, Defs.' Mem. 30; Defs.' SOF ¶¶ 8-9, but Adams-Flores has not provided any evidence that he was involved at all with her civil service title.  As such, the NYSHRL and NYCHRL claims against them fail as a matter of law.

**D.  Section 1983**

That leaves Adams-Flores's Section 1983 claims against Brann, Thamkittikasem, and Murphy.  To succeed on these claims as to discrimination, Adams-Flores "must establish that the defendant's discriminatory intent was a 'but-for' cause of the adverse employment action or the hostile environment.  It is insufficient to establish simply that invidious discrimination was 'a motivating factor' of the offending conduct."  *Naumovski v. Norris*, 934 F.3d 200, 214 (2d Cir. 2019).  The same analysis is required for her Section 1983 retaliation claims.  *See Gonzalez v. City of New York*, 845 F. App'x 11, 13-14 (2d Cir. 2021) (summary order); *Lewis v. City of Norwalk*, 562 F. App'x 25, 29 (2d Cir. 2014) (summary order); *accord Hicks v. Baines*, 593 F.3d 159, 171 (2d Cir. 2010).  Critically, Section 1983 "does not permit vicarious liability."

*Naumovski*, 934 F.3d at 212.  Thus, Adams-Flores must show that each Defendant "*personally violated [her] constitutional rights*" for a claim to survive.  *Id.* (emphasis in original).

Some of Adams-Flores's Section 1983 claims require little discussion.  First, because she has failed to establish that discrimination was a motivating factor in any of Defendants' challenged actions, she cannot meet the even higher standard for her Section 1983 discrimination claims and summary judgment must be granted with respect to those claims.  Second, applying the same logic, Adams-Flores's Section 1983 claims for retaliation based on DOC's refusal to let her attend conferences and to publish a press release, along with her retaliation claims for DOC's alleged fabrication of a performance improvement plan, fail as a matter of law.  And third, as discussed above, Adams-Flores makes no allegations that Murphy or Thamkittikasem were involved in the other instances of retaliation.  Accordingly, Adams-Flores's remaining Section 1983 claims against these two Defendants also fail as a matter of law.

Adams-Flores's three remaining Section 1983 retaliation claims against Brann are more of a mixed bag.  First, her claims based on the refusal to credit her probationary period and her ultimate termination fail.  Adams-Flores has not provided any evidence that Brann acted with a retaliatory motive in either case, as is required for a Section 1983 claim.  *See Naumovski*, 934 F.3d at 220-21 (holding that the discriminatory intent of a third party cannot be imputed to the decisionmaker under Section 1983).  At most, the evidence suggests that other DOC employees may have harbored such motives, *see* ECF No. 164-26 (letter from Nadene Pinnock); ECF No. 164-34 (email from Pinnock); ECF No. 178-1, at 677-78 (email from Ayinde Williams), but there is no *respondeat superior* liability under Section 1983, *Naumovski*, 934 F.3d at 222.[7]  By

---

[7]     Although Adams-Flores's NYCHRL claim for this same action survives against Brann, the standard for a Section 1983 claim is higher, *compare Milord-Francois*, 2022 WL 10653757, at *15 *with Naumovski*, 934 F.3d at 220-21, and the evidence here falls short.

contrast, Adams-Flores's Section 1983 retaliation claim against Brann based on the delay in transferring her civil service title survives.  As explained above, Adams-Flores has raised a triable issue of fact that retaliation was a "but-for" cause for this delay.  Moreover, she has adduced evidence that Brann was personally involved in the decision not to pick up her civil service title and evidence that Brann's stated justification was pretextual.  *See, e.g.*, Defs.' SOF ¶ 114; ECF No. 164-16; ECF No. 178-9, at 6.  Thus, Adams-Flores has — just barely — adduced enough evidence to warrant trial on this Section 1983 claim.

## CONCLUSION

In sum, Defendants' motion for summary judgment must be and is GRANTED, except as to the following retaliation claims:

- Her Title VII, NYSHRL, and NYCHRL retaliation claims against DOC based on the delay in picking up Adams-Flores's civil service title, the refusal to credit her probationary period, and her termination;

- Her NYCHRL retaliation claims against Brann based on the delay in picking up Adams-Flores's civil service title, the refusal to credit her probationary period, and her termination; and

- Her Section 1983 retaliation claim against Brann based on the delay in picking up Adams-Flores's civil service title.

As discussed, the evidence in support of these claims is not particular strong — especially in view of Defendants' compelling legitimate, non-discriminatory explanations for their actions — but it is sufficient to survive summary judgment.  It is for a jury, not this Court, to decide whether those explanations are valid.  *See, e.g.*, *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 254 (2d Cir. 2002) (reaffirming that a court's role at the summary judgment stage "is not to weigh the evidence or resolve issues of fact").

Unless and until the Court orders otherwise, the parties shall submit a proposed Joint Pretrial Order and associated materials (in accordance with Section 5 of the Court's Individual Rules and Practices in Civil Cases, available at https://www.nysd.uscourts.gov/hon-jesse-m-

furman) **within forty-five days of the date of this Opinion and Order**.  (The Court will schedule a trial date — or a conference to discuss a trial date — after reviewing the parties' submissions.)  In the meantime, the Court is of the view that the parties should try to settle this case without the need for an expensive and risky trial.  To that end, the Court directs the parties **to confer immediately** about the prospect of settlement and conducting a settlement conference before Magistrate Judge Parker (or before a mediator appointed by the Court or retained privately).  If the parties agree that a settlement conference would be appropriate, they should promptly advise the Court and, if needed, seek an appropriate referral and extension of the pretrial deadlines.

One housekeeping matter remains: The parties filed letter-motions to seal portions of their motion papers.  *See* ECF Nos. 161, 180, 187, 188.  The Court granted these letter-motions temporarily pending its decision on the underlying motions.  ECF Nos. 162, 181, 189.  It is well established that filings that are "relevant to the performance of the judicial function and useful in the judicial process" are considered "judicial documents" to which a presumption in favor of public access attaches.  *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006).  Significantly, assessment of whether the presumption in favor of public access is overcome by countervailing factors must be made on a document-by-document basis.  *See, e.g.*, *Brown v. Maxwell*, 929 F.3d 41, 48 (2d Cir. 2019); *Olson v. Major League Baseball*, 29 F.4th 59 (2d Cir. 2022).  The Court concludes that Adams-Flores's proposed redactions of personally identifying information, ECF Nos. 184 and 185, are narrowly tailored to protect the privacy of the relevant individuals.  Thus, the redactions in those two filings are approved.  For all other proposed redactions, **no later than two weeks from the date of this Opinion and Order**, any party that believes any materials currently under seal or in redacted form should remain under seal or in

redacted form is ORDERED to show cause in writing, on a document-by-document basis, why doing so would be consistent with the presumption in favor of public access.  Any document for which the parties do not move for the Court to maintain under seal or in redacted form within two weeks of the date of this Opinion and Order shall be unsealed without any further notice to the parties.  To that end, the parties shall, **no later than three weeks of the date of this Opinion and Order**, file a joint letter with the list of the ECF numbers of the filings to be unsealed.

The Clerk of Court is directed to terminate ECF No. 163 and to terminate Jeff Thamkittikasem and Martin Murphy as Defendants.

SO ORDERED.

Dated: February 28, 2023
       New York, New York

_____
JESSE M. FURMAN
United States District Judge