No. 18-cv-12150 (JMF)

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

NICHOLE ADAMS-FLORES,

Plaintiff,

-against-

THE CITY OF NEW YORK, DEPARTMENT OF
CORRECTIONS, CYNTHIA BRANN, Commissioner of
Dept. of Corrections, JEFF THAMKITTIKASEM,
Former Chief of Staff of Dept. of Corrections, and
MARTIN MURPHY, former Chief of Department of
Dept. of Corrections,

Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION IN LIMINE

### HON. SYLVIA O. HINDS-RADIX
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street, Second Floor*
*New York, New York 10007*

*Of Counsel:*   Maria Fernanda DeCastro
Joseph B. Reynolds
*Tel:*  (212) 356-2658

Matter No. 2018-095785

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ iv

PRELIMINARY STATEMENT .......................................................................................... 1

LEGAL STANDARD ......................................................................................................... 3

ARGUMENT

POINT I

THE COURT SHOULD PRECLUDE MICHAEL J.
VERNARELLI, PLAINTIFF'S EXPERT, FROM
TESTIFYING AND HIS EXPERT REPORT ........................................... 4

POINT II

EVIDENCE RELATING TO PLAINTIFF'S
BACKPAY, FRONT PAY, AND PUNITIVE
DAMAGES SHOULD BE LIMITED OR
PRECLUDED ......................................................................................... 10

A.  Plaintiff's request for backpay should be limited
to a total of $12,567 for 2019 and denied for all
subsequent years ................................................................ 10

B.  Plaintiff should be precluded from pursuing a
front pay award as such damages are not
available to Plaintiff because she, undisputedly,
secured comparable alternative employment ..................... 12

C.  Plaintiff's Claim for Punitive Damages Should
be Stricken because Punitive Damages Cannot
be Awarded Against the City of New York ......................... 12

POINT III

THE COURT SHOULD PRECLUDE ANY
EVIDENCE OR TESTIMONY ABOUT ALLEGED
DISCRIMINATORY STATEMENTS BY
MARTIN MURPHY OR JEFF
THAMKITTIKASEM ............................................................................. 13

**Page**

POINT IV

      PLAINTIFF SHOULD BE PRECLUDED FROM
PRESENTING ANY TESTIMONY OR
EVIDENCE THAT SHE WAS ASKED OR
DIRECTED TO FALSIFY DATA WHILE SHE
WORKED AT DOC ................................................................. 14

POINT V

      PLAINTIFF SHOULD BE PRECLUDED FROM
TESTIFYING OR OFFERING ANY EVIDENCE
THAT "UNAUTHORIZED RESEARCH" WAS
BEING CONDUCTED ON INMATES IN DOC
CUSTODY BY H+H ............................................................... 15

POINT VI

      PLAINTIFF SHOULD BE PRECLUDED FROM
TESTIFYING OR OFFERING ANY EVIDENCE
THAT SHE WAS OR IS A VICTIM OF
DOMESTIC VIOLENCE ........................................................ 16

POINT VII

      PLAINTIFF SHOULD BE PRECLUDED FROM
CALLING ALEXIS KELLY JONES, JEREZ HUE,
AND BRUCE FARBSTEIN BECAUSE THEY
WERE NOT DISCLOSED TO DEFENDANTS IN
PLAINTIFF'S RULE 26 DISCLOSURES OR IN
PLAINTIFF'S RESPONSES TO DEFENDANTS'
INTERROGATORIES ............................................................ 16

POINT VIII

      PLAINTIFF SHOULD BE PRECLUDED FROM
CALLING AYINDE WILLIAMS, DANIELLE
BARRETT, OR CLAUDETTE WYNTER AS
WITNESSES AT TRIAL ........................................................ 18

POINT IX

      ALL CHARACTER EVIDENCE PERTAINING
TO DEFENDANT BRANN AND THE NON-
PARTY WITNESSES SHOULD BE PRECLUDED

**Page**

BECAUSE IT IS MORE PREJUDICIAL THAN
PROBATIVE ................................................................................... 19

POINT X

PLAINTIFF SHOULD BE PRECLUDED FROM
REFERRING TO DEFENSE COUNSEL AS "CITY
ATTORNEYS" AND SHOULD BE PRECLUDED
FROM       OFFERING       EVIDENCE       OF
INDEMNIFICATION............................................................................ 21

POINT XI

PLAINTIFF SHOULD BE PRECLUDED FROM
INTRODUCING EXHIBITS 12 AND 22 ................................................ 22

POINT XII

PLAINTIFF SHOULD BE PRECLUDED FROM
OFFERING ANY EVIDENCE IN SUPPORT OF
ANY CLAIMS THAT HAVE BEEN DISMISSED ................................ 24

POINT XIII

PLAINTIFF SHOULD BE PRECLUDED FROM
REQUESTING A SPECIFIC DOLLAR AMOUNT
FROM THE JURY .............................................................................. 25

POINT XIV

PLAINTIFF SHOULD BE PRECLUDED AT
TRIAL FROM CALLING HER TREATING
MEDICAL PROVIDERS AS EXPERTS................................................. 26

CONCLUSION....................................................................................... 28

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**                                                                                                        **<u>Pages</u>**

*Alfano v. Nat'l Geographic Channel*,
   2007 U.S. Dist. LEXIS 74674 (E.D.N.Y. Oct. 5, 2007)........................................................17

*Amorgianos v. Amtrak*,
   303 F.3d 256 (2d Cir. 2002)..................................................................................................5, 7

*Anderson v. City of New York*,
   2017 U.S. Dist. LEXIS 8358 (S.D.N.Y. Jan. 19, 2017)........................................................12

*Banushi v. Police Officer Alvin L. Palmer Shield No. 04009 & Equashia Allen*,
   2011 U.S. Dist. LEXIS 419 (E.D.N.Y. Jan. 4, 2011) ..............................................................4

*Bergerson v. N.Y. State Office of Mental Health*,
   652 F.3d 277 (2d Cir. 2011)................................................................................................9, 12

*Berkovich v. Hicks*,
   922 F.2d 1018 (2d Cir. 1991)................................................................................................20

*Castro v. City of New York*,
   2009 U.S. Dist. LEXIS 69723 (E.D.N.Y. Aug. 10, 2009)....................................................18

*Consorti v. Armstrong World Indus., Inc.*,
   72 F.3d 1003 (2d Cir. 1995)............................................................................................25, 26

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
   509 U.S. 579 (1993)..................................................................................................4, 5, 6, 7, 8

*Design Strategy, Inc. v. Davis*,
   469 F.3d 284 (2d Cir. 2006)..................................................................................................17

*GE v. Joiner*,
   522 U.S. 136 (1997)...........................................................................................................8, 9

*Hernandez v. Kelly*,
   2011 U.S. Dist. LEXIS 57114 (E.D.N.Y. May 27, 2011) ....................................................21

*Hine v. Mineta*,
   238 F. Supp. 2d 497 (E.D.N.Y. 2003) .................................................................................12

*Huddleston v. United States*,
   485 U.S. 681 (1988)..............................................................................................................19

*Jackson v. City of White Plains et al.*,
   2016 U.S. Dist. LEXIS 6469 (S.D.N.Y. Jan. 19, 2016)..........................................................3

**Cases**                                                                                          **Pages**

*Lightfoot v. Union Carbide Corp.*,
   110 F.3d 898 (2d Cir. 1997)...............................................................................26

*Lombardo v. Stone*,
   2002 U.S. Dist. LEXIS 1267 (S.D.N.Y. Jan. 29, 2002)....................................20

*Luce v. United States*,
   469 U.S. 38 (1984)...............................................................................................3

*Mileski v. Long Island R.R. Co.*,
   499 F.2d 1169 (2d Cir. 1974)............................................................................25

*Monroe-Trice v. Unum Employee Short-Term Disability Plan*,
   2003 U.S. Dist. LEXIS 152 (S.D.N.Y. Jan. 8, 2003)........................................27

*Othman v. Benson*,
   2019 U.S. Dist. LEXIS 38594 (E.D.N.Y. Mar. 11, 2019)..................................21

*Pal v. N.Y. Univ.*,
   2008 U.S. Dist. LEXIS 52620 (S.D.N.Y. July 10, 2008).............................16, 17

*Palmieri v. Defaria*,
   88 F.3d 136 (2d Cir. 1996)..................................................................................3

*Patterson v. Balsamico*,
   440 F.3d 104 (2d Cir. 2006)..............................................................................17

*Phillips v. City of New York*,
   871 F. Supp. 2d 200 (E.D.N.Y. 2012) ..............................................................26

*Quintero v. Angels of the World*,
   2021 U.S. Dist. LEXIS 172445 (E.D.N.Y. Sep. 10, 2021).................................10

*Rivera v. Baccarat, Inc.*,
   34 F. Supp. 2d 870 (S.D.N.Y. 1999)..................................................................12

*Ross v. Guy*,
   2022 U.S. Dist. LEXIS 44714 (E.D.N.Y. Mar. 14, 2022)..................................21

*Schiller v. City of New York*,
   2008 U.S. Dist. LEXIS 79620 (S.D.N.Y. Oct. 9, 2008) ...............................16, 17

*Scoma v. City of N.Y.*,
   2021 U.S. Dist. LEXIS 85360 (E.D.N.Y. May 4, 2021) ....................................21

**Cases**                                                                                             **Pages**

*Shaphardon v. West Beach Estates*,
    172 F.R.D. 415 (D. Haw. 1997)................................................................................27

*Shaw v. City of New York*,
    1997 U.S. Dist. LEXIS 4901 (S.D.N.Y. Apr. 15, 1997)...............................................20

*Simpson v. City of New York*,
    2015 U.S. Dist. LEXIS 138723 (S.D.N.Y. Oct. 9, 2015) .............................................3

*Skinner v. City of New York*,
    2017 U.S. Dist. LEXIS 104650 (E.D.N.Y. Apr. 7, 2017) ............................................3

*Softel, Inc. v. Dragon Med. & Scientific Communs., Inc.*,
    118 F.3d 955 (2d Cir. 1997)....................................................................................17

*Stern v. Shammas*,
    12-CV-5210 (NGG)(RER), 2015 U.S. Dist. LEXIS 97879
    (E.D.N.Y. Jul. 27, 2015) ........................................................................................26

*United States v. Benedetto*,
    571 F.2d 1246 (2d Cir. 1978)..................................................................................20

*United States v. Bermudez*,
    529 F.3d 158 (2d Cir. 2008).....................................................................................4

*United States v. Brennan*,
    798 F.2d 581 (2d Cir. 1986)....................................................................................20

*United States v. Margiotta*,
    662 F.2d 131 (2d Cir. 1981)....................................................................................20

*Whittlesey v. Union Carbide Corp.*,
    742 F.2d 724 (2d Cir. 1984)....................................................................................12

*Williams v. Firequench, Inc.*,
    2022 U.S. Dist. LEXIS 148682 (S.D.N.Y. Aug. 19, 2022)...................................10

*Zanowic v. Ashcroft*,
    52 Fed. R. Serv. 3d 702 (S.D.N.Y. 2002) ...............................................................27

**Statutes**

Fed. R. Civ. P. 26............................................................................................16, 18, 27

Fed. R. Civ. P. 26(a) ............................................................................................17

| **Statutes** | **Pages** |
|---|---|

Fed. R. Civ. P. 26(a)(1)(A) ................................................................16

Fed. R. Civ. P. 26(a)(2) ...............................................................26, 27

Fed. R. Civ. P. 26(a)(2)(A) & (B) ..................................................27

Fed. R. Civ. P. 37(c)(1) .................................................................17

Fed. R. Evid. 104 ..............................................................................3

Fed. R. Evid. 401 .....................................................3, 5, 14, 15, 16

Fed. R. Evid. 402 ...........................................3, 14, 15, 16, 21, 24

Fed. R. Evid. 403 ........................4, 14, 15, 16, 18, , 20, 21, 23, 24

Fed. R. Evid. 404 ......................................................................15, 23

Fed. R. Evid. 404(b) .................................................................19, 20

Fed. R. Evid. 405(b) ........................................................................20

Fed. R. Evid. 608 .............................................................................21

Fed. R. Evid. 702 ..........................................................4, 5, 7, 26

Fed. R. Evid. 703 .............................................................................26

Fed. R. Evid. 802 ...............................................................14, 15, 23

## **Other Authorities**

Wright & Graham, *Federal Practice & Procedure: Evidence* § 5240 .........................................20

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- x

NICHOLE ADAMS-FLORES,

                                        Plaintiff,

              -against-                                    18-CV-12150 (JMF)

THE CITY OF NEW YORK, DEPARTMENT OF
CORRECTIONS, CYNTHIA BRANN, Commissioner of
Dept. of Corrections, JEFF THAMKITTIKASEM,
Former Chief of Staff of Dept. of Corrections, and
MARTIN MURPHY, former Chief of Department of
Dept. of Corrections,

                                        Defendants.

-------------------------------------------------------------------- x

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION *IN LIMINE*

### PRELIMINARY STATEMENT

        Defendants the City of New York and Cynthia Brann (collectively "Defendants")

respectfully submit this memorandum of law in support of their motion *in limine*.[1] On March 31,

2023, the Court issued a detailed Opinion and Order that largely granted Defendants' motion for

summary judgment. *See* Op. & Order (ECF No. 192). The only claims that the Court permitted

Plaintiff to proceed to trial on are:

- Plaintiff's Title VII, NYSHRL, and NYCHRL retaliation claims against DOC
  based on the delay in picking up Plaintiff's civil service title, the refusal to
  credit Plaintiff's probationary period, and Plaintiff's termination;

---

[1] The Court dismissed all of Plaintiff's claims against New York City Health & Hospitals
Corporation, Patsy Yang, Ross MacDonald, Jeff Thamkittikasem, and Martin Murphy. *See* Op. &
Order on Defs' Mot. to Dismiss Pl's Third Am. Compl. (ECF No. 89); and Op. & Order on Defs'
Mot. for Summary Judgment (ECF No. 192).

- Plaintiff's NYCHRL retaliation claims against Brann based on the delay in picking up Plaintiff's civil service title, the refusal to credit Plaintiff's probationary period, and Plaintiff's termination;

- Plaintiff's Section 1983 retaliation claim against Brann based on the delay in picking up Plaintiff's civil service title.

*Id*. at 23.

Defendants respectfully submit this memorandum of law in support of their motion seeking the following *in limine* relief:

(1) precluding Michael J. Vernarelli, Plaintiff's expert, from testifying and excluding his expert report;

(2) precluding or limiting evidence relating to Plaintiff's claims of back pay and precluding evidence relating to Plaintiff's claims of front pay and punitive damages;

(3) precluding any testimony or evidence concerning alleged discriminatory statements made by Martin Murphy or Jeff Thamkittikasem;

(4) precluding any testimony or evidence about Plaintiff being asked or directed to falsify data while at the New York City Department of Corrections ("DOC");

(5) precluding any testimony or evidence concerning "unauthorized research activities" allegedly being performed on persons in DOC custody;

(6) precluding any testimony or evidence concerning Plaintiff being a victim of domestic violence;

(7) precluding Plaintiff from calling Alexis Jones, Jerez Hue, and Bruce Farbstein;

(8) precluding Plaintiff from calling Ayinde Williams, Danielle Barrett, and Claudette Wynter;

(9) precluding Plaintiff from introducing any character evidence as to Defendant Brann or any non-party witnesses;

(10)  precluding Plaintiff from referring to Defense Counsel as "city attorneys" and offering evidence of indemnification;

(11) precluding Plaintiff from introducing proposed Exhibits 12 and 22;

(12) precluding Plaintiff from offering any evidence in support of any claims that have been dismissed;

(13) precluding Plaintiff from requesting a specific dollar amount from the jury; and

(14) precluding Plaintiff from calling her treating doctors as expert witnesses.

## LEGAL STANDARD

The purpose of a motion *in limine* is to allow the trial court to rule on the admissibility and relevance of certain anticipated evidence before that evidence is introduced at trial. *Skinner v. City of New York*, 2017 U.S. Dist. LEXIS 104650, at *2 (E.D.N.Y. Apr. 7, 2017); *Simpson v. City of New York*, 2015 U.S. Dist. LEXIS 138723, at *2 (S.D.N.Y. Oct. 9, 2015), citing *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984); *see also Jackson v. City of White Plains et al.*, 2016 U.S. Dist. LEXIS 6469 (S.D.N.Y. Jan. 19, 2016) ("The purpose of an *in limine* motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial."), quoting *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996)).

A motion *in limine* calls on the court to make a preliminary determination on the admissibility of the evidence under Rule 104 of the Federal Rules of Evidence. *Skinner*, 2017 U.S. Dist. LEXIS 104650, at *3 (quotations omitted). *See also* FED. R. EVID. 104. Irrelevant evidence is not admissible. FED. R. EVID. 402. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." FED. R. EVID. 401. In addition to relevancy, admissibility turns on the

probative value and prejudicial nature of the evidence in question. *Simpson*, 2015 U.S. Dist. LEXIS 138723, at *2. Evidence may be excluded if "its probative value is substantially outweighed by a danger […] unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403. The Court has "discretion to balance probative value against possible prejudice" under Rule 403. *United States v. Bermudez*, 529 F.3d 158, 161 (2d Cir. 2008) (citation omitted). The Court's determination of what constitutes relevant—and thereby admissible—evidence should be "guided by the nature of the claims and defenses presented." *Banushi v. Police Officer Alvin L. Palmer Shield No. 04009 & Equashia Allen*, 2011 U.S. Dist. LEXIS 419, at *3-4 (E.D.N.Y. Jan. 4, 2011).

## ARGUMENT

### POINT I

### THE COURT SHOULD PRECLUDE MICHAEL J. VERNARELLI, PLAINTIFF'S EXPERT, FROM TESTIFYING AND HIS EXPERT REPORT

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert and other scientific or technical expert testimony and states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods, and (d) the expert has applied the principles and methods to the facts of the case

Fed. R. Evid. 702. In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Supreme Court made clear the district court has a "gatekeeping" function under Rule 702. In other

words, it is charged with "the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Id*. at 597; *accord Amorgianos v. Amtrak*, 303 F.3d 256, 265 (2d Cir. 2002).

In *Amorgianos*, the Second Circuit interpreted the Supreme Court's holding in *Daubert*, and explained that:

> In fulfilling this gatekeeping role, the trial court should look to the standards of Rule 401 in analyzing whether proffered expert testimony is relevant, i.e., whether it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Next, the district court must determine whether the proffered testimony has a sufficiently reliable foundation to permit it to be considered. In this inquiry, the district court should consider the indicia of reliability identified in Rule 702, namely, (1) that the testimony is grounded on sufficient facts or data; (2) that the testimony is the product of reliable principles and methods; and (3) that the witness has applied the principles and methods reliably to the facts of the case. In short, the district court must make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.

303 F.3d at 265-66 (internal citations and quotations omitted).

Plaintiff proffers Michal J. Vernarelli, Ph.D., as an "expert economist" and seeks to introduce his report and testimony in support of her alleged damages in this case. Dr. Vernarelli's report and testimony should be excluded for a variety of reasons, most notably because his opinions are not relevant to any of the 3 retaliation claims that the Court permitted Plaintiff to proceed on at trial.

In his report, Dr. Vernarelli stated:

> This report is provided to calculate the economic damages that Dr. Nichole Adams-Flores has incurred as a result of racial discrimination she suffered by the Department of Corrections in the State of New York. Specifically, **she was paid a lower salary than other white deputies who were less qualified than her during her employment at the Department of Corrections** and she was wrongfully terminated from her position on 3/15/19.

See JPTO, Pl's Proposed Exh. 21 (emphasis added), annexed to the Declaration of Joseph B. Reynolds in support of Defendants' motion *in limine*, dated August 28, 2023, ("Reynolds Decl.") as Exhibit "A." Thus, Dr. Vernarelli's opinion is predicated on the assumption that Plaintiff was subject to racial discrimination because she was paid less than white deputy commissioners. Dr. Vernarelli then calculated three scenarios of Plaintiff's damages. Scenario I calculated backpay and front pay damages assuming that Plaintiff was never discriminated against. Scenario II calculated backpay and front pay damages using a "conservative" calculation that assumed that Plaintiff would have been "paid a salary equal to the average of what comparably situated white deputies were paid." Scenario III calculated backpay and front pay damages under the assumption that Plaintiff was "paid at the top end of the range of salaries for comparably situated white deputies."

Dr. Vernarelli's backpay and front pay damages calculations are not relevant because Plaintiff's discrimination claims based on pay disparity were dismissed by this Court. In dismissing this claim, the Court stated that Plaintiff "failed to offer sufficient evidence from which a jury could reasonably conclude that there was indeed disparate treatment of similarly situated employees." Op. & Order at 12, 14 (internal quotations omitted). Consequently, Dr. Vernarelli's opinions about the backpay and front pay damages that Plaintiff would have suffered because of the alleged pay disparity are irrelevant. Notably, Dr. Vernarelli does not offer any other opinion, expert or otherwise, about any damages that Plaintiff suffered as a result of any alleged retaliation.

"Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert*, 509 U.S. at 591 (internal quotations and citation omitted).

Dr. Vernarelli's testimony is further irrelevant because Plaintiff's backpay damages should be limited to $12,567; Plaintiff has not sustained any backpay damages after 2019; and Plaintiff is not entitled to front pay damages, all as set forth in Point II, *infra*.

Even assuming that Dr. Vernarelli proffered any opinions that were relevant to any of the claims still left in this case, his opinions should nonetheless be excluded because his methodology and conclusions are unreliable and are predicated on data and assumptions that have no factual or legal basis. When evaluating the reliability of expert testimony, "it is critical that an expert's analysis be reliable at every step." *Amorgianos*, 303 F.3d at 267. The court should rigorously examine the "facts on which the expert relies, the method by which the expert draws an opinion from those facts, and how the expert applies the facts and methods to the case at hand." *Id*. "[W]hen an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony." *Id*. at 266.

Dr. Vernarelli's opinions are patently unreliable for several reasons. First, Dr. Vernarelli's opinions as set forth in Scenarios II and III are predicated on the conclusion that Plaintiff was discriminated against and should have been paid the average of other deputy commissioners or at the high end of what deputy commissioners would have been paid. Dr. Vernarelli, however, does not acknowledge much less analyze Plaintiff's qualifications as compared to white deputy commissioners. It appears that Dr. Vernarelli assumed that all persons with the title of "deputy commissioner" were similarly situated and, therefore, should have been paid similar salaries. This assumption, however, appears to be based on total conjecture because

Dr. Vernarelli does not indicate that he received any information upon which to base this conclusion. In any event, this conclusion has already been foreclosed by this Court in dismissing Plaintiff's discrimination claims based on pay disparity. *See* Op. & Order at 11-12. There is "nothing in either *Daubert* or the Federal Rules of Evidence [that] requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert." *GE v. Joiner*, 522 U.S. 136, 146 (1997).

        Dr. Vernarelli's opinions as set forth in Scenario I are also unreliable because they are based on information or data that is either contradictory to the information in the record or completely conjectural. Dr. Vernarelli calculated Plaintiff's "Actual Earnings" for 2019 and 2020 as $129,074 and $171,976, respectively. However, Plaintiff's 2019 and 2020 tax returns reflect that Plaintiff "actually" earned $152,433 and $192,070, respectively. Further, in her interrogatory responses, Plaintiff swore that her gross earnings for 2020 were $194,000. With respect to 2021, Dr. Vernarelli calculated Plaintiff's "Actual Earnings" as $130,838 by taking Plaintiff's "actual earnings through 9/27 and extrapolated them through 11/17/21." However, Dr. Vernarelli's report indicates that he only had "Tax returns and W-2s 2016-2020." Thus, Dr. Vernarelli had no information about Plaintiff's "actual" earnings in 2021 such that he could perform any extrapolation. Notably, Plaintiff did not produce any information on her earnings for 2021 or any year thereafter during discovery. Dr. Vernarelli provided no indication or explanation for why he chose to ignore the gross income Plaintiff reported in her 2019 and 2020 tax returns or what information he used to calculate and extrapolate Plaintiff's 2021 earnings such that it would support his conclusion that Plaintiff's earnings would have drastically dropped to $130,838. Dr. Vernarelli's failure to use or even acknowledge Plaintiff's actual financial information coupled with his pure speculation about Plaintiff's 2021 earnings renders his Scenario I opinions

completely unreliable and his opinions and conclusions about the damages she suffered totally erroneous.

In Scenario I, Dr. Vernarelli also calculated Plaintiff's "Projected Earnings" as $173,493 for 2019 by multiplying Plaintiff's bi-weekly salary and deducting 1.85%. For 2020 and 2021, Dr. Vernarelli calculated Plaintiff's "Projected Earnings" by adjusting the "2019 figure by the change in the Employment Cost Index for workers in [Plaintiff's] occupational category." Dr. Vernarelli does not explain why it was appropriate to adjust Plaintiff's "Projected Earnings" in this way or that making such an adjustment is reliable or well-accepted in the field of economics or forensic economics. Rather, Dr. Vernarelli simply offers his opinion that his calculation of Plaintiff's "Projected Earnings" is appropriate without any explanation that permits this Court to determine such a calculation is appropriate or reliable. Opinion evidence that is only connected by the *ipse dixit* of the expert should be excluded. *See Joiner*, 522 U.S. at 146.

Dr. Vernarelli's opinions as to Plaintiff's front pay damages should likewise be excluded because it is clear that he simply assumed that Plaintiff was entitled to such damages. However, as set forth below, front pay damages are only available "in cases where the factfinder can reasonably predict that the plaintiff has no reasonable prospect of obtaining comparable alternative employment." *Bergerson v. N.Y. State Office of Mental Health*, 652 F.3d 277, 286 (2d Cir. 2011). Plaintiff, in fact, obtained comparable alternative employment as reflected in her 2021 federal tax return. That comparable alternative employment resulted in Plaintiff actually earning more than her salary when she worked at DOC and precludes any recovery of front pay damages.

## POINT II

### EVIDENCE RELATING TO PLAINTIFF'S BACKPAY, FRONT PAY, AND PUNITIVE DAMAGES SHOULD BE LIMITED OR PRECLUDED

Defendants request, pursuant to Fed. R. Evid. 402, that the Court issue an order limiting any award of backpay to the difference between Plaintiff's gross earnings in 2019 and her gross salary on the date Plaintiff's services as a deputy commissioner were discontinued. Defendants further request the Court preclude Plaintiff from recovering any backpay after 2019 because Plaintiff's gross earnings in 2020 exceeded her gross salary when she worked for the City of New York and Plaintiff did not supplement her discovery responses or production to provide any financial or tax information after 2020. Accordingly, Plaintiff should not be permitted to present any testimony or evidence that indicates her earnings decreased after 2020.

Defendants also request an order barring any testimony or evidence about front pay or punitive damages because Plaintiff is not entitled to recover either.

### A. Plaintiff's request for backpay should be limited to a total of $12,567 for 2019 and denied for all subsequent years

"The purpose of a back-pay award is to make persons whole for injuries suffered through past discrimination[.]" *Quintero v. Angels of the World*, 2021 U.S. Dist. LEXIS 172445, at *36 (E.D.N.Y. Sep. 10, 2021). Backpay is calculated from the date of the unlawful discrimination to the date of judgment. *See Williams v. Firequench, Inc.*, 2022 U.S. Dist. LEXIS 148682, at *9 (S.D.N.Y. Aug. 19, 2022).

It is undisputed that Plaintiff's gross starting salary at DOC was $165,000. *See* Pl's 56.1 Counterstatement of Facts at 3 ¶3 (ECF No. 178-11). At her deposition, Plaintiff stated that during her time at DOC her gross salary "increased slightly, but it stayed in the 160s." Pl's Depo. Tr. at 139:5-10. It is also undisputed that Plaintiff's employment with the City of New York at

DOC was terminated on March 15, 2019. *See* Pl's 56.1 Counterstatement of Facts at 2 ¶1. According to Plaintiff's 2019 federal tax return, Plaintiff's gross wages were $152,433. *See* Pl's 2019 Tax Return, annexed to Reynolds Decl. as Exh. "B." According to Plaintiff's 2020 federal tax return, her gross wages were $192,070. *See* Pl's 2020 Tax Return, annexed to Reynolds Decl. as Exh. "C." In response to Defendants' interrogatory number 4, Plaintiff swore that she made a total gross sum of $194,000 in 2020. *See* Pl's Interrogatory Responses, dated Aug. 11, 2021, annexed to Reynolds Decl. as Exh. "D."

Based on the undisputed facts in this case and admissions in documents that Plaintiff has produced, the maximum amount of backpay that Plaintiff can be awarded is $12,567 which represents the difference between her $165,000 gross salary and $152,433 gross wages she reported in 2019. Plaintiff cannot be awarded any backpay for 2020 because she earned $192,070 or $194,000, far more than her $165,000 salary while working for the City of New York at DOC. Plaintiff has not produced any documentation of her earnings from 2021 to the present. Plaintiff also did not supplement her interrogatory response to Defendants' interrogatory number 4 to provide any additional information about her earnings after 2020. Consequently, Plaintiff should be precluded from testifying or presenting any evidence that she earned less than $192,070 or $194,000 for any year after 2020. Because Plaintiff's gross earnings in 2020 and thereafter exceeded what Plaintiff would have earned if she continued to work at DOC, Plaintiff cannot be awarded any backpay.

Accordingly, to the extent a jury finds that Plaintiff was retaliated against, Plaintiff's backpay damages should be limited to $12,567, representing the difference between her total gross earnings in 2019 and her $165,000 salary while working at DOC.

**B.      Plaintiff should be precluded from pursuing a front pay award as such damages are not available to Plaintiff because she, undisputedly, secured comparable alternative employment**

The court may exercise its discretion and award front pay when "reinstatement is inappropriate and the plaintiff has been unable to find another job. The purpose of front pay is to mak[e] victims of discrimination whole in cases where the factfinder can reasonably predict that the plaintiff has no reasonable prospect of obtaining comparable alternative employment." *Bergerson*, 652 F.3d at 286 (internal quotations and citations omitted) (emphasis in original). A claim for front pay damages should be denied when the calculation method is impermissibly speculative and not based on objective evidence. *See Whittlesey v. Union Carbide Corp.*, 742 F.2d 724, 729 (2d Cir. 1984); *see also Hine v. Mineta*, 238 F. Supp. 2d 497, 501 (E.D.N.Y. 2003) ("[F]ront pay should not be awarded where the calculation method is unduly speculative"); *Rivera v. Baccarat, Inc.*, 34 F. Supp. 2d 870, 878 (S.D.N.Y. 1999) (same).

Plaintiff is not entitled to front pay because as set forth in Point A, *supra*, Plaintiff undisputedly secured comparable employment after her services for the City of New York were discontinued and Plaintiff's new employment pays her more than what she earned while working for the City of New York at the DOC. Accordingly, a jury could not reasonably find that Plaintiff "has no reasonable prospect of obtaining comparable alternative employment." *Bergerson*, 652 F.3d at 286 (emphasis added).

**C.      Plaintiff's Claim for Punitive Damages Should be Stricken because Punitive Damages Cannot be Awarded Against the City of New York**

In her Third Amended Complaint, Plaintiff requests an award of punitive damages. Punitive damages, however, are not available against a government or a governmental subdivision. *See Anderson v. City of New York*, 2017 U.S. Dist. LEXIS 8358, *68 (S.D.N.Y. Jan. 19, 2017)

Accordingly, for the reasons set forth above, Defendants respectfully request that the Court limit any award of backpay to $12,567, preclude Plaintiff from being awarded any backpay for any year after 2019, deny Plaintiff's claim for front pay, and strike Plaintiff's punitive damages demand as against the City.

### POINT III

**THE COURT SHOULD PRECLUDE ANY EVIDENCE OR TESTIMONY ABOUT ALLEGED DISCRIMINATORY STATEMENTS BY MARTIN MURPHY OR JEFF THAMKITTIKASEM**

As part of her discrimination claims, Plaintiff complained that Martin Murphy criticized Plaintiff for using a corrections officer as a driver and stated, "It's the reverse of Driving Miss Daisy. This driver you have opening the door for you and doing everything for you is a bad look." Op. & Order at 3. The Court found that this remark, "without more, [] is not enough to rebut Defendants' legitimate, non-discriminatory reason for denying Adams-Flores a driver." *Id*. at 13. Critically, this purported statement by Mr. Murphy is not relevant to any of the limited retaliation claims that remain in this case and permitting Plaintiff or any other witness to testify about this purported statement would be unduly prejudicial and only serve to confuse the jury. Moreover, Mr. Murphy is not going to be called as a witness by either side and, therefore, the purported statement would be inadmissible hearsay. Accordingly, Mr. Murphy's alleged comment referencing "Driving Miss Daisy" should be excluded.

Plaintiff should also be precluded from introducing evidence that Jeff Thamkittikasem told Plaintiff that he was "going to give [her] all the things [he doesn't] want to do" and "people like you don't know the audience well enough." *Id*. at 9. The Court found that these remarks were not sufficient to support Plaintiff's discrimination claims because Plaintiff failed to show "when – or in what context – the comments were made" and, therefore, could not

13

show a causal link between the statements and any alleged discrimination. *Id*. As with the statement by Mr. Murphy, Mr. Thamkittikasem's alleged statements should be excluded because they are not relevant to any of the limited retaliation claims that the Court allowed to proceed, would only serve to confuse the jury and unduly prejudice Defendants, and would be inadmissible hearsay because Mr. Thamkittikasem is not being called as a witness at trial.

Accordingly, any evidence or testimony about these alleged statements should be excluded pursuant to FRE 401, 402, 403, and 802.

### POINT IV

**PLAINTIFF SHOULD BE PRECLUDED FROM PRESENTING ANY TESTIMONY OR EVIDENCE THAT SHE WAS ASKED OR DIRECTED TO FALSIFY DATA WHILE SHE WORKED AT DOC**

In her Third Amended Complaint ("TAC") and during her deposition, Plaintiff claimed that she was directed to alter, change, or falsify data. *See* TAC at 35-36 ¶140.  This allegation is not relevant to any of the 3 retaliation claims the Court has allowed Plaintiff to proceed to trial on. Permitting Plaintiff to present any evidence concerning this allegation would only serve to confuse the issues, mislead the jury, and the prejudice far outweighs the nonexistent probative value. Further, any evidence or testimony that Plaintiff was directed to alter, change, or falsify data is inadmissible hearsay.

Accordingly, any evidence or testimony about any alleged direction to alter, change, or falsify data, should be excluded pursuant to FRE 401, 402, 403, and 802.

14

## POINT V

### PLAINTIFF SHOULD BE PRECLUDED FROM TESTIFYING OR OFFERING ANY EVIDENCE THAT "UNAUTHORIZED RESEARCH" WAS BEING CONDUCTED ON INMATES IN DOC CUSTODY BY H+H

In her TAC, Plaintiff alleged that she filed a complaint with the "Inspector General to investigate if H&H was conducting unauthorized research on inmates without the inmates' informed consent and the consent of the Commissioner. Plaintiff believed that if this was being done that any such actions were illegal." TAC at 35 ¶138. At her deposition, Plaintiff stated, "To the best of my knowledge, no one in DOC was aware of any testing and Health and Hospitals refused to disclose any information about testing inmates." Pl's Depo. at 148:2-5.

Any testimony or evidence concerning any "illegal testing" on inmates is completely irrelevant because all claims against H+H, Mr. MacDonald, and Ms. Yang were dismissed. Plaintiff also admitted that DOC did not know of any alleged testing being done on inmates. Most importantly, Plaintiff does not have any actual knowledge that any inmates were being tested, illegally or otherwise, by H+H and her knowledge of same is based entirely on inadmissible hearsay. *See id*. at 142:12-13 ("detainees reported to me a concern that somebody was asking to test them and they didn't understand why."). In addition, the only plausible reason Plaintiff could articulate for seeking to introduce such evidence is to show that H+H and/or DOC was committing bad acts on inmates and, therefore, they retaliated or discriminated against Plaintiff.  This is impermissible character evidence. Further, such evidence would only serve to confuse the issues, mislead the jury, and the prejudice far outweighs its non-existent probative value.

Accordingly, any evidence or testimony about any alleged "illegal testing" on inmates in the custody of DOC should be excluded pursuant to FRE 401, 402, 403, 404, and 802.

## POINT VI

### PLAINTIFF SHOULD BE PRECLUDED FROM TESTIFYING OR OFFERING ANY EVIDENCE THAT SHE WAS OR IS A VICTIM OF DOMESTIC VIOLENCE

Plaintiff may seek to introduce evidence that she was or is a victim of domestic violence. Such evidence has no relevance to any claims Plaintiff has ever attempted to assert or the 3 limited retaliation claims the Court has permitted her to present at trial. The only possible reason Plaintiff would have to introduce evidence of being a victim of domestic violence is to try and impermissibly influence the jury by preying upon their sympathies and suggesting or arguing that her status renders her more credible and deserving of compensation. These are not issues in this case, would only serve to confuse the issue, would mislead the jury, and the prejudice would far outweigh its non-existent probative value.

Accordingly, any evidence or testimony about Plaintiff being the victim of domestic violence should be excluded pursuant to FRE 401, 402, and 403.

## POINT VII

### PLAINTIFF SHOULD BE PRECLUDED FROM CALLING ALEXIS KELLY JONES, JEREZ HUE, AND BRUCE FARBSTEIN BECAUSE THEY WERE NOT DISCLOSED TO DEFENDANTS IN PLAINTIFF'S RULE 26 DISCLOSURES OR IN PLAINTIFF'S RESPONSES TO DEFENDANTS' INTERROGATORIES

Rule 26(a)(1)(A) of the Federal Rules of Civil Procedure ("FRCP") requires a party to disclose the names of "each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses." *See* Fed. R. Civ. P. 26(a)(1)(A); *see also Schiller v. City of New York*, 2008 U.S. Dist. LEXIS 79620, at *10-12 (S.D.N.Y. Oct. 9, 2008); *Pal v. N.Y. Univ.*, 2008 U.S. Dist. LEXIS 52620, at *6-9 (S.D.N.Y. July 10, 2008). In

addition, a party is "under an affirmative duty to supplement incomplete or incorrect disclosures," and the failure to do so "precludes a party from using the withheld information as evidence at trial." *See Alfano v. Nat'l Geographic Channel*, 2007 U.S. Dist. LEXIS 74674, at *3 (E.D.N.Y. Oct. 5, 2007) (precluding the testimony of a witness who was not identified in the plaintiff's Rule 26(a) disclosures).

Under Federal Rule of Civil Procedure 37(c)(1), when a "party fails to provide information or identify a witness as required by Rule 26(a) . . . the party is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *see also Patterson v. Balsamico*, 440 F.3d 104, 117-118 (2d Cir. 2006) (affirming the lower court's preclusion of a belatedly-identified witness despite the fact that the individual was a named defendant in the prior proceeding); *Schiller*, 2008 U.S. Dist. LEXIS 79620, at *10-12 (precluding the testimony of witnesses at trial); *Pal*, 2008 U.S. Dist. LEXIS 52620, at *6-9 (same).

The Second Circuit has recognized a court's discretion to preclude non-disclosed witnesses or evidence if "the trial court finds that there is no substantial justification and failure to disclose is not harmless." *See Pal*, 2008 U.S. Dist. LEXIS 52620, at *8-9 (citing *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 297 (2d Cir. 2006)). In deciding whether to exercise its discretion to preclude evidence or testimony, a court should consider: "(1) the party's explanation for the failure to comply with the [disclosure requirement]; (2) the importance of the testimony of the precluded witness[es]; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance." *Patterson*, 440 F.3d 104, 117 (quoting *Softel, Inc. v. Dragon Med. & Scientific Communs., Inc.*, 118 F.3d 955, 961 (2d Cir. 1997)) (alterations in original). As to the prejudice factor, it is Plaintiff's burden to demonstrate

lack of prejudice, not Defendants' burden to demonstrate that they are prejudiced. *See Castro v. City of New York*, 2009 U.S. Dist. LEXIS 69723, at *16 (E.D.N.Y. Aug. 10, 2009).

Plaintiff did not identify Alexis Kelly Jones, Jerez Hue, or Bruce Farbstein in her Rule 26 disclosures. In Defendant's first set of interrogatories, Defendant asked Plaintiff to identify all persons who have relevant information about Plaintiff's claims. Plaintiff did not identify these persons as potential witnesses. At no time did Plaintiff supplement her Rule 26 disclosures or interrogatories to identify these persons. Plaintiff's failure to disclose is not harmless. Defendants do not know what these witnesses would testify about and Plaintiff only provides the nebulous statement that they possess "knowledge and information concerning the facts as set forth in the Complaint of this matter." *See* JPTO at 9-10 (ECF No. 209).

Accordingly, the Court should preclude Plaintiff from calling Alexis Kelly Jones, Jerez Hue, and Bruce Farbstein as witnesses at trial.

### POINT VIII

**PLAINTIFF SHOULD BE PRECLUDED FROM CALLING AYINDE WILLIAMS, DANIELLE BARRETT, OR CLAUDETTE WYNTER AS WITNESSES AT TRIAL**

Federal Rule of Evidence 403 permits the Court to exclude evidence when its probative value is substantially outweighed by the risk of wasting time or needlessly presenting cumulative evidence. Plaintiff does not specifically indicate why she needs to call Ayinde Williams or Claudette Wynter. A review of Plaintiff's exhibits indicate that Nadine Pinnock was copied on all or virtually all of the emails that include Mr. Williams or Ms. Wynter. Because Ms. Pinnock is listed as witness by both parties, it appears that any testimony offered by Mr. Williams or Ms. Wynter would be cumulative to any testimony provided by Ms. Pinnock and, therefore, calling them as witnesses would be a waste of time.

18

It appears that Plaintiff seeks to call Danielle Barrett to testify about Exhibit 12, an "EEO Complaint Final Investigative Report" ("Draft Report") from Fenimore Fisher and Danielle Barrett.  *See* Pl's Proposed Exh. 12, annexed to Reynolds Decl. as Exh. "E."  As set forth below in Point XI, Exhibit 12 should be precluded.  Other than the Draft Report, it does not appear that Ms. Barrett has any information that would be relevant or probative to Plaintiff's remaining claims. Accordingly, Ms. Barrett should be excluded because her testimony would not be relevant, would be a waste of time, and would only serve to confuse or mislead the jury.

**POINT IX**

**ALL CHARACTER EVIDENCE PERTAINING TO DEFENDANT BRANN AND THE NON-PARTY WITNESSES SHOULD BE PRECLUDED BECAUSE IT IS MORE PREJUDICIAL THAN PROBATIVE**

Plaintiff should be precluded from eliciting any testimony or presenting any evidence regarding Defendant Brann's or non-party witnesses' character such as disciplinary histories, prior complaints, employment discrimination actions, or lawsuits which have been filed against the non-party witnesses because such evidence is in direct conflict with Federal Rule of Evidence 404(b). Rule 404(b) states that evidence of past acts "to prove the character of a person in order to show action in conformity therewith . . ." is inadmissible. Under Rule 404(b), evidence of past acts are only admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . ."  However, evidence of prior bad acts is not automatically admissible simply because the proponent has articulated some not-for-character purpose.

As the Supreme Court held in *Huddleston v. United States*, 485 U.S. 681, 688 (1988), the decision to admit evidence under Rule 404(b) also depends on "whether the danger of unfair prejudice outweighs the probative value of the evidence in view of the availability of other

19

means of proof and other factors appropriate for making decisions of this kind under Rule 403." Rule 404(b) "requires a two-part analysis: first, whether the proposed evidence fits within one of the 'exceptions' provided by the Rule, and second, even if it does, whether under Rule 403, the evidence's probative value is substantially outweighed by the potential for jury confusion or prejudice." *Shaw v. City of New York*, 1997 U.S. Dist. LEXIS 4901, at \*16-19 (S.D.N.Y. Apr. 15, 1997); *see e.g.*, Advisory Committee Notes to Fed. R. Evid. 404(b); *Lombardo v. Stone*, 2002 U.S. Dist. LEXIS 1267, at \*10-12, 15-16 (S.D.N.Y. Jan. 29, 2002); *United States v. Benedetto*, 571 F.2d 1246, 1248 (2d Cir. 1978); *United States v. Brennan*, 798 F.2d 581, 589 (2d Cir. 1986); *United States v. Margiotta*, 662 F.2d 131, 142 (2d Cir. 1981); *Berkovich v. Hicks*, 922 F.2d 1018, 1022 (2d Cir. 1991); Wright & Graham, *Federal Practice & Procedure: Evidence* § 5240 at 472 ("even if the evidence falls within one of the traditional exceptions [in Rule 404(b)], the trial judge may still exclude it on the discretionary grounds listed in Rule 403").

In this case, any reference to Defendant Brann's or the non-party witnesses' disciplinary histories, prior complaints or employment discrimination actions do not fall under any of the 404(b) exceptions. Second, the potential for confusion or prejudice substantially outweighs any probative value. Previous disciplinary actions or allegations of discrimination will not help the jury determine whether Plaintiff was retaliated against in this case. Applying these factors, Plaintiff should be precluded from questioning Defendant Brann or the non-party witnesses regarding their disciplinary histories or prior complaints of discrimination or retaliation.

Even if this evidence was not so overwhelmingly prejudicial, it would not be admissible for any of the purposes stated in Fed. R. Evid. 405(b) or 406, since unsubstantiated complaints and allegations are not evidence of any particular conduct or habit by the non-party witnesses. Finally, whether Defendant Brann's or the non-party witnesses were the subject of

unsubstantiated or unsupported allegations of misconduct should not be admitted as evidence for lack of credibility under Rule 608 or 609 as it is not probative of their character for truthfulness.

## POINT X

### PLAINTIFF SHOULD BE PRECLUDED FROM REFERRING TO DEFENSE COUNSEL AS "CITY ATTORNEYS" AND SHOULD BE PRECLUDED FROM OFFERING EVIDENCE OF INDEMNIFICATION

Pursuant to Fed. R. Evid. 402 and 403, Plaintiff should be precluded from introducing or otherwise referring to the possibility that the City of New York will indemnify Defendant Brann. Indemnification has no bearing on the facts of Plaintiff's claims or damages and would only serve to unfairly prejudice Defendants. As numerous courts in this district have found, evidence of indemnification would prejudice Defendants because it may "'encourage a jury to inflate its damages award because it knows the government -- not the individual defendants -- is footing the bill.'" *Scoma v. City of N.Y.*, 2021 U.S. Dist. LEXIS 85360, at *46 (E.D.N.Y. May 4, 2021) (quoting *Othman v. Benson*, 2019 U.S. Dist. LEXIS 38594 (E.D.N.Y. Mar. 11, 2019)) (internal quotations omitted); *Hernandez v. Kelly*, 2011 U.S. Dist. LEXIS 57114, at *17-18 (E.D.N.Y. May 27, 2011).

Similarly, the Court should not permit Plaintiff to refer to defense counsel as "City Attorneys" or "Corporation Counsel," or otherwise refer to defense counsel as being employed by the City of New York. Permitting such reference may "unnecessarily confuse the jury or lead the jury to believe that [Defendants] may be indemnified by the City." *Scoma*, 2021 U.S. Dist. LEXIS 85360, at *47 (E.D.N.Y. May 4, 2021). *See also Ross v. Guy*, 2022 U.S. Dist. LEXIS 44714, at *18 (E.D.N.Y. Mar. 14, 2022).

Accordingly, Defendants respectfully request the Court preclude Plaintiff from introducing or otherwise referring to the possibility of indemnification for Defendant Brann and order Plaintiff to refer to Defense Counsel as precisely that, "defense counsel."

<u>**POINT XI**</u>

**<u>PLAINTIFF SHOULD BE PRECLUDED FROM
INTRODUCING EXHIBITS 12 AND 22</u>**

Plaintiff's proposed Exhibit 12 is a draft of a "EEO Complaint Final Investigative Report" ("Draft Report") from Fenimore Fisher and Danielle Barrett.  *See* Reynolds Decl., Exh E. The Draft Report sets forth Plaintiff's complaints of discrimination and retaliation, along with findings of the investigation, and certain recommendations. Specifically, the authors of the Draft Report concluded that Plaintiff's claim of retaliation with respect to the August 1, 2017, denial of Plaintiff's request to "pick up" her civil service title was substantiated and set forth a number of recommendations as a result. The Draft Report, however, was not ultimately adopted by the Department of Citywide Administrative Services' "Chief Citywide Diversity & EEO Officer" or the "Acting Counsel to the Mayor."

The Draft Report should be excluded because its admission would unfairly prejudice Defendants and confuse or mislead the jury as to the issues in this case. Plaintiff will almost certainly argue that the Draft Report's conclusion substantiates all of Plaintiff's claims of retaliation because if Defendants retaliated against Plaintiff by initially failing to "pick up" her civil service title then they subsequently retaliated against her by refusing to credit her probationary time and, ultimately, discontinuing her services. Plaintiff will essentially argue to the jury that because some City employees concluded that there was retaliation, then they must also conclude that Plaintiff was retaliated against. Admitting the Draft Report would confuse and mislead the jury into believing that the City of New York or DOC actually concluded that Plaintiff

22

was discriminated against. That, however, is untrue. Further, the Draft Report would effectively instruct or compel the jury to conclude that there was retaliation, which would be both confusing and misleading because the issue of whether Plaintiff was retaliated against is the very issue that is disputed by the parties and must be decided by the jury. Further, Plaintiff will have ample opportunity to present other evidence and testimony in support of her claim of retaliation. Admitting the Draft Report would unduly prejudice Defendants because the jury would assume that Defendants retaliated against Plaintiff by failing to "pick up" her civil service title and, therefore, Defendants also retaliated against Plaintiff by refusing to credit her probationary time and discontinuing her services. That is not only unduly prejudicial but also impermissible character evidence. Additionally, Exhibit 12 is riddled with Plaintiff's own hearsay statements, which are inadmissible under FRE 802.

Plaintiff's Proposed Exhibit 22 contains information about Plaintiff's retirement/ pension information with New York City Employees' Retirement System ("NYCERS"). As set forth in Point II, *supra*, Plaintiff is not entitled to front pay damages and, therefore, Plaintiff's Exhibit 22 is not relevant to any issue in dispute, specifically damages. Further, any testimony or argument concerning same would be a waste of time.

Accordingly, Defendants respectfully request that the Court exclude Exhibit 12 and exclude any testimony regarding the retaliation claims being considered by DOC as substantiated, under FRE 403, 404, and 802. Defendants further submit that if the Court allows Plaintiff to admit the Draft Report into evidence, the entire Draft Report with the exception of Section II.A of the "Retaliation Claims," the signature blocks for the "Chief Citywide Diversity & EEO Officer" and page 14 should be redacted. *See* Reynolds Decl., Exh. E, at DEFCITY001999-2001, 2003, & 2004.

23

Defendants also request the Court exclude Exhibit 22 because it is not relevant and its admission would be a waste of time

## POINT XII

### PLAINTIFF SHOULD BE PRECLUDED FROM OFFERING ANY EVIDENCE IN SUPPORT OF ANY CLAIMS THAT HAVE BEEN DISMISSED

Pursuant to Fed. R. Evid. 402 and 403, Plaintiff should not be allowed to present evidence or otherwise refer to claims that have been dismissed from this lawsuit, which preclusion should include, but not be limited to, Plaintiff's proposed Exhibits 12 and 13. *See* Reynolds Decl. Exh. E. *See also* Pl's Proposed Exh. 13, annexed to Reynolds Decl. as Exh. "F."

In its Opinion & Order, the Court dismissed Plaintiff's Title VII, Section 1983, NYSHRL, and NYCHRL discrimination and hostile work environment claims. The Court also largely dismissed Plaintiff's retaliation claims, except for 3 limited retaliation claims. Notwithstanding the Court's rulings, Plaintiff attempts to introduce evidence in her proposed Exhibits 12 and 13 that are only relevant to the claims that have been dismissed. With respect to Plaintiff's proposed Exhibit 12, numerous pages of this document contain Plaintiff's alleged complaints of discrimination and retaliation that were dismissed by this Court. To the extent this proposed exhibit is admissible, the information concerning the claims that were dismissed should be redacted. Plaintiff's proposed Exhibit 13 contains information on salaries of other deputy commissions. The Court, however, dismissed Plaintiff's claim of discrimination based on pay disparity.

Similarly, the Court also dismissed Plaintiff's claims against New York City Health & Hospitals Corporation, Ross MacDonald, and Patsy Yang, employees who worked at H+H. The Court should preclude Plaintiff or any other witness from testifying about any alleged

discrimination, hostile work environment, or retaliation that occurred at H+H. Further, because Mr. MacDonald and Ms. Yang worked at H+H, they do not and cannot have any first-hand knowledge of any alleged retaliation against Plaintiff while at DOC. In fact, they do not appear to have been involved in any way with the actions underlying the 3 retaliation claims that Plaintiff may proceed on at trial.

Accordingly, the Court should not only preclude Plaintiff from presenting any evidence or testimony to support any claims of alleged discrimination, hostile work environment, or retaliation that were dismissed (including but not limited to Plaintiff's proposed Exhibits 12 and 13) but also preclude Plaintiff from calling Mr. MacDonald or Ms. Yang because their testimony would not be relevant, they do not have any probative knowledge of the 3 retaliation claims at issue, any testimony they could provide about any alleged retaliation would be hearsay or speculation, their testimony would only serve to confuse the issues and mislead the jury, and any probative value of their testimony is far outweighed by the prejudice Defendants would suffer.

### POINT XIII

### PLAINTIFF SHOULD BE PRECLUDED FROM REQUESTING A SPECIFIC DOLLAR AMOUNT FROM THE JURY

While the Second Circuit has not adopted a flat prohibition of suggesting a specific dollar amount, it does disfavor specifying target amounts for the jury to award. *Consorti v. Armstrong World Indus., Inc.*, 72 F.3d 1003, 1016 (2d Cir. 1995). Such suggestions unlawfully anchor the jurors' expectations of a fair award at a place set by counsel, rather than by the evidence. *Id.; see also Mileski v. Long Island R.R. Co.*, 499 F.2d 1169, 1172 (2d Cir. 1974) ("A jury with little or no experience in such matters, rather than rely upon its own estimates and reasoning, may give undue weight to the figures advanced by plaintiff's counsel …"). The court in *Consorti* went on to state:

> A jury is likely to infer that counsel's choice of a particular number is backed by some authority or legal precedent. Specific proposals have a real potential to sway the jury unduly . . . . We encourage trial judges to bar such recommendations.

*Consorti*, 72 F.3d at 1016. While there is no per se rule precluding any mention of a dollar amount, the Second Circuit has left the issue "to the discretion of the trial judge, who may either prohibit counsel from mentioning specific figures or impose reasonable limitations, including cautionary jury instructions." *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 912 (2d Cir. 1997). Notwithstanding the discretion afforded, judges in this Circuit have recently relied on *Consorti* to preclude plaintiffs from requesting specific dollar amounts to the jury. *See Stern v. Shammas*, 2015 U.S. Dist. LEXIS 97879, at *43-44 (E.D.N.Y. Jul. 27, 2015); *Phillips v. City of New York*, 871 F. Supp. 2d 200, 208 (E.D.N.Y. 2012).

As such, Plaintiff should be precluded from suggesting a specific dollar amount to the jury during her opening statement, during the testimony of any witness, and/or during summation.

### POINT XIV

### PLAINTIFF SHOULD BE PRECLUDED AT TRIAL FROM CALLING HER TREATING MEDICAL PROVIDERS AS EXPERTS

To the extent that Plaintiff seeks to call medical professionals Alexis Garrity or Dr. Michael Jackson as expert witnesses in this matter, Defendants object and respectfully submit that the Court should not receive their testimony for that purpose. Rule 26(a)(2) of the Federal Rules of Civil Procedure provides that a party seeking to employ an expert witness "must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705" that is accompanied by the expert's report which must contain "a

complete statement of all opinions the witness will express and the basis and reasons for them[.]'" Fed. R. Civ. P. 26(a)(2)(A) & (B).

As an initial matter, Plaintiff has failed to provide the mandatory expert disclosures required by Rule 26 for Garrity and Jackson. Absent a report of findings, conclusions, and their bases as required by Rule 26, Defendants have had no opportunity to meaningfully evaluate, and to challenge, whatever conclusions Plaintiff's treating physicians may offer at trial in an expert capacity. In such circumstances, Plaintiff's treating physician's testimony as an expert is properly precluded.

While courts have noted that the expert disclosure requirement does not apply to treating physicians to the extent that they seek to testify about the course of treatment rendered to the plaintiff, courts have been equally emphatic that this exception does not permit a treating doctor to offer expert opinion at the time of trial. *Monroe-Trice v. Unum Employee Short-Term Disability Plan*, 2003 U.S. Dist. LEXIS 152 (S.D.N.Y. Jan. 8, 2003) (precluding expert testimony where treating physician did not proffer expert report, permitting testimony only as to his evaluation and treatment of plaintiff, and his condition and prognosis at time of treatment); *accord Zanowic v. Ashcroft*, 52 Fed. R. Serv. 3d 702 (S.D.N.Y. 2002) (denying motion to preclude the testimony from doctor, but noting the limitations on the use and extent of treating physician's testimony at trial absent expert report) (collecting cases); *Shaphardon v. West Beach Estates*, 172 F.R.D. 415, 416-17 (D. Haw. 1997) (with respect to opinions unrelated to his treatment, doctor was subject to Rule 26(a)(2)). As such, Defendants submit that any prospective testimony from Plaintiff's treating medical professionals should properly be confined to their treatment of Plaintiff.

Accordingly, to the extent Plaintiff intends to call Alexis Garrity and Dr. Michael Jackson at trial, their testimony should be limited to the treatment they provided Plaintiff and not the possible causes of Plaintiff's injuries or other matters on which an expert would testify.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court grant their motions *in limine*, together with such other and further relief as the Court deems just and proper.

Dated:       New York, New York
             August 28, 2023

               **HON. SYLVIA O. HINDS-RADIX**
               Corporation Counsel of the
                City of New York
               Attorney for Defendants
               100 Church Street, Second Floor
               New York, New York 10007-2601
               (212) 356-2442/2658

By:       /s/ *Joseph Reynolds*
          Joseph B. Reynolds
          Senior Counsel

By:       /s/ *Maria Fernanda DeCastro*
          Maria Fernanda DeCastro
          Senior Counsel