UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------- x

NICHOLE ADAMS-FLORES,

       Plaintiff,

                CV-18-12150 (JMF)

  -against-

CITY OF NEW YORK AND CYNTHIA BRANN,

       Defendants.

-------------------------------------------------------------------------- x


# PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION *IN LIMINE*


        THE LAW OFFICES OF
        FREDERICK K. BREWINGTON
        *Attorneys for Plaintiff*
        556 Peninsula Boulevard
        Hempstead, New York 11550
        (516) 489-6959


*OF COUNSEL: FREDERICK K. BREWINGTON*
   *COBIA M. POWELL*

## <u>TABLE OF CONTENTS</u>

<u>**PAGE NO.**</u>

**TABLE OF AUTHORITIES** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **ii**

**PRELIMINARY STATEMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **1**

**RELEVANT FACTS TO THIS MOTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **1**

**LEGAL STANDARD AND ARGUMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **5**

**CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **16**

## TABLE OF AUTHORITIES

<u>CASE NAMES</u>                                                    <u>PAGE NO.</u>

*Luce v. United States,*
  469 U.S. 38, 41 n. 4 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*McCarrick v. New York City Off–Track Betting Corp.,*
  No. 91 Civ. 5626, 1995 WL 261516, at \*5 (S.D.N.Y. May 3, 1995) . . . . . . . . . . . . . . . . . . . . 13

*Palmieri v. Defaria,*
  88 F.3d 136, 141 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Thompson v. Boggs,*
  33 F.3d 847, 854 (7th Cir.1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Zubulake v. UBS Warburg LLC,*
  382 F. Supp.2d 536 (S.D.N.Y. March 16, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

### STATUTES

42 U.S.C. §1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

42 U.S.C. § 2000e-2(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

NYS Exec. Law§ 296 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Title VII . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

### FEDERAL RULES OF EVIDENCE

F.R.E. 403 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 13

F.R.E. 404 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12, 13

F.R.E. 406 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 13

## PRELIMINARY STATEMENT

This office represents the Plaintiff in the above referenced matter. We respectfully submit the instant letter in support of Plaintiff's motion *In Limine*. The within action involves Plaintiff's claims against Defendants City of New York Department of Corrections ("DOC") and Cynthia Brann, including Plaintiff's Title VII of the Civil Rights Act of l964, 42 U.S.C. § 2000e et seq. (as amended), 42 U.S.C §1983, New York State's Human Rights Law, Executive Law § 296, and New York City Human Rights Law. The within claims are based on the Defendant City of New Yorks' and NYC Department of Correction's retaliation for Plaintiff opposing discriminatory practices, in addition to her claims for the hostile work environment to which Plaintiff was subjected by Defendants because of Plaintiff's race, color and gender. Furthermore, Plaintiff was terminated in retaliation for reporting and opposing discrimination to her supervisors, the herein Defendants and filing her Charges of Discrimination with Equal Employment Opportunity Commission (herein "EEOC").

Plaintiff anticipates that Defendants will attempt to offer the testimony of Dana Roth to support their claim that Defendants terminated Plaintiff because of a Department of Investiation (DOI) Report and a Conflict Of Interest Board (COIB) Settlement which was formalized in a disposition. Plaintiff previously objected to Dana Roth's testimony, the DOI Report and COIB Settlement in the Joint Pre-Trial Order. Were Defendants permitted to produce this testimony and documents, same would be misleading, confusing, improper and more prejudicial than probative to the issues relating to Dr. Adams' claims of retaliation in this case.

## RELEVANT FACTS TO THIS MOTION

Dr. Nichole Adams-Flores (hereinafter "Plaintiff" or "Dr. Adams") is an African American woman, who was employed with the DOC from February of 2016 until she was wrongfully

terminated in March of 2019. At the time of her hire, Plaintiff was under the supervision of Commissioner Ponte.  Commissioner Ponte  instructed and encouraged Plaintiff to engage in a number of projects in her role as Deputy Commissioner and expressed to Dr. Adams that she should talk to officers and educate staff about the ways in which detainees' mental health is properly supported. (Ex. A, Plaintiff's Deposition  at pp 65- 66). Ponte wanted Dr. Adams to educate officers in order to develop strategies that did not involve violence. (*Id.* at pp 65- 66). Ponte also wanted to make sure the work Dr. Adams was doing was recognized statewide, nationwide and worldwide. (*Id.* at pp 65- 66). Commissioner Ponte also wanted to make sure that Dr. Adams went to all of the workshops where someone was discussing Riker's Island. (*Id.* at p 68).

Once Commissioner Ponte retired, Plaintiff began to be subjected to treatment and acts that were discriminatory.  On or about May 8, 2017 Plaintiff engaged in an EEO interview, during which she voiced her concerns and objections to the form and level of mistreatment to which she was being subjected.  However, once Dr. Adams filed her EEO Complaint, Defendant Cynthia Brann who had become the Acting Commissioner and was part of the focus of Plaintiff's complaints, abruptly and wrongfully changed Dr. Adams' job responsibilities from what they were under Ponte.  (*Id.* at p 84). Brann, unlike Ponte, prevented Dr. Adams from attending conferences. Brann would instead send white male employees in the place of Dr. Adams. (*Id.* at pp 87- 88). Many times Defendant Brann would discriminatorily disallow Dr. Adams from attending conferences that Ponte had previously approved. (*Id.* at p 89). These actions would reflect poorly on Dr. Adams as the conference organizers would not be given timely notice by Brann. (*Id.*). Brann would just constantly state that Dr. Adams could not attend any conferences, approved and scheduled or otherwise. (*Id.* at p 90).

2

Brann also engaged in retaliatory actions against Dr. Adams by delegating assignments assigned for Dr. Adams to other workers and stopped allowing Dr. Adams to go to free training programs.(*Id.* at pp 81, 83). These retaliatory actions preceded Defendant Brann wrongfully denying Dr. Adams her civil service title. Unlike Michelle Bacon, who was Dr. Adams' subordinate, after she received a perfect score on the civil service test, Dr. Adams was informed by Nadine Pinnock that she still had to complete an interview with the department of mental health and hygiene. In contrast, all Michelle Bacon needed in order to receive her civil service title was for her to present paperwork to the secretaries. (Ex. B, Email thread where Michelle Bacon's civil service title was transferred, bate stamp #DEFCITY 1915 ). When Dr. Adams went to the department of mental health and hygiene, they did not understand why the same simple paperwork process was not undertaken for Dr. Adams. Plaintiff's Deposition at pp 114- 116); (Ex. C, Email thread from July of 2017, bates stamp #E-DEF-CITY-124-5). In fact, when Ayinde Williams, who worked in Human Resources, asked Cynthia Brann to approve Dr. Adams' title transfer, Brann in seeking further ways to harm Plaintiff asked what other options were available, when for other similarly situated white employees it was merely a matter of having routine paperwork processed. (Ex. D, Email thread with Ayinde Williams, Cynthia Brann, Nadene Pinnock regarding Dr. Adams' title transfer in July of 2017, bate stamp #E-DEF-CITY- 111). Even Frank Doca, who is another Deputy Commissioner, stated that he was in the department for several decades and the civil service title was routine paperwork and he was unsure as to why Dr. Adams did not get hers title by merely submitting the paperwork. (Ex. A at p 123); (Ex. C). Nadene Pinnock, who was the Director of Human Resources, said that Dr. Adams' situation was different. However, the only difference between Dr. Adams and the others was that Dr. Adams was an African American woman who filed an EEO Complaint. (Ex.

A at p 119); (Ex. E, Nadene Pinnock's Deposition at pp 146-7).

After fighting for months against the wrongful denial of her civil service title, Dr. Adams received a letter from Human Resources stating that Defendants were reversing Brann's decision and giving her the rightful civil service title she earned. (Ex. A at p 126); (Ex. E at pp 132, 169); (Ex. F, Email from Danielle Barrett on December 22, 2017 confirming Dr. Adams' Civil Service Title Transfer, bates stamp #DEF-CITY- 1180); (Ex. G, Email from February 2018 confirming Dr. Adams' civil service title transfer, bates stamp #E-DEF-CITY- 391). Dr. Adams' civil service title was Health Service Manager. (Ex. A at p 126). Dr. Adams was appointed by the Health Department and then transferred to DOC effective September 11, 2017. (Ex. H, Brian Goldberg's deposition at pp 58-9). Dr. Adams probationary period of one year would began on September 11, 2017. (*Id.*). Dr. Adams' probationary period was to be completed on or around October 3, 2018. (*Id.* at 63).  The retaliation would not end there.

After Dr. Adams completed one year of civil service, she reached out to Department of Citywide Administrative Services (DCAS), to make sure she was a permanent civil service servant and she received an email that she had earned her permanent civil service title. (Ex. A at 71); (Exhibit I, Kelly Jones-Alexis email, bates stamp #Adams-Flores 423-424). Pinnock, along with the department was not aware that Dr. Adams received an email from DCAS confirming that she was a permanent civil service employee. (Ex. E at pp 209- 210).  Thereafter, Dr. Adams was informed that her time was not being counted towards her permanence and she was still probationary. (Ex. A at pp 76- 77); (Ex. J, Nadene Pinnock's Letter to Dr. Adams dated January 11, 2019, bate stamp #Adams-Flores 9). In a further act of retaliation Brann did not give Dr. Adams credit towards her probation period. (Ex. E at pp 185, 190, 201, 251); (Ex. J). Pinnock claimed that she did not know

the reason why the DOCS did not credit Dr. Adams' probation. (Ex. E at p 219). However, Pinnock attempted to wrongfully change Dr. Adams' appointment date from September 11, 2017 to December 7, 2017.(Ex. K, January 2019 email thread between Nadene Pinnock and Ayinde Williams, bates stamp #E-DEF-CITY- 364-5.). Not only did the PRISE system show that Dr. Adams was permanent, Ayinde Williams stated that Kelly Jones Alexis confirmed that Dr. Adams' effective appointment date was September 11, 2017. (*Id*). Defendants did not follow the Personnel Service Bulletin which required DCAS and Dr. Adams to be informed that her probationary period would not count one month before the completion of her probationary period.

## LEGAL STANDARD AND ARGUMENT

A district court's inherent authority to manage the course of its trials encompasses the right to rule on motions in limine. *See Luce v. United States*, 469 U.S. 38, 41 n. 4 (1984).  In fact, "[t]he purpose of an *in limine* motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996).

Defendant Brann's actions toward Dr. Adams changed after Dr. Adams filed her EEO Complaint. (Ex. A at p 84).  Brann emailed Dr. Adams that she would not receive her civil service title or a DP72 after she filed an EEO Complaint.  Defendants prevented Dr. Adams from receiving her civil service title. (*Id.* at p 121). As further retaliation, to further ensure Dr. Adams did not receive the title to which she was entitled, Brann raised false concerns that accepting Dr. Adams title transfer would tie future administrations to executive staff. (Ex. E at pp 133- 134). This statement was pure pretext.

5

Brann, unlike Ponte, wrongfully prevented Dr. Adams from attending conferences. In clear acts of retaliation, she would instead send white male employees in the place of Dr. Adams. (Ex. A at pp 87- 88). Many times Defendant Brann would retaliatorially disallow Dr. Adams from attending conferences that Ponte had previously approved. (Ex. A at p 89). These actions taken by Brann did reflect poorly on Dr. Adams as the conference organizers would not be given timely notice that Plaintiff would not be attending by Brann. (*Id.*). Brann would just constantly state that Dr. Adams could not attend any conferences, approved and scheduled or otherwise. (Ex. A at p 90). This factual background is crucial as the temporal relationship between the acts taken against Plaintiff leading up to her wrongful termination demonstrates that the DOI Investigation, the DOI report and the COIB settlement disposition came about after Dr. Adams had filed multiple complaints and had already been subjected to a course of retaliatory treatment that led directly to her termination and the retaliatory treatment continued after that act.

### The DOI Investigation, Report and the COIB Disposition

Defendants now rely on the determination of this DOI as their reason for firing Dr. Adams. It is Defendants' plan to place before the Jury and have both the Jury and this Court accept as true their argument that the decision to fire Dr. Adams wass not retaliatory based on her complaints and opposition to discriminatory and retaliatory actions.Rather Defendats will attempt to proffer that Plaintiff's termination was based on the DOI Investigation which began just days after Dr. Adams filed her December 22, 2017 EEOC Report. According to Defendants, the investigation began December 26, 2017. While it may not appear implausible that the EEOC Complaint was the cause of the investigation, when the Court views the recurring, consistent, sum of the adverse actions, the pattern becomes clear that each and every protected action taken by Plaintiff was met with a

continuation of Defendants' retaliation against Dr. Adams. This nearly four year time-line illustrates that Defendants claim to have terminated Plaintiff due to the DOI investigation was a pretext for retaliation:

| DATE OF ACT/OCCURRENCE | ACT/OCCURRENCE |
|---|---|
| 5/12/2017 | Plaintiff attended EEO initial meeting |
| 5/31/2017 | Plaintiff filed her EEO complaint |
| 7/15/2017 | Plaintiff Received Notice of Hiring Pool Letter from DOHMH stating her list number had been reached and inviting her to interview |
| 7/17/2017 | Plaintiff took the Hiring Pool Letter to HR and requested the DP 72 transfer- for DOC to pick up the Health Service Manager Title and allow her to work in the title at DOC |
| 7/21/2017 | Plaintiff met with Commissioner Brann and FDC Villalona. Plaintiff followed up on the request for the title transfer. Plaintiff was told they needed to check with the Chief of Staff Jeff Thamkittakisem |
| 7/24/2017 | Plaintiff met with Nadene Pinnock, DC for HR to follow up with the title transfer request. She said it was not possible |
| 7/25/2017 | HR reported that Plaintiff's title transfer situation was 'different' and they hoped she could understand why. |
| 7/25/2017 | Plaintiff fact checked the reasons HR gave her explaining why she could not have a civil service title- and discovered that their reasons were not accurate |
| 7/26/2017 | Plaintiff attended the hiring pool and DOHMH at the direction of HR |

7

| | |
|---|---|
| 7/26/2017 | Plaintiff asked the Commissioner Brann to complete DP-72 to transfer her Health Service Manager Title to DOC |
| 7/27/2017 | Plaintiff informed EEO that she believed DOC was retaliating against her by not transferring the Health Service Manager Title, like they had done for other white supervisors. |
| 7/31/2017 | The Commissioner told Plaintiff that she would provide a written response to her request |
| 8/1/2017 | Commissioner Brann sent Plaintiff a letter stating that she would not authorize the DP-72 and transfer the Health Service Manager title |
| 9/15/2017 | EEO sent Plaintiff a copy of a Word document and asked her if she had ever seen it or signed it.  They told Plaintiff DOC explained to them that the document was her performance improvement plan.  Plaintiff had never seen this document before. |
| 10/1/2017 | Plaintiff filed her EEOC Complaint |
| 12/11/2017 | Signed the DP 72 to transfer the Health Service Manager to DOC |
| 12/22/2017 | EEO informed Plaintiff that her retaliation complaint was resolved since the DP-72 was approved and the Health Service Manager title was transferred over |
| 12/26/2017 | According to the DOI report, the DOI investigation began |
| 2/12/2018 | HR sent Plaintiff a civil service appointment letter stating that her appointment began on September 11, 2017.  The letter explained that Plaintiff would remain a Provisional Administrative Psychologist, but be appointed as a Health Service Manager effective September 11, 2017. |

| 10/30/2018 | DCAS-Director of Civil Service Transactions sent Plaintiff an email confirming that she was permanently appointed as a Health Service Manager 9/11/2017.  This email was in response to a query Plaintiff had submitted asking for confirmation that her probation had been served. |
|---|---|
| 12/26/2018 | Plaintiff's discrimination lawsuit was published in the newspaper |
| 1/9/2019 | HR sent Plaintiff a letter saying that her probationary time was unsatisfactory |
| 1/11/2019 | DCAS Deputy General Counsel responded to an email that Plaintiff had sent asking for clarification on policy and procedure. He explained that as a Commissioner and a Provisional Psychologist, Plaintiff was an 'at will' employee and cannot serve a probation as a Health Service Manager. |
| 3/15/2019 | The DOI Investigation was completed |
| 3/15/2019 | HR sent Plaintiff a letter saying that her services as a Provisional Administrative Psychologist were no longer needed |
| 3/15/2019 | The date that Plaintiff was effectively terminated by Defendants. |
| 3/16/2021 | The disposition of the DOI investigation became effective, almost two years to the date that Dr. Adams received her termination letter stating her services were no longer needed. |

As illustrated above, following the filing of Plaintiff's EEOC Complaint, an investigation was launched into Plaintiff's use of company vehicles.  This investigation was not being processed prior to Plaintiff complaining and airing her belief that she was experiencing discriminatory treatment.  While Defendants hold the results of that investigation out as the 'but for' reason for Dr.

9

Adams' termination, no such reasoning was identified at the time of her termination. Further, there are many white Deputy Commissioners who did not file discrimination charges against Defendants who also did not have a security detail and did have drivers, but were not terminated, including but not limited to, Michael Tausek, Fazal Yussef, Frank Doka, Lawrence Dail, and James Walsh. Further, the time-line relating to the start of the investigation, the issuance of the report and the finalization of the matter support that the allegations made against Plaintiff, were themselves part of the retaliation, and were not a legitimate basis for termination.

The denial of Plaintiff's Civil Service position and title was crafted to deprive her of the ability to defend against any work actions or concerns taken against her. Plaintiff should have been afforded the rights of a permanent civil servant. Plaintiff's termination occurred less than 3 months following the filing of Plaintiff's Federal Complaint, and the termination was done so without providing Plaintiff a hearing or any opportunity of due process. Defendants' pretextual reasoning cannot be allowed to be argued to the Jury. While Dr. Adams filed a Federal Complaint initiating this lawsuit on December 27, 2018, it was not until March 15, 2019 that the DOI Investigation was completed. Even then the Defendants did not contend the DOI Investigation to be the reason for Plaintiff's termination. When Dr. Adams was terminated on March 15, 2019, nowhere in the letter dated March 15, 2019 is a reason provided for her termination. (Ex. L, Dr. Adams' Termination Letter, bate stamp# Adams-Flores 1). In fact, the first time that the claim that Plaintiff was terminated due to the DOI Investigation or Report was long after she received the termination letter from Defendants. Likewise, the COIB disposition is a post-hoc event that occurred after Dr. Adams was already terminated. The COIB disposition does not negate the fact that Plaintiff complained that she was discriminated and retaliated against. Further, the terms of the disposition required Plaintiff

10

to agree that she would not appeal or seek to overturn the COIB Board's decision. The disposition did not state that Plaintiff could not continue her 2018 ongoing lawsuit. The disposition became effective on March 16, 2021, almost two years to the date that Dr. Adams received her termination letter stating that her services were no longer needed. Accordingly, any claim that Plaintiff was terminated due to the allegations in the DOI Investigation are false and were not determined at the time of the termination. There was no finalization of the allegations against Plaintiff for two years from the date that Defendants wrongfully terminated Plaintiff.

The Investigation, Report ,and COIB disposition are all hearsay. The Defendants would seek to introduce these items for the truth of the matter asserted therein. In doing so, they would open the record to unfettered hearsay statements contained in the documents. Witness statements would not be controlled or governed by the Rules of Evidence that would apply in the trial. In addition, without verbatim transcripts or recordings of each and every witness upon which any determination was made, Plaintiff would be subjected to trial on these issues without the ability to meet that offered evidence. In addition to the hearsay objections, Federal Rules of Evidence 403, 404 and 406 must be considered.

Federal Rule of Evidence 403 states, "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." In the instant matter, by allowing the Defendants to offer evidence related to the DOI Investigation, DOI Report and COIB Disposition the jury will become confused as to what the issues are, and may evaluate that matter as the issue before them and not the retaliation of which it is but a part. Further, Defendants offering testimony and evidence about these

items will create undue delay in addressing the retaliation experienced by Plaintiff and will add witnesses and length to the trial. Once Defendants seek to prejudice the Jury with information about what Plaintiff allegedly did, and Plaintiff seeks to address those allegations and provide explanation and mitigating factors the case will be turned into one containing a mini-trial on the DOI Investigation. This not only will waste time, but it will require the presentation of evidence that will unduly prejudice the Plaintiff. Because of the manner and type of evidence utilized, the circumstances and burdens of proof may be different. What happened in the DOI Investigation, DOI Report and the COIB disposition should be inadmissible because it confuses the issues. Therefore, evidence that a Plaintiff was accused and investigated and charged should not be allowed to be placed before the jury as the issue is whether those proceedings were commenced as acts of retaliation and whether the claim of basing the termination on the DOI proceedings and/or the COIB disposition is a pretext for retaliation.

Because the content of the DOI and COIB matters relate to claims of "ethics" and alleged violations of ethical rules, the potential for prejudice to Plaintiff is great. The Defendants will no doubt attempt to paint Plaintiff as an unethical person and further try to tarnish her character by trying to use these items as improper evidence in violation of Federal Rule of Evidence 404(a)(1), which prohibits character evidence of the type which Defendants will seek to offer. FRCP 404(a)(1) states that "Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." In particular, FRE 404(b)(1) addresses Prohibited Uses and instructs that, "Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." By allowing Defendants to offer evidence related

12

to the DOI and COIB matters there is a grave chance that Plaintiff will suffer extreme prejudice that unfairly and unduly impacts Plaintiff's ability to have a fair trial on the relevant issues.

It is also likely that Defendants will argue that the evidence relating to the DOI and COIB matters are admissible under Federal Rule of Evidence 406 as evidence of Dr. Adams' habit of not complying with rules or similar claims. Rule 406 provides as follows: "Evidence of the habit of a person or of the routine practice of an organization ... is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice." Any offering under Rule 406 should be rejected. See *Zubulake v. UBS Warburg LLC,* 382 F. Supp.2d 536 (S.D.N.Y. March 16, 2005). The underlying facts leading to the allegations against Plaintiff are hardly examples of habit to allow admissibility under 406. "In order to be admissible under this rule ... the conduct at issue must constitute a 'regular response to a repeated specific situation.' " *McCarrick v. New York City Off–Track Betting Corp.,* No. 91 Civ. 5626, 1995 WL 261516, at *5 (S.D.N.Y. May 3, 1995)(quoting *Thompson v. Boggs*, 33 F.3d 847, 854 (7th Cir.1994).

As the Court determined in *Zubulake*, "[i]n addition to the prohibition found in Rule 404(b) and the inapplicability of Rule 406, there is another reason to preclude the admission of the CSFB Memorandum. To admit the Memorandum would, in effect, create a trial within a trial. Absent a stipulation, documents must be authenticated before they are admitted. That means that someone from CSFB would have to testify as to the Memorandum's authenticity. Then, both sides would likely call witnesses to testify regarding plaintiff's performance at CSFB. Weighing the slight probative value of this evidence against the confusion it would cause the jury and the inevitable delay in the core trial proceedings, I also find the proffered evidence inadmissible under Rule 403." *Zubulake* at 543.

13

Furthermore, the retaliation suffered by Dr. Adams transcended her termination as Defendants continued to harm her in every professional way they could conceive. Other similarly situated individuals did not receive the same treatment based on the pretextual reasons supplied by Defendants. Defendants should not be allowed to offer argument or evidence that the termination was due to the DOI investigation as the investigation itself was retaliatory.

Defendants will not be able to dispute that Dr. Adams filed a Federal Complaint initiating this matter on December 27, 2018 and at that time there was no DOI investigation and no DOI finding against Plaintiff. The processing of charges in less than a three month period was later proffered as the basis for termination where their had been none. On March 15, 2019 the DOI Investigation was completed and Defendants later contended this to be the reason for Plaintiff's termination. However, a recommendation was made by DOI that DOC take "whatever action [it] deems appropriate." The Defendants did not cite the DOI recommendation in its firing of Plaintiff. Instead, after receiving the results of their retaliatorially initiated investigation, Defendants gave no reason for the pretextual termination of Plaintiff. At no point, not in 2019 nor present day, have Defendants ever sent any notice to Dr. Adams that her termination was due to the DOI Investigation. From our review of the record, the DOI Report and Investigation is a pretextual afterthought for Dr. Adams' termination. Like the post-hoc COIB Disposition, both the DOI Report and Investigation are being utilized by Defendants to prejudice and confuse the jury. Therefore, introduction of any of the aforementioned Reports should be excluded.

Defendants listing of Dana Roth as a witness is a clear indication that Defendants wish to conduct a trial about the DOI investigation and Report as way of deflecting attention away from the variety of discriminatory disciplinary and other actions up to and including termination against Dr.

14

Adams in retaliation for her engaging in the protected activities. Allowing Defendants to do so will served to create confusion, lengthen the trial, require additional witnesses and unduly prejudice Plaintiff in her pursuit to provide that she was subjected to unlawful retaliation following her EEO interview of May 8, 2017; her  EEO Complaint on May 15, 2017 (and her EEO Amended Complaint); a  December 22, 2017 EEOC Complaint; and the December 27, 2018 filing of the instant matter. Defendants' responses through retaliatory acts include, but are not limited to:

- Rejection of Dr. Adams' satisfactory completion of her probationary period;

- Failure of Defendants to notify Dr. Adams that her probation needed to be extended;

- Failure of Defendants to Notify Dr. Adams that she was not taking the correct steps to become a full time civil servant;

- Failure to allow Dr. Adams to work in her civil service title, which was standard practice and had been done for other white employees. "July of 2017 Email Thread";

- Falsely informing Plaintiff that the denial of transfer of her civil service title was due to "budget issues";

- Disparately blocking a press release outlining Plaintiffs accomplishments as Deputy Commissioner;

- Fabrication of a Performance Improvement Plan;

- Refusal to allow Plaintiff to speak at engagements, even when requested by the Mayor;

- Initiating a DOI Investigation immediately following the filing of an EEOC Complaint;

- Termination less than 3 months following the filing of her federal Complaint;

- Dr. Adams lost her profession, her civil service title, lost access to her pension, developed an anxiety disorder, and her life as well as her children's lives have been severely impacted;

- August 1, 2017 - Commissioner Brann denied the DP 72 and transfer of the Health Service Manager Title for Nichole Flores;

15

•     January 9, 2019- Dr. Adams-Flores received a letter from DOC stating her probation time would not be counted as satisfactory.

Allowing any reference to the hearsay DOI investigation, Report or the COIB disposition of the abovementioned charges will result in causing confusion and clearly create serious prejudice for Plaintiff that will improperly impact the jury's perception of the facts at issue in this case. Likewise the suggested testimony of Dana Roth, that was not disclosed during discovery and who will be offered to testify on a tangential matter, should not be allowed. Consequently, any testimony or evidence relating to these items should be deemed inadmissible by the Court.

## **CONCLUSION**

For the above stated reasons, Plaintiff respectfully requests that this Motion *In Limine* be granted.

Dated: Hempstead, New York
       August 28, 2023

                               Respectfully submitted,

                               LAW OFFICES OF
                               FREDERICK K. BREWINGTON

              By:     /S/ *Frederick K. Brewington*
                               FREDERICK K. BREWINGTON
                               *Attorneys for Plaintiff*
                               556 Peninsula Boulevard
                               Hempstead, New York 11550
                               (516) 489-6959

16