UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------- x

NICHOLE ADAMS-FLORES,

                              Plaintiff,

                                                          CV-18-12150 (JMF)

        -against-


CITY OF NEW YORK AND CYNTHIA BRANN,

                              Defendants.

------------------------------------------------------------------------- x


# PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTIONS *IN LIMINE*


THE LAW OFFICES OF
FREDERICK K. BREWINGTON
*Attorneys for Plaintiff*
556 Peninsula Boulevard
Hempstead, New York 11550
(516) 489-6959


*OF COUNSEL: FREDERICK K. BREWINGTON*
        *COBIA M. POWELL*

## TABLE OF CONTENTS

**PAGE NO.**

**TABLE OF AUTHORITIES** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **iv**

**PRELIMINARY STATEMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **1**

**ARGUMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **1**

**STANDARD FOR ADMISSIBILITY** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **1**

**POINT I**

      **DEFENDANTS' MOTION TO PRECLUDE THE TESTIMONY**
      **OF PLAINTIFF'S EXPERT ECONOMIST SHOULD BE DENIED** . . . . . . . . . . . . **2**

**POINT II**

      **PLAINTIFF SHOULD BE ALLOWED TO SUBMIT A REVISED AND**
      **SUPPLEMENTAL EXPERT REPORT TO ADDRESS THE ISSUES OF BOTH**
      **BACK PAY AND FRONT PAY.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4**
      **Against the City of New York** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

**POINT III**

      **THE COURT SHOULD PRECLUDE ANY EVIDENCE OR**
      **TESTIMONY ABOUT ALLEGED DISCRIMINATORY STATEMENTS**
      **BY MARTIN MURPHY OR JEFF THAMKITTIKASEM** . . . . . . . . . . . . . . . . . . . . . **6**

**POINT IV**

      **PLAINTIFF SHOULD BE ALLOWED TO TESTIFY REGARDING**
      **ALL EVIDENCE IN WHICH SHE WAS DIRCTED TO FALSIFY**
      **DATA BY DOC EMPLOYEES** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6**

**POINT V**

      **AS A JUXTAPOSITION TO THE FALSE DATA DIRECTIVES BY**
      **DEFENDANTS WHICH ARE RELEVANT TO PLAINTIFF'S**
      **RETALIATION CLAIMS, THE ILLEGAL RESEARCH IS NOT AS**
      **SALIENT TO THE REMAINING CLAIMS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **7**

**POINT VI**

    **PLAINTIFF SHOULD BE ALLOWED TO OFFER TESTIMONY OR
EVIDENCE REGARDING HER BEING A DOMESTIC VIOLENCE
SURVIVOR** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**POINT VII**

    **PLAINTIFF SHOULD BE ABLE TO PRESENT THE TESTIMONY OF
ALEXIS KELLY JONES, JEREZ HUE, AND BRUCE FARBSTEIN ,
EVEN THOUGH SHE DID NOT IDENTIFY THEM IN HIS RULE 26(A)(1)
DISCLOSURES, BECAUSE HIS FAILURE TO DO SO WORKED NO
HARM TO DEFENDANTS WHO ACTIVELY PARTICIPATED IN
PROCEEDINGS, DEPOSITIONS AND PRODUCTION OF
DOCUMENTS WHICH IDENTIFIED THIS PERSONS AND
REFLECTED THEIR PARTICIPATION IN THE EVENTS GIVING
RISE TO HIS CLAIMS.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**POINT VIII**

    **PLAINTIFF SHOULD BE ABLE TO PRESENT THE TESTIMONY
OF AYINDE WILLIAMS, DANIELLE BARRETT, AND CLAUDETTE
WYNTER** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**POINT IX**

    **DEFENDANTS FAIL TO REFERENCE WHAT CHARACTER
EVIDENCE PERTAINING TO DEFENDANT BRANN AND
THE NON- PARTY WITNESSES THEY SEEK TO  BE
PRECLUDED AND THEREBY MAKES PLAINTIFF'S ABILITY
TO MEET THEIR ARGUMENT IMPOSSIBLE** . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

**POINT X**

    **PLAINTIFF CAN AGREE NOT TO REFER TO DEFENSE COUNSEL
AS "CITY ATTORNEYS" AND CAN AGREE NOT TO OFFER EVIDENCE
OF INDEMNIFICATION AS LONG AS DEFENDANTS DON'T SEEK TO
OFFER EVIDENCE RELATING TO INABILITY TO PAY** . . . . . . . . . . . . . . . . . . 15
    **EXHIBITS 12 AND 22** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

**POINT XI**

      **PLAINTIFF'S EXHIBITS 12 AND 22 SHOULD BE ADMITTED** . . . . . . . . . . . . . . 17


**POINT XII**

      **DEFENDANTS' APPLICATION TO PREVENT PLAINTIFF FROM
INTRODUCING EVIDENCE RELATING TO CLAIMS THAT HAVE
BEEN DISMISSED IS WITHOUT SUPPORT AND IS MERIT LESS** . . . . . . . . . . 19


**POINT XIII**

      **PLAINTIFF'S  COUNSEL SHOULD BE PERMITTED TO SUGGEST A
DOLLAR AMOUNT TO THE JURY IN HIS OPENING CLOSING
ARGUMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20


**POINT XIV**

      **PLAINTIFF SHOULD NOT BE PRECLUDED FROM OFFERING
FACTUAL TESTIMONY FROM PLAINTIFF'S TREATING
PROVIDERS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20


**CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

## TABLE OF AUTHORITIES

CASE NAME                                                                    PAGE NO.

*Amato v. City of Saratoga Springs,*
   170 F.3d 311 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*American Stock Exchange, LLC v. Mopex, Inc.*
   215 F.R.D. 87, 93, (S.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Baxter Diagnostics, Inc., v. Novatek Med., Inc., No. 94-cv-5220,*
   1998 U.S. Dist. LEXIS 15093, 1998 WL 665138(S.D.N.Y. Sept. 25, 1998) . . . . . . . . . . . . 13

*Borawick v. Shay,*
   68 F.3d 597  (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

*Daubert v. Merrell Dow Pharm., Inc.,*
   509 U.S. 579(1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

*Design Strategy, Inc. v. Davis,*
   469 F.3d 284 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Edwards v. City of New York, CV 08-2199,*
   2011 U.S. Dist. Lexis 75300 (E.D.N.Y. July 13, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Figueroa v. Boston Scientific Corp.,*
   254 F. Supp. 2d 361 (S.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*In re Zyprexa Prods. Liab. Litig.,*
   489 F. Supp. 2d 230  (E.D.N.Y. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Jeanty v. County of Orange,*
   379 F. Supp. 2d 533 (S.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Lewis v. Triborough Bridge and Tunnel Auth., No. 97 Civ. 0607,*
   2000 WL 423517(S.D.N.Y. Apr. 19, 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Lidle v. Cirrus Design Corp.,*
   2010 U.S. Dist. LEXIS 67031  (S.D.N.Y. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Lightfoot v. Union Carbide Corp.,*
   110 F.3d 898 (2d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Luce v. United States*,

469 U.S. 38(1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Martinez v. Port Auth.*, No. 01 Civ. 721,
    2005 U.S. Dist. LEXIS 19141(S.D.N.Y. Sept. 2, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Monaghan v. SZS 33 Assocs.*,
    827 F. Supp. 233(S.D.N.Y. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Nat'l. Union Fire Ins. Co. V. L.E. Myers Co. Group et al.*,
    937 F. Supp. 276  (S.D.N.Y. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Outley v. City of New York*,
    837 F.2d 587 (2d Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Palmieri v. Defaria*,
    88 F.3d 136 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Patterson v. Balsamico*,
    440 F.3d 104 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Pavlovich v. City of New York*, No. 91 Civ. 5030,
    1992 WL 230472(S.D.N.Y. Aug. 31, 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Pavone v. Gibbs*, No. CV 95-0033,
    1997 WL 833472 (E.D.N.Y. Sept. 29, 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

*Puglisi v. Town of Hempstead Sanitary Dist. Co. 2*, 11-cv-445,
    2014 WL 12843521 (E.D.N.Y. Jan. 27, 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Raskin v. Wyatt Co*,
    125 F.3d 55  (2d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Ricciuti v. New York City Trans. Auth.*,
    796 F. Supp. 84 (S.D.N.Y. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Saladino v. Stewart & Stevenson Services, Inc.*, 01-CV-7644,
    2011 U.S. Dist. LEXIS 756 (E.D.N.Y Jan. 25, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Smith v. Lightning Bolt Prods., Inc.*,
    861 F.2d 363 (2d Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Stock Exchange, LLC v. Mopex, Inc.*,
    215 F.R.D. 87  (S.D.N.Y. 2002)

*Thomas v. Kelly,*
  903 F. Supp.2d 237 (S.D.N.Y. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Thomas v. Medco*, 95 Civ. 8401,
  1998 U.S. Dist. LEXIS 13158 (S.D.N.Y. Aug. 26, 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*Wellner v. City of New York*, 16 Civ. 7032 (JGK), . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Wilson v. Bradlees of New England, Inc.,*
  250 F.3d 10  (1st Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.,*
  259 F.3d 1101  (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp., LLC,*
  571 F.3d 206 (2d Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

## STATUTES

Fed. R. Civ. P. 26(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 15

Fed. R. Civ. P. 26(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Fed. R. Civ. P. 26(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 10

Fed. R. Civ. P. 37(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

Fed. R. Civ. P. 37(c)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 10, 11, 9

Fed. R. Civ. P.42(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## PRELIMINARY STATEMENT

Plaintiff, Dr. Nicole Adams-Flores (herein "Plaintiff) by and through her counsel, respectfully submits this Memorandum of Law in Opposition to Defendants' Motions *In Limine* seeking to prevent Plaintiff from offering relevant evidence as part of her case. Defendants present fourteen (14) points for this Court's consideration. Plaintiff responds to those points in the same order presented to the Court by Defendants. Wee note that Defendants have exceeded the 25 page limit for memoranda of law and while we object to those excessive pages offered by Defendants we provide the Court with responses to each point raised.

## ARGUMENT

## STANDARD FOR ADMISSIBILITY

The purpose of a motion *in limine* is to allow the trial court to rule in advance of the trial on the admissibility of certain forecasted evidence. *See Luce v. United States*, 469 U.S. 38, 40 n.2, 105 S. Ct. 460, 83 L.Ed 2d 443 (1984) (explaining that the motion in limine is used "to exclude anticipated prejudicial evidence before the evidence is actually offered."). Evidence should be excluded on a motion *in limine* **only** when the evidence is clearly inadmissible on all potential grounds. *Baxter Diagnostics, Inc., v. Novatek Med., Inc.*, No. 94-cv-5220, 1998 U.S. Dist. LEXIS 15093, 1998 WL 665138, at *3 (S.D.N.Y. Sept. 25, 1998). "The purpose of an *in limine* motion is to aid the trial process by enabling the Court o rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial without lengthy argument at, or interpretation of , the trial. *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996). Courts considering a motion *in limine* may reserve judgment until trial so that the motion is placed in the appropriate factual context. *Nat'l. Union Fire Ins. Co. V. L.E. Myers Co. Group et al.*, 937 F. Supp. 276, 283 (S.D.N.Y. 1996).

## POINT I

## DEFENDANTS' MOTION TO PRECLUDE THE TESTIMONY OF PLAINTIFF'S EXPERT ECONOMIST SHOULD BE DENIED

We note for the Court that Plaintiff's expert report, was dated October 6, 2021, and notice was supplied to the Defendants on that same day,  well before the Summary Judgment Motion and Decision.  Accordingly, the need for a supplemental report to be issued is apparent as, based on Court rulings,  circumstances have changed from the time the report was issued.  Permission is requested to allow our economist to revise his report to conform to the Court's rulings.  There is no prejudice to Defendants,  as the basic figures do not change and the actual earnings of Plaintiff are those which were exchanged between the parties.  (See Expert Report of Dr. Vernarelli Exhibit A)

Defendants conducted no discovery, no depositions and provided no rebuttal reports as to Plaintiff's expert Economist, Dr. Michael J. Vernarelli.  We note that in their objections Defendants cherry pick language in Dr. Vernarelli's report without acknowledging relevant aspects of his report in its current state.  Dr. Vernarelli's report clearly articulates what Plaintiff's termination and loss of salary has caused in terms of her loss of income.  Defendants neglect to address this fact and the portion of his opening paragraph that addresses losses due to her being "... **wrongfully terminated from her position on 3/15/19**." (Emphasis added) While the Report does look at pay/salary differential for a part of the report, the report explains that it "... calculated the economic damages for three scenarios. Scenario I presents an unrealistically low estimate because it assumes that Dr. Adams-Flores was not discriminated against with respect to the salary she was paid during her time with the Department of Corrections from her hiring in February 2016 until her termination. The purpose of Scenario I is to present an absolute lower bound to her economic damages due to the loss

2

of back pay and front pay." From this statement it is clear as to the dollar amounts that were to be earned as compared to those in scenarios 2 and 3 which were created well before the Summary Judgment decision.

What is clear, however, is that the Supreme Court declared the admissibility standard under Rule 702 employs a dual requirement of "ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). Moreover, "In *Daubert*, the Supreme Court articulated four factors pertinent to determining the reliability of an expert's reasoning or methodology. *Lidle v. Cirrus Design Corp.*, 2010 U.S. Dist. LEXIS 67031 at *9-10 (S.D.N.Y. 2010) (*citing Daubert*, 509 U.S. at 593-94). However, the Court noted that the Fed. R. Evid. 702 admissibility inquiry is "a flexible one." Id. at *10 (*citing Daubert*, 509 U.S. at 594).

"[T]he Second Circuit has found "there should be a presumption of admissibility of evidence." *Borawick v. Shay*, 68 F.3d 597, 610 (2d Cir. 1995); *see In re Zyprexa Prods. Liab. Litig.*, 489 F. Supp. 2d 230, 282 (E.D.N.Y. 2007) (noting that "the assumption the court starts with is that a well qualified expert's testimony is admissible"); Fed. R. Evid. 702 Advisory Comm.'s note (observing that "a review of the case law after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule"). "Therefore, a trial judge should exclude expert testimony based on reliability concerns only 'if it is speculative or conjectural or based on assumptions that are so unrealistic and contradictory as to suggest bad faith or to be in essence an apples and oranges comparison.'" *Lidle*, 2010 U.S. Dist. LEXIS 67031 at *11-12 (*quoting Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp., LLC*, 571 F.3d 206, 213-14 (2d Cir. 2009)(internal quotation omitted). "Other contentions that the assumptions are unfounded go to the weight, not the admissibility, of the

testimony." *Id.* (*citing also Raskin v. Wyatt Co*, 125 F.3d 55 at 66 (2d Cir. 1997) (noting that

"disputes as to the validity of the underlying data go to the weight of the evidence, and are for the

fact-finder to resolve" (internal citation omitted))). The proper course of action, therefore, is

"vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden

of proof, [which] are the traditional and appropriate means of attacking shaky but admissible

evidence." *Figueroa v. Boston Scientific Corp.*, 254 F. Supp. 2d 361, 369 (S.D.N.Y. 2003)(*quoting*

*Daubert*, 509 U.S. at 596).

Here it is requested that Dr. Vernarelli, be allowed to provide a supplemental and updated

report to comport with the Court's rulings and the current state of the case.

## POINT II

### PLAINTIFF SHOULD BE ALLOWED TO SUBMIT A REVISED AND SUPPLEMENTAL EXPERT REPORT TO ADDRESS THE ISSUES OF BOTH BACK PAY AND FRONT PAY

Defendants argue that Plaintiff's request for back pay should be limited to a total of $12,567

for 2019 and denied for all subsequent years, however Defendants neglect to build into their

evaluation aspects of the facts that challenge their reasoning. When a defendant has violated Title

VII, a court may award back pay, 42 U.S.C. § 2000e–5(g)(1), and such an award "is the rule, not the

exception[,]" *Carrero v. N.Y. City Housing Auth.*, 890 F.2d 569, 580 (2d Cir. 1989). Back pay is also

available under Section 1981, the NYSHRL and the NYCHRL. *See Tomka*, 66 F.3d at 1316 ("§ 1981

permits unlimited back pay"); *Garcia v. Comprehensive Ctr., LLC*, 17-CV-8970 (JPO) (BCM), 2019

WL 8274296, at *5 (S.D.N.Y. Nov. 21, 2019), adopted, 2020 WL 1435002 (S.D.N.Y. Mar. 24,

2020); Manswell, 2017 WL 9487194, at *15; N.Y.C. Admin. Code § 8–502(a). Typically, back pay

4

is calculated as "the wages the employee would have earned from the date of discharge to the date of reinstatement, along with lost fringe benefits such as vacation pay and pension benefits[.]" *United States v. Burke*, 504 U.S. 229, 239 (1992); *Noel v. N.Y. State Office of Mental Health, Cent. N.Y. Psychiatric Ctr.*, 697 F.3d 209, 213 (2d Cir. 2012). Defendants fail to inform the Court that Plaintiff has not obtained comparable employment, but has had to work multiple jobs and increased hours in order to feed her family. In evaluating back pay, the fact that Plaintiff has managed to make income by not pursuing one job but several should not serve as a punishment which supports the harm caused by Defendants in their retaliation. Likewise, the loss of pension, benefits and the incidentals that were present during Plaintiff's employment before retaliatory termination cannot be denied.

Defendants are hard pressed to argue that Plaintiff did not "use reasonable diligence in finding other suitable employment." *Padilla v. Metro—North Commuter R.R.*, 92 F.3d 117, 125 (2d Cir. 1996) In fact, the evidence is to the contrary. Defendants' claim that Plaintiff should be precluded from pursuing a front pay award as such damages are not available to Plaintiff because she, undisputedly, secured comparable alternative employment is misleading. The phrase of "comparable alternative employment" does not translate into working several jobs and greatly increased hours, with no benefits and retirement options and loss of Civil Service protections in order to earn the same or similar salary. As to front pay, the court should evaluate and consider whether Plaintiff is entitled to reinstatement or, in the alternative, front pay, *see Thompson v. Cnty. of Franklin*, 15 F.3d 245, 253 (2d Cir.1994). The proof in this matter require that the evidence on Plaintiffs employment situation be fully aired. It is important for the Court and the jury to hear necessary facts and testimony to determine Plaintiff's actual employment status (*i.e.*, civil service protection, benefits, pension, probationary or permanent)

Plaintiff recognizes that punitive damages are not allowed against municipalities in this case.

However, they are allowed and sought in this matter against the individual Defendant Branned.

## POINT III

### THE PLAINTIFF DOES NOT INTEND TO OFFER ANY EVIDENCE OR TESTIMONY ABOUT THE DISCRIMINATORY STATEMENTS MADE ABOUT HER BY MARTIN MURPHY OR JEFF THAMKITTIKASEM

## POINT IV

### PLAINTIFF SHOULD BE ALLOWED TO TESTIFY REGARDING ALL EVIDENCE IN WHICH SHE WAS DIRECTED TO FALSIFY DATA BY DOC EMPLOYEES

Defendants' conclusory argument that Dr. Adams should not be able to testify about false

data she was directed to falsify by DOC is without merit. It is undisputed that Plaintiff complained

and informed EEO that she was being retaliated against on July 27, 2017, and subsequently filed a

EEOC Complaint on October 1, 2017. (Plaintiff's Third Amended Complaint "TAC" ¶¶ 125, 132).

It is also undisputed that, in or around November of 2018, Plaintiff was asked by DOC employees

to falsify data after she filed her EEO and EEOC Complaints. (TAC ¶¶ 140-142). Plaintiff testified

in her deposition: "I believe there was – people were actively asking me to do things to compromise

the integrity of my role. I believe I was being asked to do things and people knew what I was being

asked to do was not the right thing to do, do things, say things, present information certain ways."

Plaintiff Dep. at pp 154-155. Dr. Adams within that same context, when asked who was one of the

persons she was referring to that were actively retaliating against her she mentions Defendant Brann

by name. *Id.* at 155. The timing of Dr. Adams being intentionally targeted to falsify data, after she

filed her protected complaints are extremely relevant to the trier of fact. These directives by

Defendants and DOC employees were a way to step Dr. Adams up to be terminated if she followed or create a false narrative that she submitted false documents.  To her credit Plaintiff challenged this attempt to manufacture a basis to mask the retaliation to which she was being subjected.  Plaintiff refused, in the face of being labeled insubordinate rather than betray her public trust as directed by Defendants. Dr. Adams' testimony on the falsifying data go to the manner in which the defendants sought to provide a pretext for the retaliatory actions she was subjected to and should not be precluded.  Here Defendants clearly are avoiding evidence that shows their malice and intent.

### POINT V

### AS A JUXTAPOSITION TO THE FALSE DATA DIRECTIVES BY DEFENDANTS WHICH ARE RELEVANT TO PLAINTIFF'S RETALIATION CLAIMS, THE ILLEGAL RESEARCH IS NOT AS SALIENT TO THE REMAINING CLAIMS

Although all of the testimony Dr. Adams provided about inmates being tested without their consent is true as well as Dr. Adams filing a complaint to the Inspector General regarding those unethical actions (Plaintiff's Dep at pp. 144-147-Exhibit B), Plaintiff points to further discrimination ramping up. Unlike the falsifying data directives discussed in Point IV which are extremely relevant to retaliatory acts, Dr. Adams' complaint to the Inspector General regarding illegal testing, may not be as relevant.  Additionally Plaintiff will seek to testify about such Defendants' actions should they otherwise open the door.

### POINT VI

### PLAINTIFF SHOULD BE ALLOWED TO OFFER TESTIMONY OR EVIDENCE REGARDING HER BEING A DOMESTIC VIOLENCE SURVIVOR

As an initial matter, Dr. Adams being a survivor of domestic violence is a part of her story while working at DOCS and is relevant to her emotional state. To that extent, if the Court sees fit,

to provide a limiting instruction regarding the details of her abuse may be provided to the jury without any prejudice to Defendants. However, Dr. Adams being a survivor of domestic violence is extremely relevant if the Court allows Defendants to introduce any evidence or testimony about Defendants' Department of Investigations (DOI) Report of Plaintiff (Defendants' Exhibit K and any testimony of Dana Roth) and or the Conflicts of Interest Board (COIB) Disposition (Defendants' Exhibit A). The aforementioned exhibits and Dana Roth potential testimony are not relevant to Plaintiff's retaliation claims and would instead give Defendants a post-hoc pretextual excuse for their termination of Plaintiff. However, if Defendants are allowed to discuss the COIB and/or DOI Investigation and DOI Report, the door would be open for Plaintiff to rebut with more witnesses, more evidence and further explanation of her domestic violence abuse. Hence, a limiting instructing may be provided to the jury of Dr. Adams' domestic abuse but if Defendants open the door with the DOI Report and/or COIB Disposition, further details of Dr. Adams' are relevant to combat such prejudicial evidence.

## POINT VII

**PLAINTIFF SHOULD BE ABLE TO PRESENT THE TESTIMONY OF  ALEXIS KELLY JONES, JEREZ HUE, AND BRUCE FARBSTEIN , EVEN THOUGH SHE DID NOT IDENTIFY THEM IN HER RULE 26(A)(1) DISCLOSURES, BECAUSE HER FAILURE TO DO SO WORKED NO HARM TO DEFENDANTS WHO ACTIVELY PARTICIPATED IN PROCEEDINGS, DEPOSITIONS AND PRODUCTION OF DOCUMENTS WHICH IDENTIFIED THESE PERSONS AND  REFLECTED THEIR PARTICIPATION IN THE EVENTS GIVING RISE TO HER CLAIMS**

Alexis Kelly Jones was the Director of Civil Service Transactions, her statements and need to authenticate, explain, lay a foundation and address her admission are well known to the Defendants.  As an example Ms. Jones wrote to the Plaintiff that "This is in response to your correspondence regarding the change of title process." "Our records indicate that effective September

8

11, 2017, you were permanently appointed to the title of Health Services Manager with the Department of Corrections." (Plts. Trial Exhibit 6--#Adams-Flores 423-424-Exhibit C) This is clearly relevant and extremely important in Plaintiff's ability to combat the retaliation that came in the taking of her Civil Service position and the abuse of those rules. Likewise, an example of Jerez Hue's relevance and Defendant's awareness of her as a witness is an email thread, produced by Defendants, in which Ms. Hue is speaking about Plaintiff and writes,"Thanks. They look like they are about to terminate her, but don't know or recognize her permanent status."(Plts. Trial Exh. 14. -#E-DEF-CITY- 4641- 4642-Exhibit D). This not only serves as an admission, but supports Plaintiff's retaliation claim.  Plaintiff's Trial Exhibit 22 (Exhibit E) and the Deposition of Bruce Farbstein (comprising 161 pages of testimony (Exhibit F),  at which Defendants' Counsel was present,  support that Mr. Farbstein's testimony and his status as a witness is no surprise to Defendants.  In fact, his deposition, taken on November 3, 2021included relevant and detailed testimony about Plaintiff's damages on the issue of NYCSERS.  At Page 14 of his deposition he is asked:

Q: What is the title that you hold with NYCERS?
A: Okay, my title is associate retirement benefits examiner level 3.
Q: What does it mean to be a level 3 in the title that you just said?
A: Okay, it means in addition to the normal work involving calculations, checking calculations, I'm involved in extracurricular activities such as testifying on behalf of NYCERS in court, and that's -- in other words, I'm officially a representative of NYCERS outside of NYCERS, and I get -- I get to deal with courts. That's basically, I'm the official representative of the organization as opposed to just someone at my desk doing work.

At  Page 22 of his deposition he is asked:

Q:Do you feel knowledgeable about discussing the pension benefits to which Dr. Adams is entitled to when she reaches retirement age?
A: I am knowledgeable of that, yes.
Q: Are you knowledgeable about the process by which NYCERS calculates benefits, pension

benefits, to which their participants are entitled to?
MS. BALOG: Objection.
A: Yes, I am knowledgeable of that. (Exhibit F)

He then provides information that is crucial about benefits, retirement and pension. All of which go to support the proof of damages in Plaintiff's case and lays a foundation for Plaintiff's expert economist. The importance of Alexis Kelly Jones, Jerez Hue and Bruce Farbstein's testimony cannot be overstated. Plaintiff requires their testimony to establish both notice, admissions, intent and shared knowledge within Plaintiff's employer as well as the actions taken against her in retaliation.

Where, as in this case, a party does not identify witnesses in accordance with Rule 26(a)(1) of the Federal Rules of Civil Procedure, Rule 37( c) governs applications to preclude evidence. It provides in relevant part, as follows: "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. Proc. 37(c)(1). Alexis Kelly Jones, Jerez Hue where prominent figures in documents produced by the parties and discussed during discovery in the factual record in this case. The fact that both were identified during depositions, referenced in documents produced by Defendants and were employees of Defendant City cannot be disputed. Defense Counsel for the City participated in the deposition of Brian Goldberg where the references to Alexis Kelly Jones and Jerez Hue as witnesses were clearly made. ( References to Kelly Jones: PP-Lines-24:23, 25:4, 27:6, 27:18, 28:14, 28:21, 29:24, 30:3, 30:23, 31:11, 33:9, 33:16, 34:15, 50:23, 51:3, 58:12, 70:23, 80:12, 80:13, 80:18, 86:3, 93:4, 95:15, 95:25, 99:4, 99:6, 99:11, 99:19, 100:14, 100:15, 101:23, 102:21, 104:5, 104:6, 104:21, 105:10, 105:14, 107:2, 110:20, 111:3, 111:9, 112:6, 114:11, 132:2, 133:3, 134:23, 135:9, 135:10, 136:20, 138:9–References to Hue: PP-Lines-90:23, 92:8, 92:9, 92:11, 92:17,

93:3, 93:12, 95:14, 95:19, 96:9, 96:14, 99:11, 99:20–Deposition of Brian Goldberg-Exhibit G)

Further, both were mentioned in documents produced by both Plaintiff and Defendants, examples are provided above. With that information Defendants were well aware of these witnesses and Plaintiff complied with Rule 26(e). Defendants suffered no prejudice given the timing of the January trial and their application should be denied.

Plaintiff shoulders the burden to prove substantial justification or harmlessness. *American Stock Exchange, LLC v. Mopex, Inc.*, 215 F.R.D. 87, 93 (S.D.N.Y. 2002); *accord Yeti by Molly, Ltd. v. Deckers Outdoor Corp.,* 259 F.3d 1101, 1107 (9th Cir. 2001) ("Implicit in Rule 37(c)(1) is that the burden is on the party facing sanctions to prove harmlessness"); *Wilson v. Bradlees of New England, Inc.*, 250 F.3d 10, 21 (1st Cir. 2001)("[I]t is the obligation of the party facing sanctions for belated disclosure to show that its failure to comply with the Rule was either justified or harmless and therefore deserving of some lesser sanction."). Notwithstanding the mandatory language of Rule 37©, courts in this circuit have exercised discretion when deciding whether, and which, sanctions are appropriate. The Second Circuit has held that preclusion is a discretionary remedy, even if "the trial court finds that there is no substantial justification and the failure to disclose is not harmless." *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 297 (2d Cir. 2006). Here Plaintiff satisfies both prongs. In deciding whether to exercise its discretion to impose sanctions, a court should consider:

> (1) the party's explanation for the failure to comply with the [disclosure requirement]; (2) the importance of the testimony of the precluded witness[es]; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance.

*Outley v. City of New York*, 837 F.2d 587, 590 (2d Cir. 1988). *See Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006)) (same). Although Rule 37(c)(1) does not require a movant to show bad

faith on the part of the offending party, *Design Strategy*, 469 F.3d at 296, many courts in the Southern District consider preclusion of witness testimony such a harsh sanction that it will only be imposed in the face of "flagrant bad faith" and "callous disregard" of the Federal Rules of Civil Procedure. *See, e.g., Martinez v. Port Auth.*, No. 01 Civ. 721, 2005 U.S. Dist. LEXIS 19141, *42 (S.D.N.Y. Sept. 2, 2005). When the Court analyzes these factors, it becomes abundantly clear that Defendants' motion argues form over substance.

Plaintiff did not identify Alexis Kelly Jones, Jerez Hue and Bruce Farbstein in her initial disclosures because she did not know their identities and the roles they played in her retaliation until later in the proceeding when discovery and documents were exchanged. Defendants' counsel were party to and well aware of the documents and testimony relating to these witnesses. By the exchange of information relating to these witnesses, their mention and reference in depositions and presence of Defense Counsel during depositions when the witnesses were discussed in depth, Plaintiff's counsel assumed they did not have to supplement their disclosures within the meaning of Rule 26(e)(1) of the Federal Rules of Civil Procedure. There is no prejudice in that belief as the Defendants have been fully informed of the role these witnesses serve and play in this case.

The lack of any prejudice to Defendants also militates in favor of denying Defendants motion as there is ample time between now and the trial date for any information that needs to be exchanged or reviewed to take place. As noted, Defendants cannot establish any prejudice because their counsel fully participated in the discovery process. This is simply not the case of a party notifying counsel after the close of discovery of newly discovered witnesses or documents.

Finally, there is no need for a continuance. The parties have sufficient time between now and the date of trial to obtain and exchange information about these witnesses. The parties have had the

chance to incorporate the information they provided into their trial evaluation and prepare accordingly. Because Plaintiff demonstrates that Defendants will suffer no cognizable prejudice if she is permitted to present the testimony of Alexis Kelly Jones, Jerez Hue and Bruce Farbstein at trial, this aspect of Defendants' motion should be denied. *See Martinez*, 2005 U.S. Dist. LEXIS 19141 at *42-43 (recognizing that making witnesses not previously identified available for deposition cures any prejudice).

## POINT VIII

### PLAINTIFF SHOULD BE ABLE TO PRESENT THE TESTIMONY OF AYINDE WILLIAMS, DANIELLE BARRETT AND CLAUDETTE WYNTER

Defendants make no argument of merit to exclude Ayinde Williams and Claudette Wynter. Essentially Defendants argument is both Williams and Wynter testifying would be subject to FRE 403 due to the evidence being a waste of time or needlessly presenting. Defendants argument for such is that Nadene Pinnock is copied on emails. This argument is superfluous. In multiple trial exhibits, January 2019 email thread between Nadene Pinnock and Ayinde Williams, (Bates stamp #E-DEF-CITY- 364-5- Plts. Trial Exh. 8-Exhibit H), bate stamp #DEFCITY 1858-1866 (Plts. Trial Exh 11-Exhibit I), Email thread with Nadene Pinnock and Claudette Wynter in regards to Fenimore Fisher's questions in August of 2017, bates stamp #E-DEF-CITY 147-149 (Plts-Trial Exh. 17- Exhibit J), these witness are actively involved facts and information regarding Dr. Adams' civil service title and appointment. The testimony of Wynter and Williams will provide the jury with further context of the retaliation Dr. Adams were subjected. These witnesses were not just copied they were actively involved in the remaining claims in this case.

Additionally, as explained below, Danielle Barrett is a critical witness who can introduce

13

Exhibit 12 to the jury which the Draft internal EEO report. For the sake of brevity, Plaintiff will refer the Court to POINT XI where the importance of Exhibit 12 being introduced through Danielle Barrett is examined.

Hence, all three witnesses should be allowed to testify at trial because each are relevant to Plaintiff's remaining retaliation claims.

**POINT IX**

**DEFENDANTS FAIL TO REFERENCE WHAT CHARACTER EVIDENCE PERTAINING TO DEFENDANT BRANNED AND THE NON- PARTY WITNESSES THEY SEEK TO  BE PRECLUDED AND THEREBY MAKES PLAINTIFF'S ABILITY TO <u>MEET THEIR ARGUMENT IMPOSSIBLE</u>**

Rule 608 governs impeachment of a witness' character through specific instances of conduct. In pertinent part, it provides as follows:

> (b) Specific Instances of Conduct. Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of:
>
> (1) the witness; . . .

Fed. R. Evid. 608(b).

To properly respond to an *in limine* motion, Plaintiff should not be required to guess or surmise what is being sought or challenged by Defendants.  That, unfortunately, is exactly what has occurred on this Point.  Plaintiff respectfully requests that Defendants be required to advise the Court and Plaintiff exactly what "Character Evidence" it is they are referring to.  Without any idea of what it is that Defendants are seeking to preclude, Plaintiff cannot adequately argue against what is now before the Court.  Rather than guess as to what facts are of concern to Defendants, we ask the Court

14

to address any evidentiary issues on character evidence as they arise at trial. In the alternative, we request that Defendants provide details as to what evidence they seek to exclude.

### POINT X

**PLAINTIFF CAN AGREE NOT TO REFER TO DEFENSE COUNSEL AS "CITY ATTORNEYS" AND CAN AGREE NOT TO OFFER EVIDENCE OF INDEMNIFICATION AS LONG AS DEFENDANTS DON'T SEEK TO OFFER EVIDENCE RELATING TO INABILITY TO PAY**

Defense Counsel in this matter are indeed the "City Attorneys" and "Corporation Counsel", and are "being employed by the City of New York."  In this case, the City is a Defendant and the same counsel is representing the individual Defendant.  Accordingly, it is apparent that Defense Counsel are employed by the City.  Notwithstanding those facts, Plaintiff agrees that she will neither refer to Defense Counsel as "City Attorneys", "Corporation Counsel" or "being employed by the City of New York.  Instead, with the Court's permission we will refer to Defense Counsel as "Defense Counsel" or "Counsel for the Defendants".

Plaintiff agrees that she will not offer evidence of indemnification as long as Defendants do not proffer evidence regarding [Defendant Branned's] personal financial resources and inability to pay punitive damages at trial.  Plaintiff requests, however, that the issue of whether he is entitled to an award of punitive damages against Branned, and if so, the amount of punitive damages, both be presented to the jury for consideration during its initial deliberations.  If Defendants will agree to not proffer evidence regarding [Defendant Branned's] personal financial resources and inability to pay punitive damages then the there is not issue.  If Defendants will not agree, it is our belief that Defendants may seek to bifurcate, to which we object.

Plaintiff does not contest that this Court has broad discretion to bifurcate claims.  However,

15

none of the factors that usually militate in favor of bifurcation are present.  For instance, because the defendants have waited until after discovery to move for bifurcation, little of the Court's judicial resources will be saved by bifurcation.  Additionally, the evidence that Plaintiff intends to introduce at trial to establish her federal claims against Defendants will also be admissible against the Defendants officer under Title VII,  Section 1983 and the State Law claims.  Thus, the claimed concern of unfair prejudice is lacking.

While the district courts retain broad discretion to determine whether bifurcation is appropriate, *see, e.g., Smith v. Lightning Bolt Prods., Inc.*, 861 F.2d 363, 370 (2d Cir. 1988); *Lewis v. Triborough Bridge and Tunnel Auth.*, No. 97 Civ. 0607, 2000 WL 423517, *2 (S.D.N.Y. Apr. 19, 2000), "separate trials remain the exception rather than the rule." *Pavone v. Gibbs*, No. CV 95-0033, 1997 WL 833472, *1 (E.D.N.Y. Sept. 29, 1997) (citation omitted).  See Lewis, 2000 WL 423517 at *2.  Rule 42(b) "is reserved for truly extraordinary situations of undue prejudice." *Monaghan v. SZS 33 Assocs.*, 827 F. Supp. 233, 246 (S.D.N.Y. 1993).  In deciding whether to grant a motion to bifurcate, the Court needs to consider whether a particular party may be prejudiced or whether the litigation of the first issue may eliminate the need to litigate remaining issues. *Amato v. City of Saratoga Springs*, 170 F.3d 311, 316 (2d Cir. 1999).  The key inquiries are whether in the absence of bifurcation, a party will be prejudiced, the proceedings will be expedited, or convenience provided. *Ricciuti v. New York City Trans. Auth.*, 796 F. Supp. 84, 86 (S.D.N.Y. 1992).

The case of *Jeanty v. County of Orange*, 379 F. Supp. 2d 533, 549-50 (S.D.N.Y. 2005) provides instruction and makes it clear that "the presumption is that all claims in a case will be resolved in a single trial, and 'it is only in exceptional circumstances where there are special and persuasive reasons for departing from this practice that distinct causes of action asserted in the same

case may be made the subject of separate trials'"; holding "use of a special verdict form, a well-adapted jury charge, and carefully crafted limiting [jury] instructions" is preferable to possibly holding two trials (citation omitted). *See Pavone*, 1997 WL 833472 at *1 ("[s]eparate trials are not appropriate when 'issues, witnesses and documentary evidence overlap'") (*citation omitted*); *Pavlovich v. City of New York*, No. 91 Civ. 5030, 1992 WL 230472, *3 (S.D.N.Y. Aug. 31, 1992). Here, the latter proposition governs the instant motion. This is particularly true in light of the Section 1983 claim and retaliation claim that requires Plaintiff to submit the very evidence that Defendants wish to sever.

## POINT XI
## PLAINTIFF'S EXHIBITS 12 AND 22 SHOULD BE ADMITTED

Plaintiff's Trial Exhibit 12 (Exhibit K) is a business record kept in the ordinary course of business by Defendants. The Draft EEO Report is relevant to the facts and issues of this case and should come into evidnence under FRE 401 and 402. Plaintiff seeks for the Draft Report to be introduced by DOC employee Danielle Bartlett who helped create such report. Certain statements within the report can be handled with redactions. Even if the Court believes that Plaintiff's Exhibit 12 is subject to FRE 403 and can not be admitted for substantive evidence, the Draft EEO Report should be allowed into evidence for the purpose of impeaching witnesses. Further any hearsay statements can be corrected by Plaintiff who will testifying and Danielle Barrett who can testify to the creation and existence of such document.

As stated in POINT VII, Plaintiff's Trial Exhibit 22 (Exhibit E) can be introduced through and by Bruce Farbstein. Mr. Farbstein stated in his deposition, taken on November 3, 2021, relevant and detailed testimony regarding Plaintiff's damages on the issue of NYSERS.

At Page 14 Mr. Farbstein give the following testimony:

Q: What is the title that you hold with NYCERS?
A: Okay, my title is associate retirement benefits examiner level 3.
Q: What does it mean to be a level 3 in the title that you just said?
A: Okay, it means in addition to the normal work involving calculations, checking calculations, I'm involved in extracurricular activities such as testifying on behalf of NYCERS in court, and that's -- in other words, I'm officially a representative of NYCERS outside of NYCERS, and I get -- I get to deal with courts. That's basically, I'm the official representative of the organization as opposed to just someone at my desk doing work.

At Page 22 of his deposition Farbstein testifeid:

Q: Do you feel knowledgeable about discussing the pension benefits to which Dr. Adams is entitled to when she reaches retirement age?
A: I am knowledgeable of that, yes.
Q: Are you knowledgeable about the process by which NYCERS calculates benefits, pension benefits, to which their participants are entitled to?
MS. BALOG: Objection.
A: Yes, I am knowledgeable of that. (Exhibit E)

Mr. Farbstein then goes on to provide information that is crucial about benefits, retirement and pension. As stated above, his testimony and Plaintiff's Exhibit 22 is relevant to Plaintiff's damages, specifically her pension, retirement and other benefits that were halted due to her wrongful termination. Testimony regarding such is far from a waste of time and is relevant to real damages Plaintiff suffered due to her unlawful termination by Defendants.

Hence, all of Plaintiff's Exhibit 12 should be admitted. However, if the Court sees fit may Plaintiff's Exhibit 12 maybe redacted or the exhibit may be used for a limited purpose. Furthermore, all of Plaintiff's Exhibit 22 should be admitted because it is relevant to Plaintiff's damages and can be introduced through Mr. Farbstein.

## POINT XII

## DEFENDANTS' APPLICATION TO PREVENT PLAINTIFF FROM INTRODUCING EVIDENCE RELATING TO CLAIMS THAT HAVE BEEN DISMISSED IS WITHOUT SUPPORT AND IS MERIT LESS

Without any legal authority, Defendants argues that Plaintiff "should not be allowed to present evidence or otherwise refer to claims that have been dismissed from this lawsuit" and then references Plaintiff's Exhibits 12 (Exhibit K) and 13 (Exhibit L).  Def. Memo at 2.  Judge Koeltl rejected essentially the same type of argument in *Wellner v. City of New York*, 16 Civ. 7032 (JGK), a copy of which is annexed as Exhibit M to the Brewington declaration submitted in support of Plaintiff's Opposition to Defendants' Motions *in limine*. While that case was a police case, the premise and basis of Defendants' argument are in essence the same.   As Judge Koeltl noted,

> Are the circumstances of the plaintiff's arrest relevant? Of course. Do they become irrelevant because the plaintiff testifies about them and because the defendant doesn't dispute them? No. Can the defendant whittle down the plaintiff's case by taking out all of the supporting evidence by saying we really don't dispute that, we're only disputing a couple of facts and you can't testify about everything else because we're not disputing that, don't let the jury hear the full circumstances about what happened, just let them hear the few points that we want to talk about. We'll even stipulate to the dry facts that might be more helpful to the plaintiff so we can get to what we view as the disputed facts. Can a party do that? No, not without agreement.

(*Wellner*, April 1 Conference Tr. at 8-9-Exhibit M).

While claims have been dismissed, facts that relate to Plaintiff's claims have not been, and should not be precluded in a wholesale fashion.  This is especially true in a case where the intertwining aspects of the facts, documents and witnesses relate to the liability and damages.  The Defendants are asking this Court to pre-judge testimony that they have not identified nor attempted to narrow.

19

## POINT XIII

### PLAINTIFF'S  COUNSEL SHOULD BE PERMITTED TO SUGGEST A DOLLAR AMOUNT TO THE JURY IN HER OPENING AND/OR CLOSING ARGUMENT

Whether Plaintiff  is permitted to request a specific dollar amount from the jury is a matter within this Court's sound discretion. *See, e.g., Lightfoot v. Union Carbide Corp*., 110 F.3d 898, 912-13 (2d Cir. 1997).  While Defendants identify district courts who preclude plaintiffs' counsel from requesting a specific dollar amount, multiple district courts have determined such recommendations are appropriate. *See, e.g.,Thomas v. Kelly*, 903 F. Supp.2d 237, 265 (S.D.N.Y. 2012); *Saladino v. Stewart & Stevenson Services, Inc.*, 01-CV-7644, 2011 U.S. Dist. LEXIS 7566 at * 29 (E.D.N.Y Jan. 25, 2011); *Thomas v. Medco*, 95 Civ. 8401, 1998 U.S. Dist. LEXIS 13158, *44-45 (S.D.N.Y. Aug. 26, 1998).  Any concerns the Court has about abstract prejudice can be addressed by requiring Pino's counsel to suggest a number in his initial closing argument (and not during rebuttal argument), *see Edwards v. City of New York*, CV 08-2199,  2011 U.S. Dist. Lexis 75300, *5-6 (E.D.N.Y. July 13, 2011), and by carefully crafted jury instructions. *See Thomas*, 903 F.Supp.2d at 265 ("To cure any potential prejudice, the Court reminded the jury that '[w]hat the lawyers have said the evidence shows in their opening statements, objections or questions, or have said in their closing arguments, is not evidence.'").

## POINT XIV

### PLAINTIFF SHOULD NOT BE PRECLUDED FROM OFFERING FACTUAL TESTIMONY FROM PLAINTIFF'S TREATING HEALTH CARE PROVIDERS

Defendants' final point in the instant motion is unclear as to what witnesses they are suggesting will be offered to provide expert testimony.  Any attempt to create an issue by suggesting that Plaintiff will not abide by the rules and the Court's order about expert disclosure is misplaced.

However, Plaintiff's treating health care providers have been fully identified and if Defendants are

challenging any of them, they should clearly state so at this time.  Federal Rule of Civil Procedure

26(a)(2)(B) requires a full expert report for witnesses who are "retained or specially employed to

provide expert testimony in the case or ... whose duties as the party's employee regularly to the

contrary.  The Courts of this Circuit are clear that  It is well established that:

> experts are retained for purposes of trial and their opinions are based on knowledge acquired
> or developed in anticipation of litigation for trial." *Mangla, M.D. v. Univ. of Rochester*, 168
> F.R.D. 137, 139 (W.D.N.Y.1996). As in this case, "[a] treating physician's testimony is based
> on the physicians [sic] personal knowledge of the examination, diagnosis and treatment of
> a patient and not from information acquired from outside sources." *Id. (citing Baker v. Taco
> Bell Corp.*, 163 F.R.D. 348, 349 (D.Colo.1995)). Indeed, "[i]t is well settled that treating
> physicians can be deposed or called to testify at trial without the requirement of a written
> report." *Spencer v. Int'l Shoppes, Inc.*, 06–CV–2637(AKT), 2011 WL 4383046, at *2
> (E.D.N.Y. Sept. 20, 2011) (*citing Cruz v. Henry Modell & Co., Inc.*, 05–CV–1450(AKT),
> 2008 WL 905356, at *3 (E.D.N.Y. Mar. 31, 2008)); *see also Reilly v. Revlon, Inc.*,
> 08–CV–205(CM), 2009 WL 2900252, at *3 (S.D.N.Y. Sept. 9, 2009) ("Treating physicians
> do not need to be designated as experts in order to testify."). Treating physicians may be
> treated as fact witnesses not required to provide an expert report or summary of testimony
> prior to trial because they "are a species of percipient witness ... not specially hired to provide
> expert testimony; rather, they are hired to treat the patient and may testify to and opine on
> what they saw and did without the necessity of the proponent of the testimony furnishing a
> written expert report." *Goodman v. Staples The Office Superstore, LLC*, 644 F.3d 817, 819
> (9th Cir.2011).
> *Puglisi v. Town of Hempstead Sanitary Dist. Co. 2*, 11-cv-445, 2014 WL 12843521*3
> (E.D.N.Y. Jan. 27, 2014)

   None of Plaintiff's treating health care providers were retained or compensated by counsel

for any purpose in connection with this case.  They will  base their  facts, opinions and conclusions

on their treatment of Plaintiff and her medical history, medical records, and their continued treatment

of Plaintiff.  Further, as Defendants have been fully advised of the treating care providers throughout

the discovery there is no prejudice.  However, given that the trial is scheduled for January Plaintiff

seeks permission to provided the Defendants and the Court the FRCP 26(a)(2)© notice in a more

formal form.

## **CONCLUSION**

As Plaintiff has established the relevance of the evidence relating to Defendants as argued above in the fourteen points raised by Defendants.  Defendants have failed to show how such evidence is substantially more prejudicial than probative and not relevant, the Court must deny Defendants' motion *in limines*.

Dated: Hempstead, New York
        September 15, 2023

                                        THE LAW OFFICES OF
                                        FREDERICK K. BREWINGTON
                            By:    *Frederick K. Brewington*
                                        FREDERICK K. BREWINGTON
                                        556 Peninsula Boulevard
                                        Hempstead, New York 11550
                                        (516) 489-6959